IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2006 SEP 22  P 4: 06

*[illegible stamp]*

| | | |
|---|---|---|
| DONNA HARRELL and MACK HARRELL, | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| v. | * | CASE NO. 1:06CV849 - MHT |
| | * | |
| MERCK & CO., INC., a foreign Corporation; | * | Removed from Circuit Court |
| ANNE BRANDON Individual; MARK M. | * | of Houston County, AL |
| SANDERS, an Individual; TONYA M. | * | CV 06-502H |
| LOCKLIN, an Individual; JOE D. READ, an | * | |
| Individual; THEODORE R. BOWSER, II, an | * | |
| Individual; ERIC RALPH PAYNE, an | * | |
| Individual; and fictitious defendants A, B, | * | |
| C & D, being those persons, firms or | * | |
| corporations whose fraud, scheme to | * | |
| defraud, and/or other wrongful conduct | * | |
| caused or contributed to the Plaintiff's | * | |
| injuries and damages, and whose true | * | |
| names and identities are presently | * | |
| unknown To Plaintiff, but will be | * | |
| substituted by Amendment when | * | |
| ascertained. | * | |
| | * | |
| DEFENDANTS. | * | |

## NOTICE OF REMOVAL

The United States District Court for the Middle District of Alabama:

PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this

action pursuant to 28 U.S.C. § 1441 from the Circuit Court of Houston County,

Alabama, to the United States District Court for the Middle District of Alabama, Southern

Division, and respectfully states to this Court as follows:

## I.    PROCEDURAL BACKGROUND

1.    This action involves allegations regarding the prescription drug Vioxx®. On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring 148 Vioxx products liability cases to the United States District Court for the Eastern District of Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407.    Merck intends to seek the transfer of this action to that Multidistrict litigation, *In re VIOXX Products Liability Litigation,* MDL No. 1657, and will file shortly a motion to stay pending MDL transfer.

2.    On August 17, 2006, Plaintiffs Donna Harrell and Mack Harrell, as ("Plaintiffs") commenced a civil action against Merck, Merck employees Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II and Eric Ralph Payne, ("Employee Defendants"), and certain fictitious defendants, by filing a complaint (the "Complaint") in the Circuit Court of Houston County, Alabama, bearing Civil Action No. 2006-502H.  In her Complaint, Plaintiff alleges that she was caused to suffer a heart attack as a result of his ingestion of Vioxx.    [Compl., ¶ 48-51].  The Complaint includes claims for Negligence (Count I), Negligence Per Se (Count II), Gross Negligence, Wantoness, and/or Willfulness (Count III), Violation of Alabama Products Liability Act Failure to Warn (Count IV), Violations of Alabama Products Liability Act Inadequate Design or Formulation (Count V), Breach of Implied Warranty (Count VI), Breach of Express Warranty (Count VII), Fraud and Misrepresentation (Count VIII), Violation of Alabama Unfair and Deceptive Trade Practices Act (Count IX), and Loss of Support, Consortium and Services of Plaintiff Mack Harrell (Count X).  As to the Employee Defendants, the Complaint alleges that they falsely "misrepresented to Plaintiff Donna Harrell and the health care industry the safety and effectiveness of

2

VIOXX® and/or fraudulently or intentionally concealed material information, including adverse information regarding the safety and effectives of VIOXX®."    [Compl., ¶ 99].

3.    On or about August 28, 2006, Merck was served with a copy of the Complaint; on September 6, 2006, Eric Ralph Payne was served; on August 28, 2006, Joe D. Read was served; on August 26, 2006, Anne Brandon was served; on August 25, 2006, Theodore R. Bowser II was served; on August 24, 2006, Tonya M. Locklin was served; and defendant Mark M. Sanders as not been served.  A true and correct copy of the Summons and Complaint served on Merck and the contents of the state court file are collectively attached hereto as **Exhibit A**.

4.    For the reasons described below, this Court has jurisdiction over the state court action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and it is between citizens of different states.

## II.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

5.    This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441(b), because it is filed within thirty days of service on all properly served defendants.

6.    The United States District Court for the Middle District of Alabama (Southern Division) embraces the county in which the state court action is now pending. Therefore, this Court is a proper venue for this action pursuant to 28 U.S.C. §§ 81 & 1441(a).

7.    Merck need not obtain the consent of the Employee Defendants because, as set out more fully below, the Employee Defendants are fraudulently joined in this action in an attempt to defeat removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir.

3

1983); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n. 4 (E.D. Mich. 1999) (citing *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995).

8.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Defendants is attached as **Exhibit A**. Pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the State Court in which the action is currently pending. A copy of Merck's filing in state court is attached hereto as **Exhibit B**.

## III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

### A.      The Amount in Controversy Requirement Is Satisfied.

9.      It is apparent from the face of the Complaint that the Plaintiffs seek recovery of an amount in excess of $75,000, exclusive of costs and interest. Since the Complaint seeks an unspecified amount of damages, Merck must only show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319, 1327 (M.D. Ala. 2003) (*quoting Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).

10.     In this case, Plaintiff Donna Harrell alleges that she had a sudden onset of chest discomfort at home [Compl., ¶50] and suffered a heart attack, is at a heightened risk of another heart attack, and will likely suffer injury or harm in the future. [Compl., ¶ 51]. Based on these and other allegations, the Complaint seeks unspecified punitive damages for the injuries allegedly caused by Vioxx. [*See, e.g., id.,* pp. 18-19].

11.     Alabama juries in product liability cases routinely render verdicts in excess of $75,000 exclusive of interest and costs. *See* **Exhibit C**. Further, Alabama appellate courts have upheld verdicts in excess of $75,000 in such cases. *Id.*

12.     In circumstances similar to this case, federal courts around the country have ruled that actions alleging personal injuries caused by Vioxx meet the amount-in-controversy threshold. *See, e.g., Morgan v. Merck & Co.*, No. 3:03cv435WS, slip op. at 2 (S.D. Miss. Mar. 29, 2004); *Benavidez v. Merck & Co.*, No. L-03-134, slip op. at 1 (S.D. Tex. Apr. 6, 2004); *Stubblefield v. Merck & Co.*, Civ. No. H-02-3139, slip op. at 1 (S.D. Tex. Oct. 8, 2002); *Zeedyk v. Merck & Co.*, No. 02-C-4203, slip op. at 1 (N.D. Ill. August 30, 2002); *Abrusley v. Merck & Co.*, No. 02-0196, slip op. at 2 n.2 (W.D. La. June 18, 2002); *Jones v. Merck & Co.*, Civ. No. 02-00186, slip op. at 2 (D. Haw. June 5, 2002). These courts all were presented with complaints seeking damages for injuries caused by Vioxx, and all found that the requirements for federal diversity jurisdiction, including the amount in controversy, were satisfied.

## B.     There is Complete Diversity of Citizenship.

13.     There is complete diversity as between Plaintiffs and Merck, the only properly joined defendant.

14.     Plaintiffs are citizens of the State of Alabama. [Compl., ¶ 1, 6]. [1]

15.     Merck is, and was at the time this suit was commenced, a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

16.     The Complaint includes a number of fictitious defendants, whose citizenship is ignored for removal purposes. 28 U.S.C. § 1441(a).

---

[1] Plaintiffs allege that they are residents of Alabama. (Compl. ¶1.) Plaintiffs do not allege any alternative states of residence. Accordingly, upon information and belief, Alabama is the state in which Plaintiff is domiciled and, therefore, the state of which they are citizens for purposes of determining diversity. 28 U.S.C. §1331(a).

17.    Plaintiff names six Employee Defendants as Defendants.  [Compl., ¶ ¶ 5 and 6].    However, these Defendants are fraudulently joined and, therefore, their citizenship must be ignored for removal purposes.  *See, e.g., Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

18.    Unfortunately, the fraudulent joinder of pharmaceutical employees has become a common tactic in pharmaceutical litigation to attempt to defeat diversity and thwart defendants' right to defend claims against them in Federal Courts.  Nevertheless, two separate MDL courts have found, applying Alabama law in the context of claims based on prescription medications, that plaintiffs cannot pursue claims against sales representatives and that their joinder does not defeat diversity.  *See, e.g., In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287 (S.D. N.Y. 2001) ("*Rezulin I*"); *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004, attached hereto as **Exhibit D**.  *See also Fowler v. Pharmacia & Upjohn et al.,* CV-04-PT-712-M, Order dated June 24, 2004, attached hereto as **Exhibit E** (denying motion to remand, citing *In re Rezulin* and *In re Baycol* opinions discussed herein).

19.    A defendant is fraudulently joined when there is no "reasonable basis for predicting" that a state court might impose liability on the resident defendant.  *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997); *accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002) (recognizing that a "reasonable" basis to predict that plaintiff could prevail on the claims against an in-state defendant requires more than a "theoretical" possibility).  Such a "reasonable basis" must be based on facts in evidence and cannot be "merely theoretical." *Legg v. Wyeth,* __ F.3d __, 2005 WL 2756717, at *6 and n.5 (11th Cir. Oct. 25, 2005). *See also*

6

*Bloodsworth v. Smith & Nephew,* 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005)(discussing *Legg*).  When the defendant presents affidavits that are not disputed by the plaintiff, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." *Legg,* 2005 WL 2756717, at *4.  The Court must not, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*"  *Id.* at *5 (quoting *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 393-94 (5th Cir. 2000)) (emphasis in original).

20.    Where, as here, summary judgment evidence (*see* Declarations, attached hereto as **Exhibit F**) demonstrates that the Employee Defendants made no representations to the Plaintiff concerning Vioxx and did not manufacture, design, sale, prescribe, test or warrant Vioxx, there is no reasonable basis on which Plaintiff could prevail against those individuals.[2]  *See Stern v. Wyeth,* Case No. 02-80620-CIV-MARRA (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where affidavit of employee defendant demonstrated that there was no factual basis for liability); *In re Rezulin Products Liab. Litig.,* 133 F. Supp. 2d 272, 282 (S.D.N.Y. 2001) (denying motion to remand where affidavit of pharmaceutical representative established that the named employee did not have contact with plaintiff or physicians).

---

[2] The Employee Defendants verified under oath in their declarations, among other things:  "At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Donna Harrell or Mack Harrell.    I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and therefore have never written or filled a prescription for Vioxx as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer.  Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me. At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx.  The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.  They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.  At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients.  Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to Donna Harrell or Mack Harrell. I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith al all times in my dealings with physicians who may have prescribed Vioxx.  I have never met nor spoken with Donna Harrell or Mack Harrell. I have never made any presentations to the general public regarding Vioxx."

21.    In the face of the evidence put forth in the attached declarations, the allegations in Plaintiff's Complaint cannot defeat removal. *See Sierminski v. Transouth Financial Corp.*, 216 F. 3d 945, 948 (11th Cir. 2000) (holding that federal court's considering propriety of removal on diversity grounds are not limited to reviewing the allegations of the complaint and affirming denial of motion to remand); *TKI Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307 (M.D. Ala. 2002)(relying on deposition testimony to find in-state defendants fraudulently joined); *Goins v. Merck & Co.*, Case No. 4:03 CV-70-1 (M.D. Ga. Sept. 9, 2003) (relying on affidavits to find in-state pharmaceutical representatives fraudulently joined); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *5 (M.D. Ala. Dec. 19, 2005).

22.    Aside from the Plaintiff's inability to present countervailing evidence, there is no reasonable basis for predicting that a state court might impose liability on the Employee Defendants because the Complaint on its face fails to state a claim against the Employee Defendants upon which relief can be granted.  Most of the allegations against the Employee Defendants are broad, collective, and conclusory claims against "the defendants" and lump each of the individual Employee Defendants together and with Merck.  For example, in Count VIII, Plaintiff alleges that "Defendant Merck, on its own and/or in concert with its sales staff, including the Individual Resident Defendants, made representations and actively concealed adverse information at a time when Defendant Merck and its sales staff knew, or reasonably should have known, that VIOXX® had defects, dangers, and characteristics that were other than what Merck and its sales staff had represented to Plaintiff Donna Harrell, to her prescriber, and to the health care industry generally."  None of the allegations in the Complaint specify any alleged specific, individual misconduct or tortious acts committed by the Employee

Defendants. Indeed, Plaintiff seems uncertained as to whether the Employee Defendants are even responsible for the alleged fraudulent or intentional misrepresentations as shown by the Plaintiff's generalized statement that "the Defendants" made false representations without making any attempt to distinguish or specify what one Employee Defendant did or represented compared to another. The fact that no attempt is made to distinguish or separate the alleged conduct between the Employee Defendants in this case underscores the point that they are named solely for the purpose of defeating diversity jurisdiction.

23.     Such vague, uncertain and boiler-plate assertions are not sufficient to state a factual basis for any claim against any of the Employee Defendants. *See, e.g., Tillman v. RJ Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (non-diverse employee defendants fraudulently joined "where plaintiff failed to tie these defendants to the underlying allegations of the complaint"); *Banger ex rel. Freeman v. Magnolia Nursing Home, L.P.*, 234 F. Supp. 2d 633, 637-38 (S.D. Miss. 2002) (collective, conclusory and generic allegations of wrongdoing on the part of all defendants are insufficient to show that individual defendant was not fraudulently joined) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392-93 (5th Cir. 2000)); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y. 2001) ("*Rezulin II*") (pharmaceutical representatives fraudulently joined due to general collective allegations regarding "defendants"); *Lyons v. American Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them).

9

24.    Furthermore, there is no reasonable basis to predict that Plaintiff will prevail on any of her claims against the Employee Defendants because Plaintiff has not and cannot allege that the individual Employee Defendants actually personally participated in any wrongdoing. *See, e.g.*, *Stern v. Wyeth*, No. 02-80620-CIV-MARRA, at 6 (S.D. Fla. Jan. 22, 2003) (denying plaintiff's motion to remand where plaintiff failed to allege "personal involvement" by an employee defendant in the alleged tortious conduct of the corporate defendant employer); *Kimmons*, 844 F. Supp. at 740 (defendant fraudulently joined were no allegations of personal participation were made); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *11 (M.D. Ala. Dec. 19, 2005)(discussing *In re Rezulin* and the necessity of showing personal participation by the sales representative in the alleged fraud).

25.    Plaintiff's fraud and misrepresentation count (Count VIII) is deficient because Plaintiff has not specifically alleged that the Employee Defendants, independently from Merck, made a misrepresentation to Plaintiff.    A claim for misrepresentation and fraud requires, at a minimum, the identification of a particular misstatement by each Defendant. *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005);    *Atlantic Nat. Bank of Florida v. Vest*, 480 So. 2d 1328, 1331 (Fla. 2d DCA 1985) (holding that in order to allege a viable cause of action for negligent misrepresentation, plaintiff must allege, among other things, that there was a misrepresentation of a material fact).

26.    Plaintiff's fraud and fraudulent misrepresentation claims are also deficient because Plaintiff has failed to plead the claims with the particularity required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 9(b); *see also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege

10

particular facts supporting claims against defendants violated Rule 9(b) and resulted in finding of fraudulent joinder); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *10 to *11 (M.D. Ala. Dec. 19, 2005); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1512 (11th Cir. 1988); *Rezulin I*, 133 F. Supp. 2d at 183-84 (finding in-state defendants fraudulently joined due to plaintiff's failure to plead fraud claims with particularity).  An order denying remand in another Vioxx® case explains why Plaintiffs' claims in this case fail.  *See Hernandez v. Merck & Co., Inc., et. al*, Case No. 6:05-CV-00221-ORL-31-KRS (Order dated May 3, 2005, denying plaintiffs' motion to remand and dismissing two Merck sales representatives as defendants) (attached as **Exhibit G**).  Judge Presnell of the Middle District of Florida held that the claims against the sales representatives in the *Hernandez* case were totally lacking in merit.  According to the Court:

> Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to 'the plaintiff and/or plaintiff's prescribing physician' is clearly deficient.  Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading.

*Id.* at 10 n.12; *see also Merced-Torres v. Merck & Co., Inc.*, Case No. 6:05-CV-449-ORL-19DAB (Judge Fawsett's order denying plaintiffs' motion to remand) (*See* **Exhibit H**).  Because Plaintiff's claims against the Employee Defendants suffer from the same deficiencies as those in *Hernandez* and *Merced-Torres*, these claims must be rejected as meritless by this Court.

27.    Plaintiff's allegations in Count VIII of her Complaint, do not meet the specificity requirements of the Federal Rules of Civil Procedure, nor do they even approach the level where they would prevent this from being an obvious case of

fraudulent joinder. The allegations in Count VIII does not state any specifics as to whom the Employee Defendants allegedly made misrepresentations, what specifically was stated or passed on, when and where such misrepresentations were allegedly made or any other details. Plaintiff attaches specimen literature and letters as exhibits to her Complaint, but does not allege that any such literature or letters were provided by the Employee Defendants to either Plaintiff's decedent or any of his physicians.

28.    Counts VI and VII (breach of express and implied warranty) fail against the Employee Defendants because Alabama's adoption of the U.C.C. requires that the accused party be a "seller" to be liable for breach of warranty. *See Ala. Code* §7-2-103(1)(d) (defining "seller" as "a person who sells or contracts to sell goods"); *see also Ala. Code* §§7-2-313, 7-2-314 & 7-2-315 (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Wellcraft Marine v. Zarzour*, 577 So. 2d 414 (Ala. 1990) (noting that Alabama statutes defining the warranties of merchantability and fitness for a particular purpose both apply to the "seller"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at \*7 (M.D. Ala. Dec. 19, 2005)(concluding that there can be no breach of warranty claims against a sales representative because sales representatives are not "sellers" of goods).

29.    Counts I and II (strict liability and negligence) fail against the Employee Defendants for the same reasons that Counts VI and VII fail. Indeed, as shown in their declarations, the Employee Defendants did not design, manufacture, sell, prescribe, warrant or test Vioxx and therefore there can be no cause of action against the Employee Defendants under theories of strict liability and negligence. *See, e.g., Ala. Code* § 6-5-501 (1975); *Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) ("the plaintiff must prove that the defendant manufactured and/or sold the allegedly

defective product")(citing *Atkins v. Am. Motors Corp.*, 335 So. 2d 134 (Ala. 1976));

*Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *17 to *22 (M.D. Ala. Dec. 19,

2005); *In re Baycol Products Litigation*, MDL 1431, Order dated March 26, 2004);

*Galactic Employer Servs. v. McDorman*, 800 So. 2d 434 (Ala. 2003) (noting that a

corporate officer or employee must have direct, personal participation in the challenged

corporate activity to be held personally liable); *Ex parte Charles Bell Pontiac-Buick-*

*Cadillac-GMC, Inc.,* 496 So. 2d 774 (Ala. 1986) (same). Further, any claim asserting a

duty to warn is barred by the learned intermediary doctrine. *See Stone v. Smith, Kline &*

*French Laboratories*, 447 So. 2d 1301 (Ala. 1984); *Morguson v. 3M Company*, 857 So.

2d 796, 801-02, n. 1 (Ala. 2003).

30.    Count X (Loss of Consortium) also fails to state a claim because it is a

derivative claim that is dependent upon a separate viable claim. *See, e.g., Davis v. Wal-*

*Mart Stores, Inc.*, 64 F.Supp.2d 1176, 1181 (M.D. Ala. 1999). Therefore, since there are

no viable claims by Plaintiff, Mack Harrell, against the Employee Defendants, there can

be no viable loss of consortium claim against such defendants.

WHEREFORE, Defendant Merck respectfully removes this action from the Circuit

Court of Houston County, Alabama, bearing civil action number CV-06-502H, to this

Court, pursuant to 28 U.S.C. § 1441.

Alan T. Hargrove, Jr.
        Bar Number: (ASB-7018-H46A)
Mike Brock
        Bar Number:  (ASB-5280-B61R)
F. Chadwick Morriss
        Bar Number: (ASB-8504-S75F)

**RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.**
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:      ath@rsjg.com
                 rcb@rsjg.com
                 fcm@rsjg.com
**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon:

      Andy D. Birchfield, Jr., Esquire
      J. Paul Sizemore, Esquire
      Benjamin L. Lockler, Esq.
      Beasley, Allen, Crow, Methvin,
         Portis & Miles, P. C.
      P. O. Box 4160
      Montgomery, Alabama 36103-4160

by placing same in the United States mail, postage prepaid, this the 22nd day of September, 2006.

_____
OF COUNSEL

```
 -------------------------------------------------------------------------
| AVSO351                                            CV 2006 000502.00     |
|                                                                          |
|                                         JUDGE: DENNY L. HOLLOWAY         |
| ------------------------------------------------------------------------ |
|                        ALABAMA JUDICIAL DATA CENTER                      |
|                           CASE ACTION SUMMARY                            |
|                              CIRCUIT CIVIL                               |
| ------------------------------------------------------------------------ |
|   IN THE CIRCUIT  COURT OF  HOUSTON        COUNTY                        |
|    DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS        |
| FILED:  08/17/2006 TYPE: PRODUCT LIABILITY   TYPE TRIAL: JURY      TRACK:|
| ************************************************************************* |
| DATE1:              CA:              CA DATE:                            |
| DATE2:              AMT:      $.00 PAYMENT:                              |
| DATE3:                                                                   |
| ************************************************************************* |
|  PLAINTIFF  001: HARRELL DONNA                                           |
|                                         ATTORNEY: BIRCHFIELD ANDY D JR   |
|                                         BIR006    BEASLEY ALLEN CROW METH|
|                 AL  00000-0000                    P O BOX 4160           |
|                 PHONE: (334)000-0000              MONTGOMERY, AL  36103  |
|  ENTERED:  08/17/2006 ISSUED:           TYPE:              (334)269-2343 |
|  SERVED:              ANSWERED:         JUDGEMENT:                       |
|                                                                          |
|                                         SIZEMORE JAMES PAUL              |
|                                         P. O. BOX 4160                   |
|                                                                          |
|                                         MONTGOMERY, AL  36103            |
|                                                   (334)269-2343          |
|                                                                          |
|                                         LOCKLAR BENJAMIN LEE             |
|                                         BEASLEY, ALLEN, CROW...          |
|                                         POST OFFICE BOX 4130             |
|                                         MONTGOMERY, AL  36103            |
|                                                   (334)269-2343          |
| ------------------------------------------------------------------------ |
|  PLAINTIFF  002: HARRELL MACK                                            |
|                                         ATTORNEY: BIRCHFIELD ANDY D JR   |
|                                         BIR006    BEASLEY ALLEN CROW METH|
|                 AL  00000-0000                    P O BOX 4160           |
|                 PHONE: (334)000-0000              MONTGOMERY, AL  36103  |
|  ENTERED:  08/17/2006 ISSUED:           TYPE:              (334)269-2343 |
|  SERVED:              ANSWERED:         JUDGEMENT:                       |
|                                                                          |
|                                         SIZEMORE JAMES PAUL              |
|                                         P. O. BOX 4160                   |
|                                                                          |
|                                         MONTGOMERY, AL  36103            |
|                                                   (334)269-2343          |
|                                                                          |
|                                         LOCKLAR BENJAMIN LEE             |
|                                         BEASLEY, ALLEN, CROW...          |
|                                         POST OFFICE BOX 4130             |
|                                         MONTGOMERY, AL  36103            |
|                                                   (334)269-2343          |
| ------------------------------------------------------------------------ |
|  DEFENDANT  001: MERCK AND CO INC A FOREIGN CORPORATION                  |
|                 % CORP PROCESS CO STE 204  ATTORNEY:                     |
|                 2000 INTERSTATE PARK DR                                  |
|                 MONTGOMERY, AL  36109-0000                               |
|                 PHONE: (334)000-0000                                     |
|  ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED             |
|  SERVED:              ANSWERED:         JUDGEMENT:                       |
| ------------------------------------------------------------------------ |
|  DEFENDANT  002: BRANDON ANNE AN INDIVIDUAL                              |
|                 7 LAUDERHILL            ATTORNEY:                        |
|                                                                          |
|                 TUSCALOOSA, AL  35406-0000                               |
|                 PHONE: (334)000-0000                                     |
|  ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED             |
|  SERVED:              ANSWERED:         JUDGEMENT:                       |
 -------------------------------------------------------------------------
 LIL   08/24/2006                                    CV 2006 000502.00
```

EXHIBIT

A

```
AVSO351                                                      CV 2006 000502.00

                                               JUDGE: DENNY L. HOLLOWAY
-------------------------------------------------------------------------------
                        ALABAMA JUDICIAL DATA CENTER
                          CASE ACTION SUMMARY
                             CIRCUIT CIVIL
-------------------------------------------------------------------------------
   IN THE CIRCUIT  COURT OF  HOUSTON       COUNTY

   DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS
 FILED:  08/17/2006 TYPE: PRODUCT LIABILITY   TYPE TRIAL: JURY      TRACK:
*******************************************************************************
 DATE1:              CA:                 CA DATE:
 DATE2:              AMT:        $.00  PAYMENT:
 DATE3:
*******************************************************************************
-------------------------------------------------------------------------------
 DEFENDANT   003: SANDERS MARK M AN INDIVIDUAL
                  106 DONCASTER WAY              ATTORNEY:

                  DOTHAN, AL  36305-0000
                  PHONE: (334)000-0000
 ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED
 SERVED:              ANSWERED:            JUDGEMENT:
-------------------------------------------------------------------------------
 DEFENDANT   004: LOCKLIN TONYA M AN INDIVIDUAL
                  203 BOULDER DRIVE             ATTORNEY:

                  DOTHAN, AL  36305-0000
                  PHONE: (334)000-0000
 ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED
 SERVED:              ANSWERED:            JUDGEMENT:
-------------------------------------------------------------------------------
 DEFENDANT   005: READ JOE D AN INDIVIDUAL
                  128 FALKIRK DRIVE              ATTORNEY:

                  DOTHAN, AL  36305-0000
                  PHONE: (334)000-0000
 ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED
 SERVED:              ANSWERED:            JUDGEMENT:
-------------------------------------------------------------------------------
 DEFENDANT   006: BOWSER THEODORE R AN INDIVIDUAL
                  112 CUMBERLAND DRIVE           ATTORNEY:

                  DOTHAN, AL  36301-0000
                  PHONE: (334)000-0000
 ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED
 SERVED:              ANSWERED:            JUDGEMENT:
-------------------------------------------------------------------------------
 DEFENDANT   007: PAYNE ERIC RALPH AN INDIVIDUAL
                  201 HIGHLAND DRIVE             ATTORNEY:

                  ENTERPRISE, AL  36330-0000
                  PHONE: (334)000-0000
 ENTERED:  08/17/2006 ISSUED:  08/24/2006 TYPE:    CERTIFIED
 SERVED:              ANSWERED:            JUDGEMENT:
-------------------------------------------------------------------------------

-------|-----------------------------------------------------------------------
-------|-----------------------------------------------------------------------
-------|-----------------------------------------------------------------------
-------|-----------------------------------------------------------------------
-------|-----------------------------------------------------------------------
-------|-----------------------------------------------------------------------
LIL   08/24/2006                                       CV 2006 000502.00
```

AVSO353

ALABAMA JUDICIAL DATA CENTER
FEE SHEET
CIRCUIT CIVIL                          CASE:CV 2006 000502.00

```
IN THE CIRCUIT COURT OF  HOUSTON    COUNTY   JUDGE: DENNY L. HOLLOWAY
```

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS
PATTY:BIRCHFIELD ANDY D JR          DATTY:
BEASLEY ALLEN CROW METHVI
P O BOX 4160
MONTGOMERY, AL  36103

| CIVIL FEE SUMMARY | DATE AMT | DATE AMT | DATE AMT | DATE AMT | CONTINUATION | DATE AMT | DATE AMT | DATE AMT | DATE AMT |
|---|---|---|---|---|---|---|---|---|---|
| DOCKET FILING FEE | | | | | | | | | |
| SM(<)     $37.00 | | | | | OTHER SERVICES | | | | |
| SM(>)    $111.00 | | | | | COMMISSION ON SALE | | | | |
| DIST     $202.00 | | | | | JUDGEMENTS | | | | |
| CIRC     $201.00 | | | | | POST JUDGEMENT FEE | | | | |
| JU/CS    $104.00 | | | | | ATTACHMENTS | | | | |
| LAW LIBRARY TAX | 2.00 | | | | GARNISHMENTS | | | | |
| JURY DEMAND | | | | | EXECUTION | | | | |
| SERVICE FEES | | | | | APPEAL COSTS | | | | |
| EACH DEF OVER | | | | | LOWER COURT COSTS | | | | |
| | | | | | OTHER | | | | |
| CERT MAIL | | | | | COURT ADM FUND | | | | |
| SUBPOENA EACH | | | | | FAMILY COURT | | | | |
| ABND VEH   $37.00 | | | | | SHERIFF'S FEE | | | | |
| WORKERS | | | | | | | | | |
| COMP      $149.00 | | | | | TOTAL COSTS | | | | |

| CASH RECEIPTS/FROM | DATE RECEIVED | RECEIPT NUMBER | AMOUNT RECEIVED | GARNISHEE |
|---|---|---|---|---|
| Andy D. Birchfield, Jr. | 8-30-00 | 31143 | 40100 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| DISBURSEMENTS PAID TO | DATE PAID | CHECK NO | AMOUNT PAID |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

LIL  08/24/2006

ALABAMA JUDICIAL DATA CENTER
COURT PAYMENT SYSTEM

HOUSTON COUNTY                              RECEIPT NUMBER: 031143
DATE OF RECEIPT: 08/30/2006   TIME: 13:22:11
RECEIPT FOR CASE: CV 2006 000502 00         BATCH: 2006071
RECEIVED FROM: HARRELL DONNA

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

ACCOUNTS RECEIPTED:
        CV05                              $301.00
        JDMD                              $100.00

RECEIVED BY: COB        CHECK AMOUNT        $401.00

Check No:  170677

AVSO35

ALABAMA JUDICIAL DATA CENTER
HOUSTON          COUNTY

SUMMONS

CV 2006 000502.00

---

IN THE CIRCUIT  COURT OF  HOUSTON          COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

SERVE ON: (D001)

SSN: 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                              PLAINTIFF'S ATTORNEY

MERCK AND CO INC A FOREIGN COR          BIRCHFIELD ANDY D JR
% CORP PROCESS CO STE 204               BEASLEY ALLEN CROW METHVI
2000 INTERSTATE PARK DR                 P O BOX 4160
MONTGOMERY    ,AL  36109-0000           MONTGOMERY    ,AL  36103-0000

---

TO THE ABOVE NAMED DEFENDANT:

 THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

 THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

( )   TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)   THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF                      PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 08/24/2006                    CLERK: JUDY BYRD
                                           PO DRAWER 6406
                                           DOTHAN  AL  36302

7160-3901-9849-1050-4500

---

      RETURN ON SERVICE:

( )   CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
      (RETURN RECEIPT HERETO ATTACHED)

( )   I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

      COMPLAINT TO _____

      IN _____ COUNTY, ALABAMA ON (DATE) _____

DATE _____        SERVER SIGNATURE _____

SERVER ADDRESS _____        TYPE OF PROCESS SERVER _____

---

OPERATOR: LIL
PREPARED: 08/24/2006

AVSO350

*Original*

ALABAMA JUDICIAL DATA CENTER
HOUSTON          COUNTY

SUMMONS

CV 2006 000502.00 *H*

--------------------------------------------------------------------

IN THE CIRCUIT  COURT OF  HOUSTON        COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

     SERVE ON: (D002)

     SSN: 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               PLAINTIFF'S ATTORNEY

     BRANDON ANNE AN INDIVIDUAL      BIRCHFIELD ANDY D JR
     7 LAUDERHILL                  BEASLEY ALLEN CROW METHVI
                                   P O BOX 4160
     TUSCALOOSA    ,AL  35406-0000    MONTGOMERY    ,AL  36103-0000

--------------------------------------------------------------------

TO THE ABOVE NAMED DEFENDANT:

 THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

--------------------------------------------------------------------

( )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
    4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
    YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
    COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
    WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
    OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 08/24/2006           CLERK *Judy Byrd*
                        PO DRAWER 6406
                        DOTHAN  AL  36302

*7160-3901-9849-1050-4531*

--------------------------------------------------------------------

     RETURN ON SERVICE:

( )  CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
    (RETURN RECEIPT HERETO ATTACHED)

( )  I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND
    COMPLAINT TO _____

    IN _____ COUNTY, ALABAMA ON (DATE) _____

DATE _____    SERVER SIGNATURE _____

SERVER ADDRESS _____    TYPE OF PROCESS SERVER _____

--------------------------------------------------------------------

OPERATOR: LIL
PREPARED: 08/24/2006

AVSO350

*Original*

ALABAMA JUDICIAL DATA CENTER
HOUSTON          COUNTY

SUMMONS

CV 2006 000502.00 H

---

IN THE CIRCUIT  COURT OF  HOUSTON        COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

SERVE ON: (D003)

SSN: 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

SANDERS MARK M AN INDIVIDUAL
106 DONCASTER WAY

DOTHAN        ,AL  36305-0000

PLAINTIFF'S ATTORNEY

BIRCHFIELD ANDY D JR
BEASLEY ALLEN CROW METHVI
P O BOX 4160
MONTGOMERY        ,AL  36103-0000

---

TO THE ABOVE NAMED DEFENDANT:

 THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

 THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

 ( )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

 ( )  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF                      PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE.

 DATE: 08/24/2006                      CLERK: JUDY BYRD
                                       PO DRAWER 6406
                                       DOTHAN AL  36302

7160-3901-9849-1050-4524

---

   RETURN ON SERVICE:

 ( )  CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
      (RETURN RECEIPT HERETO ATTACHED)

 ( )  I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

      COMPLAINT TO _____

      IN _____ COUNTY, ALABAMA ON (DATE) _____

 DATE _____   SERVER SIGNATURE _____

 SERVER ADDRESS _____   TYPE OF PROCESS SERVER _____

---

OPERATOR: LIL
PREPARED: 08/24/2006



AVSO350

ALABAMA JUDICIAL DATA CENTER
HOUSTON        COUNTY

SUMMONS

CV 2006 000502.00 *H*

--------------------------------------------------------------------

IN THE CIRCUIT  COURT OF  HOUSTON       COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

SERVE ON: (D004)

SSN: 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

LOCKLIN TONYA M AN INDIVIDUAL
203 BOULDER DRIVE

DOTHAN        ,AL  36305-0000

PLAINTIFF'S ATTORNEY

BIRCHFIELD ANDY D JR
BEASLEY ALLEN CROW METHVI
P O BOX 4160
MONTGOMERY     ,AL  36103-0000

--------------------------------------------------------------------

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

--------------------------------------------------------------------

( )   TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)   THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF                    PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 08/24/2006                     CLERK JUDY BYRD
                                     PO DRAWER 6406
                                     DOTHAN AL  36302

7160 - 3911 - 9849 - 1050 - 4517 ----------------------------------

RETURN ON SERVICE:

( )   CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
      (RETURN RECEIPT HERETO ATTACHED)

( )   I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

      COMPLAINT TO _____

      IN _____ COUNTY, ALABAMA ON (DATE) _____

DATE _____        SERVER SIGNATURE _____

SERVER ADDRESS _____        TYPE OF PROCESS SERVER _____

--------------------------------------------------------------------

OPERATOR: LIL
PREPARED: 08/24/2006

AVSO350    *Original*

ALABAMA JUDICIAL DATA CENTER
HOUSTON          COUNTY

SUMMONS

CV 2006 000502.00 H

------------------------------------------------------------------

IN THE CIRCUIT   COURT OF   HOUSTON       COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

SERVE ON: (D005)

SSN: 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

READ JOE D AN INDIVIDUAL
128 FALKIRK DRIVE

DOTHAN        ,AL  36305-0000

PLAINTIFF'S ATTORNEY

BIRCHFIELD ANDY D JR
BEASLEY ALLEN CROW METHVI
P O BOX 4160
MONTGOMERY      ,AL  36103-0000

------------------------------------------------------------------

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

------------------------------------------------------------------

( )   TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)   THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF                      PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE.

DATE: 08/24/2006                     CLERK: JUDY BYRD
                                     PO DRAWER 6406
                                     DOTHAN AL  36302

7160-3901-9849-1050-4470

------------------------------------------------------------------

RETURN ON SERVICE:

( )   CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
      (RETURN RECEIPT HERETO ATTACHED)

( )   I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

      COMPLAINT TO _____

      IN _____ COUNTY, ALABAMA ON (DATE) _____

DATE _____        SERVER SIGNATURE _____

SERVER ADDRESS _____        TYPE OF PROCESS SERVER _____

------------------------------------------------------------------
OPERATOR: LIL
PREPARED: 08/24/2006

*Original*

AVSO350

ALABAMA JUDICIAL DATA CENTER
HOUSTON        COUNTY

SUMMONS

CV 2006 000502.00 *H*

---

IN THE CIRCUIT COURT OF HOUSTON        COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

SERVE ON: (D006)

SSN: 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

BOWSER THEODORE R AN INDIVIDUA
112 CUMBERLAND DRIVE

DOTHAN        ,AL 36301-0000

PLAINTIFF'S ATTORNEY

BIRCHFIELD ANDY D JR
BEASLEY ALLEN CROW METHVI
P O BOX 4160
MONTGOMERY        ,AL 36103-0000

---

TO THE ABOVE NAMED DEFENDANT:

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

( )   TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
      4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE:
      YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
      COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)   THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
      WRITTEN REQUEST OF                    PURSUANT TO RULE 4.1(C)
      OF THE ALABAMA RULES OF CIVIL PROCEDURE

DATE: 08/24/2006                        CLERK: JUDY BYRD
                                        PO DRAWER 6406
                                        DOTHAN  AL  36302

*7160-3901-9849-1050-4487*

---

RETURN ON SERVICE:

( )   CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
      (RETURN RECEIPT HERETO ATTACHED)

( )   I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

      COMPLAINT TO _____

      IN _____ COUNTY, ALABAMA ON (DATE) _____

---

DATE _____        SERVER SIGNATURE _____

SERVER ADDRESS _____        TYPE OF PROCESS SERVER _____

---

OPERATOR: LIL
PREPARED: 08/24/2006

AVSO350

*Original*

ALABAMA JUDICIAL DATA CENTER
HOUSTON         COUNTY

SUMMONS

CV 2006 000502.00

----------------------------------------------------------------------

IN THE CIRCUIT   COURT OF   HOUSTON        COUNTY

DONNA HARRELL AND MACK HARRELL VS MERCK AND COMPANY INC ET ALS

     SERVE ON: (D007)

     SSN: 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                    PLAINTIFF'S ATTORNEY

     PAYNE ERIC RALPH AN INDIVIDUAL      BIRCHFIELD ANDY D JR
     201 HIGHLAND DRIVE                  BEASLEY ALLEN CROW METHVI
                                        P O BOX 4160
     ENTERPRISE   ,AL  36330-0000        MONTGOMERY    ,AL  36103-0000

----------------------------------------------------------------------

TO THE ABOVE NAMED DEFENDANT:

  THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST
TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS, YOU OR YOUR ATTORNEY ARE
REQUIRED TO MAIL OR HAND DELIVER A COPY OF A WRITTEN ANSWER, EITHER
ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT TO THE PLAINTIFFS
ATTORNEY(S) SHOWN ABOVE OR ATTACHED:

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS
AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGEMENT BY DEFAULT MAY BE
ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

----------------------------------------------------------------------

( )  TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY EITHER RULES 4.1(B)(2) OR
    4.2(B)(2) OR 4.4(B)(2) OF THE ALABAMA RULES OF CIVIL PROCEDURE.
    YOU ARE HEREBY COMMANDED TO SERVE THIS SUMMONS AND A COPY OF THE
    COMPLAINT IN THIS ACTION UPON DEFENDANT.

(X)  THIS SERVICE BY CERTIFIED MAIL OF THIS SUMMONS IS INITIATED UPON THE
    WRITTEN REQUEST OF _____ PURSUANT TO RULE 4.1(C)
    OF THE ALABAMA RULES OF CIVIL PROCEDURE

DATE: 08/24/2006                   CLERK JUDY BYRD
                             PO DRAWER 6406
                             DOTHAN  AL  36302

----------------------------------------------------------------------

    RETURN ON SERVICE:

( )  CERTIFIED MAIL RETURN RECEIPT IN THIS OFFICE ON (DATE) _____
    (RETURN RECEIPT HERETO ATTACHED)

( )  I CERTIFY THAT I PERSONALLY DELIVERED A COPY OF THE SUMMONS AND

    COMPLAINT TO _____

    IN _____ COUNTY, ALABAMA ON (DATE) _____

DATE _____      SERVER SIGNATURE _____

SERVER ADDRESS _____      TYPE OF PROCESS SERVER _____

----------------------------------------------------------------------

OPERATOR: LIL
PREPARED: 08/24/2006

IN THE CIRCUIT COURT OF
HOUSTON COUNTY, ALABAMA


| | |
|---|---|
| DONNA HARRELL and MACK HARRELL, | * <br> * <br> * |
| PLAINTIFFS, | * <br> * |
| v. | * <br> * |
| MERCK & CO., INC., a foreign Corporation; ANNE BRANDON, an Individual; MARK M. SANDERS, an Individual; TONYA M. LOCKLIN, an Individual; JOE D. READ, an individual; THEODORE R. BOWSER, II, an Individual; ERIC RALPH PAYNE, an Individual; and fictitious defendants A, B, C & D, being those persons, firms or Corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the Plaintiff's injuries and damages, and whose true names and identities are presently unknown to Plaintiff, but will be substituted by amendment when ascertained, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |
| DEFENDANTS. | * |

CASE NO. CV-06- 502 H

**FILED**

AUG 17 2006

*Judy Byrd*
JUDY BYRD, CLERK
HOUSTON CO., AL

## COMPLAINT

COMES NOW the Plaintiff, Donna Harrell, complaining of the Defendants Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, Eric Ralph Payne, and fictitious defendants A, B, C & D, ("Defendants"), and for Plaintiff's cause of action against the Defendants for damages, allege and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Donna Harrell is over the age of majority and is a resident of Houston County, Alabama.

2.     Defendant Merck & Co., Inc. (hereinafter "Merck" or "Defendant Merck") is a pharmaceutical company incorporated under the laws of the State of New Jersey with its principal place of business at One Merck Drive, Post Office Box 100, Whitehouse Station, New Jersey.    At all times relevant herein, Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products, including VIOXX® (rofecoxib). Merck does business in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed VIOXX® in Houston County, Alabama.  Defendant Merck can be served through its registered agent:   Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

3.     Numerous Merck sales representatives were involved in detailing, calling upon, providing samples and information to, and promoting VIOXX® to the physician or physicians who prescribed VIOXX® to Plaintiff Donna Harrell, and participated directly or indirectly, in concert with or separate from, with Defendant Merck as more specifically set forth herein.  Based upon information and belief, Defendants Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, are sales representatives for Defendant Merck, and are residents of Houston County or Coffee County, Alabama who it is reasonably believed detailed and/or called upon the physician or physicians who prescribed VIOXX® to the decedent and committed the

2

wrongful acts described herein.   Those representatives, their residency, and other

pertinent information are as follows:

> a.    Mark M. Sanders
>        106 Doncaster Way
>        Dothan, Alabama  36305

> b.    Tonya M. Locklin
>        203 Boulder Drive
>        Dothan, Alabama  36305

> c.    Joe D. Read
>        128 Falkirk Drive
>        Dothan, Alabama  36305

> d.    Theodore R. Bowser, II
>        112 Cumberland Drive
>        Dothan, Alabama  36301

> e.    Eric Ralph Payne
>        201 Highland Drive
>        Enterprise, Alabama  36330

These Defendants shall be collectively referred to herein as "Individual Resident

Defendants."

4.       FICTITIOUS Defendants A, B, C, & D are those persons, firms,

corporations, or entities, whose identities are presently unknown and whose identities

cannot be fully ascertained through reasonable diligence, and who were participants in

the fraud, scheme to defraud, or other wrongful conduct as set forth herein.   Their

identities will be supplemented once ascertained.   Any reference to the "Individual

Resident Defendants" or to other actors referenced herein shall by reference incorporate

the FICTITIOUS Defendants, whose identity is currently unknown.

5.       This Court has jurisdiction over the corporate Defendant, Merck, the

Individual Resident Defendants, and the FICTITIOUS Defendants.   Merck has conducted

business in the State of Alabama, committed numerous torts in whole or in part in the State of Alabama, caused injury to the Plaintiff and numerous other Alabama residents, continues to conduct business in this state, and has sufficient minimum contacts with the State of Alabama. Merck is authorized to do business in Alabama by the Secretary of State and has an agent for service of process, as identified herein. The Individual Resident Defendants and the FICTITIOUS Defendants are, or have been in the past, residents of Alabama and are subject to the jurisdiction of the courts in this state.

6.     Venue of this case is proper in Houston County, Alabama because part or all of the wrongful acts complained of and the injuries alleged occurred in Houston County, the Plaintiff are both residents of Houston County, and the Defendants have conducted and continue to conduct business in Houston County, Alabama.

## SERVICE OF PROCESS

7.     Defendant Merck is a foreign corporation. Said defendant is duly authorized to do business in the State of Alabama, and its registered agent for service or process is CT Corporation. Said defendant may be served with process by delivering Summons and Complaint to: Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

8.     The Individual Resident Defendants may be served at the Alabama addresses reflected above.

## FACTUAL ALLEGATIONS REGARDING MERCK'S CONDUCT

9.     This action arises from the sale and efficacy of a pain-relief drug, VIOXX® (rofecoxib). VIOXX® is a member of a class of drugs known as "NSAIDs" (non-steriodal anti-inflammatory drug), and is more specifically referred to as a selective

4

NSAID because it contains cyclooxygenase 2 ("COX-2") inhibitory properties. Generally, NSAIDs prevent the formation of fatty acid cyclooxygenases, of which there are two known types ("COX-1" and "COX-2"). VIOXX® is generally different than NSAIDs in that it is solely a COX-2 inhibitor, the rationale being that if the COX-1 enzyme is unaltered, the patient will experience fewer gastrointestinal complications commonly associated with NSAIDs. Further, the inhibition of COX-2 enzymes is said to decrease pain and inflammation. VIOXX® is a selective COX-2 inhibitor marketed by Defendant Merck as an anti-inflammatory analgesic.

10.    In May 1999, the FDA approved Merck's New Drug Application, opening the door for Merck to sell, distribute and market VIOXX® in the United States, which Merck immediately began doing. VIOXX® is a brand name used by Merck to market and distribute rofecoxib.

11.    Merck distributed and sold VIOXX® to consumers such as Plaintiff Donna Harrell. VIOXX® was approved for marketing based on information in the New Drug Application (hereinafter "NDA"), which was on a fast-track, six month approval process to FDA.

12.    Despite knowledge obtained from its clinical trials, post-marketing reports, studies and information relating to cardiovascular adverse health effects, Merck promoted and marketed VIOXX® as safe and effective for persons such as Plaintiff Donna Harrell.

13.    Merck concealed the serious cardiovascular risks associated with VIOXX®, because Merck knew that a successful launch of VIOXX® was essential to its profitability, and Merck knew that if it disclosed known or suspected safety concerns

about the drug's propensity to cause or contribute to hypertension, thrombosis, edema and/or cardiovascular events, the sales of the drug would have been drastically impacted, affecting Merck's positioning in the market. Merck was in a race to sale more VIOXX® than another COX-2 inhibitor, CELEBREX® (celecoxib), which had been placed into the market by Merck competitors, Pharmacia and Pfizer, some three (3) months prior to the launch of VIOXX®.

14.    Merck knowingly chose to market this product, despite its knowledge at product launch and thereafter, that the use of VIOXX® carried significant risk factors. These adverse effects were realized from information provided to Merck by its own scientists, from scientists outside of Merck, from adverse event reports made available to Merck, and from clinical trails conducted by Merck. These data revealed that VIOXX® increased the risk of adverse events, primarily heart attacks and strokes, by a statistically significant measure among users of the drug.

15.    Further, in industry-sponsored studies presented at the European United League Against Rheumatism ("EULAR"), an organization in which Merck is a member and corporate sponsor, in June of 2000, it was shown that VIOXX® use resulted in a statistically significant increase in hypertension and myocardial infarction. Merck did nothing to publish these studies and, instead, undertook measures to deny the health risks associated with VIOXX®, including publications, such as the one that appeared in the American Pharmaceutical Association, *Pharmacy Today,* Spin War Aside, Lessons Emerge from COX-2 Trials, in August 2000, page 3.

16.    While Merck continued to deny the ill health effects associated with VIOXX®, it reaped huge profits obtained through its purposeful non-disclosure. Merck

engaged in an aggressive and expansive advertising and sampling program and gained continued increases in market share, which enhanced Merck's financial stability to the detriment of its consumers. Merck trained its sales staff to suppress the known dangers of VIOXX®. The Individual Resident Defendants were provided methods and mechanisms to conceal the cardiovascular risks of VIOXX® from the prescribing physicians. The Individual Resident Defendants herein knew of the cardiovascular risks and Merck's scheme to suppress the known dangers of the drug, and became participants in the wrongful acts and practices of their employer, Merck. The resultant effect to Merck in concealing and failing to reveal and warn of the risks was more than $2 billion profit in 2000 alone to Merck and an approximately 23% share of the market. The company's profit and market share continued to increase until the drug was removed from the market on September 30, 2004. The Individual Resident Defendants correspondingly benefited by greater commissions earned on VIOXX® sales.

17.      The profits to Merck were realized as it continued to withhold relevant data from the Plaintiff, the consuming public, and the health care industry generally. For example, in November of 2000, Merck caused the publication of a study in the *New England Journal of Medicine* and knowingly downplayed and/or withheld from this publication the severity of cardiovascular risks associated with VIOXX® consumption.

18.      On or about August 9, 2001, the *Journal of the American Medical Association* published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, Dr. D. Mukherjee, et al., showing what Merck had concealed – that the relative risk of developing a "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina,

cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") among VIOXX® users in Merck's trials at a 95% confidence interval ranged from 2.2 for event-free survival analysis, 2.38 compared to naproxen users, and 4.89 for developing serious cardiovascular events among aspirin-indicated patients. See Mukherjee, D., et al., *Risk of Cardiovascular Events Associated With Selective Cox-2 Inhibitors*, JAMA. 286:8, 954-959, Aug. 22/29, 2001. In addition, the annualized myocardial infarction rates for VIOXX® users. *Id.*

19.    In the JAMA study the authors set forth the theory that "by decreasing PGI2 production [VIOXX®] may tip the natural balance between prothrombotic thromboxane A2 and antithrombotic PGI2, potentially leading to an increase in thrombotic cardiovascular events." *Id* at 957. In a follow-up peer-reviewed study reported in the *Journal of the American College of Cardiology* on or about February 6, 2002, Dr. Richard J. Bing conducted scientific testing and confirmed that the COX-2 inhibitor "tips the balance of prostacyclin/thromboxane in favor of thromboxane, leading to increased vascular and thrombotic events." Bing, R., & Lomnicka, M., *Why Do Cyclo-Oxygenase-2 Inhibitors Cause Cardiovascular Events?*, J.A.C.C., 39:3, Feb. 6, 2002. This biological plausibility is further supported by studies completed at the University of Pennsylvania. Cheng, Y., et al., *Role of Prostacyclin in the Cardiovascular Response to Thromboxane A2.*, Journal of Science, V. 296_539-541, Apr. 19, 2002.

20.    In responsive Merck-authored and Merck-sponsored reviews, Merck set forth the theory that naproxen had a cardioprotective effect and therefore accounted for the cardiovascular risks among its VIOXX® users. This theory was debunked by Merck's own scientists, such as Dr. Carlo Patrono, an internationally recognized

cardiologist, and by others. For example, in approximately January of 2002, Dr. Wayne Ray, a Vanderbilt University School of Medicine epidemiologist, published a peer-reviewed study published in *The Lancet* and concluded that based upon information previously available there is an absence of a protective effect of naproxen and other non-aspirin non-steriodal anti-inflammatory drugs on risk of coronary heart disease. Ray, W., et al., *Non-Steriodal Anti-Inflammatory Drugs and Risks of Serious Coronary Heart Disease: An Observational Cohort Study, THE LANCET,* 359:118-123, Jan. 12, 2002.

21.    In mid-September, 2001, Merck received a Warning Letter from the FDA, its third, charging that Merck's promotional activities and materials related to VIOXX® and its explanation of the clinical data were "false, lacking in fair balance, or otherwise misleading in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and applicable regulations." The FDA stated that Merck's promotional campaign and practices "minimize[] the potentially serious cardiovascular findings" from a VIOXX® study and "misrepresents the safety profile for VIOXX®." Also, in the Warning Letter, the FDA wrote with respect to Merck's May 22, 2001 press release, "your claim in the press release that VIOXX® has a 'favorable safety profile' is simply incomprehensible, given the rate of MI [myocardial infarction] and serious cardiovascular events compared to naproxen. The implication that VIOXX's cardiovascular profile is superior to other NSAID's is misleading; in fact, serious cardiovascular events were twice as frequent in the VIOXX® treatment group ... as in the naproxen treatment group...."

22.    After the VIGOR data became public, the FDA required Merck to place cardiovascular warnings in its VIOXX® label in order to make physicians and the consuming public aware of the risks associated with the ingestion of VIOXX®. Despite

the FDA's request, Merck declared war on the FDA and undertook to fight to keep this warning out of its label. Merck knew and acknowledged that a cardiovascular warning in its VIOXX® label, where a corresponding label would not be required in its competitors' products, would greatly impact its sales of the drug.

23.    Merck's aggressive campaign against the FDA proved fruitful, and in April 2002, nearly two years after the VIGOR data was known to it, Merck reached a negotiated agreement with the FDA that allowed it to post the VIGOR data in its label, while avoiding a cardiovascular warning in its label. Because the FDA's directives were based upon information known and readily available to Merck before the drug was placed on the market and certain as of March 2000, when the VIGOR results were made known to Merck. As such, Merck did not meet its obligation to provide adequate "direction or warnings" to physicians and consumers about the risks associated with VIOXX® as called for by law, including Section 402 of the Restatement (Second) of Torts.

24.    Merck's continued studies thereafter confirmed what the FDA, scientists worldwide, and Merck's own data had previously revealed, namely, that VIOXX® is prothrombotic. Prior to the conclusion of three long-term, Merck-sponsored clinical studies, APPROVe, ViP, and VICTOR, Merck was warned by its data safety monitoring board that VIOXX® was dangerous and defective in that it greatly increased the risks of heart attacks and strokes among users of the VIOXX® compared to others taking a placebo or sugar pill. Knowing that even it could not explain away the data from these studies, Merck voluntarily withdrew VIOXX® from the worldwide market on September 30, 2004.

25.   At all times relevant to this litigation, Defendant Merck had a significant market share based upon claims of VIOXX's efficacy, a very aggressive marketing program which included financial incentives to sales teams, infusion of some 700 new sales representatives, and a massive direct-to-consumer advertising and physician sampling program. Merck's marketing efforts were unheralded and unprecedented in the pharmaceutical industry.

26.   As a result of such marketing, VIOXX® gained a significant market share in competition with CELEBREX® and others that Merck would not have gained if Merck had not suppressed information about VIOXX® and/or made false representations of VIOXX®'s safety, superiority and efficacy.

27.   Since Merck was withdrawn from the market, another COX-2 inhibitor, BEXTRA® (valdecoxib), has been removed from the market. A third COX-2 inhibitor, CELEBREX® (celecoxib), now includes a cardiovascular warning.

28.   If Merck had not engaged in the wrongful conduct explained herein and as more fully revealed through information and discovery revealed from discovery conducted in cases around the nation, patients such as Plaintiff Donna Harrell would not have been prescribed VIOXX® by their physicians, would have been prescribed a safer alternative drug or therapy, would have been able to make informed decisions about the risks versus the benefits of VIOXX®, and would have refrained from ingesting the dangerous product, VIOXX®.

29.   From approximately May 1999 through the time VIOXX® was removed from the market on September 30, 2004, Merck engaged in a common scheme by

marketing, distributing and/or selling VIOXX® under the guise that it was safe and efficacious for persons such as Plaintiff Donna Harrell.

30.    Plaintiff Donna Harrell alleges that the suppression of this critical safety information by Merck constituted a common scheme by Merck to conceal material information from her.

31.    Plaintiff Donna Harrell alleges that the marketing strategies, including, without limitation, the detail sampling programs and direct-to-consumers advertising, of Merck targeted her to induce her purchase of VIOXX®. At the time Merck distributed, manufactured and marketed VIOXX®, Merck intended that Plaintiff Donna Harrell and her health care providers would rely on the marketing, advertisements and product information propounded by Merck.    Indeed, Plaintiff Donna Harrell' prescribing physician prescribed VIOXX® to Donna Harrell, believing it was safe and effective, and Plaintiff Donna Harrell ingested the drug, likewise believed it was safe and effective.

32.    The actions of Merck, in failing to warn of the clear and present dangers posed to user of its drug VIOXX®, in suppressing evidence relating to these dangers, and in making deliberate and misleading misrepresentations of fact to minimize the dangers or to mislead prescribers and patients as to the true risks associated with the drug, constitutes such clear, blatant and outrageous conduct as to warrant the imposition of exemplary damages against Defendant Merck.

## FACTUAL ALLEGATIONS REGARDING

## INDIVIDUAL RESIDENT DEFENDANTS' CONDUCT

33.    Defendant Merck trained its sales representatives, through programs such as the "VIOXX Obstacle Dodge Ball Program," the "Obstacle Response Guide for

VIOXX" and "Top Ten Obstacle Handlers" to misstate and misrepresent the truly dangerous nature of VIOXX® t o prescribing physicians.

34.    These programs were specifically designed and promulgated by Defendant Merck to train Merck sales representatives such as the Individual Resident Defendants to mislead prescribing physicians about the safety of VIOXX®.

35.    These programs were specifically designed and promulgated by Defendant Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and sudden cardiac death, of VIOXX®.

36.    Defendant Merck trained its sales representative force, including the Individual Resident Defendants, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians.

37.    These programs were utilized by the Individual Resident Defendants to "dodge" relevant safety questions by physicians to whom they sold VIOXX®.   Indeed, these programs provided specific responses and representations that were to be made by Merck sales representatives to physicians during sales calls or in response to physician questions, and said responses conveyed by the Individual Resident Defendants misrepresented the safety of VIOXX®.

38.    The VIOXX® Obstacle Dodge Ball Program identified and categorized physician safety questions as "obstacles" to Merck's sales force. (Exhibit "A").   The "Dodge Ball" program specifically instructed sales representatives, including the Individual Resident Defendants, to "dodge" these physician safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual

simply state "DODGE," "DODGE," and "DODGE." Id. The safety questions to be "dodged" by sales representatives, including the Individual Resident Defendants, include questions such as, "I am concerned about the cardiovascular effects of VIOXX," and "The competition has been in my office telling me that the incidence of heart attacks is greater with VIOXX than Celebrex." Id.

39. Additional sales representative guidelines provided specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including the Individual Resident Defendants. (Exhibits "B" and "C"). Exhibit C attached hereto outlines the "Top Ten Obstacle Handlers" for sales representatives (Exhibit C). The top three "obstacles" listed on the sales guidelines are physician safety questions involving VIOXX®- related "Cardiovascular Events." (Exhibit C). Sales representatives, including the Individual Resident Defendants, were thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of VIOXX®. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about VIOXX on May 1, 2000, we provided you with an approved verbal response to use to address customers questions around the incidence rate of MI's [myocardial infarctions] on patients taking VIOXX..." (Exhibit "D": Bulletin for VIOXX: New PIRs Relative to VIOXX GI Outcomes Research Study.) Sales representatives, such as the Individual Resident Defendants, were therefore required to misrepresent that VIOXX® does not increase the rate of myocardial infarctions when compared with other NSAID's. This misrepresentation was false and inaccurate, yet was intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including Donna Harrell'

prescribing physician, by the Individual Resident Defendants. (Exhibit C, Obstacle Response 38; and Exhibit "E", page 7; "Bulletin for VIOXX").

40.    The Individual Resident Defendants utilized the misrepresentations contained in the obstacle avoidance programs to mislead Plaintiff Donna Harrell' treating physician concerning the safety of VIOXX® and the occurrence of life threatening side effects, such as myocardial infarctions and sudden cardiac deaths. The principal cause of misleading the physicians and the consuming public, including Plaintiff Donna Harrell and her prescribing physician, was to promote the sale of a dangerous and deadly drug, VIOXX® and to increase that drug's sales.

41.    Defendant Merck and the Individual Resident Defendants further misrepresented the safety of VIOXX® to prescribing physicians by providing written literature to the doctors that contained false statements about VIOXX®'s safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physicians. Exhibit "G" is the specific "In Response To Your Questions" follow-up literature that misrepresents VIOXX®'s cardiovascular safety. (Exhibit "G"; "In Response To Your Questions: Cardiovascular System").

42.    The Individual Resident Defendants were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. Exhibit "H" is an example of a form sales representative letter to a questioning physician that misrepresents that VIOXX® does not increase the risk of adverse cardiovascular events in users. (Exhibit "H".)

43.    The culture of misrepresenting the safety of VIOXX® by Merck and its sales representatives, including the Individual Resident Defendants, was so prevalent that the false and misleading "Obstacle Responses" used by the sales force were manipulated and altered in response to media scrutiny concerning the cardiovascular safety of VIOXX®. (Exhibit "I": "Action Required: Response to New York Times Article" and Exhibit "J": "Action Required" REVISED Response to New York Times Article"). The Individual Resident Defendants utilized such Obstacle Response Revisions to continually mislead prescribing physicians, including Plaintiff Donna Harrell' prescribing physician, about the safety hazards of VIOXX®.

44.    Some specific instances of conduct in which the Individual Resident Defendants participated, but which are by no means exclusive, are as follows:

a.    In response to these perceived "Obstacles" or questions from physicians as described herein, the sales representatives, including the Individual Resident Defendants, were trained to respond in a fashion to downplay or suppress the seriousness of the cardiovascular risks associated with Defendant Merck's blockbuster drug, VIOXX®. For example, Defendant Merck designed "Obstacle Responses" to be used by its sales representatives in responding to these very important inquiries. In response to an inquiry that a physician might make about the potential for VIOXX® increasing the risk of cardiovascular events, the sales representatives were taught to respond:

> "Doctor, once daily VIOXX® has no effect on platelet aggregation, and therefore would not be expected to demonstrate reductions in MI or other CV events. Agents such as low-dose aspirin are routinely prescribed for CV patients for their effect on the inhibition of platelet aggregation. Therefore, once daily VIOXX® is not a substitute for aspirin for cardiovascular prophylaxis…."

16

The training materials then direct the sales representatives to "[t]ransition back" to other benefits of the drug, no doubt as a way to avoid further questions. This response, in no way addresses the CV risks associated with VIOXX®. (See Exhibits "B" and "C".)

        b.     More compelling, if a physician inquired about the comparison of the safety profile between VIOXX® and CELEBREX®, a competing COX-2 drug, the sales representatives were taught to respond:

> "Doctor, there are no head-to-head studies comparing the cardiovascular profile of the two drugs. As a result, you cannot compare the drugs and conclude that one drug had fewer events than the other. What you may be referring to is press reports of the incidence rates in two separate studies. In the VIOXX® GI Outcomes Trial (VIGOR), the incidence of MI was 0.4% with VIOXX® and 0.1% with naproxen. Upon further analysis, four percent of patients in the VIOXX® GI Outcomes Study had experienced a cardiac event such as a heart attack or stroke before entering the study and thus met the established criteria for the use of aspirin for secondary CV prophylaxis. In the remaining 96% of patients for whom aspirin was not indicated for secondary CV prophylaxis, the incidence of MI was lower – 0.2% for VIOXX® and 0.1% for naproxen. The difference was not statistically significant.

> "…..

> "If needed, continue to address the physicians concerns with the cardiovascular effects of VIOXX® by guiding them through the Cardiovascular Card …."

The training materials went on to again encourage the sales representative to "[t]ransition back" to the benefits of the drug, while downplaying the CV risks. Most disconcerting, however, is that the information about VIGOR was totally and completely false. Instead of being a 4 to 1 ratio of heart attacks, comparing VIOXX® to naproxen, the rate in VIGOR was actually 5 to 1, a significant fact that was suppressed by Defendant Merck from physicians. Had the full truth been told to doctors, i.e., that there is a 500 times increased risk of heart attacks and strokes for patients on VIOXX® as compared to

naproxen, doctors would have been much less likely to accept the blatant misrepresentations told by Defendant Merck and by its Individual Resident Defendants that the explanation for the VIGOR results was that naproxen is cardioprotective.

       c.     The Cardiovascular Card itself, a deceptive instrument utilized by the Individual Resident Defendants to mislead physicians, was filled with omissions and inaccurate information, a fact acknowledged by the FDA in February 2001. The Cardiovascular Card was designed not to disclose the CV risks, but to address the GI benefits of the drug. For example, the Individual Resident Defendants did not inform the physicians that the aspirin-indicated patients were excluded from VIGOR as a way to skew the results of that study, for had Defendant Merck included the higher risk population in the study, it is uncontested that the cardiovascular rates in the VIOXX® arm of the VIGOR study would have been even greater than in the naproxen arm. Had physicians been told this critical information, it is reasonable to believe that physicians would not have prescribed VIOXX® to at-risk patients, such as were in the 4% aspirin-indicated group.

       d.     Moreover, sales representatives, including the Individual Resident Defendants, were instructed by Defendant Merck to avoid discussing VIGOR with physicians. Routinely, Defendant Merck would submit Bulletins to its sales force, telling them what they could and could not discuss with physicians. In one such "Bulletin for VIOXX®", the sales representatives were directed: **"DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE (ADIVSORY COMMITTEE) REVIEW OR THE RESULTS OF THE VIOXX® GI OUTCOMES RESEARCH (VIGOR) STUDY. YOU MAY RESPOND TO**

18

**CUSTOMER INQUIRIES ONLY AS OUTLINED BELOW."** The Bulletin directed the sales representatives to "Stay Focused on Efficacy," and encouraged the sales representatives to direct the physician's attentions away from the dangers of the drug and get them focused back on the drug's efficacy. (See Exhibit "E".) The sales representatives, including the Individual Resident Defendants, were active participants in providing misinformation to physicians, in suppressing the known dangers of the drug, and in encouraging physicians to sell a dangerous and deadly product, namely, VIOXX®.

45.     The underlying inducement for both Merck and its sales representatives, including the Individual Resident Defendants, to make repeated misrepresentations to physicians about the safety of VIOXX® was money. The more doctors prescribing VIOXX®, the more money Merck made. The more doctors the sales representatives, such the Individual Resident Defendants, cajoled into prescribing VIOXX®, the more money and non-monetary bonuses the sales representatives received. (Exhibits K: "Field Incentive Plan for VIOXX"; and L: "Field Incentive Plan for VIOXX."). Thus, sales representatives, such as the Individual Resident Defendants, had a financial interest in propagating and promulgating the false and misleading information (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including Plaintiff Donna Harrell' prescribing physician.

46.     The Individual Resident Defendants acted independently and in conjunction with Defendant Merck to carry out one of the largest and grandest marketing schemes in the history of the United States drug industry. The Individual Resident Defendants conspired with Defendant Merck to conceal material information about the drug VIOXX® and to deceive physicians and the consuming public about the dangers of

19

the drug VIOXX®, specifically the cardiovascular risks associated with the drug. Further, Defendant Merck organized a market and sales team unrivaled in American drug manufacturing history, spending so much on marketing and sales that its marketing budgets exceeded that of Anheuser Busch, Pepsi Cola, and other large product manufacturers in the United States. The Individual Resident Defendants' conduct was done negligently, recklessly, intentionally, with malice and in bad faith. Said Individual Resident Defendants acted for their own good and own benefit, and under Alabama law are individually and vicariously liable for the injuries and damages caused to the Plaintiff, Donna Harrell.

47.    Defendant Merck and the Individual Resident Defendants knew or should have known that these representations, and that all misrepresentations hereinabove set out, were false, and the Defendants made the representations with the intent or purpose that Plaintiff Donna Harrell, her prescriber, the medical community, and other consumers would rely on them, leading to the prescribing and use of VIOXX®.

## FACTUAL ALLEGATIONS AS TO INJURIES SUSTAINED BY DONNA HARRELL

48.    Plaintiff Donna Harrell is a 54-year-old female who was prescribed VIOXX® by Donna Fico, M.D., a physician at 1118 Rose Clark Circle, Dothan, Alabama, on August 15, 2003 as a result of lower back pain. Dr. Fico prescribed a regiment of VIOXX® 25 mg tablets once a day, every day for the foreseeable future. Thereafter, Plaintiff Harrell ingested the VIOXX® as prescribed.

49.    Prior to September 9, 2004, Plaintiff had no history of heart attacks or heart disease.

20

50.     On September 9, 2004, Plaintiff Donna Harrell had a sudden onset of chest discomfort while at home. Plaintiff Harrell was transported to Flower's Hospital, Inc., where she was treated by Chris Byard, M.D. Plaintiff Harrell informed Dr. Byard she was having chest pains. Dr. Byard requested an EKG which uncovered an irregular heart rhythm. Plaintiff Harrell was immediately admitted through the emergency room at Flower's Hospital, Inc., where she was given heart medications and stabilized. Lab tests administered at the hospital revealed elevated cardiac enzymes and confirmed Plaintiff Harrell had and continued to suffer a myocardial infarction.

51.     On September 9, 2004, Plaintiff Harrell was taken to the cardiac catheterization laboratory for urgent cardiac catheterization and percutaneous coronary intervention. Despite the care received, Plaintiff Donna Harrell has suffered permanent injury and damage, is at a heightened risk of another heart attack, and will likely suffer injury or harm in the future.

## COUNT I: NEGLIGENCE

### (As to all Defendants)

52.     Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each by reference as if fully set forth herein.

53.     Defendants, directly or indirectly, negligently manufactured, designed, tested, labeled, packaged, distributed, promoted, marketed, advertised, or sold VIOXX® (rofecoxib) in the stream of commerce, when the Defendants knew, or in the exercise of ordinary care, should have known that VIOXX® posed a significant risk to Plaintiff Donna Harrell's health and well- being, which risk was not known to Mr. Harrell or her prescriber prior to or during the time that Plaintiff Harrell ingested VIOXX®.

54.    At all times material hereto, Defendants had a duty to Plaintiff Harrell to exercise reasonable care in the design, testing, labeling, packaging, distribution, promotion, marketing, advertisement, sampling or sale of VIOXX® (rofecoxib).

55.    Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff Donna Harrell in that the Defendants:

a.    Failed to include adequate warnings with the medications that would have alerted Plaintiff Donna Harrell and other consumers to the potential risks and serious side effects of VIOXX® ingestion;

b.    Failed to include adequate information or warnings with the medication that would have alerted Plaintiff Donna Harrell' prescriber and the health care community of the drug's dangerous propensities so that they could refrain from prescribing VIOXX® without first considering safer alternative modes of treatment and/or without first providing full and detailed information of the drug's risks to their patients;

c.    Failed to adequately and properly test VIOXX® before and after placing it on the market;

d.    Failed to conduct sufficient testing on VIOXX® which, if properly performed, would have shown that VIOXX® had serious side effects, including, but not limited to the cardiovascular events described above;

e.    Failed to adequately warn plaintiff and his health care providers that use of VIOXX® carried a risk of cardiovascular events, stroke and death, and other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after the Defendants knew or should have known the significant risks of person injury and death as identified herein among other serious side effects from the use of VIOXX®;

g.     Failed to adequately warn plaintiff that VIOXX®
should not be used in conjunction with any risk
factors for these adverse effects such as a family
history of ischemic heart disease or risk factors for
ischemic cardiovascular disease;

h.     Failed to adequately disclose and warn Plaintiff
Donna Harrell that she undertook the risk of adverse
events and death, including a serious and potentially
deadly myocardial infarction, as described herein;

i.      Failed to adequately and timely inform the health
care industry of the risks or serious personal injury
and death from VIOXX® ingestion as described
herein.

56.   Defendants knew or should have known that VIOXX® caused or created

unreasonably dangerous risks and serious side effects, including death, of which Plaintiff

Donna Harrell would not have reasonably been aware.   Defendants nevertheless

advertised, marketed, sold and distributed the drug knowing that there were safer

methods and products and knowing of the dangerous propensities of its drug, VIOXX®.

57.   As a direct and proximate result of the negligence and breach of

Defendants, Plaintiff Donna Harrell sustained the following injuries and damages:

a.     Serious personal injuries, including but not limited
to myocardial infarction and extreme pain and
suffering;

b.     Plaintiff suffered economic loss, including loss of
earnings and loss of earning capacity; and

c.     Plaintiff expended, and will in the future be
required to expend, fair and reasonable expenses for
necessary health care, attention and services and
incurred incidental and related expenses.

Defendants owed a duty to Plaintiff Donna Harrell to use reasonable care in their actions.

Defendants' failure to use reasonable care proximately caused Plaintiff's injuries.

58.  As a direct and proximate result of the negligence and breach of Defendants, Plaintiff Donna Harrell has been damaged, including, without limitation, those damages alleged with more particularity herein.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT II: NEGLIGENCE PER SE

### (Only as to Defendant Merck)

59.  Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each by reference as if fully set forth herein.

60.  Defendant was negligent *per se* because it violated applicable statutes and regulations relating to prescription drugs.  Plaintiff Donna Harrell is a person whom these statutes and regulations were meant to protect.

61.  Further, Merck was negligent *per se* in violating state law, including the Alabama Extended Manufacturer's Liability Doctrine and related products liability law.

62.  Defendant's negligence was the proximate cause of the harm suffered by Plaintiff Donna Harrell.

63.  As a direct and proximate result of Defendant Merck's *per se* negligence:

   a.  Plaintiff suffered personal injuries, specifically a myocardial infarction and extreme pain and suffering;

   b.  Plaintiff suffered economic loss, including loss of earnings and loss of earning capacity; and

   c.  Plaintiff expended, and will in the future be required to expend, fair and reasonable expenses for

necessary health care, attention and services and
incurred incidental and related expenses.

64.    As a direct and proximate result of the negligence and breach of
defendants, plaintiff has been damaged, including, without limitation, those damages
alleged with more particularity herein.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against
Defendant Merck in the form of compensatory damages as a jury deems reasonable and
just, plus the costs and expenses of these proceedings.

## COUNT III:  GROSS NEGLIGENCE, WANTONESS, AND/OR WILLFULLNESS

### (Only as to Defendant Merck)

65.    Plaintiff alleges each and every preceding paragraph of this Complaint and
incorporates each by reference as if fully set forth herein.

66.    Plaintiff also alleges that Defendant Merck engaged in wanton or willful
conduct with conscious or reckless disregard for the rights and safety of Plaintiff Donna
Harrell, Merck's conduct entitles Plaintiff to punitive damages.  Merck acted with fraud,
and/or malice, and/or willful or wanton conduct.  In that regard, Plaintiff Donna Harrell
seeks exemplary damages in an amount which would punish Merck for its conduct and
which would deter other pharmaceutical manufacturers from engaging in such
misconduct in the future.

67.    As a direct and proximate result of the gross negligence of Defendant
Merck, Plaintiff Donna Harrell has been damaged, including, without limitation, those
damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory and punitive damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT IV: VIOLATION OF ALABAMA PRODUCTS
## LIABILITY ACT FAILURE TO WARN

### (Only as to Defendant Merck)

68.   Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each by reference as if fully set forth herein.

69.   Defendant Merck manufactured, marketed, distributed, and/or placed into the stream of commerce the drugs described herein. Plaintiff Donna Harrell would show that the drug VIOXX® was defectively designed, marketed, manufactured and was unsafe for its intended purposes at the time such drug left the control of Merck and was sold to Plaintiff Donna Harrell. The drug VIOXX® was unaccompanied by proper warnings regarding the classes of potential consumers with *pre-existing* health problems who were at risk for serious injury if they consumed the drug VIOXX®. Defendant Merck failed to perform adequate testing, and/or timely adequate testing, in that adequate testing would have shown that VIOXX® possessed risks of serious injuries with respect to which full and proper warnings accurately and fully reflecting the symptoms, scope and severity should have been made with respect to the use of this drug.

70.   Defendant Merck knew, or should have known, that VIOXX® was a dangerously defective drug which posed unacceptable risks of serious injury unknowable by Plaintiff Donna Harrell and her prescribing physician.

26

71.    VIOXX® was defective due to inadequate warnings or instructions because, after Defendant Merck knew or should have known of the risks of serious injury from VIOXX® use, it failed to provide adequate warnings to Plaintiff Donna Harrell and/or her physician and continued to aggressively promote the dangerously defective product. Defendant Merck failed to give adequate warnings (1) that could reasonably be expected to catch the attention of a reasonably prudent person, in the circumstances that the product was used; (2) that were comprehensible to the average user; and (3) that conveyed a fair indication of the nature and extent of the danger. The failure to give these warnings rendered VIOXX® dangerous to an extent beyond that which would be contemplated by the ordinary users of the product with ordinary knowledge common to the community.

72.    The drug VIOXX® was defective in design or formulation in that, when it left the hands of the manufacturer and/or distributor, the foreseeable risks exceeded the benefits associated with the design or formulation. Alternatively, the drug VIOXX® was defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect, and was more dangerous than other drugs of the same class as VIOXX®.

73.    Defendant Merck acted unreasonably in failing to provide adequate warning or instructions to Plaintiff Donna Harrell and other users of VIOXX®. At the time VIOXX® left the control of Defendant Merck, the absence of adequate warnings or instructions created an unreasonably dangerous condition that Merck knew, or in the

exercise of ordinary care should have known, posed a substantial risk of harm to Plaintiff Donna Harrell, who was a user of VIOXX®.

74.   Further, at the time VIOXX® left the control of Defendant Merck, the design or formulation of VIOXX® was so unreasonable that a reasonable person, including a user or consumer, aware of relevant risks or facts of using VIOXX®, would not use or consume an anti-inflammatory analgesic of this design.

75.   Defendant Merck acted negligently and/or intentionally in failing to warn prescribing physicians and the consuming public, including the Plaintiff Donna Harrell, as more specifically set forth here.

76.   As the direct and proximate result of Defendant Merck's failure to warn Plaintiff Donna Harrell of the defective condition and hazards that could result from the use of VIOXX®:

    a.   Plaintiff suffered serious personal injuries, including a myocardial infarction and pain and suffering;

    b.   Plaintiff suffered economic loss; and

    c.   Plaintiff expended, and may in the future be required to expend, fair and reasonable expense for necessary health care, attention and services, and incurred additional incidental expenses.

77.   As a direct and proximate result of the negligence and breaches of Defendant Merck, Plaintiff Donna Harrell has been damaged, including, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory and punitive damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT V: VIOLATIONS OF ALABAMA PRODUCTS LIABILITY

## ACT INADEQUATE DESIGN OR FORMULATION

### (Only as to Defendant Merck)

78.    Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each reference as if set forth fully herein.

79.    Plaintiff Donna Harrell ingested VIOXX®, a medication that was either manufactured, distributed, sold, prescribed and/or otherwise put into the stream of commerce by Defendant Merck.  The defective condition of VIOXX® rendered it unreasonably dangerous, and that said VIOXX® was in this defective condition at the time it left the hands of Merck.

80.    Defendant Merck engaged in the manufacture, distribution, sale and/or prescription of pharmaceutical medications.  VIOXX®, without substantial change in the condition in which it was sold, was a proximate cause of plaintiff's injuries.

81.    Plaintiff Donna Harrell was unaware of the significant hazards and defects in the VIOXX® medication.  If Plaintiff Harrell had been aware of the significant hazards and defects in the VIOXX® medication, he would not have purchased or consumed VIOXX®.  Therefore, the VIOXX® medication was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user.  During the periods that Plaintiff Harrell was taking VIOXX®, the medication was being utilized in a manner which was intended by Merck.

82.    VIOXX® was defectively designed because the foreseeable risks exceeded the benefits associated with the design or formulation.

83.    VIOXX® was defectively designed because Defendant Merck unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation which would have prevented or subsequently reduced the risks to consumers, such as Plaintiff Donna Harrell, from experiencing a heart attack after ingestion of the drug.

84.    Defendant Merck acted unreasonable in the following ways:

a.    Merck conducted inadequate clinical trials, testing, study, and inadequate reporting regarding the results of same;

b.    Merck designed, manufactured and/or placed into the stream of commerce the product, which reached Plaintiff Donna Harrell in the same or substantially the same condition in which it was sold. Upon purchase by Plaintiff Harrell, the product in question was represented to be safe and free from latent defects;

c.    Merck designed, manufactured, and placed into the stream of commerce the product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Merck because of the design defects which were a producing cause of the occurrence in question;

d.    The product in question was defectively marketed by Merck with respect to its failure to warn, adequately warn, or instruct in the safe use of the product and such defect was a producing cause of the occurrence in question;

e.    Merck knew, or in the exercise of ordinary care should have known, that the product was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used. Defendant was negligent in the particulars set forth in this and the preceding paragraphs and such negligence was a proximate cause of the occurrence in question.

85.     Defendant Merck owed Plaintiff Donna Harrell the duty of reasonable care when it tested, designed, manufactured, and marketed the product in question.  Merck violated its duty and was negligent in the particulars set forth herein.

86.     As a direct and proximate result of Defendant Merck's failure to warn Plaintiff Donna Harrell of the defective condition and hazards that could result from the use of VIOXX®:

> a.     Plaintiff suffered serious personal injuries, a myocardial infarction and extreme pain and suffering;
>
> b.     Plaintiff suffered economic loss; and
>
> c.     Plaintiff expended, and may in the future be required to expend, fair and reasonable expense for necessary health care, attention and services, and incurred incidental expenses.

87.     As a direct and proximate result of negligence and breach of Defendant Merck, Plaintiff Donna Harrell has been damaged, including, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory and punitive damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT VI: BREACH OF IMPLIED WARRANTY

### (As to all Defendants)

88.     Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each by reference as if set forth fully herein.

89.     When Defendant Merck placed VIOXX® into the stream of commerce, it knew of the use for which it was intended and expressly and impliedly warranted to

Plaintiff Donna Harrell that use of VIOXX® was a safe and acceptable means of treatment.

90.     Plaintiff Donna Harrell reasonably relied upon the expertise, skill, judgment and knowledge of Defendant Merck and its sales representatives, and upon the express and/or implied warranty that VIOXX® was of merchantable quality and fit for use as intended.

91.     VIOXX® was not of merchantable quality and was not safe or fit for its intended use because it was and continues to be unreasonably dangerous and unfit for ordinary purposes for which it is used in that it caused injury to Plaintiff Donna Harrell. Merck breached its warranty because VIOXX® was unduly dangerous in expected use and did cause undue injury to consumers such as Plaintiff Donna Harrell.

92.     Merck breached the implied warranty of merchantability because VIOXX® cannot pass without objection in the trade, is unsafe, not merchantable, and unfit for its ordinary use when sold, and is not adequately packaged and labeled.

93.     As a direct and proximate result of the Defendants' breach of warranty of merchantability, Plaintiff Donna Harrell sustained serious and permanent bodily injuries and has been, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT VII:  BREACH OF EXPRESS WARRANTY

### (As to all Defendants)

94.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as if set forth fully herein.

95.    Defendant Merck expressly warranted to the market and to the consuming public, including Plaintiff Donna Harrell, by and through statements made by Merck or its authorized agents or sales representatives, orally and in publications, package inserts, and other written materials to the health care community, that VIOXX® was safe, effective, fit and proper for its intended use.

96.    In using VIOXX®, Plaintiff Donna Harrell relied on the skill, judgment, representations, and foregoing express warranties of Merck and its sales representatives. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended and warranted.

97.    As a direct and proximate result of the Defendants' breach of express warranty, Plaintiff Donna Harrell was injured and has been damaged, including, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT VIII:  FRAUD AND MISREPRESENTATION

### (As to all Defendants)

98.    Plaintiff restates each and every preceding allegation of this Complaint and incorporates each by reference as if set forth fully herein.

99.    Defendant Merck, by and through its sales practices, its false and misleading publications, and its marketing efforts, and/or in concert with its sales representatives who detailed the prescriber in this cause, including the Individual Resident Defendants, misrepresented to Plaintiff Donna Harrell and the health care industry the safety and effectiveness of VIOXX® and/or fraudulently or intentionally concealed material information, including adverse information regarding the safety and effectiveness of VIOXX®.

100.    As discussed herein, Defendant Merck, on its own and/or in concert with its sales staff, including the Individual Resident Defendants, made misrepresentations and actively concealed adverse information at a time when Defendant Merck and its sales staff knew, or reasonably should have known, that VIOXX® had defects, dangers, and characteristics that were other than what Merck and its sales staff had represented to Plaintiff Donna Harrell, to her prescriber, and to the health care industry generally. Specifically, Defendant Merck and the Individual Resident Defendants, one or more, misrepresented to and/or actively concealed from Plaintiff Donna Harrell, her prescriber, and the health care industry and consuming public that:

    a.    VIOXX® had statistically significant increases in cardiovascular side effects, including, without limitation, thrombosis, myocardial infarction and sudden onset death, which could result in serious injury or death;

    b.    There had been insufficient and/or company-spun studies regarding the safety and efficacy of VIOXX® before and after its product launch;

    c.    VIOXX® was not fully and adequately tested for the cardiovascular side effects at issue herein;

d.   Other testing and studies showed the risk of or actual serious adverse risks; and/or that

e.   There was a greatly increased risk of such cardiovascular events and death; there was a confirmed mechanism by which these thrombotic or cardiovascular events occurred as reported in scientific literature.

101.   The misrepresentations of and/or active concealment alleged were perpetuated directly and/or indirectly by Defendant Merck, individually and in concert with its sales staff, including the Individual Resident Defendants.

102.   Defendant Merck and the Individual Resident Defendants knew or should have known that these representations were false, and the Defendants made the representations with the intent or purpose that Plaintiff Donna Harrell, her prescriber, the medical community, and other consumers would rely on them, leading to the prescribing and use of VIOXX®.

103.   At the time of Defendant Merck's fraudulent misrepresentations, made independently and/or in concert with the Individual Resident Defendants, Plaintiff Donna Harrell was unaware of the falsity of the statements being made and believed them to be true.   Plaintiff Donna Harrell had no knowledge of the information concealed and/or suppressed by Defendants.

104.   Plaintiff Donna Harrell reasonably and justifiably relied on and/or was induced by the misrepresentations and/or active concealment and relied on the absence of safety information which Defendants did suppress, conceal or failed to disclose to Plaintiff Donna Harrell' detriment.

105. In addition, Defendants had a post-sale duty to warn Plaintiff Donna Harrell and the public about the potential risks and complications associated with VIOXX® in a timely manner. The Defendants breached their duty in this respect.

106. The misrepresentations and/or active fraudulent concealment by Defendants constitute continuing torts against Plaintiff Donna Harrell, who ingested VIOXX® and was injured thereby. Defendants made the misrepresentations and actively concealed information about the defects and dangers of VIOXX® with the intention and specific desire that Plaintiff Harrell, her health care professionals, and the consuming public would rely on such or the absence of such information in selecting VIOXX® as treatment.

107. Defendants' conduct in misrepresenting and actively concealing information about the defect and dangers of VIOXX® was willful, reckless, intentional and maliciously fraudulent.

108. As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiff Donna Harrell suffered significant and ongoing injury and damages and it entitled to an award of exemplary damages in order to punish such conduct and to deter such conduct in the future.

109. As a direct and proximate result of the fraud and misrepresentation of Defendants, Plaintiff Donna Harrell has been, including, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of punitive and compensatory damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT IX:  VIOLATION OF ALABAMA UNFAIR AND

## DECEPTIVE TRADE PRACTICES ACT

### (Only as to Defendant Merck)

110.    Plaintiff realleges each and every preceding paragraph of this Complaint and incorporates each by reference as if set forth fully herein.

111.    In violation of the Alabama Unfair and Deceptive Trade Practices Act, Defendant Merck explicitly and impliedly represented that VIOXX® therapy was a safe and effective anti-inflammatory analgesic.  Merck engaged in direct-to-consumer advertising promoting the drug as a safe and effective pain reliever superior to other COX-2 inhibitors on the market; and willfully withheld the risks of cardiovascular events and death, which risks were known to Merck at time of launch and post-launch trials. This willful misleading conduct deceived physicians and consumers like Plaintiff Donna Harrell.  Merck's actions as described above had the capacity or tendency to deceive.  In addition, Merck's actions were in or affecting commerce.

112.    Merck failed to provide adequate warnings of the drug's dangerous propensities to prescribing physicians and to the consuming public, including Plaintiff Donna Harrell, and by and through its conduct, as expressed in more detail herein, intended to, and in fact did, deceive consumers and prescribing physicians into believing that the drug was safe and effective for a patient like Plaintiff Donna Harrell and for others.

113.    Merck's conduct, as alleged herein, constitutes a violation of the Alabama Unfair and Deceptive Trade Practices Act, by inducing Plaintiff Donna Harrell to purchase and use VIOXX® through the use of false and/or misleading advertising,

representation and statements and, thus, entitles Plaintiff to an award of treble damages, attorney fees and reasonable costs.

114.    As a direct and proximate result of Defendant Merck's unfair and deceptive trade practices, Plaintiff Donna Harrell has been damaged, without limitation, those damages alleged with more particularity above.

**WHEREFORE,** Plaintiff Donna Harrell demands a money judgment against Defendant Merck in the form of compensatory and punitive damages as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## COUNT X: LOSS OF SUPPORT, CONSORTIUM AND SERVICES
## OF PLAINTIFF MACK HARRELL

115.    Plaintiff realleges and restate those paragraphs above as if set forth fully herein.

116.    Alabama law recognizes a spouse's claim for loss of consortium where, due to injury or death, a spouse has been deprived of the services of the other spouse. Loss of consortium encompasses two basic elements of the marital relationship: loss of support and loss of society, which includes companionship.

117.    Donna Harrell and Mack Harrell were legally married on December, 29, 1973 which predated Donna Harrell's VIOXX®-related injuries.

118.    Due to the injuries of Donna Harrell and because of the wrongful conduct of Defendant Merck, as more specifically described herein, Plaintiff Mack Harrell has suffered and will continue to suffer the loss of services and consortium of his wife Donna Harrell.

119.    Defendant Merck's conduct rose to the level of conscious, wanton, reckless, and intentional disregard for the rights and safety of others, including Donna Harrell and Mack Harrell.

**WHEREFORE,** Plaintiff Donna Harrell and Mack Harrell pray this Court for the following relief:

A. That the Court enter a judgment in favor of Plaintiff Donna Harrell against Defendants, jointly and severally, for damages to compensate Plaintiff Donna Harrell for injuries sustained or to be sustained as a result of VIOXX® use, past and future loss of income, and past and future medical expenses as proven at trial;

B. That the Court enter a judgment in favor of Plaintiff Donna Harrell against Defendants, jointly and severally, for damages to compensate Plaintiff Donna Harrell for physical pain and suffering endured by Plaintiff;

C. That the Court enter a judgment in favor of the Plaintiff Donna Harrell against Defendants, jointly and severally, for damages to compensate Plaintiff Donna Harrell for mental anguish and emotional distress suffered by Plaintiff;

D. That the Court enter a judgment in favor of Plaintiff Donna Harrell against Defendants. jointly and severally, for punitive damages;

E. That, in the alternative, Plaintiff Donna Harrell's actual damages be trebled pursuant to the Alabama Deceptive Trade Practices Act;

F. That the Court enter a judgment in favor of Plaintiff Mack Harrell against Defendants, jointly and severally, for damages to compensate Plaintiff Mack Harrell for damages incurred by him for the loss of services, consortium, and affection;

G. That the Court award prejudgment and post-judgment interest on Plaintiff's damages;

H. That the costs of this action, including Plaintiffs' attorneys' fees be taxed against the Defendants;

I.   That all issues of fact be tried by jury; and

J.   That the Court award such other relief that the Court deems just and proper.

Respectfully submitted this _15th_ day of August, 2006.

ANDY D. BIRCHFIELD, JR. (BIR006)
J. PAUL SIZEMORE (SIZ004)
BENJAMIN L. LOCKLER (LOC009)
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343
(334) 223-1236 - Fax

## JURY DEMAND

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES**

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V - 2006 502 H - <br>Date of Filing:  08  15  2006  Judge Code:<br>Month    Day    Year |
|---|---|---|

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ HOUSTON COUNTY _____, ALABAMA
*(Name of County)*

DONNA HARRELL AND MACK HARRELL    v.    MERCK & CO., INC., et. al.

| **Plaintiff** | | **Defendant** | |
|---|---|---|---|
| **First Plaintiff** ☐ Business  ☑ Individual<br>☐ Government  ☐ Other | | **First Defendant** ☑ Business  ☐ Individual<br>☐ Government  ☐ Other | |

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other:

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** *(check one):*    F ☑ INITIAL FILING    A ☐ APPEAL FROM<br>DISTRICT COURT    O ☐ OTHER:<br>R ☐ REMANDED    T ☐ TRANSFERRED FROM<br>OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**    ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**    ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
L O C 0 0 9    August 15, 2006
Date    Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**    ☐ YES  ☑ NO  ☐ UNDECIDED

# Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.

| | | | | |
|---|---|---|---|---|
| JERE LOCKE BEASLEY | J. MARK ENGLEHART ᵀᴱ | *Attorneys at Law* | ALYCE S. ROBERTSON | ᴬ² ALSO ADMITTED IN ARIZONA |
| J. GREG ALLEN | CLINTON C. CARTER ᴬᴿ ᴺʸ ᴹˢ ᴵⁿ ᵀˣ | 218 COMMERCE STREET | MELISSA A. PRICKETT | ᴬᴿ ALSO ADMITTED IN ARKANSAS |
| MICHAEL J. CROW | BENJAMIN E. BAKER, JR. ᴳᴬ ᴺʸ ᴼᴴ ᵀᴺ ᴰᶜ | POST OFFICE BOX 4160 | JOHN E. TOMLINSON | ᶠᴸ ALSO ADMITTED IN FLORIDA |
| THOMAS J. METHVIN | DAVID B. BYRNE, III | MONTGOMERY, ALABAMA | NAVAN WARD, JR. ᴹˢ | ᴳᴬ ALSO ADMITTED IN GEORGIA |
| J. COLE PORTIS | TED G. MEADOWS ᴺʸ ᴹˢ ᵀᴺ ᴰᶜ ᵂⱽ | 36103-4160 | WESLEY CHADWICK COOK | ᴷʸ ALSO ADMITTED IN KENTUCKY |
| W. DANIEL MILES, III | GERALD B. TAYLOR, JR. ᶠᴸ ᴹˢ ᵀᴺ ᵀˣ | (334) 269-2343 | WILLIAM H. ROBERTSON, V | ᴸᴬ ALSO ADMITTED IN LOUISIANA |
| R. GRAHAM ESDALE, JR. | FRANK WOODSON | | | ᴹᴺ ALSO ADMITTED IN MINNESOTA |
| JULIA ANNE BEASLEY | J. PAUL SIZEMORE ᶜᴬ ᴰᶜ | TOLL FREE | | ᴹˢ ALSO ADMITTED IN MISSISSIPPI |
| RHON E. JONES | KENDALL C. DUNSON ᴳᴬ | (800) 898-2034 | | ᴹᴼ ALSO ADMITTED IN MISSOURI |
| LABARRON N. BOONE | SCARLETTE M. TULEY | | | ᴺʸ ALSO ADMITTED IN NEW YORK |
| ANDY D. BIRCHFIELD, JR. | CHRISTOPHER E. SANSPREE ᴹˢ | TELECOPIER | | ᴼᴴ ALSO ADMITTED IN OHIO |
| RICHARD D. MORRISON ᴹˢ | ROMAN ASHLEY SHAUL ᴬᴿ ᴸᴬ ᴹˢ ᴬᶻ ᵀᴺ ᵂᵀ | (334) 954-7555 | | ᴼᴷ ALSO ADMITTED IN OKLAHOMA |
| C. GIBSON VANCE | W. ROGER SMITH, III ᴬᶻ ᴹˢ ᴹᴼ ᵀᴺ ᵂᵀ | | | ˢᶜ ALSO ADMITTED IN SOUTH CAROLINA |
| J. P. SAWYER ᴹˢ ᴼᴴ | P. LEIGH O'DELL | | | ᵀᴺ ALSO ADMITTED IN TENNESSEE |
| C. LANCE GOULD | D. MICHAEL ANDREWS | BEASLEYALLEN.COM | | ᵀˣ ALSO ADMITTED IN TEXAS |
| JOSEPH H. AUGHTMAN | BENJAMIN L. LOCKLAR | | | ᴰᶜ ALSO ADMITTED IN WASHINGTON, D.C. |
| DANA G. TAUNTON | LARRY A. GOLSTON, JR. ᶠᴸ ᴰᶜ | August 15, 2006 | | ᵂⱽ ALSO ADMITTED IN WEST VIRGINIA |

JAMES W. TRAEGER
1953†1987

RONALD AUSTIN CANTY
1963-2004

**FILED**

## VIA FEDERAL EXPRESS

AUG 17 2006

Ms. Judy Byrd
**HOUSTON CIRCUIT COURT CLERK**
Post Office Box 6406
Dothan, Alabama 36302

*Judy Byrd*
**JUDY BYRD, CLERK**
**HOUSTON CO., AL**

      **Re:**    **Donna Harrell and Mack Harrell v. Merck & Co., Inc. – Vioxx**
                 **Reference No. 200400261204**

Dear Ms. Byrd:

      Enclosed please find check #170677 in the amount of $271.00 for filing fees, prepaid certified service packages for each of the seven (7) defendants, an original complaint, a copy of the complaint and a self-addressed stamped envelope. Please date stamp the complaint copy and return to me in the self-addressed stamped envelope.

      Thank you for your attention to this matter. Should you have any questions or need additional information, please do not hesitate to contact me.

                Sincerely,

                **BEASLEY, ALLEN, CROW, METHVIN,**
                **PORTIS & MILES, P.C.**

                *Angie M. Faust*

                Angie M. Faust
                Legal Secretary to Benjamin L. Locklar

/amf

Enclosures

# IN THE CIRCUIT COURT OF
# HOUSTON COUNTY, ALABAMA

| | |
|---|---|
| **DONNA HARRELL and MACK HARRELL,** * | |
| * | |
| **PLAINTIFFS,** * | |
| * | |
| **v.** * | **CASE NO. : CV-06-502-H** |
| * | |
| **MERCK & CO., INC., a foreign Corporation;** * | |
| **ANNE BRANDON Individual; MARK M.** * | |
| **SANDERS, an Individual; TONYA M.** * | |
| **LOCKLIN, an Individual; JOE D. READ, an** * | |
| **Individual; THEODORE R. BOWSER, II, an** * | |
| **Individual; ERIC RALPH PAYNE, an** * | |
| **Individual; and fictitious defendants A, B,** * | |
| **C & D, being those persons, firms or** * | |
| **corporations whose fraud, scheme to** * | |
| **defraud, and/or other wrongful conduct** * | |
| **caused or contributed to the Plaintiff's** * | |
| **injuries and damages, and whose true** * | |
| **names and identities are presently** * | |
| **unknown To Plaintiff, but will be** * | |
| **substituted by Amendment when** * | |
| **ascertained.** * | |
| * | |
| * | |
| **DEFENDANTS.** * | |

## NOTICE OF FILING NOTICE OF REMOVAL

TO:    Circuit Clerk of Houston County
P.O. Box 6406
Dothan, AL  36302-6406

PLEASE TAKE NOTICE that Merck & Co., Inc. has this date filed its

Notice of Removal in the Office of the Clerk of the United States District Court for

the Middle District of Alabama, Southern Division, a copy of which is attached

hereto as **Exhibit A**.

Respectfully submitted this the 22nd day of September, 2006.

_____
Alan T. Hargrove, Jr.
One of the Attorneys for Defendant,
Merck & Co., Inc.



EXHIBIT
B

OF COUNSEL:
Robert C. "Mike" Brock
F. Chadwick Morriss
Alan T. Hargrove, Jr.
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone:  (334) 206-3100
Facsimile: (334) 262-6277


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon:

Andy D. Birchfield, Jr., Esquire
J. Paul Sizemore, Esquire
Benjamin L. Lockler, Esq.
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P. C.
Montgomery, Alabama 36103-4160

by placing a copy of same in the United States mail, postage prepaid, this the
22nd day of September, 2006.

**OF COUNSEL**

JURY AWARDS IN AEMLD CASES

$950,000 — Castleberry v. Cantrell Mach. Co., 2004 WL 3201180 (Ala. Cir. Ct., Blount County, Sept. 2, 2004) (products liability action by a woman whose hand was injured by a chicken heart and liver harvesting machine)

$50,000,000 (Original Verdict) — Mack Trucks, Inc. v. Witherspoon, 867 So. 2d 307 (Ala. 2003) (products liability case arising out of a tractor-trailer rollover)

$12,000,000 ($6,000,000 Compensatory, $6,000,000 Punitive) — Morgan v. ProTech Industries, 2003 WL 23111870 (Ala. Cir. Ct., Lamar County, Aug. 29, 2003) (wrongful death case based on products liability claim against truck manufacturer arising out of rollover and absence of cab guard on logging truck)

$7,000,000 — Daniel v. Snap Products, 2003 WL 23111815 (Ala. Cir. Ct., Baldwin County, May 28, 2003) (wrongful death case based on products liability claim against manufacture of tire repair product after treated tire exploded)

$4,168,500 ($1,068,500 Compensatory, $3,100,000 Punitive) — McClain, et al. v. Metabolife Int'l., Inc., 259 F. Supp. 2d 1225 (N.D, Ala. 2002) (products liability action by four plaintiffs who suffered cardiac symptoms after using ephedra-based diet drug) (reversed on appeal, 401 F.3d 1233 (11th Cir. 2005), and remanded for a new trial)

$960,000 ($25,000 over and above $935,000 in pro tanto settlements) — Hannah v. Gregg Bland & Berry, 2002 WL 32169253 (Ala. Cir. Ct., Colbert County, Oct. 25, 2002) (wrongful death case arising out of fatal crush injury in industrial belt equipment)

$122,000,000 ($22,000,000 Compensatory, $100,000,000 Punitive) — Jernigan v. General Motors Corp., Bullock County (May 3, 2002) (products liability case arising out of collapse of Oldsmobile passenger compartment) (reversed on appeal, 883 So.2d 646 (Ala. 2003), and remanded for new trial)

$510,000 (Compensatory) $10,000,000 (Punitive) — Hobart Corporation v. Scottie W. Scoggins, 776 So.2d 56 (Ala. 2000) (products liability action by a man who was injured while using a meat saw manufactured by Hobart)

$3,000,000 ($2,500,000 Compensatory $500,000 Punitive) — Cessna Aircraft Company v. Robert Trzzinski, 682 So. 2d 17 (Ala. 1996) (products liability action by a man who was injured in an airplane crash due to a defective shoulder harness)

$1,000,000 (Original verdict $825,000) — Uniroyal Goodrich Tire Company v. Jackie Darryl Hall, 681 So. 2d 126 (Ala. 1996) (products liability action by a man who was injured when wheel rim exploded)

$1,225,000 — Ford Motor Company v. June Burdeshaw, 661 So. 2d 236 (Ala. 1995) (wrongful death case brought against truck manufacturer after decedent was killed by a truck's transmission slipping out of neutral and crushing him)

1/1328612.1                    1

EXHIBIT
C

| | |
|---|---|
| $13,000,000 | <u>General Motors Corporation v. Pamela L. Saint</u>, 646 So. 2d 564 (Ala. 1994) (products liability action by a woman who was injured due to a defective seat belt) |
| $250,000<br>($100,000<br>Compensatory,<br>$150,000 Punitive) | <u>Flagstar Enterprises, Inc. v. Maureen Davis</u>, 709 So. 2d 1132 (Ala. 1998) (products liability action by a woman who found human blood in styrofoam package containing biscuit gravy) |
| $250,000 | <u>Caterpillar, Inc. v. Hightower</u>, 605 So. 2d 1193 (Ala. 1992) (product liability action brought by a man who was injured by a broken tree trunk while handling machinery during logging operation) |
| $115,000 | <u>Banner Welders, Inc. v. Knighton</u>, 425 So. 2d 441 (Ala. 1982) (product liability claim against manufacture for personal injuries received on shuttle welder) |
| $6,500,000 | <u>Sears, Roebuck & Co. v. Harris</u>, 630 So. 2d 1018 (Ala. 1993) (wrongful death case based on product liability claims against manufacturer and retailer of gas water heater that caused carbon monoxide poisoning) |
| $7,500,000 | <u>General Motors Corp. v. Johnson</u>, 592 So. 2d 1054 (Ala. 1992) (wrongful death case based on product liability claim where child was killed in automobile accident) |
| $5,000,000 | <u>Industrial Chem. & Fiberglass Corp. v. Chandler</u>, 547 So. 2d 812 (Ala. 1989) (widows of two workers killed in industrial accident brought wrongful death action against distributor of cleaning substances that ignited and caused death of workers) |
| $2,800,000 | <u>General Motors Corp. v. Edwards</u>, 428 So. 2d 1176 (Ala. 1985) (wrongful death case based on products liability claim where two boys were killed in automobile accident) |
| $200,000 | <u>Interstate Engineering, Inc. v. Burnett</u>, 474 So. 2d 624 (Ala. 1985) (wrongful death case brought against manufacturer of heat detectors after decedent was killed in a fire) |
| $800,000 | <u>Piper Aircraft Corp. v. Evans</u>, 424 So. 2d 586 (Ala. 1982) (damages in wrongful death case based on product liability claims against airplane manufacturer where decedent was killed in plane crash) |
| $500,000 | <u>Caterpillar Tractor Co. v. Ford</u>, 406 So. 2d 854 (Ala. 1981) (wrongful death case based on product liability claims where decedent was killed in an accident on a tractor manufactured by defendant) |



# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAYCOL PRODUCTS LITIGATION          MDL No. 1431
                                           (MJD)

This Document also relates to:

| | |
|---|---|
| Annie Andrews et al. v. Bayer Corp. et al., | Case No. 03-4932 |
| Maney Anglin et al. v. Bayer Corp. et al., | Case No. 03-4942 |
| Judy Baldwin et al. v. Bayer Corp. et al., | Case No. 03-4930 |
| Dorothy Bennett et al. v. Bayer Corp. et al., | Case No. 03-4938 |
| Alice Dowling et al. v. Bayer Corp. et al., | Case No. 03-4931 |
| Mary Ellis et al. v. Bayer Corp. et al., | Case No. 03-4933 |
| Sis Grubbs et al. v. Bayer Corp. et al., | Case No. 03-4934 |
| George Jenkins et al. v. Bayer Corp. et al., | Case No. 03-4943 |
| Mary Richardson et al. v. Bayer Corp. et al., | Case No. 03-4935 |
| Charles Rogers et al. v. Bayer Corp. et al., | Case No. 03-4936 |
| Clarence Wheeler et al. v. Bayer Corp. et al., | Case No. 03-4941 |
| Albert Williams et al. v. Bayer Corp. et al., | Case No. 03-4937 |
| Willie Womack et al. v. Bayer Corp. et al., | Case No. 03-4939 |
| Jeffrey Woods et al. v. Bayer Corp. et al., | Case No. 03-4940 |

Andy D. Birchfield, Jr., E. Frank Woodson, and Melissa A. Prickett, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer Corporation

Scott A. Smith and Tracy J. Van Steenburgh for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

---

This matter is before the Court upon Plaintiffs' motions for remand.  Bayer

Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a

1



**EXHIBIT**

D



GlaxoSmithKline ("GSK") oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

Background

The above-referenced cases were originally filed in Alabama state court and involve a number of plaintiffs that are citizens of Alabama. Plaintiffs each allege that they were prescribed Baycol and that as a direct and proximate result of taking Baycol, each Plaintiff was caused to suffer physical injury [1] In their Complaints, the Plaintiffs assert the following claims against Bayer A.G., Bayer Corporation, GSK, as well as against Monica Reid and Jerry Totty, district managers for GSK and Todd Trawick and Donald Heller, sales representatives for GSK: the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breach of warranty, and; fraud/suppression.

Bayer and GSK removed the above actions to federal court on the basis that the non-diverse defendants, the individual district managers and sales representatives, were fraudulently joined. Plaintiffs now seek remand, arguing that they have stated a claim against these individual defendants.

Standard

Remand to state court is proper if the district court lacks subject matter

---

[1] With the exception of those paragraphs describing the claims of the individual plaintiffs, the allegations against the defendants in all of the above referenced complaints are identical. For ease of reference, the Court will refer only to the Baldwin Complaint.

jurisdiction over the asserted claims. 28 U.S.C. § 1447(c). In reviewing a motion to remand, the court must resolve all doubts in favor of remand to state court, and the party opposing remand has the burden of establishing federal jurisdiction by a preponderance of the evidence. In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1983) (citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F 2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S. 1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction. Filla v. Norfolk Southern Railway Company, 336 F.3d 806, 809 (8th Cir. 2003). "Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001). The burden is on the removing party to show that a non-diverse party has been fraudulently joined. Id. at 871. In deciding this issue, the Court may consider the pleadings and supporting affidavits. Parnas v. General Motors Corporation, 879 F. Supp 91, 92 (E.D. Mo. 1995).

1. AEMLD Claim

Plaintiffs have alleged AEMLD claims against all defendants. To establish liability under AEMLD, the plaintiffs must show they were injured by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as

3



the ultimate user or consumer; the seller was engaged in the business of selling such a product; the product was expected to and did reach the users without substantial change in the condition in which it was sold.  Carter v. Cantrell Machine Company, Inc., 662 So. 2d 891, 892 (Ala. 1995).

Defendants argue that the district managers and sales representatives are not "sellers" of Baycol, as contemplated by the AEMLD.  The Court agrees.  The purpose of the AEMLD, a judicially created doctrine, is to "plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products."  Atkins v. American Motors Corp. et al., 335 So 2d 134, 139 (Ala. 1976).  Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability.  For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD.  Bowman v. Coleman Company, Inc., Civil Action No. 96-0448-P-C (S D.Ala. 1996), Attached as Ex. B. to Removal Petition.  The court recognized that the defendant sales manager "had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers."  Id. at *7  The court also noted that it is the corporation that reaps the

4



profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. Id. "In short, the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives."

In another MDL proceeding, the district court similarly held that Alabama courts would not hold a sales representative liable under AEMLD In re Rezulin Products Liability Litigation, 133 F.Supp. 2d 272, 287-288 (S.D.N.Y. 2001).

> The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin Rather, he was an agent of the manufacturer and seller As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case.

Id. See also, Wakeland v. Brown & Williamson Tobacco Corporation, 996 F.Supp 1213 (S.D. Ala. 1998) (finding that retailer of cigarettes was fraudulently joined as plaintiffs had failed to state a claim under AEMLD, in part, because Alabama rejects the no-fault precept and plaintiff failed to demonstrate a causal connection between the retailer's activities in connection with the handling of the product and the product's defective condition).

Plaintiffs do not allege, and nothing in the records supports a finding, that



the individual defendants are "sellers" as that term is used to impose liability for a defective product. In fact, the individual defendants submitted declarations in which they attest that they are not sellers, manufacturers, developers or testers of Baycol. Declarations of Monica Reid, Jerry Totty, Todd Trawick and Donald Heller, Ex. C to Joint Notice of Removal. Accordingly, the Court finds that Alabama would not recognize an AEMLD claim against the individual defendants in these cases.

### 2. Negligence/Warranty Claim

Plaintiffs also assert negligence and warranty claims against the individual defendants, alleging they were negligent in the design, manufacture, development, packaging, labeling, marketing, promoting, advertising and sale and/or distribution of Baycol and provided express and implied warranties concerning Baycol's safety and efficacy. Compl. ¶¶ 28-32. Defendants argue that these claims fail as well, as such claims can only be brought against a manufacturer or seller of an allegedly defective product.

In support of remand in these cases, Plaintiffs argue that the negligence and warranty claims stand, as such claims are not subsumed by AEMLD. Defendants do not argue to the contrary, and the Alabama Supreme Court has found that negligence claims are not subsumed by AEMLD. Tillman v. R.J. Reynolds Tobacco Co., 2003 WL 21489707 (Ala. 2003). However, none of the

6

cases cited in their briefs addresses the propriety of such claims against individuals that were not manufacturers or sellers of the product at issue

Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. Norton Co. v. Harrelson, 176 So 2d 18, 20 (Ala. 1965). Similarly, claims of breach of express or implied warranties may only be asserted against the seller of the product at issue. See eg. Rutledge v. Arrow Aluminum Industries, Inc., 733 So. 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the alleged defective product at issue). See also, Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows . . . "); id. § 7-2-314(1) (implied warranty of merchantability applies to a seller that is a "merchant with respect to goods of that kind"); id. § 7-2-315(1) (implied warranty; fitness for a particular purpose applies to sellers).

As the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warranties claims against the individual defendants would fail.

3. Fraud/Suppression

Finally, Plaintiffs allege that the individual sales manager and sales representative defendants made knowing fraudulent misrepresentations that

7



Baycol was safe with the intent to induce physicians to prescribe Baycol and that

plaintiffs were injured as a result. Compl. ¶¶ 43 and 44.   Defendants argue these

allegations do not meet the specificity requirements of Rule 9(b) of the Federal

Rules of Civil Procedure and the Alabama Rules of Civil Procedure, and that such

claims should therefore be dismissed

     Alabama law clearly provides that a claim for fraud must be plead with

particularity.

> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the
> circumstances constituting the fraud must be stated with particularity. This
> does not mean that every element must be pleaded with particularity. The
> pleader, however, must use more than generalized or conclusionary
> statements when setting out the allegations of fraud. The pleader must
> state the place, the time, the contents of the false misrepresentations, the
> fact misrepresented, and an identification of what has been obtained.
> Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala 1981). The purpose of
> Rule 9(b) is to provide adequate notice to the opposing party of any claim
> for fraud so that he may properly prepare his case. Caron v. Teagle, 345
> So.2d 1331 (Ala 1977).

Lyde v. United Ins. Co. of America, 628 So 2d 665, 670 (Ala. Civ. App. 1993)

     In reviewing the Complaints at issue here, the Court finds that Plaintiffs

have failed to plead, with the requisite particularity, the "place; the time, the

contents of the false misrepresentations, the fact misrepresented, and the

identification of what has been obtained." Id.   Rather, the allegations supporting

the fraud/suppression claim are general and conclusory.   For example, one such

allegation reads "the District Managers and Sales Representatives advertised,

8



marketed, and/or promoted Baycol to prescribing physicians utilizing information known to fraudulently represent the safety and efficacy of Baycol, and the District Managers and Sales Representatives failed to warn of the known dangers and adverse events associated with the use of Baycol." Baldwin Compl. ¶ 17. Another reads "the District Managers and Sales Representatives called on physicians . . . at which times they presented fraudulent information . . ." Id. ¶ 14. No allegation specifies the specific misrepresentation the individual defendants made, to whom and under what circumstances.

    4  Amount in Controversy

    In the Baldwin Complaint, Plaintiff Ruby Johnson alleges she suffered physical and/or mental injuries in the aggregate amount of $74,000. Baldwin Comp. ¶ 6. Plaintiffs in the Baldwin action thus argue that the remand is appropriate as the amount in controversy is not met. Defendants respond that plaintiff Johnson has failed to limit her damages below the jurisdictional amount.

    The Court begins its analysis with the principle that the amount claimed by Plaintiffs ordinarily controls in determining whether jurisdiction lies in federal court. Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue." Id. That is because an allegation in a

9

pleading is not binding.  The applicable rules of civil procedure liberally allow the amendment of pleadings.  Thus, to prevent removal, a plaintiff must submit a binding stipulation or affidavit, separate from the pleadings, and signed by the plaintiffs agreeing to be so bound.  See eg. Da Aguilar, 47 F.3d at 1412; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992); White v. Bank of America, 2001 WL 804517 (N.D. Tex. 2001) (to prevent removal, plaintiff must file with the complaint a binding stipulation or affidavit that limits the scope of their recovery).

The Court finds that based on all claims included in the Complaint, the amount in controversy exceeds $75,000.  Specifically, all of the Baldwin plaintiffs have asserted a number of claims arising in tort, contract and statute.  Plaintiffs also seek compensatory and punitive damages.  Given the breadth of their requests, the amount in controversy easily exceeds $75,000 per plaintiff, including plaintiff Johnson.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motions for remand are DENIED.

Date: March 25, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court

10

FILED

## IN THE UNITED STATE DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

04 JUN 24   PM 3: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARGIE REAVES FOWLER, et al,          )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )    Civil Action No.: CV-04-PT-712-M
                                      )
PHARMACIA and UPJOHN COMPANY,         )
MCKESSON CORPORATION,                 )    ENTERED
CHARLIE WATSON, et al,                )
                                      )    JUN 24 2004

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant Charlie Watson's ("Watson") motion to

dismiss, filed on April 7, 2004, and plaintiffs Margie Reaves Fowler's ("Mrs. Fowler") and Mark

Fowler's ("Mr. Fowler") motion to remand, filed on May 7, 2004.

### FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Margie Reaves Fowler ("Fowler") is an adult resident of St. Clair County, Alabama.

Plaintiff Mark Fowler is her husband. Defendants Pharmacia & Upjohn Company ("P&U Co.") and

McKesson Corporation ("McKesson") are corporations doing business in Alabama. Defendant

Watson, an employee of McKesson,[2] allegedly "sold and/or distributed" the drug at issue.

---

[1] The "facts" are as alleged in the complaint.

[2] The complaint, this court notes, does not allege McKesson Corporation's specific role
regarding Depo Provera (also known as medroxyprogesterone). However, defendant Watson's
affidavit attached to the notice of removal stated: "My employer, McKesson Medical-Surgical,
did not manufacture Depo-Provera Contraceptive Injection. McKesson Medical Surgical was
only a distributor of Depo-Provera . . . ."

1



EXHIBIT
E

3/

Mrs. Fowler was prescribed and received injections of Depo Provera[3] from June 1999 through December 2001. The injections were given by a licensed health care provider in a clinical setting. Depo Provera was allegedly "manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised, prescribed, administered and otherwise distributed by the Defendants herein." *See* Compl. ¶ 7. On February 28, 2002, Mrs. Fowler suffered a stroke, which according to plaintiffs, was proximately caused by Depo Provera. *Id.* at ¶ 9.

On February 27, 2004, plaintiffs filed a complaint in the Circuit Court of St. Clair County, Alabama. The complaint contained the following counts against all defendants: Count One (AEMLD); Count Two (Negligence);[4] Count III (Breach of Express Warranty); Count IV (Breach

---

[3] Depo Provera is a medication commonly prescribed to women as a contraceptive alternative to "the pill." Depo Provera, taken as an injection, contains a synthetic hormone similar to the natural hormone progesterone and is offered to protect women from pregnancy for three months per injection. *See* Compl. ¶ 6.

[4] Count Two claims that defendants failed to exercise due care by committing the following acts and omissions:

   a.   Failed to adequately and properly test and inspect Depo Provera so as to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured or sold.

   b.   Failed to utilize and/or implement a reasonably safe design in the manufacture of Depo Provera.

   c.   Failed to manufacture Depo Provera in a reasonably safe condition for which it was intended;

   d.   Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of complications when used in a manner for which it was intended;

   e.   Failed to adequately and properly warn the Plaintiff purchasing Depo Provera of the risks of diseases when used in a manner for which it was intended;

   f.   Failed to adequately and properly labeled (*sic*) Depo Provera so as to warn the Plaintiff of the risks of complications;

   g.   Failed to adequately and properly label Depo Provera so as to warn the Plaintiff of the risks of complications;

2

of Implied Warranty); Count V (Damages); Count VI (Unjust Enrichment)[5]; and Count VII (Loss

of Consortium by Mr. Fowler). On April 7, 2004, defendants filed a notice of removal, alleging the

existence of complete diversity of citizenship between the parties and fraudulent joinder of the non-

diverse defendant, Watson. On April 7, 2004, defendant Watson filed the motion to dismiss at issue

here.[6] Plaintiffs responded with a motion to remand. The court considers both motions here.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6)

motion, the court assumes that all factual allegations pled in the complaint are true. *United States*

---

> h.    Manufactured which (*sic*) constituted a hazard to health;
> i.    Manufactured Depo Provera which caused adverse side effects; and
> j.    Were otherwise careless and negligent.

*See* Compl. ¶ 20.

[5] Specifically, Count VI alleges that defendants have profited and benefitted from plaintiff's use of Depo Provera. Additionally, Count VI alleges:

> Defendants . . . have voluntarily accepted and retained these profits and benefits, derived from the Plaintiff, with full knowledge and awareness that, as a result of Defendants'. . . fraud and other conscious and intentional wrongdoing, Plaintiff did not receive a product of the quality, nature or fitness that had been represented by Defendants . . . or that Plaintiff, as a reasonable consumer, expected.

> By virtue of the conscious wrongdoing alleged in this Complaint, Defendants ... have been unjustly enriched at the expense of the Plaintiffs, who are entitled to in equity, and hereby seek the disgorgement and restitution of Defendants . . . wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court . . . .

*Id.* ¶¶ 35-36.

[6] The court notes that Watson is the only defendant filing the motion to dismiss at issue here. Defendant P&U Co. submitted the response in opposition to plaintiffs' motion to remand. *See infra*.

3

*v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id.* at 1373 (citing

4

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS

## MOTION TO DISMISS

I.    Defendant Watson's Motion

Watson submits that no cause has been stated against him under Alabama law. Relying on *In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272, 287-88 (S.D.N.Y. 2001)(predicting Alabama law), Watson argues, a plaintiff patient cannot state a cause of action against a sales representative (or account manager like defendant) of a distributor of a prescription drug. Watson further relies on the Alabama Supreme Court's decision in *Walls v. Alpharma USPD, Inc.*, 2004 WL 406759 (Ala. March 5, 2004).

In support of dismissal, Watson relies on his own affidavit, which avers that he was not a manufacturer of Depo-Provera and that he was never involved in the manufacture, development, or testing of the drug. Watson alleges that he has not had dealings with either of the plaintiffs.

Watson's affidavit further provides: Watson has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo Provera . . .";  Watson was not a physician or pharmacist and thus never prescribed or filled a prescription for Depo Provera; As an employee of a distributor, Watson's role was taking orders from physicians' offices; "If their order included a request for Depo-Provera . . . this product, with the information as packaged by the manufacturer, was shipped with the order to their [the physicians'] offices"; and

Watson was not a "seller" of Depo Provera.

### A.    Counts One and Two - AEMLD and Negligence

A threshold element of recovery for an AEMLD claim, Watson contends, is showing that defendants "manufactured and/or sold the allegedly defective product." *See Turner v. Azalea Box,* 508 So. 2d 535, 254 (Ala. 1987); *Atkins v. Am. Motors Corp.,* 335 So. 2d 134 (Ala. 1976). Courts from other jurisdictions interpreting Alabama product liability tort theories, Watson claims, have held that no cause of action is stated against sales representatives since they are not "sellers." *See In Re Rezulin, supra,* at 287-88 (S.D.N.Y. 2001). *See also Andrews, et al, v. Bayer Corp, et al; In re Baycol Products Litigation,* MDL No. 1431, slip op. 4 (D. Minn. March 26, 2004)(attached as Exhibit B).

These courts considered the purpose of the AEMLD in analyzing the potential liability of sales representatives of drug manufacturers. *In Re Rezulin* stated: "The AEMLD is founded on 'broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products.'" 133 F. Supp. 2d at 287 (quoting *Atkins* at 139). Furthermore, the *Rezulin* court found: "The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin (the prescription drug at issue in the case). Rather, he was an 'agent of the manufacturer and seller.'" *Id.* at 287-288. Here, Watson repeats, he was neither the manufacturer nor seller of Rezulin. Furthermore, Watson asserts, he is even further removed from liability than the sales representative in *Rezulin* since he was only the distributor's agent.[7]

---

[7] Watson again quotes *Rezulin:* " As a corporate employee, he [the representative] was 'not the one best able' to prevent the sale of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for

6

Regarding the negligence claims, Watson asserts, they should be dismissed for the same reason, i.e., he was neither the "manufacturer" nor "seller" of Depo Provera. *See Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965).[8] Additionally, Watson argues, since the negligence count contains the language of the AEMLD, i.e., "It could have been reasonably anticipated by the Defendants . . . that said product would become inherently or imminently dangerous to human life or health when put to its intended, ordinary and customary use," it is redundant with the AEMLD count. Alabama courts have found that when two counts are redundant, the negligence claim is not considered to constitute a separate cause of action. *See Veal v. Teleflex, Inc.*, 586 So. 2d 188, 191 (Ala. 1991).[9]

Watson relies on the *Walls* decision as supporting his position. *See* Exhibit C. In *Walls*, the plaintiff sued her pharmacist for failure to warn of foreseeable injuries from the use of the prescription drug he dispensed to her. The Northern District of Alabama certified the following question to the Alabama Supreme Court: "Does a pharmacist have a duty to warn of foreseeable

---

supposing that it would impose liability on the sales representatives in this case."

[8] The *Norton* court stated:

> This doctrine [of manufacturer's liability] is applicable in a limited number of situations. The defendant must be either the manufacturer or seller of the injury-producing article. There is no privity of contract between the defendant and the injured plaintiff. At the time complained of the article must have been applied to the use for which it was manufactured and sold and that use must be in the usual and customary manner. Where these circumstances exist the manufacturer or seller will be liable for an injury proximately resulting from the use of the article but only where the article is inherently or imminently dangerous to human life or health, or becomes so when put to its intended use in the proper manner. This liability arises from either the negligent manufacture of the article or negligence in selling it.

[9] This court notes that *Veal* does so suggest.

7

injuries from the use of a prescription drug he/she is dispensing under AEMLD, common-law negligence or other Alabama law?"

In *Walls*, the pharmacist had direct contact with the plaintiff and had directly sold the prescription drug to the plaintiff. Even in that situation, Watson contends, the court applied the learned intermediary doctrine and held that the pharmacist had no duty to warn a customer or any other ultimate customer of the risk or potential side effects of the prescription drug. The Supreme Court observed that

> where prescription drugs are concerned the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. *See* Restatement (Second) of Torts, Section 388 (1965).

*Walls* at *3 (citing *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 at 1276)(citations omitted). The *Walls* court further noted language from other cases that to impose a duty to warn on a pharmacist would "intrude on the doctor-patient relationship and would force the pharmacist to practice medicine without a license." *Id.* at *4.[10]

Defendant concludes: "The rationale which the Alabama Supreme Court followed in holding that prescription drugs are an exception to the Restatement's general rule certainly is even more applicable in the case at bar. If the manufacturer's duty to warn flows only to the physician and if other parties would be liable for interfering in the physician-patient relationship should advice be given to the patient, then it is abundantly clear that Charles Watson cannot be subject to potential liability under Alabama law."

---

[10] This court does not find *Walls* to be significantly apt here.

8

**B.    Counts Three and Four - Breach of Express and Implied Warranties[11]**

According to Watson, a breach of warranty claim (whether express or implied) arises

exclusively against a product's "seller." *See* Ala. Code §§ 7-2-313(1), 7-2-314(1), and 7-2-315. The

Alabama courts, Watson argues, have affirmed this principle. *See, e.g., Rutledge v. Arrow*

*Aluminum Indust.*, 733 So. 2d 412, 417 (Ala. Civ. App. 1998). The *Rutledge* court found:

> With regard to Rutledge's AEMLD and breach of implied warranty of fitness
> claims against Foshee Builders, it is undisputed that Foshee Builders bought
> the sliding glass door and that a subcontractor installed the door. Rutledge failed
> to present any evidence that Foshee Builders is in the business of selling sliding
> glass doors. Therefore, we conclude that Foshee is not a seller within the meaning
> of the AEMLD or § 7-2-103 and that the trial court properly entered a summary
> judgment in favor of Foshee Builders on Rutledge's AEMLD and breach of implied
> warranty of fitness claims.

---

[11] To the extent the warranty claims are redundant with AEMLD claims and based on the
allegation that the drug was unreasonably dangerous, defendant argues, these claims are due to
be dismissed due to the distinction between tort and UCC causes of action. According to
defendant, whether Depo-Provera is unreasonably dangerous is not properly addressed in a
warranty claim, only in an AEMLD claim. *See Yarbrough v. Sears, Roebuck & Co.*, 628 So. 2d
478 (Ala. 1993), which found:

> The Yarbroughs' claim of a breach of the implied warranty of merchantability is
> to the effect that the kerosene heater was unreasonably dangerous and therefore could not
> be merchantable. "Such an argument ignores the clear distinction between causes of
> action arising under tort law and those arising under the U.C.C. as adopted in Alabama."
> *Shell v. Union Oil Co.*, 489 So.2d 569, 571 (Ala.1986). Whether the kerosene heater was
> unreasonably dangerous is not a question properly addressed in a claim alleging breach
> of warranty under the U.C.C., but it could be, and was, properly raised in a claim under
> the AEMLD.

*Compare Spain v. Brown & Williamson Tobacco Corp.*, 2003 WL 21489727 (Ala.
2003)(distinguishing *Yarbrough*). In addressing the certified question from the Eleventh Circuit
about the implied warranty of merchantability, the court distinguished *Yarbrough* based on the
failure to allege that the product was not fit for the ordinary purpose. The *Spain* court then held:
"[A] claim alleging breach of an implied warranty of merchantability is separate and distinct
from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous
product."

Watson reiterates that his position is an account manager of McKesson, a corporation which distributes pharmaceutical products ordered by physicians. As such, Watson asserts, he is not a "seller" for purposes of the U.C.C..

Moreover, Watson argues, an additional reason to dismiss the warranty claim is that Watson had no contact with plaintiffs. Under Alabama law, Watson contends, express warranties arise from affirmative statements of fact. *See* Ala. Code § 7-2-313 (1975). Similarly, Watson argues, an implied warranty cannot arise unless the plaintiff relies on the seller's skill or judgment during the purchase. *See Ex Parte General Motors Corp.*, 769 So. 2d 903, 911 (1999). Since Watson had no contact with plaintiffs, he could not have made affirmative statements or express warranties to them. Additionally, plaintiffs could not have relied on his skill or judgment during their purchase. As a final reason to dismiss plaintiffs' implied warranty claim, Watson asserts, he is not a "merchant with respect to goods of that kind" as required by § 7-2-314. *See Loeb & Co. v. Schreiner*, 321 So. 2d 199 (Ala. 1975); *Huprich v. Bitto*, 667 So. 2d 685 (Ala. 1995).

## C.   Count Five - Unjust Enrichment

Defendant Watson quotes the Alabama Supreme Court in *Mitchell v . H&R Block, Inc.*, 783 So.2812, 817 (Ala. 2000): "[T]he essence of the theories of unjust enrichment ... is that a Plaintiff can prove facts showing that Defendant holds money, which in equity and good conscience, belongs to the Plaintiff or holds money which was improperly paid to Defendant because of mistake or fraud." *See also Ammons v. Coffee County*, 716 So. 2d 1227 (Ala. Civ. App. 1998).

First, Watson argues, since plaintiffs have not stated a valid, independent claim against him, they cannot prevail on their unjust enrichment claim. Second, Watson contends, plaintiffs have not alleged in the complaint that Watson benefitted personally from the sale of Depo-Provera or

10

collected money from plaintiffs in exchange for this product. Watson repeats his contention that he is not a "seller" of the product.

## II.    Plaintiffs' Response[12]

### A.    Standard of Review

This court must first determine if it has jurisdiction over the complaint. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989); *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Strict construction of the removal statutes, plaintiffs argue, is required. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999).

Further, plaintiffs argue, this court must construe all disputed questions of fact and controlling substantive law in favor of plaintiffs on removal. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983)("In determining whether joinder of a resident party has been fraudulent, a district court evaluates the factual allegations in the light most favorable to the plaintiff.").

The removing party, plaintiffs assert, bears a heavy burden in establishing fraudulent joinder. The test for determining whether joinder of a defendant has been fraudulent is as follows:

> (1) [L]ook to see whether there is no possibility that plaintiff can establish any cause of action against the resident defendant; and

---

[12] Plaintiffs note their contemporaneous filing of a motion to remand for lack of jurisdiction. According to plaintiffs, the arguments in support of remand are identical to their response to dismissal. The motion to dismiss and motion to remand, plaintiffs contend, are "really just both sides of the same coin." By plaintiffs' account, if this court grants the motion to remand, the case will be due to be remanded without this court's consideration of the motion to dismiss. On the other hand, plaintiffs contend, if the court denies remand, the court must necessarily have determined plaintiffs had no possibility of establishing any cause of action against the resident defendant, thus requiring the granting of defendant's motion to dismiss.

11

(2) [L]ook to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court.

See *Cabalceta* at 1561. (Emphasis added). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247 (N.D. Ala. 2003)(citation omitted). Further, *Fowler* provided: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; she need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (citation omitted).

**B.    Argument**

    **1.    Plaintiffs Have Sufficient Evidence to Support an AEMLD Claim and a Common Law Negligence Claim Against Defendant, Charlie Watson.**

Plaintiffs tout *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220 (M.D. Ala. 1999) as analogous. In *Clay*, plaintiffs argue, the court held that plaintiff had an arguable claim against an account manager for defendant pursuant to the AEMLD because the account manager "had superior knowledge to that of the average consumer." *Id.* at 1224. Additionally, the *Clay* court found, additional discovery provided an arguable showing that the account manager "actively participated in the sale and distribution of Brown & Williamson tobacco products," which further bolstered plaintiff's AEMLD claim. In part, the *Clay* court relied on the following rationale from *Seaborn v. R.J. Reynolds Tobacco Co.*, No. 96-T-1540-N (M.D. Ala. 1996):[13]

> [Plaintiff] seeks to hold not only R.J. Reynolds liable under the AEMLD, he seeks to hold some of the company's individual employees--Tate, Huffman, McDermott, Hightower, and Hinson--liable as well. "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective

---

[13] No copy of *Seaborn* has apparently been provided to this court.

of whether they were acting in a corporate capacity." *Ex parte Charles Bell Pontiac-Buick- Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala.1986) (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F.Supp. 505, 513 (M.D.Ala. 1983)); see also *Chandler v. Hunter*, 340 So.2d 818, 822 (Ala.Civ.App. 1976). Obviously, to the extent R.J. Reynolds allegedly violated the AEMLD, it acted through its employees; the company does not employ ghosts. [Plaintiff] should be allowed to pursue these individual defendants, and, if, after discovery, it should turn out that he has named the wrong persons, he should be allowed to make substitutions.

In this case and its companion case, *Jenkins v. R.J. Reynolds Tobacco Co. No. 96-T-1489-N* (M.D. Ala. 1996), plaintiffs note, the court found no evidence of fraudulent joinder. Additionally, plaintiffs rely on the *Clay* court's statement: "Rule 11 recognizes that a Plaintiff may need additional discovery to establish an evidentiary basis for an allegation." *Id.* at 1224 (citing *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996)). The court found that plaintiff had met her burden pursuant to Rule 11 and believed that additional discovery could show that the account manager participated in the tort against the plaintiff due to his position with defendant tobacco company.

Here, plaintiffs assert, Watson is an account manager at McKesson, and Birmingham is part of his sales territory. In this capacity, plaintiffs argue, Watson sold, distributed and supplied medical and surgical equipment, i.e., Depo-Provera, to Mrs. Fowler. *See* Watson Decl..

Plaintiffs rely on "The Job Description of an Account Manager at McKesson Medical-Surgical" posted on McKesson's website, Pl. Ex. B. The job description, plaintiffs argue, lists the following responsibilities for McKesson Account Manager[14]:

- Selling products or services;
- Performing field promotion work and developing new accounts;
- Demonstrating products and/or services and providing assistance in the

---

[14] The McKesson website, plaintiffs note, lists openings for account managers in cities including LaCrosse and Madison, Wisconsin; Jacksonville, Florida; Portland, Oregon; etc. Plaintiffs contend that all the job descriptions for the locations listed are identical.

13

> best application of products or services;
> - Answering all questions concerning products or services and referring questions as necessary;
> - Investigating product/service warranty claims to ensure resolution within marketing policies;
> - Contacting prospects and explaining features and merits of products or services offered, utilizing persuasive sales techniques.

*See* Pl. Ex. B.

According to plaintiffs, Watson has superior knowledge of Depo-Provera compared to the average consumer, since his job duties include demonstrating the products/services, providing assistance in the best application of the products/services, and explaining the features and merits of the products/services offered. Moreover, plaintiffs argue, in this case they have stronger support for their claims against Watson than the *Clay* plaintiff since they already have proof of Watson's superior knowledge to that of the average consumer regarding Depo-Provera (as evidenced by the foregoing job description).

The AEMLD claim against Watson, plaintiffs contend, is "particularly strong considering that part of Mr. Watson's job description provides for him to 'demonstrate products and/or services and provide assistance in the best application of product or services.'" Plaintiffs further argue:

> In this case, the product Depo-Provera, was used for a purpose or application other than the purpose or application for which it had been approved by the Food and Drug Administration (hereinafter FDA). Therefore, through Mr. Watson's assistance with the best application of Depo-Provera, the plaintiff, Margie Fowler was given Depo-Provera for a purpose other than the purpose for which it had been approved by the FDA.[15]

In the complaint, plaintiffs assert, they clearly alleged that Watson was engaged in the business of marketing, selling, advertising, supplying, and distributing Depo-Provera, that the

---

[15] This allegation, the court notes, does not appear to be contained in the complaint.

14

product was defective and unreasonably dangerous, and that as a result Fowler was injured. Plaintiffs repeat the general content of their AEMLD and negligence claims.[16]

Lastly, plaintiffs argue, a corporation's employees are liable for torts in which they personally participated, even if they were acting in a corporate capacity. *See Ex Part Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986). According to plaintiffs, McKesson could not violate the AEMLD on its own; rather, it had to act through its employees. Moreover, plaintiffs add, Watson committed negligence beyond the bounds of the AEMLD.

### 2.    The Defendant's Argument for Removal Lacks Legal Support.

Plaintiffs attempt to distinguish *In re Baycol* and *In re Rezulin*. According to plaintiffs, these cases represent the opinions of the Minnesota and New York federal district courts, respectively, interpreting Alabama law and thus should not be treated as controlling or given weight in this case. Further, plaintiffs contend, *In re Baycol* involved affidavits from the non-diverse defendants that they were not sellers, manufacturers, developers, or testers of the drug Baycol, and the reported opinion indicates that the *In re Baycol* plaintiffs had no evidentiary support to contradict these affidavits. On the other hand, plaintiffs argue, they possess evidence to contradict Watson's affidavit. Although in *In re Rezulin*, plaintiffs assert, the sales representatives were held to be fraudulently joined, here Watson is not a sales representative but rather an account manager with superior knowledge. Again, plaintiffs rely on *Clay, supra.*

Moreover, plaintiffs contend, defendant mistakenly relies on *Walls v. Alpharma USPD, Inc.*. According to plaintiffs, *Walls* held that a pharmacist does not have a duty to warn a customer or ultimate customer of risks or side effects pursuant to the learned-intermediary doctrine. However,

---

[16] The court has summarized the complaint *supra.*

15

plaintiffs argue, *Walls* neither limits an account manager's duty to warn nor forecloses AEMLD/common law negligence claims against an account manager with superior knowledge and active involvement in the sale/distribution of a product. Furthermore, plaintiffs contend, the pharmacist in *Walls* did not work directly for the manufacturer, distributor, supplier, advertiser, or seller of the drug made the basis of the lawsuit, unlike Watson, who works directly for McKesson (which allegedly distributed, supplied, advertised and sold Depo-Provera.)

## III.     Defendant Watson's Reply

First, Watson argues, plaintiffs' reliance on *Clay v. Brown & Williamson Tobacco Corp.* is misplaced. While *Clay* involved cigarettes and a defendant who worked for the actual manufacturer, the Fowler case involves a prescription medication and a defendant who worked for a distributor. Further, Watson reminds the court, the Alabama Supreme Court recently applied the learned-intermediary doctrine to pharmacists in *Walls*, *see supra*. According to Watson, *Walls* expanded and reinforced the exception to AEMLD liability in cases arising from the use of prescription medications where the only duty to warn runs from the manufacturer to the patient's doctor.[17] *Walls*, Watson argues, clarified that the learned intermediary doctrine forecloses the existence of a duty to

_____

[17] In *Stone v. Smith, Kline & French Laboratories*, 731 F.2d at 1575 (11th Cir. 1984), Watson notes, the Eleventh Circuit certified to the Alabama Supreme Court the question of whether an adequate warning to the prescribing physician but not to the ultimate consumer was sufficient as a matter of law. The Alabama Supreme Court in *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984) adopted the Fifth Circuit's learned-intermediary doctrine , which held that pharmaceutical companies who were selling prescription drugs only had a duty to warn the prescribing doctor. According to Watson, the *Walls* court cited with approval language from the *Stone* opinion that imposing a duty to warn on a pharmacist would intrude on the doctor/patient relationship and force the pharmacist to practice medicine without a license, and such reasoning should apply with equal force to Watson. Furthermore, Watson notes, *Walls* also cited language from other courts to the effect that it would be illogical to impose a greater duty on the pharmacist than on the manufacturer. By defendants' account, this same argument should apply to the account manager of a distributor.

16

warn, and thereby any AEMLD and negligence claim, against someone other than the manufacturer.

As in the instant case, *Walls* involved injuries resulting from a prescription drug. According to Watson, the fact that the product could only be obtained by prescription from a licensed physician led the Supreme Court to apply the learned-intermediary doctrine. Watson again quotes *Walls* and criticizes plaintiffs' position that *Walls* is inapplicable.[18]

In the instant case, Watson argues, the complaint alleges that Depo-Provera was commonly prescribed and that plaintiff was given injections by a licensed health care provider in a clinical setting. Plaintiffs' representation to the court that Watson sold Depo-Provera "to the plaintiff in this case," Watson contends, is false, since his affidavit confirms that he never had contact or dealings with the Fowlers, that he is not a physician or pharmacist, and that he never prescribed or filled a prescription for Depo-Provera. As an employee of the distributor, Watson alleged, his role was limited to taking orders from physicians' offices then shipping any orders for Depo-Provera. According to Watson, he was not involved in the doctor's decision to administer or prescribe Depo-Provera to Mrs. Fowler or in the sale of the product to the plaintiffs. Moreover, Watson points out, Watson has confirmed that he has "not made any statements to the general public or participated in any advertising or promotion to the general public concerning Depo-Provera."

Watson again asserts that the *Walls* rationale regarding prescription drugs as an exception to the Restatement's general rule "is even more applicable in the case at bar" and reasons as follows: "If the manufacturer's duty to warn flows only to the learned-intermediary physician and if other parties, without the medical education or knowledge of the medical history of the patient, would be liable for interfering in the physician-patient relationship should advice be given to the patient, then

---

[18] As indicated, this court feels that defendant over-emphasizes the significance of *Walls*.

17

Since plaintiffs' opposition only addressed Counts I and II (AEMLD and negligence) and made no attempt to oppose dismissal of Counts III, IV, or V (breaches of warranty and damages), Watson argues, Counts III, IV, and V are due to be dismissed for the reasons set forth above.[21]

## MOTION TO REMAND

**I.    Plaintiffs' Motion**

Plaintiffs' arguments in favor of remand appear to be identical to those set forth in their response to the motion to dismiss. *See supra.*

**II.    Defendant P&U Co.'s Response[22]**

**A.    Summary of Argument**

Since plaintiffs' motion to remand only addresses AEMLD and negligence, P&U Co. argues,

---

medication or be otherwise delivered. To the extent that the learned-intermediary doctrine applies, foreseeability of injury is eliminated as a basis for liability upon the pharmacist. To the extent that the learned-intermediary doctrine applies, the duty to determine whether the medication as prescribed is dangerously defective is owed by the prescribing physician and not by the pharmacist filling the prescription. Any question of what persons are due the duty owed by the prescribing physician is not before us. Accordingly, both questions certified to us are answered in the negative.

[21] Incidentally, this court notes, plaintiffs also have not addressed Count VI (unjust enrichment) and Count VII (loss of consortium). Defendant Watson addressed Count VI, *supra*, but not Count VII.

[22] Defendant P&U Co. filed the opposition to plaintiffs' motion to remand. P&U Co. refers generally to arguments in its Notice of Removal. The court has considered fully but does not set forth here the contents of the Notice of Removal.

Additionally, this court notes, P&U Co. has filed a supplemental opposition to remand on June 4, 2004. In its supplemental submission, P&U Co. contends that the right to remove is determined by the plaintiffs' pleading at the time of the petition for removal. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). As such, P&U Co. argues, this court cannot rely on the Fowlers' post-removal amendment to their complaint in determining subject matter jurisdiction.

only those claims have been addressed here. P&U Co. argues that Watson was fraudulently joined. The complaint, P&U Co. points out, contains a single specific reference to Watson in paragraph four, wherein it alleges that he "sold or distributed" Depo Provera on behalf of McKesson. Therefore, P&U Co. contends, there is not even an allegation that Watson sold or distributed the Depo Provera received by plaintiffs.

Watson worked for McKesson Medical-Surgical, P&U Co. alleges, which did not manufacture the product but merely distributed it. According to P&U Co., Watson had no dealings with patients or knowledge/information about patients' medical histories, symptoms, prognoses, or courses of treatment. Significantly, P&U Co. argues, Watson had no interaction with the Fowlers.

P&U Co. criticizes plaintiffs' reliance on tobacco-related cases. Under the law, P&U Co. contends, tobacco is not treated in the same manner as prescription medications, and that distinction proves fatal to plaintiffs' argument.

Under Alabama law, P&U Co. argues, prescription medications are treated as "unavoidably unsafe products" as described in Comment k to Section 402 of the Restatement of Torts (Second). According to P&U Co., prescription medications are "neither defective nor unreasonably dangerous if such a product is properly prepared and is accompanied by proper directions and warnings." *See Stone* at 1302. P&U Co. repeats the substance of the learned intermediary doctrine as applicable to prescription drugs. *See Walls* at *2. Only prescription medications, P&U Co. contends, are governed by the learned intermediary doctrine. P&U Co. quotes the *Stone* case as follows: "[W]e cannot quarrel with the general proposition that where *prescription drugs* are concerned, the manufacturer's duty to warn is *limited* to an obligation *to advise the prescribing physician* of any potential dangers that may result from the drug's use. This special standard for prescription drugs

21

is an *understandable exception to the Restatement's general rule* that one who markets the goods must warn foreseeable ultimate users of dangers inherent in his products." (Emphasis added). P&U Co. argues that the collective authority of *Walls, In re: Baycol*, and *In re Rezulin* should govern the fraudulent joinder issue rather than the *Clay* case (involving tobacco).

When faced with a fraudulent joinder issue, P&U Co. argues, this court should "pierc[e] the pleadings and consider[] summary judgment-type evidence such as affidavits and deposition testimony." *See Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1118 (M.D. Ala. 1996)(citation omitted). *Sellers* further provided: "Tolerance of factual contentions . . . when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties [or] make claims . . . without any factual basis or justification."(quoting F.R.C.P. 11, Comm. Notes).

### B.    Responsive Argument

The *Rezulin* and *Baycol* courts, P&U Co. argues, considered Alabama law. According to P&U Co., plaintiffs have not attempted to distinguish those cases. Both cases involved individual employees of prescription drug manufacturers, P&U Co. points out, making those individual employees substantially closer to the manufacture of the product at issue than Watson (who was the employee of a commercial distributor of the product). P&U Co. again highlights *Rezulin's* assessment of the sales representative: "As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."

Furthermore, P&U Co. argues, plaintiffs have not acknowledged the *Bowman v. Coleman* decision (No. 96-0448-P-C)(S.D. Ala. 1996), which held that a salesperson was fraudulently joined under AEMLD and negligence theories because (1) "the policy goals underlying the AEMLD would not be advanced in any way by holding persons . . . liable in their role as . . . sales representatives" and (2) the salesperson was "neither a seller nor a manufacturer." Finally, P&U Co. argues, the Fowlers have not adequately distinguished *Walls*.

According to P&U Co., plaintiffs have failed to show Watson's involvement in Mrs. Fowler's prescription and failed to present evidence of Watson personally participating in any tort against them. Instead, P&U Co. argues: "[P]laintiffs coyly try to avoid this considerable problem in their pleadings by citing to generic information describing similar employees' job responsibilities downloaded from the internet. Further, by taking bits and pieces of information from this website, they make the incredible suggestion that Mr. Watson was responsible for the plaintiffs' receipt of the product at issue for a purpose *other* than that provided in the FDA-approved labeling accompanying the product – an allegation completely absent from the complaint." In this vein, P&U Co. repeats information from Watson's affidavit. *See supra.*

Moreover, P&U Co. argues, the *Clay* court's finding of "superior knowledge" of a tobacco account manager is irrelevant to this case, since Depo Provera is a prescription drug. In *Clay*, P&U Co. contends, the court concluded that tobacco managers were not fraudulently joined in a cigarette products liability action since they were "likely to hold some superior knowledge regarding the nature of cigarettes." *See* 77 F. Supp. 2d at 1224. In the pharmaceutical context, P&U Co. asserts, the element of "superior knowledge" of a sales representative, or even a pharmacist, is irrelevant. P&U Co. argues: "Anyone of legal age may walk into numerous retail establishments and purchase

23

cigarettes if they so choose. This stands in stark contrast to the manner in which one obtains a prescription medications, ..., [i.e.,] only ... from licensed physicians. These physicians' decisions on whether or not to prescribe a given medication depend upon a host of factors based upon their training, experience, and a patient's unique needs."[23]

Defendant P&U Co. repeats the reasoning and holding of *Walls* and argues: "If a pharmacist, who has actual contact with the patient, has not duty to warn a consumer under Alabama tort law, how could any such duty exist for a distributor who has no contact with the ultimate consumer?"[24] This court, P&U Co. argues, should disregard plaintiffs' attempts to circumscribe the *Walls* holding. According to P&U Co., it is the type of product at issue in *Walls* that drove the court to conclude that the learned intermediary doctrine exempts from the duty to warn non-physicians in the chain of distribution. In fact, defendant argues, *Walls* undermines every aspect of plaintiffs' argument that they may be able to make a case against Watson for allegedly possessing superior knowledge and

---

[23] P&U Co. quotes *Walls* as follows:

> [F]or it is only the physician who can relate the propensities of the drug to the physical idiosyncracies of the patient. 'It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.'
>
> ...
>
> Neither the manufacturer nor pharmacist has the medical education or knowledge of the medical history of the patient which would justify a judicial imposition of a duty to intrude into the physician-patient relationship. In deciding whether to use the prescription drug, the patient relies primarily on the expertise and judgment of the physician. Proper weighing of the risks and benefits of the proposed drug treatment and determining what facts to tell the patient about the drug requires an individualized medical judgment based on knowledge of the patient and his or her medical condition.

[24] This court is of the opinion that the issue here is contact with the pharmacist and/or the physician, not the consumer.

participating in the sale and distribution. These precise arguments, P&U Co. asserts, were rejected by *Walls*. Although the pharmacist in *Walls* had superior knowledge and participated in the sale and distribution of the drug, P&U Co. argues, the *Walls* court still refused to impose liability. Thus, P&U Co. concludes, Watson cannot be liable even if he proved that he did have superior knowledge and participated in the sale and distribution of the Depo-Provera allegedly administered to Mrs. Fowler.

III.    **Plaintiffs' Reply**[25]

    A.    <u>Plaintiffs Have Shown That Watson Was Involved in Fowler Receiving Depo-Provera</u>

        Relying on an amended complaint served on May 28, 2004,[26] plaintiffs argue, they have specifically alleged that Watson is liable pursuant to Alabama common law theories of negligence/wantonness for promoting Depo Provera for an off-label use not approved by the FDA.[27]

---

    [25] The Fowlers highlight the holding in *Triggs v. John Crump Toyota*, 154 F.3d 1284 (11th Cir. 1998): "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs* further stated: "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."

    [26] *See* Pl. Reply, Ex. A.

    [27] The amended complaint alleges:

        At the time of the time of the incident made the basis of this lawsuit, Watson negligently, wantonly, and intentionally, promoted the use of the drug Depo Provera to a group of doctors who practiced under the name Henderson Walton Women's Center (Hereinafter Henderson Walton) for use by the physicians at Henderson Walton for administration to their patients, including ... Margie Fowler, for the management of the condition known as endometriosis.

        Watson communicated with the physicians and staff at Henderson Walton on a direct one-to-one basis and promoted the sale of Depo Provera. In the course of this promotion Defendant Watson advised the physicians as to the applications and uses of

25

According to plaintiffs, Henderson Walton is still Watson's client, and Watson used the following means to promote Depo Provera to the physicians at Henderson Walton: direct one-to-one communication with those physicians; field promotion work and aggressive development of new accounts and growing existing accounts; assistance in the best application of Depo-Provera to Henderson Walton physicians; explanation of the features/merits of Depo Provera to such physicians; and use of persuasive sales techniques. As an account manager for Depo Provera, the

---

the product utilizing product promotional literature, "personal persuasive sales techniques," and provided other incentives to promote sales of the subject drug the treatment and management of endometriosis.

Watson engaged in these promotional efforts on a personal and individual basis and served to gain financially from such promotion. At the time these promotional efforts were undertaken, Watson knew or had reason to know that the Drug Depo Provera was not (nor is the drug currently) approved by the FDA for the management of endometriosis but was only approved by the FDA and, as per the drug warning label published by the drug manufacturer, indicated only for the prevention of pregnancy. The promotion of the drug for a purpose not approved by the FDA was in direct violation of the Food, Drug, and Cosmetic Act.

Said negligently, wanton, reckless and intentional promotion of this drug caused and/or contributed to the administration of Depo Provera of Plaintiff, Margie Fowler, which proximately caused the plaintiff to suffer a stroke.

Plaintiffs, this court notes, rely upon the affidavit of one of their attorneys in the case, Ms. Harrington. Ms. Harrington's affidavit provided:

Prior to filing this action, I called the office of the physician who administered the drug, Depo Provera (the drug which is the subject of the above case) to Margie Fowler. I asked the individual in charge of purchasing this medication, for the name of the company from which Ms. Fowler's physician obtained the Depo-Provera. I was told the drug was purchased for all the doctors at Henderson Walton Women's Clinic from the McKesson Corporation. I asked if that was where they would have purchased the drug from in 2001 and 2002 and was told yes. I contacted McKesson Corporation and asked the name of the person who was responsible for the sale of Depo-Provera to the Henderson Walton Women's Clinic in Birmingham, Alabama. I was told Charlie Watson.

26

Fowlers argue, Watson knew or had reason to know that Depo Provera was not FDA-approved for the treatment of endometriosis. Plaintiffs contend that Watson should not have promoted this use of Depo Provera and/or should have informed the physicians at Henderson Walton that Depo Provera was not approved for this use.

### B.    Defendants' Caselaw Is Neither Applicable Nor Relevant

First, the Fowlers argue, *In re Rezulin* is distinguishable because it involved a sales representative. In the instant case, plaintiffs emphasize, Watson is an account manager rather than a sales representative.[28] Furthermore, the Fowlers argue, *In re Rezulin* did not state that liability could not be imposed on a pharmaceutical sales representative pursuant to the AEMLD; instead, the *Rezulin* court concluded that the Alabama Supreme Court would not impose liability pursuant to the AEMLD on the particular sales representative in that case. Additionally, plaintiffs argue, the *Rezulin* court did not address whether plaintiff had a negligence claim against the defendant sales representative. Most importantly, the Fowlers contend, the *Rezulin* court based its finding of fraudulent joinder on the facts that the plaintiff did not respond the affidavit filed by defendant sales representative, that the plaintiff had not shown that the sales representative sold the defective product to the decedent or decedent's doctor, that the plaintiff had not established the connection needed between the decedent and the sales representative to support a claim for fraud or fraudulent suppression, and that the sales representative at issue was not "the one best able" to prevent sales of defective drugs. Here, plaintiffs argue, those factors are not present, since plaintiffs (1) have responded to and contradicted Watson's affidavit by using McKesson's own website and (2) did not

---

[28] According to plaintiff, the McKesson website describes account managers and sales representatives as two separate positions. *See* Pl. Reply, Ex. C.

27

plead a fraud count in their complaint against Watson. Finally, plaintiffs assert, as an account

manager (and pursuant to his job description) "Watson's superior knowledge would have made him

highly capable of preventing the sale of defective drugs and/or the improper use of a drug." In

reliance on the posted job description, plaintiff contend that Watson had one to one contact with the

Henderson Walton physicians and therefore would have received first hand knowledge of reports

from those physician's patients if there had been problems with Depo Provera. Plaintiffs ask: "Who

better for the company to rely on but their own account manager for information as to whether a

product is useful and effective or defective?"

According to plaintiff, *In re Baycol* represents a decision of a foreign court which has

admitted that "no Alabama state court decision specifically addresses whether a district manager of

sales manager could be held liable under the AEMLD." Notably, plaintiffs argue, the *Baycol* court

found the district manager and sales manager not liable while admitting the absence of an Alabama

state court decision upon which to base its finding.

Furthermore, the Fowlers argue, *Bowman v. Coleman* (relied upon in *Baycol*) is

distinguishable. In that case, the plaintiff sued the store manager of Lowe's along with Lowe's

Home Centers, Inc. and Coleman Company, Inc. because a Coleman heater purchased at Lowe's

malfunctioned. According to the Fowlers, an account manager at McKesson and a store manager

at Lowe's are not comparable "due to the difference in each one's educational background and

knowledge of their products." In this vein, plaintiffs contend:

> A store manager at Lowe's may or may not have a college degree. A four year
> college degree is required of an account manager at McKesson. A store manager at
> Lowe's sells a greater number as well as a wider variety of products than an account
> manager at McKesson. Therefore, there is no way that a store manager at Lowe's
> could have the superior knowledge to be able to demonstrate every produce or
> service that his store offers nor could he provide assistance in the best application of

every product which Lowe's carries. However, being able to demonstrate products and/or services as well as provide assistance in the best application of those products and services is part of Defendant Watson's job. He is able to accomplish those tasks because he only sells, supplies, and distributes medical and surgical products.

Additionally, plaintiffs note, the *Baycol* court also relied on the affidavits which the defendant district manager and sales manager supplied in that case and in *In re Rezulin*. The Fowlers reiterate that they have responded to Watson's affidavit and shown, via his employer's website, that the affidavit is not accurate with respect to Watson's job description and duties.

Finally, plaintiffs assert, *Walls* is inapposite based on the same reasons asserted *supra*. Fowler also disputes P&U Co.'s statement that "Only prescription medications – not other products, including tobacco – are governed by the learned intermediary doctrine"; instead, Fowler argues, the learned intermediary doctrine would involve complex products, which include tobacco and tobacco litigation. Plaintiffs reiterate that the *Walls* court specifically answered a very limited question regarding pharmacists and thus only applies to pharmacists and not to account managers or sales representatives of drug companies.

## CONCLUSIONS OF THE COURT

This case represents the usual tension between what has been called this court's "unflagging" duty to exercise its jurisdiction when present[29] and the admonishments against accepting diversity jurisdiction when there are "possible" claims against non-diverse defendants. The difficulty of resolving such tension is exacerbated by the effort of each side to stretch every possible nuance from every possible case. One would think that the difference might be whether a party will remain on death row or freed to return to the idyllic confines of a country home.

---

[29] *See Moorer v. Demopolis Waterworks and Sewer Bd.*, 2004 WL 1300156 (11th Cir. 2004)(quoting *Colorado River Water Conservation Dist. v. U.S.*, 965 S. Ct. 1236 (1976)).

A further feature of this dilemma is the fact that the issue is supposed to be decided based upon objective standards but is usually influenced by the deciding courts' subjective leanings. It is tempting to quickly dispose of a case on a non-appealable basis.

Surely, as always, this court must look for some solution which does not lend itself to either arbitrariness or capriciousness. The court assumes that in this context, "possible" means more than such a possibility that a designated residence can be hit by a meteor tonight. It is possible. Surely, as in other instances, reason and common sense have some role. Surely, in the absence of total hostility toward diversity jurisdiction, the mere naming of purely adjunct parties is <u>not</u> sufficient to defeat it. With these thoughts and the admonitions of controlling courts in mind, this court will attempt to resolve the issues here.

The parties have not cited any directly applicable Alabama or controlling federal court cases. This court is satisfied, based upon the cases which have been cited, that there is no possibility of recovery on the claims asserted here against Watson unless there is evidence that he personally and actively sold or promoted the alleged product to applicable pharmacies or physicians after he had knowledge that the product was dangerous or defective or after he had knowledge that warnings had not been otherwise appropriately given. Here, there is no such allegation and certainly no substantial evidence to rebut evidence to the contrary.

This court is not persuaded, to any extent, by *Walls*. On the other hand, this court is at least partially persuaded by the *Rezulin* and *Baycol* cases. Those courts perhaps go further than this court would go in that they may exclude claims against even active, knowledgeable sales representatives (or account managers). While those are likely correctly holdings with regard to AEMLD claims, they may not be appropriate for failure to warn or suppression claims. Here, however, there is no

30

sufficient allegation or evidence to support the latter type claims.[30]

The motion to dismiss will be granted. The motion to remand will be denied.[31]

This 24th of June, 2004.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[30] This case is to be decided based on the allegations in the complaint at the time of removal, not as later amended.

[31] Plaintiffs have agreed that an adverse ruling on one calls for an adverse ruling on the other.

31

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA HARRELL and MACK HARRELL,** | * * * | |
| | * | |
| **PLAINTIFFS,** | * | |
| v. | * | |
| | * | |
| **MERCK & CO., INC.,** a foreign | * | **CASE NO.** |
| Corporation; **ANNE BRANDON,** an | * | |
| Individual; **MARK M. SANDERS,** an | * | **Removed from Circuit Court** |
| Individual; **TONYA M. LOCKLIN,** an | * | **of Houston County, AL** |
| Individual; **JOE D. READ,** an individual; | * | **CV-06-502H** |
| **THEODORE R. BOWSER, II,** an | * | |
| Individual; **ERIC RALPH PAYNE,** an | * | |
| Individual; and fictitious defendants | * | |
| A, B, C & D, being those persons, firms | * | |
| or Corporations whose fraud, scheme to | * | |
| defraud, and/or other wrongful conduct | * | |
| caused or contributed to the Plaintiff's | * | |
| injuries and damages, and whose true | * | |
| names and identities are presently | * | |
| unknown to Plaintiff, but will be | * | |
| substituted by amendment when | * | |
| ascertained. | * | |
| | * | |
| **DEFENDANTS.** | * | |

## DECLARATION OF JOE READ

1.      My name is Joe Read.  I am over twenty-one years of age, am of

sound mind, and am competent to make this Declaration.  This Declaration is based upon

my personal knowledge.

2.      At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Donna Harrell or Mack Harrell.

3.      I am not a physician, and have therefore never prescribed Vioxx.  I

am also not a pharmacist and I have therefore never written or filled a prescription for



Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

      4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

      5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Donna Harrell or Mack Harrell.

2

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Donna Harrell or Mack Harrell.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September  19 , 2006.

_____
Joe Read

3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA HARRELL and MACK HARRELL,** | * * * | |
| | * | |
| **PLAINTIFFS,** | * | |
| **v.** | * | |
| | * | |
| **MERCK & CO., INC., a foreign** | * | **CASE NO.** |
| **Corporation; ANNE BRANDON, an** | * | |
| **Individual; MARK M. SANDERS, an** | * | |
| **Individual; TONYA M. LOCKLIN, an** | * | **Removed from Circuit Court** |
| **Individual; JOE D. READ, an individual;** | * | **of Houston County, AL** |
| **THEODORE R. BOWSER, II, an** | * | **CV-06-502H** |
| **Individual; ERIC RALPH PAYNE, an** | * | |
| **Individual; and fictitious defendants** | * | |
| **A, B, C & D, being those persons, firms** | * | |
| **or Corporations whose fraud, scheme to** | * | |
| **defraud, and/or other wrongful conduct** | * | |
| **caused or contributed to the Plaintiff's** | * | |
| **injuries and damages, and whose true** | * | |
| **names and identities are presently** | * | |
| **unknown to Plaintiff, but will be** | * | |
| **substituted by amendment when** | * | |
| **ascertained.** | * | |
| | * | |
| **DEFENDANTS.** | * | |

## DECLARATION OF THEODORE R. BOWSER III

     1.     My name is Theodore R. Bowser III. I am over twenty-one years

of age, am of sound mind, and am competent to make this Declaration. This Declaration

is based upon my personal knowledge.

     2.     At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Donna Harrell or Mack Harrell.

     3.     I am not a physician, and have therefore never prescribed Vioxx. I

am also not a pharmacist and I have therefore never written or filled a prescription for

Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Donna Harrell or Mack Harrell.

2

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never met nor spoken with Donna Harrell or Mack Harrell.

8.     I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September _20_, 2006.

_Theodore R. Bowser III_
Theodore R. Bowser III

3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DONNA HARRELL and MACK HARRELL,** * * * * | |
| **PLAINTIFFS,** * * | |
| **v.** * * | |
| **MERCK & CO., INC., a foreign Corporation; ANNE BRANDON, an Individual; MARK M. SANDERS, an Individual; TONYA M. LOCKLIN, an Individual; JOE D. READ, an individual; THEODORE R. BOWSER, II, an Individual; ERIC RALPH PAYNE, an Individual; and fictitious defendants A, B, C & D, being those persons, firms or Corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the Plaintiff's injuries and damages, and whose true names and identities are presently unknown to Plaintiff, but will be substituted by amendment when ascertained.** * * * * * * * * * * * * * * * * * * | **CASE NO.**<br><br>**Removed from Circuit Court of Houston County, AL CV-06-502H** |
| **DEFENDANTS.** * * | |

## DECLARATION OF ANNE BRANDON

1.     My name is Anne Brandon. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Donna Harrell or Mack Harrell.

3.     I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for

Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Donna Harrell or Mack Harrell.

6.  I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.  I have never met nor spoken with Donna Harrell or Mack Harrell.

8.  I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2006.

_____
Anne Brandon

3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA HARRELL and MACK** | * | |
| **HARRELL,** | * | |
| | * | |
| **PLAINTIFFS,** | * | |
| | * | |
| **v.** | * | |
| | * | |
| **MERCK & CO., INC., a foreign** | * | **CASE NO.** |
| **Corporation; ANNE BRANDON, an** | * | |
| **Individual; MARK M. SANDERS, an** | * | **Removed from Circuit Court** |
| **Individual; TONYA M. LOCKLIN, an** | * | **of Houston County, AL** |
| **Individual; JOE D. READ, an individual;** | * | **CV-06-502H** |
| **THEODORE R. BOWSER, II, an** | * | |
| **Individual; ERIC RALPH PAYNE, an** | * | |
| **Individual; and fictitious defendants** | * | |
| **A, B, C & D, being those persons, firms** | * | |
| **or Corporations whose fraud, scheme to** | * | |
| **defraud, and/or other wrongful conduct** | * | |
| **caused or contributed to the Plaintiff's** | * | |
| **injuries and damages, and whose true** | * | |
| **names and identities are presently** | * | |
| **unknown to Plaintiff, but will be** | * | |
| **substituted by amendment when** | * | |
| **ascertained.** | * | |
| | * | |
| **DEFENDANTS.** | * | |

## DECLARATION OF ERIC PAYNE

1.      My name is Eric Payne. I am over twenty-one years of age, am of

sound mind, and am competent to make this Declaration. This Declaration is based upon

my personal knowledge.

2.      At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Donna Harrell or Mack Harrell.

3.      I am not a physician, and have therefore never prescribed Vioxx. I

am also not a pharmacist and I have therefore never written or filled a prescription for

Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

    4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

    5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Donna Harrell or Mack Harrell.

2

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Donna Harrell or Mack Harrell.

8.    I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 2O , 2006.


_____
Eric Payne

3

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

GLORIA HERNANDEZ,

            Plaintiff,

-vs-                                        Case No. 6:05-cv-221-Orl-31KRS

MERCK & CO., INC., GENA ORTEGA
f/k/a Gena Ghazzi & JOHN E. (JACK)
KILKELLY,

            Defendants.

---

## ORDER

This matter comes before the Court on the Plaintiff, Gloria Hernandez's ("Plaintiff")

Motion to Remand (Doc. 7) (the "Motion") and the Defendant, Merck & Co., Inc.'s ("Merck")

Memorandum of Law in Opposition thereto (Doc. 14). The Plaintiff also filed a Notice of

Supplemental Authority (Doc. 17), to which Merck filed a Response (Doc. 18). For the reasons

stated herein, the Plaintiff's Motion is denied.

### I.    Background

On January 12, 2005, the Plaintiff filed a Complaint (Doc. 3) against Merck, Gena Ortega

("Ortega"), and John Kilkelly ("Kilkelly") (collectively referred to, where appropriate, as the

"Defendants") in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida

alleging, *inter alia*, negligence, negligent misrepresentation, and fraud against all of the

Defendants. In essence, the Plaintiff alleges that certain cardiovascular risks were associated with

the use of Vioxx, and that the Defendants knew or should have known of those risks. The Plaintiff



further alleges that despite their knowledge, the Defendants promoted the use of Vioxx, and, in the course of promoting its use, concealed its dangerous qualities, misrepresented the risks associated with its use, and failed to warn prescribing physicians of those risks.

Merck removed the case to this Court on February 14, 2005,[1] alleging that the Plaintiff fraudulently joined Ortega and Kilkelly, that Ortega and Kilkelly are not proper defendants, and thus that this Court has diversity jurisdiction over this case.[2]

On February 15, 2005, the Plaintiff filed her Motion, arguing that the case should be remanded on the basis of offensive collateral estoppel arising from two decisions in this District granting remand in cases with different plaintiffs but the same Defendants, and, in the alternative, that Merck could not show that Ortega and Kilkelly were fraudulently joined.

Merck now asserts that offensive collateral estoppel does not apply to this case, and that it can prove fraudulent joinder, and thus seeks a denial of the Plaintiff's Motion.

## II.    Legal Analysis

A. Offensive Collateral Estoppel

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v.*

---

[1] Merck's Notice of Removal appears at Doc. 1.

[2] The Plaintiff is a resident of Orange County, Florida. Merck is a New Jersey corporation that is authorized to conduct business in Florida. At all times material to this case, Merck was engaged in the business of developing, manufacturing, selling and promoting Vioxx for consumer use by prescription. Ortega and Kilkelly are residents of the State of Florida. Ortega and Kilkelly were employed by Merck as sales representatives or managers to promote, and to encourage physicians to prescribe, Vioxx. It is thus clear that if Ortega and Kilkelly are proper defendants, this Court will not have diversity jurisdiction over this case under 28 U.S.C. § 1332.

*Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted). The offensive use of collateral estoppel "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Courts have broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331; *Cotton States*, 749 F.2d at 666.

The issue here is whether to apply the doctrine of offensive collateral estoppel to orders issued by courts in this District remanding under 28 U.S.C. section 1447(c) cases, similar to the Plaintiff's, filed against these same Defendants.[3] Courts are reluctant to apply doctrines of preclusion where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain appellate review . . . does prevent preclusion"). It is clear that "[u]nder 28 U.S.C. § 1447(d), an order remanding an action to state court pursuant to § 1447(c) is not reviewable on appeal or otherwise, even if the remand order is clearly erroneous."[4] *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000); *see also Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002).

---

[3] 28 U.S.C. § 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[4] 28 U.S.C. § 1447(d) provides, in relevant part, that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."

The orders upon which the Plaintiff seeks to rely to collaterally estop Merck are orders from courts in this District in the cases of *Kozic v. Merck & Co., Inc., Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:04-CV-324-T-27TBM ("*Kozic*"),[5] and *White v. Merck & Co., Inc., Gena Ortega f/k/a Gena Ghazzi and John E. (Jack) Kilkelly*, Case No. 8:05-CV-243-T-26MSS ("*White*"), which found that the plaintiff in those cases had not fraudulently joined Ortega and Kilkelly as defendants, and thus those courts remanded the cases to state court pursuant to 28 U.S.C. section 1447(c).[6] Therefore, because the Plaintiff seeks to collaterally estop Merck from asserting fraudulent joinder based on non-reviewable remand orders, offensive collateral estoppel is not appropriate, and Merck is entitled to assert its claim of fraudulent joinder before this Court.[7]

B. Fraudulent Joinder

Merck seeks to prevent the remand of this case to state court by alleging that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the

---

[5] Gena Ortega was formerly known as Gena Ghazzi. Doc. 3 at 1.

[6] Although neither order is specific as to the statutory basis for remand, in both cases the plaintiff moved for remand pursuant to 28 U.S.C. § 1447(c), and thus the Court assumes that each case was remanded pursuant to that section. *See Kozic*, Doc. 6 at 1; *White*, Doc. 9 at 1.

[7] Moreover, in both *Kozic* and *White*, Merck did not raise the issue, contained in the Declarations of Ortega and Kilkelly (Doc. 18 at Ex. A and B), that neither Ortega nor Kilkelly ever communicated with either the plaintiff or the plaintiff's prescribing physician. Therefore, the issue to be addressed here is not identical to the issue in *Kozic* and *White*, nor was that issue previously litigated, and thus collateral estoppel is not appropriate in this case.

resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).[8] The burden on the removing party is a heavy one. *Id.* To determine whether the case should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff, and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.*; *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). These determinations are made based on the plaintiff's pleadings at the time of removal. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561. In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

The Court will not weigh the merits of the Plaintiff's claim, other than to determine whether the Plaintiff has an arguable claim under state law. *Crowe*, 113 F.3d at 1538. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (internal citation and quotation omitted); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).

To determine whether the Plaintiff can establish a cause of action against either Ortega or Kilkelly under Florida law, the Court examines the Complaint (Doc. 3). In Count II, the Plaintiff

---

[8] Merck asserts that the Plaintiff cannot establish a cause of action against Ortega and Kilkelly, and does not raise the issue of fraudulently pled jurisdictional facts. Therefore, the second category of fraudulent joinder as outlined in *Crowe* is not at issue here.

asserts a claim for negligence against the Defendants, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, failed to adequately and accurately warn prescribing physicians of the risks associated with Vioxx, and concealed the dangerous properties of Vioxx. (Doc. 3 at 8-9). The Plaintiff asserts a claim for negligent misrepresentation against the Defendants in Count III, claiming that the Defendants knew or should have known of the risks associated with Vioxx, and despite that knowledge the Defendants advertised, marketed, sold and distributed Vioxx, the Defendants misrepresented to the Plaintiff and to her prescribing physician the safety and effectiveness of Vioxx, and the Defendants made these representations and concealed adverse information despite their knowledge of the risks associated with Vioxx. (*Id.* at 10-11). In Count IV, the Plaintiff asserts a claim for fraud against the Defendants, claiming that although the Defendants knew of the risks associated with Vioxx, the Defendants fraudulently or intentionally misrepresented to the Plaintiff and to the Plaintiff's prescribing physician the safety and effectiveness of Vioxx, and that the Defendants knew their representations were false. (*Id.* at 12-15).

After filing a Memorandum in Opposition to Remand (Doc. 14), Merck filed a Supplement in Support of Removal (Doc. 18), to which Merck attached sworn Declarations from Ortega and Kilkelly. (Doc. 18, Ex. A and B, respectively). In those declarations, Ortega and Kilkelly swear to several things, including: (1) each worked for Merck as a Professional Representative in the Tampa, Florida District; (2) that district does not include either Orange County or Orlando; (3)

neither Ortega nor Kilkelly ever had any contact with Dr. Iraj Ghahreman Lou ("Dr. Lou");[9] (4) neither Ortega nor Kilkelly ever supervised any other professional representative for Merck who ever discussed Vioxx with Dr. Lou; and (5) neither Ortega nor Kilkelly ever spoke with the Plaintiff about Vioxx. (*Id.*). The Plaintiff has not offered evidence in opposition to these statements. The Court will therefore examine whether the Plaintiff can state a claim against Ortega and/or Kilkelly in light of the information contained in their Declarations.

### *1. Negligence (Count II)*

The elements for a negligence claim in Florida are duty, breach, harm, and proximate cause. *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). In the context of claims against manufacturers arising from damages allegedly caused by the manufacturer's failure to warn of the risks associated with prescription drugs, Florida follows the "learned intermediary" doctrine, which means that the manufacturer's duty to warn of a drug's dangerous side effects is directed to the prescribing physician rather than the patient. *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *see also Mitchell v. VLI Corp.*, 786 F. Supp. 966, 970 (M.D. Fla. 1992). In this case, then, any duty to warn of the alleged risks associated with Vioxx would have flowed to Dr. Lou, the Plaintiff's prescribing physician. However, the Declarations of Ortega and Kilkelly clearly show that neither of them, either directly or through representatives under their supervision, communicated with Dr. Lou either in general or specifically about Vioxx. Thus, neither Ortega nor Kilkelly had a duty to warn Dr. Lou, and in the absence of a duty, the Plaintiff

---

[9] Merck identifies Dr. Lou as the Plaintiff's prescribing physician because Dr. Lou is the only medical provider the Plaintiff identifies in her discovery requests. (Doc. 18 at 3, Ex. C). In her pleadings and filings with this Court, the Plaintiff simply refers to a "prescribing physician," without naming that individual.

cannot prove a claim for negligence.[10] *See Whitt v. Silverman*, 788 So. 2d 210, 221 (Fla. 2001) (duty is a threshold requirement).

### 2. Negligent Misrepresentation (Count III)

To prove negligent misrepresentation, a plaintiff must prove four elements: (1) the existence of a material misrepresentation; (2) that the representation was made under circumstances in which the representor either knew of the misrepresentation, was without knowledge as to its truth or falsity, or should have known of its falsity; (3) that the representor intended to induce reliance; and (4) the plaintiff justifiably relied on the defendant representor's representation to the plaintiff's detriment. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503-1505 (11th Cir. 1993); *Atlantic Nat'l Bank of Fla. v. Vest*, 480 So. 2d 1328, 1331-32 (Fla. 2d DCA 1985). Liability is limited to the loss suffered:

> (a) by the person or one of a limited group of persons for whose benefit and guidance [the representor] intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that [the representor] intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Gilchrist Timber v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997) (*citing* Restatement (Second) of Torts § 552 (1977)). Returning to Ortega's and Kilkelly's Declarations, it is clear that neither of them communicated either directly with the Plaintiff or indirectly with her via communications to Dr. Lou. Therefore, Ortega and Kilkelly do not fall within the ambit of liability as prescribed by the Florida Supreme Court in *Gilchrist*, because neither the Plaintiff nor

---

[10] Even if the "learned intermediary" doctrine did not apply, the Plaintiff would still be unable to prove that Ortega and Kilkelly owed her a duty, because their Declarations clearly establish that not only did they not communicate with Dr. Lou, but they never communicated directly with the Plaintiff.

Dr. Lou falls within the limited category of persons to whom Ortega and Kilkelly would be liable for misrepresentations, namely that "that limited group of persons for whose benefit and guidance [Ortega and Kilkelly] intend[ed] to supply the information or [knew] that the recipient intend[ed] to supply it." *Gilchrist*, 696 So.2d at 337. Thus the Plaintiff cannot prove a claim of negligent misrepresentation against either Ortega or Kilkelly.[11]

### 3. Fraud (Count IV)

To state a claim for fraudulent misrepresentation under Florida law, the plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Elders v. United Methodist Church*, 793 So. 2d 1038, 1042 (Fla. 3rd DCA 2001) (internal citation and quotation omitted). This claim must fail for the same reason as the Plaintiff's claim for negligent misrepresentation: Merck has offered undisputed evidence that neither Ortega nor Kilkelly communicated with either the Plaintiff or Dr. Lou, and in the absence of such communication, there can be no fraudulent misrepresentation.[12]

---

[11] The case of *Albertson v. Richardson-Merrell, Inc.*, 441 So. 1146 (Fla. 4th DCA 1983), does not require a different conclusion. As described by that court, the decision in that case is squarely based on the circumstances where "[a] drug manufacturer's detail man makes representations to a physician caring for a pregnant woman." *Id.* at 1149. In *Albertson*, in direct contrast to the facts of the instant case, it was undisputed that the manufacturer's agent made representations to the plaintiff's physician.

[12] Alternatively, the Plaintiff has failed to state a claim for fraud against both Ortega and Kilkelly. Under Florida law, fraud must be pled with particularity. *Morgan v. W.R. Grace & Co.-Conn.*, 779 So. 2d 503, 506 (Fla. 2d DCA 2000); *Robertson v. PHF Life Ins. Co.*, 702 So. 2d 555, 556 (Fla. 1st DCA 1997). A plaintiff must particularly allege specific misrepresentations or omissions of fact, the time, place and manner in which the misrepresentations were made, and how those

After examining the Plaintiff's claims in light of the undisputed evidence Merck offered in the form of the sworn Declarations of Ortega and Kilkelly, the Court finds that the Plaintiff cannot state a claim for negligence, negligent misrepresentation or fraudulent misrepresentation against either Ortega or Kilkelly under Florida law. Therefore, Ortega and Kilkelly were fraudulently joined as defendants. *Kimmons v. IMC Fertilizer, Inc.*, 844 F. Supp. 738, 739 (M.D. Fla. 1994). Because the joinder of Ortega and Kilkelly was fraudulent, it does not defeat this Court's diversity jurisdiction. *Id.* Therefore, this case should not be remanded to state court. Moreover, because Ortega and Kilkelly were fraudulently joined, they should be dismissed as defendants. *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (it is appropriate for a federal court to dismiss . . . a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant); *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1292 (M.D. Fla. 2003).

**III. Conclusion**

Because an order of remand is not an appealable order, Merck was not precluded from raising the issue of fraudulent joinder before this Court. The Plaintiff will not be able to prove her

---

misrepresentations were false or misleading. *Robertson*, 702 So. 2d at 556. The Plaintiff has failed to allege what specific misrepresentations either Ortega or Kilkelly made to Dr. Lou or to the Plaintiff; the allegation that certain statements referred to in a warning letter to Merck were made to "the plaintiff and/or plaintiff's prescribing physician" is clearly deficient. Nor does the Plaintiff allege who made particular misrepresentations, when and where those misrepresentations were made, or how each misrepresentation was false or misleading. Further, in light of the Ortega and Kilkelly Declarations, the Plaintiff will not be able to prove that such statements were made either to her or to her prescribing physician. Finally, the requirement that fraud be pled with particularity also applies to claims for negligent misrepresentation. *Morgan*, 779 So. 2d at 506. Based on the reasoning discussed above, the Plaintiff will not be able to prove a claim for negligent misrepresentation, and for this reason, in addition to the discussion in Section II(B)(2), *supra*, that claim must fail.

-10-

state law claims of negligence, negligent misrepresentation and fraudulent misrepresentation against either Ortega or Kilkelly, and therefore these individuals were fraudulently joined as defendants. Therefore, Ortega and Kilkelly will be dismissed as defendants, and this case will not be remanded to state court. Accordingly, it is

**ORDERED THAT** the Plaintiff's Motion for Remand (Doc. 7) is DENIED, and Ortega and Kilkelly are DISMISSED as defendants.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 3, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-11-

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CONCHITA MERCED-TORRES and CESAR
VIVES,**

**Plaintiffs,**

**-vs-**                                      **Case No. 6:05-cv-449-Orl-19DAB**

**MERCK & CO., INC., GENA ORTEGA f/k/a
GENA GHAZZI, an individual, and JOHN E.
(JACK) KILKELLY, an individual**

**Defendants.**

## ORDER

This case comes before the Court on the following:

1.  Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand and
    Supporting Memorandum of Law. (Doc. No. 12, filed on April 4, 2005).

2.  Defendant Merck & Co., Inc.'s Memorandum in Opposition to Plaintiffs' First Motion
    to Remand. (Doc. No. 23, filed on April 21, 2005).

3.  Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting
    Plaintiffs' Motion to Shorten Time. (Doc. No. 18, filed on April 8, 2005).

4.  Plaintiffs Conchita Merced-Tores' and Cesar Vives' Request that the Court rule on
    Defendant Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting
    Plaintiffs' Motion to Shorten Time. (Doc. No. 32, filed on May 6, 2005).

5.  Defendant Merck & Co., Inc.'s Opposition to Plaintiffs' Request that the Court rule on
    Defendants' Merck & Co., Inc.'s Objections to the Magistrate Judge's Order Granting

-1-



Plaintiffs' Motion to Shorten Time. (Doc. No. 33, filed on May 6, 2005).

## Background

On March 24, 2005, Defendant Merck & Co., Inc. ("Merck") filed a notice of removal of Plaintiffs' Conchita Merced-Tores' and Cesar Vives' suit from the Ninth Judicial Circuit in Orange County, Florida to the United States District Court for the Middle District of Florida. (Doc. No. 1, filed on March 24, 2005). In the notice, Merck argued that Plaintiffs had fraudulently joined Gena Ortega and John Kilkelly in their lawsuit in the Ninth Judicial Circuit and that complete diversity of citizenship existed between Plaintiffs and Merck.

In the complaint, Plaintiffs alleged six counts against Defendant Merck & Co., Inc. and four counts against Defendants Gena Ortega and John Kilkelly regarding Plaintiffs' ingestion of Vioxx, including strict liability against Merck, negligence, negligent misrepresentation, and fraud against all Defendants, a violation of the Florida Deceptive and Unfair Trade Practices Act against Merck, and loss of consortium against all Defendants. (Doc. No. 2, filed on March 24, 2005). Plaintiffs also alleged that Merck is a New Jersey corporation that was authorized to conduct business in Florida and that Ortega and Kilkelly are residents of Florida and sales representatives employed by Merck to promote market, sell, distribute, and encourage physicians to prescribe Vioxx. (*Id.* at ¶¶ 10, 14, 15).

On April 4, 2005, Plaintiffs filed their First Motion to Remand, arguing that collateral estoppel precludes Merck from removing this case to federal court, that Merck's contention that Plaintiffs' joinder of Ortega and Kilkelly was fraudulent is unsupported by the facts and case law, and that Plaintiffs had alleged sufficient facts to support claims against Ortega and Kilkelly. (Doc. No. 12). Plaintiffs also filed a Motion to Shorten Time requesting the Court to order Defendants to provide the identity of the Merck sales representatives responsible for soliciting Vioxx to Kissimmee, Florida

-2-

and/or Orange County, Florida and to provide the identity of the Merck sales representatives from 2001 to the present who were responsible for soliciting Dr. Olga Penerena and Dr. Cecilio Torres-Ruiz for Vioxx. (Doc. No. 13, filed on April 4, 2005).

In opposing Plaintiffs' First Motion to Remand, Defendants Ortega and Kilkelly filed declarations with the Court.[1] (Doc. No. 23, Ex. A, "Declaration of Gena Ortega") (Doc. No. 23, Ex. B, "Declaration of John Kilkelly"). In her declaration, Ortega testified that she had been employed by Merck as a professional representative, that she was responsible for making contacts with healthcare professionals in the Brandon/Tampa area regarding Vioxx, and that she never had any contact with Dr. Olga Penerena or Dr. Cecioilo Ruiz-Torres. (Doc. No. 23, Ex. A, ¶¶ 3, 5). Ortega further testified that she never supervised any other professional representative for Merck who had any discussions regarding Vioxx with either of these physicians and that she had never had a conversation with Plaintiffs concerning Vioxx. (*Id.* at ¶¶ 6, 7). In his declaration, Kilkelly similarly testified that he worked for Merck in the Tampa Florida District, that he never called any physician in Kissimmee Florida or supervised any professional representatives who had contact with health care professionals in Orange County, Florida or Kissimmee, Florida, that he never contacted Dr. Olga Penerena or Dr. Cecilio Ruis-Torres, and that he never spoke with Plaintiffs regarding Vioxx. (Doc. No. 23, Ex. B, ¶¶ 2, 5, 6, 9).

Plaintiffs have not countered the sworn declarations of Ortega and Kilkelly with evidence.

---

[1] While the declarations have not been notarized, Ortega's and Kilkelly's declarations are admissible as evidence because they meet the requirements of 28 U.S.C. section 1746. Under 28 U.S.C. section 1746, any matter that is required to be supported by a sworn declaration may, with like force and effect, be supported by an unsworn declaration, subscribed by the party, in writing, dated, and substantially attesting that the party declares under penalty of perjury that the foregoing is true and correct.

On April 7, 2005, the Magistrate Judge granted Plaintiffs' Motion to Shorten Time and ordered Merck to produce the identities of the Merck sales representatives sought in Plaintiffs' interrogatories as set forth in their motion by 5pm on April 8, 2005. (Doc. No. 16, filed on April 7, 2005).

Merck objected to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time. (Doc. No. 18, filed on April 8, 2005).

This Order analyzes Plaintiffs' Motion to Remand and Merck's Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time.

### Standard of Review

The Constitution and Congress limit a federal court's jurisdiction by restricting the types of cases which the courts may hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, there is a strong presumption that state court jurisdiction is proper, and the statutory right of removal is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.") (citations omitted). All doubts about jurisdiction should be resolved in favor of remand to state court. *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citations omitted).

### Analysis

Plaintiffs argue that collateral estoppel precludes Merck from removing this case from state court to federal court because Merck has previously attempted and failed to defeat remand by claiming fraudulent joinder in claims involving Ortega, Kilkelly, and Merck. The orders upon which Plaintiffs seek to rely to collaterally estop Merck are orders from courts in this district, the Southern District of

-4-

Florida, and the Southern District of Illinois.

A party properly invokes collateral estoppel when "the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Cotton States Mutual Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984) (internal citation and quotation omitted). The offensive use of collateral estoppel occurs when the plaintiff seeks to preclude the defendant from litigating an issue that the defendant previously litigated in an action with another party. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Courts have broad discretion in determining whether offensive collateral estoppel is appropriate. *Id.* at 331.

Plaintiffs move to remand this case to state court pursuant to 28 U.S.C. section 1447(c).[2] Under 28 U.S.C. section 1447(d),[3] an order remanding an action to state court pursuant to section 1447(c) is not reviewable on appeal, even if the remand order is clearly erroneous. *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1291 (11th Cir. 2000). Offensive collateral estoppel is not appropriate in cases where an issue is not reviewable on appeal. *Warner/Elektra/Atlantic Corp. v. County of Dupage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally estop"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2nd Cir. 1986) ("inability to obtain appellate review...does prevent preclusion"). Because the orders that Plaintiffs urge the Court to rely on to

---

[2] 28 U.S.C. section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[3] 28 U.S.C. section 1447(d) states: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise."

collaterally estop Merck are not reviewable on appeal, the Court finds that the doctrine of offensive collateral estoppel is not applicable to this case.

Merck seeks to prevent remand of this case to state court by arguing that Ortega and Kilkelly were fraudulently joined as defendants and, as such, do not defeat this Court's diversity jurisdiction. When alleging fraudulent joinder, "the removing party has the burden of proving that either: (1) there is no possibility that the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The removing party bears a heavy burden in meeting these requirements. *Id.* To determine whether the case should be should be remanded, the Court evaluates the factual allegations in the light most favorable to the plaintiff and resolves any uncertainties about state substantive law in the plaintiff's favor. *Id.; see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). In addition to the plaintiff's pleadings, the Court may consider evidence such as affidavits and depositions submitted by the parties. *Crowe*, 113 F.3d at 1538; *Cabalceta*, 883 F.2d at 1561.

Plaintiffs alleged several claims against Ortega and Kilkelly which include negligence, negligent misrepresentation, fraud, and loss of consortium. Plaintiffs, however, have failed to counter the declarations of Ortega and Kilkelly with evidence. Because the declarations of Ortega and Kilkelly demonstrate that neither of them, either directly or through representatives under their supervision, communicated with Plaintiffs or Plaintiffs' physicians about Vioxx, Plaintiffs cannot establish a cause of action for negligence, negligent misrepresentation, fraud, or loss of consortium against Ortega or Kilkelly. Thus, Ortega and Kilkelly were fraudulently joined.

As for Plaintiffs' attempt to seek the identities of the representatives from Merck who are

-6-

connected to Plaintiffs' case, the Multi-District Litigation Panel will determine the identities of the representatives, and it is not necessary for Merck to produce this information at this time. Therefore, the Court sustains Merck's Objections to the Magistrate Judge's Order that Merck produce the identities of the sales representatives sought in Plaintiffs' interrogatories as set forth in their motion.

### Conclusion

Based on the foregoing, the Court rules as follows:

1.  Plaintiffs Conchita Merced-Torres' and Cesar Vives' First Motion to Remand is **DENIED.** (Doc. No. 12).

2.  Defendant Merck & Co, Inc.'s Objections to the Magistrate Judge's Order Granting Plaintiffs' Motion to Shorten Time are **SUSTAINED.** (Doc. No. 18).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May ____17th____ 2005

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

-7-