IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNA HARRELL and | * | |
| MACK HARRELL, | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| v. | * | CASE NO. 1:06cv849-MHT |
| | * | |
| MERCK & CO., INC., et al., | * | |
| | * | |
| DEFENDANTS. | * | |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO REMAND

COME NOW the Plaintiffs, Donna Harrell and Mack Harrell, and hereby submit their brief in support of their Motion to Remand. Defendant, Merck & Co., Inc., has failed to establish that this Court has jurisdiction over these proceeding, and, as a result, the Plaintiffs' Motion to Remand is due to be **GRANTED**, and this cause remanded back to the Circuit Court of Houston County, Alabama for the following reasons:

1. This Court lacks subject matter jurisdiction. The Plaintiffs and six of the named Defendants are citizens of Alabama. As such, complete diversity of jurisdiction is absent. Defendant Merck has failed to establish that Defendants Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II and Eric Ralph Payne ("Individual Resident Defendants") were fraudulently joined as parties to this cause to defeat federal jurisdiction. Defendant has failed to establish that there is "no possibility" that the Plaintiffs cannot prevail in state court against the Individual Resident Defendants. In fact, the allegations made against the Individual Resident Defendants are sufficiently pleaded under and supported by Alabama law. Further, the allegations set forth in Plaintiffs' state court complaint adequately set forth factual and legal bases to support the

1

claims against averred against the Individual Resident Defendants, and the stated allegations clearly indicate that the Individual Resident Defendants acted independently and in concert with Defendant Merck. Joint and several liability and alternative liability, contrary to the confusing arguments of Defendant Merck, are well-recognized methods of pleading under Alabama law.

2. Legg v. Wyeth does not support the conclusion that joinder of the Individual Resident Defendants was fraudulent.

3. Defendant Merck's removal petition is defective because all Defendants have not joined in removal of this cause to federal court.

I.    **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

This product liability action arises from the injuries of Donna Harrell as a result of taking the prescription drug VIOXX® (rofecoxib), a prescription drug designed to treat pain through reduced inflammation. As set forth in his state-court complaint, Mrs. Harrell was prescribed and used VIOXX® and as a result suffered a heart attack on or about September 9, 2004. The physician who prescribed VIOXX to Donna Harrell has his office in Houston County, Alabama, and Donna Harrell had her prescription of the medication filled in that county. Donna Harrell ingested the prescription medication VIOXX® and the damages and injuries resulting from Donna Harrell's use of the prescription medication VIOXX® occurred in Houston County, Alabama, where the Plaintiffs reside. As a direct and proximate result of Donna Harrell consuming VIOXX®, she suffered injuries including a heart attack, physical pain and suffering, emotional distress, and other damages as set forth in more detail in the state-court complaint.

Defendant Merck, the Individual Resident Defendants, and/or the named fictitious defendants designed, manufactured, marketed, distributed, and/or sold VIOXX®, despite knowing that VIOXX® caused serious and potentially life-threatening side effects. The Defendants, jointly and severally, encouraged the use of VIOXX® through an aggressive marketing campaign, including through its sales representatives detailing physicians, and through direct-to-consumer advertising. The direct-to-consumer advertising included advertisements on television and in major magazines and newspapers as well as direct mail throughout Alabama. In addition, the Defendants misrepresented the effectiveness of VIOXX® and concealed the known and serious side effects from physicians and from the consuming public, including Donna Harrell. The Defendants knew of the defective and unreasonably dangerous nature of VIOXX®, yet continued to design, manufacture, and sell VIOXX® so as to maximize gross sales and profits in conscious disregard of the foreseeable harm to be caused by VIOXX®. Though the Defendants were aware that VIOXX® was unreasonably dangerous as designed, they failed to adequately test VIOXX® and failed to warn the public of the drug's dangerous propensities. The Individual Resident Defendants or the sales representatives who detailed the prescribing physician in this cause were informed of the drug's dangerous propensities, but participated in the scheme to suppress and withhold this information from physicians and the consuming public. The sales representatives, in concert with Defendant Merck, benefited by the suppression of this critical information by increasing the sales of the drug, which correspondingly increased commissions, bonuses and incentives earned from the sale of VIOXX®. The Defendants also failed to provide Mrs. Harrell with timely and adequate post-marketing warnings or instructions as additional information became

available to the Defendants about the risks posed to those who ingested or would ingest VIOXX®, including Donna Harrell.

Furthermore, Defendants failed to exercise ordinary care and were negligent in the manufacture, marketing, sale, and testing of VIOXX® as it placed the drug into the stream of commerce. Despite their knowledge that VIOXX® caused serious side effects, the Defendants continued to market VIOXX® to the public, including Mrs. Harrell, when there were safer, alternative methods of treatment available.

Defendant Merck also breached express and implied warranties made in relation to VIOXX®. Both before Mrs. Harrell was first prescribed VIOXX® and during the period in which she ingested VIOXX®, Defendant Merck expressly warranted and represented that VIOXX® was safe, and impliedly warranted that VIOXX was safe and fit for its intended, ordinary uses. The fact that Defendant Merck was providing false information to the public about VIOXX® was known or became known to the Individual Resident Defendants and other sales representatives of Defendant Merck through this country, and the company sales representatives became active participants in this mass cover-up of critical safety information. Mrs. Harrell and her prescribing physician reasonably relied upon the representations of the Defendants and relied upon the Defendants' superior knowledge as to the safety and fitness for the intended use of VIOXX®. Contrary to the warranties and representations of the Defendants, VIOXX® was not safe and could and did cause serious side effects and harm to those who took the drug, and accordingly was not fit for its intended, ordinary purpose. At the time the Defendants marketed, sold and distributed VIOXX® for use by Mrs. Harrell, the Defendants knew their representations about the safety of VIOXX® were false, or they

made those representations with reckless disregard for their falsity. The Defendants' wrongful acts or omissions were a contributing or proximate cause of Mrs. Harrell's injuries.

On August 17, 2006, the Plaintiffs filed suit in the Circuit Court of Houston County, Alabama. Plaintiffs asserted various causes of action against the Defendants, including product liability under the AEMLD, negligence, breach of express warranty, breach of implied warranty, fraudulent suppression and concealment, fraudulent misrepresentation, wrongful death, and loss of consortium.

On September 21, 2006, the Defendants filed a Notice of Removal with this Court. Plaintiffs now urge this Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c) and the authority referenced herein.

## II.    SUMMARY OF ARGUMENT

This case represents one of many attempts by Defendant Merck to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. Merck's contention that the Plaintiffs have named Individual Resident Defendants as a tactic to attempt to defeat diversity is an affront to Plaintiffs' due process rights to seek relief from those who are responsible for Mrs. Harrell's injuries in the forum of their choosing.

This and other federal District Courts in the Eleventh Circuit have repeatedly rejected the frivolous attempts by Defendant Merck to remove validly pleaded Vioxx cases from state to federal court. See, e.g., Irvin v. Merck & Co., Inc., et al, Case No. 03-80514-cv-Hurley (S.D. Fla. Oct. 9, 2003); Turner v. Merck & Co., Inc., et al, Case No. 2:05cv702-T (M.D. Ala. Sept. 21, 2005); Struthers v. Merck & Co., Inc., et al., Case No.

2:06cv127-MHT (M.D. Ala. March 13, 2006); <u>Leverett v. Merck & Co., Inc., et al.</u>, Case

No. 3:06cv128-MHT (M.D. Ala March 15, 2006).[1]   Judge Myron Thompson in his

remand orders in <u>Struthers</u> and <u>Leverett</u>, VIOXX®-related cases against the same

Defendants as here, recently wrote:

> This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now before the court on plaintiff's motion to remand.  The Court agrees with plaintiff that this case should be remanded to state court.  First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiff has colorable claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been <u>fraudulent misjoinder</u> of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), <u>see</u> <u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360 (11th Cir. 1996).

Judge Hurley, in his remand order in <u>Irvin</u>[2], likewise held the plaintiffs presented

colorable claims that, if proven, would subject the in-state, sales representative

defendants to liability.  These cases are indistinguishable from the present case.

The sole question before this Court is whether this action should be remanded as

having been improvidently removed.  Removal is improper where complete diversity of

citizenship is lacking.  In this case, the Plaintiffs and the Individual Resident Defendants,

as set forth in the state-court complaint, are residents of Alabama.  Thus, this Court

would not have had original jurisdiction had Plaintiffs chose to prosecute this action in

federal court.

---

[1] See Exhibit "A", attached and filed with this brief.  See also Exhibit "C" for other federal districts courts which have ruled accordingly in Vioxx-related litigation.

[2] The <u>Irvin</u> case was removed from and remanded back to state court and resulted in the court charging costs and attorneys' fees against Merck for its frivolous removals.  <u>Irvin v. Merck Co., Inc.</u> Case No. 03-80514-cv-Hurley (S.D.Fla. Feb. 14, 2005).  See Exhibit "B" attached and filed with this brief.

Defendant Merck has wholly failed to establish that the Plaintiffs fraudulently joined the Individual Resident Defendants as a means to defeat diversity of citizenship. The Plaintiffs' Complaint alleges claims against all the Defendants that, if proven at trial, will sustain a jury verdict against all Defendants. As averred and as set forth in more detail herein, the Individual Resident Defendants were active participants in a scheme to mislead doctors and the consuming public about the dangers of the drug, VIOXX®. Pursuant to Alabama law, the Individual Resident Defendants can be found liable for their active participation in a fraudulent scheme in this state.

Further, the Individual Resident Defendants have not joined in Merck's removal petition and, as such, removal of this cause by Merck was inappropriate. The Individual Resident Defendants are necessary parties to a removal action. To the extent Defendant Merck seeks to escape a state court action because it contends that the Individual Resident Defendants are not the properly named sales representatives, this fact does not preclude remand to state court.

## III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1447(c), after a case has been removed to federal district court but "at any time before final judgment," the plaintiff may move for remand, and "the case *shall* be remanded [if] it appears that the district court lacks subject matter jurisdiction." (Emphasis added.) It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power established by Article III of the United States as authorized by Congress. See University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Because the statutes governing removal

are jurisdictional, and because removal jurisdiction raises significant federalism concerns, removal statutes must be strictly construed in favor of state court jurisdiction and against removal.  See Shamrock Oil & Gas v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868 (1941); University of South Alabama, 168 F.3d at 411; Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1221 (M.D. Ala. 1999) (DeMent, J.).

"An action is not properly removable if it consists of a non-separable controversy involving both resident and nonresident defendants." Coker v. Amoco Oil Co., Inc., 709 F.2d 1433, 1439 (11th Cir. 1983).  Thus, where a removing defendant asserts federal subject matter jurisdiction based on an amount in controversy over $75,000 and the diversity of citizenship of the parties, the defendant must show there is actually complete diversity; that is, every plaintiff must be diverse from every defendant.  Triggs v. John Crum Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (citing Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).

In an action based upon a removal petition and a motion to remand, the defendant, as the removing party, bears the burden of establishing federal subject matter jurisdiction.  See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).  Because federal courts are courts of limited jurisdiction, all doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court, University of South Alabama, 168 F.3d at 411; Pacheco de Perez, 139 F.3d at 1373; Seroyer v. Pfizer, Inc., 991 F. Supp. 1308, 1312 (M.D. Ala. 1997).  The court "must accept all factual allegations in the Complaint as true and 'construe them in the light most favorable to the plaintiff.'"  Henderson v. Washington Nat'l Ins. Co., _F.3d_, 2006 WL 1867353 (11th Cir. 2006).  Accord Cope v. American Int'l Group, 2006 WL 317238 *1 (M.D. Ala.

2006) (Albritton, Senior J.) ("[T]he Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

## IV.    ARGUMENT

### A.    Diversity jurisdiction does not exist.

Defendant Merck does not dispute that complete diversity is missing on the face of Plaintiffs' Complaint. Rather, Defendant Merck, in contravention of the settled law of this State, contends that the citizenship of the Individual Resident Defendants should be disregarded on the ground that they were fraudulently joined. Defendant Merck has failed to carry its burden on this issue and, thus, this cause is due to be remanded back to the Circuit Court of Houston County, Alabama.

### 1.    The standard for fraudulent joinder supports remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs, 154 F.3d at 1287. Arguments regarding fraudulent joinder fail if there is any possibility that a state court would find that the Complaint states a cause of action against a resident defendant. Id. at 1287. The removing party bears the burden of establishing fraudulent joinder by "clear and convincing evidence." Henderson, _F.3d at _ [p.3]. See Coker, 709 F.2d at 1440; see also, Pacheco de Perez, 139 F.3d at 1380; Cope at * 2. That burden is a heavy one. See Pacheco de Perez, 139 F.3d at 1380; Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (1981). To prove that a resident defendant has been fraudulently joined, the removing defendants must show either that "there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court or that there has been outright fraud in the

plaintiff's pleading of jurisdictional facts." <u>Coker</u>, 709 F.2d at 1440; <u>Pacheco de Perez</u>, 139 F.3d at 1380; <u>Crowe</u>, 113 F.3d at 1538. <u>See also</u> Henderson, _F.3d at _ [3] (setting forth two occasions when fraudulent joinder may exist); and <u>Triggs v. John Crump Toyota</u>, 154 F.3d 1284, 1287 (11th Cir. 1998)(setting forth three occasions when fraudulent joinder may exist).

"While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'" <u>Crowe</u>, 113 F.3d at 1538 (quoting <u>B. Inc.</u>, 663 F.2d at 550)(citations omitted). "[T]he trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." <u>Id.</u> (quoting <u>B., Inc.</u>, 663 F.2d a 548-49). "When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." <u>Crowe</u>, 113 F.3d at 1538. According to the Court in <u>Crowe</u>:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved."

<u>Id.</u> at 1541-42 (quoting <u>B., Inc.</u>, 663 F.2d at 550)(emphasis added).

Stated differently, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." <u>Crowe</u>, 113 F.3d at 1542. "Where there have been

allegations of fraudulent joinder . . . the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham ... and is not fraudulent in fact or in law." B., Inc., 663 F.2d at 550 (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 177 (5th Cir. 1968)).

### 2.    The resident defendants were not fraudulently joined.

Defendant Merck has made no claim that Plaintiffs fraudulently pleaded jurisdictional facts. Accordingly, this Court's inquiry is limited to determining whether there is a *possibility* that the state court might find, under Alabama law, that the Plaintiffs have asserted valid claims against any one of the resident defendants. See Triggs, 154 F.3d at 1287; Crowe, 113 F.3d at 1538. Where, as here, the Notice of Removal is filed before the Plaintiffs have had full opportunity to develop their claims against the Individual Resident Defendants through discovery, Alabama federal courts have assessed those claims in accordance with the standard of Fed. R. Civ. P. 11. See, Clay, 77 F. Supp. 2d at 1224 (De Ment, J.); see also Sellers v. Foremost Ins. Co., 924 F. Supp. 1116, 1118-19 (M.D. Ala. 1996) (Thompson, J.). "[T]o block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sellers, 924 F. Supp. at 1119. "[T]o block a fraudulent-joinder charge *based on lack of legal support*, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a non-frivolous

argument for the extension, modification, or reversal of existing law or the establishment of new law." Id. at 1119 n. * (emphasis in original).

"If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41 (citing Davis v. GMC, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). The Plaintiff is not required to have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. Triggs, 154 F.3d at 1287.

Defendant Merck relies upon rulings by other courts, including In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272 (S.D.N.Y. 2001); In re Baycol Products Litigation, MDL 1431, Order dated March 26, 2004; and Fowler v. Pharmacia & Upjohn et al., CV-04-OT-712-M, Order dated June 24, 2004,[3] for the general proposition that the Plaintiffs cannot sustain their claims against the Individual Resident Defendants. Defendant Merck's reliance on the rulings in these cases falls short because those courts applied a standard of "no reasonable basis" to determine whether the plaintiffs' claims against non-diverse defendants were sufficiently pleaded to avoid federal court jurisdiction. This standard is substantially different than the "no possibility" standard utilized by courts in the Eleventh Circuit. See Triggs, 154 F.3d at 1287 (citing

---

[3] The resident defendant in Fowler was not a sales representative but was an account manager for a separate corporate entity. The court applied New York and Minnesota law which varies significantly from Alabama law. The court in Fowler, at 30, was only partially persuaded by the reasoning in In re Rezulin and In re Baycol, stating, "those courts go further than this court would go in that they may exclude claims against even active, knowledgeable sales representatives."

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996)).[4]
Consequently, the holdings in In re Rezulin and In re Baycol cannot be relied upon to
resolve the issues in this case.

The Plaintiffs have asserted valid claims under Alabama law against the
Individual Resident Defendants.

a.    **The Plaintiffs have stated valid product liability (AEMLD) claims against the Individual Resident Defendants.**

To establish a prima facie case under the Alabama Extended Manufacturer's
Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1)    He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)    Showing the above elements, a plaintiff has proved a prima facie case although

(a)    the seller has exercised all possible care in the preparation and sale of her product, and

(b)    the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

See Casrell v. Altec Industries, Inc., 335 So. 2d 128, 132-33 (Ala. 1976); Atkins v.
American Motors Corp., 335 So. 2d 134, 141 (Ala. 1976).

----

[4] Defendant Merck throughout its removal petition wrongfully cites and relies upon the "no reasonable basis to predict" standard – a standard of review clearly inapplicable in the Eleventh Circuit.

It is well settled under Alabama law that employees of a company may be held liable for their active participation in the torts of the company. "[O]fficers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." Ex parte Charles Bell Pontiac, 496 So. 2d at 775 (citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp. 505, 513 (M.D. Ala. 1983)); see Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999); see Seaborn v. R. J. Reynolds Tobacco Co., 1996 WL 943621 (M.D. Ala., Dec. 30, 1996) (NO. CIV. A. 96-T-1540-N).

In the case at bar, the Individual Resident Defendants aggressively marketed VIOXX® to healthcare professionals, including Mrs. Harrell's physician, by frequently calling on physicians, distributing samples to physicians to be given to patients, conducting educational seminars for physicians, and distributing sales literature to healthcare professionals and the consuming public. The Individual Resident Defendants, in communications with physicians, compared the efficacy of VIOXX® to other existing drugs, sought to distinguish VIOXX® from other drugs already on the market, and worked to persuade physicians to prescribe VIOXX® to their patients. The Individual Resident Defendants provided physicians with VIOXX® product information. Throughout these activities, the Individual Resident Defendants worked to increase the sales of VIOXX® and their own personal financial gain.

Defendant Merck and the Individual Resident Defendants had far superior knowledge of the efficacy and safety profile of VIOXX® over that of prescribing physicians and patients who took the drug. Donna Harrell and her prescribing physician detrimentally relied on information provided by the Individual Resident Defendants. The

Individual Resident Defendants provided false, fraudulent, incorrect, misleading and/or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of VIOXX®) to the prescribing physician, and the prescriber passed this erroneous information on to his patients, including Mrs. Harrell. Mrs. Harrell relied on such information through the representations of her physician. If these allegations are proven to be true, a finding of individual liability under AEMLD against the Individual Resident Defendants is more than a mere "possibility."

In Clay and Seaborn, *supra*, this Court found that, to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." Clay, 77 F. Supp. 2d at 1224; Seaborn, 1996 WL 943621, at *3. The Court allowed the plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual defendants in the event plaintiffs had named the wrong individuals at the outset. Significantly, the Court noted that discovery might well establish that the individual in-state defendant might have had superior knowledge to others, which could establish his independent liability under the AEMLD.

Other United States District Courts have also consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of products liability actions, seeking damages as the result of a defective drug. See Barry Pace, et al. v Parke-Davis, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000)(Johnson, J.); see also Donald McCaffery v. Warner-Lambert Co., et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) (Propst, J.); see also Acton v. R.J. Reynolds Tobacco Co., No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996). And other United States District Courts have remanded cases to state

courts or refused to stay other Vioxx-related, products-liability litigation in federal courts throughout this country. <u>See</u>, <u>Landrum v. Merck & Co., Inc., et al.</u>, Case no. CV-05-01055-J (N.D. Ala. May 25, 2005) (holding that diversity jurisdiction was absent and remanding to state court, relying upon <u>Marshand v.Wyeth, et al.</u>, CV-03-CO-319-5-W (N.D. Ala. 2004)); <u>Sokarda, et al. v. Merck & Co., Inc., et al.</u>, Case no. SACV-05-177-JFW (MANX) (C.D. Calif. April 22, 2005) (holding that under California law, case should be remanded to state court based upon properly named in-state defendant); <u>Amisch v. Merck Co., Inc., et al.</u>, Case no. 04-CV-847-DRH (S.D. Ill. Dec. 22, 2004) (holding that motion to stay pending JPML's ruling on motion to transfer should be denied and that forum court should address subject matter jurisdiction, and remanding case to state court because defendant failed to meet its burden to sustain removal); <u>Brame v. Merck & Co., Inc., et al.</u>, Case no. 05-034-GPM (S.D. Ill. Feb. 17, 2005) (holding that defendant failed to meet its burden to establish fraudulent joinder, refusing to stay proceedings pending ruling by JPML, and remanding case back to state court); <u>McQuay v. Merck & Co., Inc., et al.</u>, Case No. 05-038-GPM (S.D. Ill. Feb. 17, 2005) (same); <u>Tomlin v. Merck & Co., Inc., et al.</u>, Case no. 04-14335-CIV-Moore (S.D. Fla. Feb. 14, 2005) (holding that motion to stay pending JPML was inappropriate, holding that plaintiff adequately pleaded a claim against sales representative under Florida law, finding that there was no fraudulent joinder, and remanding the case back to state court).[5]

As Judge Ira DeMent wrote in <u>Brown</u>, 77 F. Supp. 2d at 1223, quoting <u>de Perez</u>, 139 F.3d at 1380-81 and <u>Crowe</u>, 113 F.3d at 1538, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state

---

[5] See Exhibit "C", attached and filed with this Brief.

law." The question of whether drug sales representatives can be held liable under the AEMLD is "arguable under state law." As a result, the Plaintiffs have stated "possible" viable claims against the Individual Resident Defendants.

### b. The Plaintiffs have alleged valid claims of fraud, fraudulent misrepresentation, fraudulent suppression and concealment against the Individual Resident Defendants.

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code § 6-5-101 (1975); Harrington v. Johnson-Rast & Hays Co., 577 So.2d 437 (Ala.1991). In the case at bar, Plaintiffs allege that Defendant Merck and the Individual Resident Defendants, together or separately, negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX® was safe. The Individual Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Mrs. Harrell, to purchase VIOXX®. Moreover, Plaintiffs allege that, at the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth. Plaintiffs also allege that Donna Harrell and her prescribing physician detrimentally relied upon the material misrepresentations and suppressions of the Defendants and, as a result, Donna Harrell suffered injuries.

Defendant Merck asserts in its Notice of Removal that claims of fraud cannot be maintained against the Individual Resident Defendants.  In so arguing, Defendant Merck suggests that the Individual Resident Defendants made no representations to Mrs. Harrell. However, it "is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." Bloodsworth, 2005 WL at *11 (quoting Thomas v. Halstead, 605 So. 2d 1181, 1184 (Ala. 1992)).  "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." Id. at *11 (quoting Thomas, 605 So. 2d at 1184). It is well settled in Alabama law that "there is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." Id. at *11 (quoting Wheaten v. Sessions, 50 F. Supp. 2d 1168, 1174 (M.D. Ala. 1999) (DeMent, J.); see Colonial Bank of Ala. v. Ridley & Schweigert, 551 So. 2d 390, 396 (Ala. 1989); see also Brasher v. Sandoz Pharmaceuticals Corp., 2001 U.S. Dist. Lexis 18364, at *31 - *33 (N.D. Ala. Sept. 21, 2001) (wherein the Court found that the plaintiffs "clearly were the parties who were injured by the alleged fraud.  It also was clear that the drug manufacturer 'for its own purposes of promoting its product and making a profit, intended to reach and influence the patients of obstetricians, such as the plaintiffs.'")  Thus, Defendant Merck's position that Plaintiffs have no claim against the Individual Resident Defendants because those Defendants made no representations directly to Donna Harrell is without merit.

Furthermore, United States District Courts in Alabama have repeatedly rejected similar fraudulent joinder claims in the context of fraudulent misrepresentation and suppression claims against pharmaceutical sales representatives and have remanded these

cases to state court. See Floyd v. Wyeth, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); Crittenden v. Wyeth, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); Terrell v. Wyeth, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); Ballard v. Wyeth, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Brunson v. Wyeth, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Blair v. Wyeth, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); Storey v. Wyeth, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); Cash v. Wyeth, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); Marshal v. Wyeth, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); McGowan v. Wyeth, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); Johnson v. Wyeth, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); Bradford v. Wyeth, No. 03-P-3157-5 (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Smith v. Wyeth, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Boudreaux v. Wyeth, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); Bridges v. Wyeth, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); Hough v. Wyeth, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); Brogden v. Wyeth, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004)

(Thompson, J.); Reeder v. Wyeth, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); Eaton v. Wyeth, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); Allen v. Wyeth, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); Chestnut v. Wyeth, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); King v. Wyeth, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); Culpepper v. Wyeth, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); Braden v. Wyeth, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); Cross v. Wyeth, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); Bennett v. Wyeth, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[6]

Federal District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. Accordingly, the Individual Resident Defendants were not fraudulently joined in this case.

> ### c.   The Plaintiffs' complaint was pleaded with sufficient particularity to support claims against the Individual Resident Defendants.

Defendant Merck also asserts that Plaintiffs failed to plead their claim of fraudulent misrepresentation with particularity.[7] However, in their Complaint, Plaintiffs sufficiently allege that the Individual Resident Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of VIOXX® and its harmful side effects in order to induce physicians to prescribe these drugs and to

---

[6] See Exhibit "D," attached and filed with this brief.

[7] Comically, perhaps, Defendant Merck contends that the Plaintiffs seem to be confused about whether the sales representatives committed independent wrongful acts. As the court can clearly see from the sampling of evidence proffered in the complaint and in this pleading, the sales representatives acted both in conjuction with and independent of their employer, Merck. Apparently, Defendant Merck does not understand the concepts of joint and several liability or the availability of alternative pleading under Alabama law.

induce consumers, including Mrs. Harrell, to purchase VIOXX®. Plaintiffs further allege that the Individual Resident Defendants misrepresented and/or suppressed the fact that VIOXX® was not safe and that the Defendants were under a duty to communicate this information to Plaintiffs, that the Individual Resident Defendants marketed, sold, supplied and/or otherwise distributed VIOXX®, that VIOXX® was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions, that the Defendants failed to warn Mrs. Harrell of the dangers of VIOXX® therapy, that the Defendants failed to provide post-marketing warnings to Mrs. Harrell after she began to take the drug, and that as a direct and proximate result of the Defendants placing VIOXX® on the market and Mrs. Harrell's ingestion of VIOXX®, Mrs. Harrell suffered injuries including heart attack. These allegations are sufficient to support the claims asserted by Plaintiffs in their Complaint; likewise, the claims are pleaded with sufficient particularity to support Plaintiffs' fraud claims against the Defendants, including the Individual Resident Defendants.

Further, Plaintiffs attached as exhibits to their Complaint sales brochures and sales training materials utilized by Merck sales representatives, including the Resident Defendants, to market, distribute, and sell VIOXX® to physicians, with the ultimate goal of patients, including Mrs. Harrell, ingesting VIOXX® for treatment of pain. Those sales materials are more than sufficient evidence to support Plaintiffs' claims against the Individual Resident Defendants. (See discussion, *infra*, relative to Legg v. Wyeth and the exhibits attached hereto for additional evidence of the corporate sales representatives' knowledge of and active participation in the fraudulent scheme of Defendant Merck.)

To the extent the Court finds Plaintiffs' Complaint deficient to satisfy the heightened pleading requirements, such a finding should not lead this Court to an automatic finding of fraudulent joinder. See Bloodsworth, 2005 WL at *11 (citing Duffin v. Honeywell Intern., Inc., 312 F. Supp. 2nd 869, 870 (N.D. Miss. 2004) ("a plaintiff should ordinarily be given an opportunity to amend their complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing Hart v. Bayer Corp., 199 F.3d 239, 248 n. 6 (5th Cir. 2000)). Defendant Merck contends that the Individual Resident Defendants had no direct contact with the prescribing physician or with the Plaintiff and, as such, their identities and residencies should be disregarded for purposes of determining federal jurisdiction. Merck should not be permitted to hide behind its non-disclosure of those sales representatives who actually detailed Donna Harrell's prescribing physician. Discovery to be conducted in the state court proceeding should flush out the true culprits, and the Plaintiffs can then proceed to amend their complaint to include the names of the individual, in-state defendants.

In Henderson v. Washington Nat'l Ins. Co., __ F.3d ___, 2006 WL 1867353 at 4-5* (11th Cir. 2006), the Eleventh Circuit Court of Appeals recently rejected the defendant's argument that the plaintiff could not maintain a cause of action under Alabama law for fraudulent concealment. In rejecting this argument, the Court aptly wrote:

> Our task is not to gauge the sufficiency of the pleadings in this case. Our inquiry is more basic: we must decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this court sufficient to invoke to Ala. Code § 6-2-3. [The plaintiff's] patch allegations may ultimately prove insufficient, but we are unable to say there is no possibility she has asserted a colorable claim for tolling under

22

Ala. Code § 6-2-3, whether or not pleading fraudulent concealment is required.

…. In this case, the decision as to the sufficiency of the pleadings is for the states courts, and for a federal court to impose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands. …

**B. <u>Legg v. Wyeth</u> is not controlling or dispositive of the issues in this matter.**

Defendant Merck refers to the recent decision of the United States Court of Appeals for the Eleventh Circuit, <u>Legg v. Wyeth</u>, 428 F.3d 1317 (11th Cir. 2005), and argues that the decision supports a denial of the Plaintiff's motion to remand. The Defendant's argument in this respect must fail.

**1. <u>Legg v. Wyeth</u> is not controlling on the issue of subject matter jurisdiction and any language in <u>Legg</u> relative to the remand proceedings is dictum.**

In <u>Legg</u>, the issue before the appellate court was whether the district court abused its discretion by awarding attorney's fees and costs to the plaintiffs as a result of the removal petition filed by the defendant, a drug company manufacturer, Wyeth. Contrary to the position urged by Defendant Merck in the present cause, the issue was <u>not</u> whether the district court abused its discretion by remanding the case, after finding that the defendant failed to meet its burden of establishing fraudulent joinder. Indeed, the Eleventh Circuit noted that "28 U.S.C. § 1447 (d) bars our review of a remand such as this one based upon the lack of subject matter jurisdiction," but "the statute does not 'exclude the district court's assessment of costs from appellate review.'" <u>Legg</u>, 428 F.3d at 1319-20 (<u>quoting</u> <u>Fowler v. Safeco Ins. Co.</u>, 915 F.2d 616, 617 (11th Cir. 1990)). The

Court in Legg did not state that the trial court's remand order was in error, nor did the Court rule that the standard of review in such cases should be changed.

Since the language of Legg relied upon by Defendant Merck is not essential to the issue in that case, it is merely dictum and should not be given *stare decisis* effect by this Court. Nevertheless, assuming *arguendo* that this Court should defer to Legg on this issue, the Legg court's holding is in contravention of well-settled Alabama law, which provides that misrepresentations of material fact, even if made by mistake or innocently, constitute legal fraud. See Ala. Code § 6-5-101 (1975). See also Thomas v. Halstead, 605 So.2d 1181 (Ala. 1993). As discussed above, Alabama law is well-established that individual employees can be held liable for torts in which they participate.

The Court in Legg cites Fisher v. Comer Plantation, 772 So. 2d 455, 463 (Ala. 2000) for the proposition that "mere conduits" cannot be held liable for participating in a tort unless bad faith can be shown. Fisher, however, dealt with independent contractors. The sales representatives here were not "mere conduits" of information, but were instead an integral part of the false and fraudulent marketing and selling of VIOXX®.

Since the Eleventh Circuit did not have within its jurisdiction the ability to address the merits of the remand order in Legg, any discussion of the merits of the district court's order remanding the case back to state court is dictum and has no legal, precedential value. As a result, this Court should disregard that aspect of the Legg decision.

**2. Even if the Eleventh Circuit's substantive discussion of removal and remand proceedings in Legg v. Wyeth should be considered, the "evidence"**

**before the Court in this cause is more than sufficient to establish that there is a "possibility" of recovery against the Individual Resident Defendants.**

In reaching its decision that the district court erred by awarding attorney's fees and costs to the plaintiff in Legg, the Eleventh Circuit considered the fact before it that the defendant submitted uncontested affidavits of the sales representatives to establish that they were not active participants in the alleged wrongdoing as set forth in the complaint. The defendant, Wyeth, in arguing that it had wrongfully been ordered to pay attorney's fees, argued that the sales representatives were named in the plaintiff's complaint as a means of fraudulent joinder to defeat federal diversity jurisdiction. Wyeth submitted affidavits of the three named sales representatives to establish that they did not have prior knowledge of the subject drug's propensity to increase the risk of valvular heart disease. The plaintiffs responded to this contention by pointing to sales materials and other documents to support its claims. The appellate court observed, however, that the sales training materials did "not contain any warning to the sales representatives that Redux may cause valvular heart disease." Legg at 1322. As the court noted, the absence of such warnings reinforced the claims of the sales representatives made by them in their affidavits.

The Eleventh Circuit, in determining that Wyeth's removal efforts were "reasonable," a basis to determine whether the attorney's fees were wrongfully awarded, appeared to be critical of the lower court's remand order, because there did not appear to be any refutation of the affidavits of the sales representatives, other than the allegations in the complaint. Such is not the case here.

In the Declarations of the Individual Resident Defendants, submitted by Defendant Merck in this case, the Defendants contend in conclusory and self-serving fashion that they were not active participants in the wrongdoing alleged by the Plaintiffs in their complaint.  However, it is not the Individual Resident Defendant's contentions that bear the most attention; rather, it is the absence of a critical contention that they do not make which should be the focus of this Court's attention.  <u>Nowhere in the Declarations is it ever asserted that they lacked specific knowledge about the dangerous propensities of Vioxx, particularly with respect to the increased risk of cardiovascular and cerebrovascular events, prior to the time the drug was prescribed by Donna Harrell's physician.</u>  Such a baseless allegation by the Individual Resident Defendants would amount to perjury, based upon the known evidence in the national VIOXX® litigation, some of which was averred and submitted in and with the Complaint.

As set forth in the Complaint, Defendant Merck went through great lengths to hide the increased cardiovascular risks associated with VIOXX®.  These efforts were accomplished primarily by the company teaching its sales representatives to suppress material facts and information about the dangerous aspects of the drug from physicians who commonly prescribed the drug to others, including Donna Harrell.  Part of that process involved the infamous "Dodge Ball" training, where sales representatives were told to dodge or avoid the questions of suspecting physicians.  Questions from physicians became known as "Obstacles" to the sales of the drug, Vioxx -- sales which were used to determine sales representatives' commissions.  Some of the "Obstacles" specifically identified the cardiovascular risk issues to the sales representatives.  One such "Obstacle" provided:  "'I am concerned about the cardiovascular effects of Vioxx?'"  Another

provided: "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than Celebrex."[8]

In response to these perceived "Obstacles," or questions from physicians, the sales representatives were trained to respond in a fashion to downplay or suppress the seriousness of the cardiovascular risks associated with Defendant Merck's blockbuster drug, VIOXX®. For example, Defendant Merck designed "Obstacle Responses" to be used by its sales representatives in responding to these very important inquiries.[9] In response to an inquiry that a physician might make about the potential for Vioxx increasing the risk of cardiovascular events, the sales representatives were taught to respond:

> "Doctor, once daily VIOXX® has no effect on platelet aggregation, and therefore would not be expected to demonstrate reductions in MI or other CV events. Agents such as low-dose aspirin are routinely prescribed for CV patients for their effect on the inhibition of platelet aggregation. Therefore, once daily VIOXX® is not a substitute for aspirin for cardiovascular prophylaxis...."

The training materials then direct the sales representatives to "[t]ransition back" to other benefits of the drug, no doubt as a way to avoid further questions. This response, as clearly indicated, in no wise addresses the CV risks associated with VIOXX®.

More compelling, if a physician inquired about the comparison of the safety profile between VIOXX® and Celebrex®, a competing COX-2 drug, the sales representatives were taught to respond:

---

[8] Though part of Exhibit "A" to the Complaint, these specific "Obstacles" are reattached to this brief as Exhibit "E."

[9] These Obstacle Responses are attached as Exhibits "B" and "C" to the Complaint. The specific responses noted herein are reattached to this brief as "Exhibit 'F.'"

"Doctor, there are no head-to-head studies comparing the cardiovascular profile of the two drugs. As a result, you cannot compare the drugs and conclude that one drug had fewer events than the other. What you may be referring to is press reports of the incidence rates in two separate studies. In the VIOXX® GI Outcomes Trial (VIGOR), the incidence of MI was 0.4% with VIOXX® and 0.1% with naproxen. Upon further analysis, four percent of patients in the VIOXX® GI Outcomes Study had experienced a cardiac event such as a heart attack or stroke before entering the study and thus met the established criteria for the use of aspirin for secondary CV prophylaxis. In the remaining 96% of patients for whom aspirin was not indicated for secondary CV prophylaxis, the incidence of MI was lower – 0.2% for VIOXX® and 0.1% for naproxen. The difference was not statistically significant.

".....

"If needed, continue to address the physicians concerns with the cardiovascular effects of VIOXX® by guiding them through the Cardiovascular Card[10] ...."

The training materials went on to again encourage the sales representative to "[t]ransition back" to the benefits of the drug, while downplaying the CV risks. Most disconcerting, however, is that the information about VIGOR was totally and completely false. Instead of being a 4 to 1 ratio of heart attacks, comparing Vioxx to naproxen, the rate in VIGOR was actually 5 to 1, a significant fact that was suppressed by Defendant Merck from physicians. Had the full truth been told to doctors, i.e., that there is a 500 times increased risk of heart attacks and strokes for patients on VIOXX® as compared to naproxen, doctors would have been much less likely to accept the lie told by Defendant Merck that the explanation for the VIGOR results was that naproxen is cardioprotective.

---

[10] The Cardiovascular Card itself was filled with omissions and inaccurate information, and was designed not to disclose the CV risks, but to address the GI benefits of the drug. The sales representatives were also not told to inform the physicians that the aspirin-indicated patients were excluded from VIGOR as a way to skew the results of that study. If at-risk patients, such as were in the 4% aspirin-indicated group, were included in the study, it is widely agreed the severity of the cardiovascular risks borne out of VIGOR would have been much more pronounced.

Moreover, sales representatives were instructed by Defendant Merck to avoid discussing VIGOR with physicians. Routinely, Defendant Merck would submit Bulletins to its sales force, telling them what they could and could not discuss with physicians. In one such "Bulletin for VIOXX®", the sales representatives were directed: **"DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY COMMITTEE (ADIVSORY COMMITTEE) REVIEW OR THE RESULTS OF THE VIOXX® GI OUTCOMES RESEARCH (VIGOR) STUDY. YOU MAY RESPOND TO CUSTOMER INQUIRIES ONLY AS OUTLINED BELOW."** The Bulletin goes on to direct the sales representatives to "Stay Focused on Efficacy," and encourages the sales representatives to direct the physician's attentions away from the dangers of the drug and get them focused back on the drug's efficacy.[11] This document establishes that there is more than a mere possibility that the sales representatives were active participants in providing misinformation to physicians, in suppressing the known dangers of the drug, and in encouraging physicians to sell a dangerous and deadly product, namely, VIOXX®. This document also debunks a concern of the Legg court -- the sales representatives in the present case were clearly knowledgeable of the known dangers and had greater knowledge than the physicians who were prescribing the drug. See also Clay, 77 F. Supp. 2d at 1224 ("[T]he court finds that some of the moving Defendants' employees are likely to hold some superior knowledge regarding the nature of [the alleged defective product].").[12]

---

[11] Though part of Exhibit "E" to the Complaint, this specific Bulletin is reattached to this Brief as Exhibit "G".

[12] Defendant Merck cites Bloodsworth v. Smith & Nephew, 2005 WL 3470337 (M.D. Ala., Dec. 19, 2005), for the proposition that Plaintiffs cannot show that the Individual Resident Defendants were personally involved in the wrongful acts herein. In Bloodsworth, the Court relied upon the in-state sales representative's declaration which provided that he was unaware of any defect in the product, and that he

To cover all of the examples of the sales representatives being part of the scheme would take hundreds of pages of briefing. Suffice it to say, as it relates to the issue before the Court, the focus is whether the sales representatives, such as Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II and Eric Ralph Payne, knew or had reason to know of the cardiovascular risks associated with VIOXX® and whether there is a reasonable "possibility" that the Plaintiffs can prove their claims that they are liable under Alabama law. As set forth in more detail above, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II and Eric Ralph Payne are liable for their active roles in promoting, selling, and distributing a dangerous product, VIOXX®. As a result, they were not fraudulently joined, and this cause is due to be remanded back to state court.

**3.    More recently, the Eleventh Circuit has reaffirmed its long-standing position that federal courts should defer to their state-court counterparts, when possible, in resolving questions of whether a defendant was fraudulently joined and/or whether the plaintiff has properly pleaded a cause of action against the in-state defendant.**

To the extent that Legg may have heretofore called into question the Eleventh Circuit's position on removal and remand issues, especially in the context of whether a defendant has been fraudulently joined to defeat federal jurisdiction, that Court recently put that issue to bed in Henderson v. Washington Nat'l Ins. Co., __ F.3d ___, 2006 WL 1867353 (11th Cir. 2006). In Henderson,

---

only took orders and delivered the products to physicians in the original sealed packages. Id. at *7. This case is not controlling here, because, as discussed, the Merck sales representatives were clearly aware of the drugs dangerous properties and acted in concert with their employer to suppress and conceal the known dangers.

the district court denied the plaintiff's motion to remand. The Eleventh Circuit reversed, stating very clearly that the defendant must establish by "clear and convincing evidence" that a defendant was fraudulently joined and that there is no possibility that the plaintiff could prevail against the challenged defendant under state law. The Court found that it must defer to the state court on whether a claim is properly stated in order to maintain the "scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." Id at 5*.

Thus, Legg does not represent a change in prevailing law on this topic, as argued by Defendant Merck. Instead, Legg simply stands for the proposition that the district court may need to provide more leeway when it comes to imposing sanctions and costs against a defendant for its removal attempts.

**C.      Defendant Merck has failed to obtain consent of all Defendants which further warrants remand of this cause.**

Defendant Merck concedes in its Notice of Removal that it has not obtained the consent of the Individual Resident Defendants, and Defendant Merck contends that their consent to removal is not necessary because they were fraudulently joined to this action.[13] This argument is meritless.

"The law is clear that under 28 U.S.C. § 1446(a) removal procedure requires that all defendants join in the removal petition."[14]  See, e.g., Chicago, R.I. & P.R. Co. v. Martin, 178 U.S. 245, 247-248, 20 S.Ct. 854, 855, 44 L.Ed. 1055 (1900); Tri-Cities

---

[13] The Individual Resident Defendants, Anne Brandon and Lamonde Houston, filed Motions to Dismiss. In their motions, they contend they were fraudulently joined and "incorporate[] the legal arguments, citations, and exhibits in Merck & Co., Inc.'s Notice of Removal dated May 10, 2006." Their motions acknowledge that the removal action is that of Defendant Merck.

[14] No exceptions to this rule are laid out in 28 U.S.C. § 1446, nor elsewhere in federal statutory law.

Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants Local 349, 427 F.2d 325, 327 (5th Cir.1970) (citing *Martin*); Adams v. Aero Servs. Int'l, Inc., 657 F.Supp. 519, 521 (E.D.Va.1987); P.P. Farmers' Elevator Co. v. Farmers Mut. Inc. Co., 395 F.2d 546 n. 2 (7th Cir.1968) (citing *Martin*); In re Federal Savings & Loan Insurance Corp., 837 F.2d 432, 434, n. 1 (11th Cir.1988). As a matter of law, where there are multiple defendants in a lawsuit, the case may be removed only if all defendants consent to the removal. Jerrell v. Kardoes Rubber Co., Inc., 348 F.Supp.2d 1278, 1282 (M.D. Ala. 2004). Consent may not be implied, but rather, it must be express. Newman v. Spectrum Stores, Inc., 109 F.Supp.2d 1346 (M.D. Ala. 2000).

There are well-recognized exceptions to this rule. A defendant need not join in if: (1) it is merely a nominal or formal party defendant, Tri-Cities Newspapers, 427 F.2d at 327; (2) it had not been served with process at the time the removal notice was filed, Katz v. Costa Armatori, S.p.A., 718 F.Supp. 1508, 1509 (S.D.Fla.1989); Getty Oil Corp., a Div. of Texaco, Inc. v. Insurance Co. of North America, 841 F.2d 1254, 1262 (5th Cir.1988); or (3) the removed claim is a separate and independent claim under 28 U.S.C. § 1441(c), Alexander By Alexander v. Goldome Credit Corp., 772 F.Supp. 1217, 1222 (M.D. Ala.1991).

Defendant Merck does not assert one of the above exceptions to the "unanimity rule," but instead contends that the Individual Resident Defendants need not join in the removal action because they were fraudulently joined. While the court in Clay, 77 F. Supp. 2d at 1223 n. 3, indicated that a fraudulently joined defendant may not be required to join in the removal petition, the court found that the resident defendants were not fraudulently joined (which meant that they were required to join in the removal), and the

court remanded the case back to state court. A federal court may not ignore the fact that the resident defendants have failed to join in the removal action, simply because a defendant seeking removal contends that the resident defendants were fraudulently joined. Taking allegations of fraudulent joinder at face value, without first requiring the removing party to meet its burden on this issue, would essentially eviscerate the unanimity provision of 28 U.S.C. § 1446(a). Consideration of such matters must, by precedence, be viewed in the light most favorable to the Plaintiffs, who have the Constitutionally-supported right to proceed with their case in the forum of their choosing, especially where, as here, the federal court lacks jurisdiction.

Defendant Merck's removal is improper because it has failed to obtain the express consent of the properly joined Individual Resident Defendants, and, therefore, this cause is due to be remanded to state court.

## V.    CONCLUSION

In all of its efforts, Defendant Merck has failed to cite any directly applicable or controlling authority and consequently it has failed in its burden of proving that there is no possibility that Plaintiffs can establish a cause of action against the Resident Defendants Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II and Eric Ralph Payne. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiffs respectfully urge the Court to remand this action in its entirety to the Circuit Court of Houston County, Alabama.

Respectfully submitted this ___ day of September, 2006.

_/s/ Benjamin L. Locklar_____
**ANDY D. BIRCHFIELD, JR. (BIR006)**
**J. PAUL SIZEMORE (SIZ 004)**
**BENJAMIN L. LOCKLAR (LOC009)**
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN,**
  **PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 223-1236

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the

parties as listed below by placing a copy of same in the United States Mail, first class,

postage prepaid on this the 2TH day of September, 2006.

Alan T. Hargrove, Jr.
Mike Brock
F. Chadwick Morriss
**RUSHTON, STAKELY, JOHNSTON**
  **& GARRETT, P.A.**
Post Office Box 270
Montgomery, Alabama  36101-0270

_/s/ Benjamin L. Locklar_____
**OF COUNSEL**

34

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

GLENDORA TURNER, individ-          )
ually and as Administratrix        )
of the Estate of                   )
William Lee Turner,                )
                                   )
        Plaintiff,                 )
                                   )        CIVIL ACTION NO.
        v.                         )        2:05cv702-T
                                   )
MERCK & CO., INC., a               )
foreign corporation,               )
et al.,                            )
                                   )
        Defendants.                )

ORDER

This lawsuit, which was removed from state to federal

court based on diversity-of-citizenship jurisdiction, 28

U.S.C.A. §§ 1332, 1441, is now before the court on

plaintiff's motion to remand.   The court agrees with

plaintiff that this case should be remanded to state court.

The court agrees with plaintiff that there has been neither

fraudulent joinder, Coker v. Amoco Oil Co., 709 F.2d 1433,

1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883


PLAINTIFF'S
EXHIBIT
"A"

F.2d 1553, 1561 (11th Cir. 1989), nor <u>fraudulent misjoinder</u>, <u>Tapscott v. MS Dealer Service Corp</u>., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand (Doc. no. 11) is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Bullock County, Alabama.

It is further ORDERED that the motion to stay (Doc. No. 5) is denied and the motion to dismiss (Doc. No. 3) is left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 21st day of September, 2005.

<u>    /s/ Myron H. Thompson    </u>
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80012-C.V.-HURLEY

EVELYN IRVIN, as Personal Representative of the
Estate of RICHARD IRVIN, JR.,
     plaintiff,
vs.

MERCK & CO., INC., JOE GHEZZI, and
CHRIS METROPULOS,
     defendants.
_____/

## ORDER DIRECTING REMAND & CLOSING FILE

THIS CAUSE is before the court *sua sponte* for review of its subject matter jurisdiction for the second time on the successive notice of removal filed by defendant Merck & Co., Inc. For reasons discussed below, the court shall again remand the case, this time with taxation of attorney's fees and costs.

### I. INTRODUCTION

Plaintiff originally filed this suit in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, on May 14, 2003, asserting state law claims arising out of the wrongful death of plaintiff's decedent in consequence of his ingestion of the prescription drug Vioxx, a pharmaceutical product manufactured and marketed by defendant Merck & Co.

On June 6, 2003, defendant Merck filed its first notice of removal, asserting the diversity jurisdiction of this court under 28 U.S.C. §1332. On October 7, 2003, the court remanded the case to state court for lack of subject matter jurisdiction due to defendant's failure to sustain its burden of establishing the claimed fraudulent joinder of defendants Joe Ghezzi and Chris

1

Metropulos.

On January 7, 2005, Merck filed its second notice of removal in this court. The sole basis for its renewed removal effort is that discovery in the state court proceedings has now proven that defendants Ghezzi and Metropulos are not the correct individuals involved in marketing the Vioxx product at issue in this case. According to Merck, the non-involvement of these individuals was conclusively established at the December 7, 2004 deposition of Dr. Christopher Schirmer, the prescribing physician. Thus, defendant does not assert a new basis for removal, but rather, argues that discovery in the state court proceeding has revealed additional facts which buttress its original contention regarding the fraudulent joinder of defendants Ghezzi and Metropulos.

## II. DISCUSSION

28 U.S.C. § 1446(b), provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or procedure is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

This section, which allows a defendant to remove a previously remanded case where subsequent pleadings or events reveal a new and different basis for removal, *see e.g.*

2

*Browning v Navarro*, 743 F.2d 1069, 1079 n. 29 (5th Cir. 1984), must be read in harmony with 28 U.S.C. §1447(d), which provides that a remand order is "not reviewable on appeal or otherwise." Section 1447 (d) thus not only forecloses appellate review, but also bars reconsideration by the district court of its own remand order based on lack of subject matter jurisdiction or defects in the removal procedure. *See First Union National Bank v Hall*, 123 F.3d 1374 (11th Cir. 1997), *cert. dism'd*, 523 U.S.1135 (1998); *Harris v Blue Cross/Blue Shield of Ala., Inc.*, 951 F.2d 325, 330 (11th Cir 1992).

A party may not circumvent the §1447(d) prohibition on motions for reconsideration by filing a second notice of removal which simply supplies additional evidentiary support in an effort to demonstrate the inaccuracy of the previous remand order. Thus, in this case the newly acquired deposition testimony of Dr. Schirmer is not a legitimate basis upon which the court may reassess its subject matter jurisdiction.   *See e.g. Roughton v Warner-Lambert*, 2001 WL 910408 (M.D. Ala. 2001); *Nicholson v National Accounts, Inc.* 106 F. Supp.2d 1269 (S.D. Ala. 2000).

Having previously remanded this case for lack of subject matter jurisdiction pursuant to §1447(c), the court is now powerless under §1447(d) to reconsider that order and reevaluate the accuracy of its initial decision to remand. *See generally Whittley v Burlington Northern & Santa Fe R.R. Co.*, 2005 WL 221467 (8th Cir. 2005).

Accordingly, it is **ORDERED AND ADJUDGED:**

1. This case is **REMANDED** for lack of subject matter jurisdiction to the Circuit Court of Palm Beach County, State of Florida, pursuant to 28 U.S.C. §1447(c).

2. It is further ordered that plaintiff shall recover from defendant Merck all "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal" pursuant to 28

3

U.S.C. 1447(c).   *See e.g. Moates v Cargill*, 2001 WL 910410 (M.D. Ala. 2001).   Plaintiff shall

submit her duly supported petition for fees and costs within **TEN (10) DAYS** from the date of this

order.

3. The court shall retain jurisdiction only for the limited purpose of assessing the attorney

fee and cost award made pursuant to 28 U.S.C. §1447(c).

4. The clerk is directed to **CLOSE** this file, **DENY** any pending motions as **MOOT**, and

send a certified copy of this order to the Clerk of the Fifteenth Judicial Circuit in and for Palm

Beach County pursuant to 28 U.S.C. §1447.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this _14th_ day of

February, 2005.

Daniel T. K. Hurley
United States District Judge

copies to:

Angelo Patacca, Esq..
Phillip L. Valente, Jr.
Patricia Lowry, Esq.
Sharon Kegerreis, Esq.

4

FROM:305-523-5226 USDC-FLS    ¬¬: 9-1-904-632-0549    PAGE: 1 OF 5    CONTROL: #885646-CV



# United States District Court
## Southern District of Florida

---

**NOTICE:** Only certain Judges are E-NOTICING, so continue to provide envelopes for cases before non-participating Judges  Visit the court's website: www flsd uscourts gov or call the Help Line (305) 523-5212 for an updated listing of participating Judges

---

Notice of Orders or Judgments

Date:     02/16/05

To:     Angelo Patacca (aty)
        233 East Bay Street
        Suite 804 Blackstone Bldg
        Jacksonville, FL  32202

Re: Case Number:     9:05-cv-80012     Document Number:     9

NOTE: If you are no longer an attorney in this case, please disregard this notice.
Be sure to promptly notify the Clerk of Court in writing of any changes to your name, address, law firm, or fax number  This notification should be sent for each of your active cases.
If this facsimile cannot be delivered as addressed, or you have ANY problems with this fax transmission, please call the Help Line (305) 523-5212 and the problem will be rectified. Since this transmission originated from the Clerk's Office, JUDGES CHAMBERS SHOULD NOT BE CONTACTED.

Number of pages including cover sheet:
                                    5

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES O. STRUTHERS, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:06cv127-MHT |
| | ) | |
| MERCK & CO., INC., a | ) | |
| foreign Corporation, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C. §§ 1332, 1441, is now before the court on
plaintiff's motion to remand. The court agrees with
plaintiff that this case should be remanded to state
court. First, there has not been <u>fraudulent joinder</u> of
any resident defendant (that is, plaintiff has colorable
claims against such a defendant), <u>see</u> <u>Coker v. Amoco Oil
Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v.</u>

Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any

resident defendant (that is, plaintiff has reasonably

joined such a defendant with other defendants pursuant to

Rule 20 of the Federal Rules of Civil Procedure), see

Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360

(11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE

of the court that plaintiff's motion to remand (doc. no.

13) is granted and that, pursuant to 28

U.S.C. § 1447(c), this cause is remanded to the Circuit

Court of Montgomery County, Alabama, for want of

subject-matter jurisdiction.

It is further ORDERED that the motion to stay (Doc.

No. 6) and the motion to expedite (Doc. No. 18) are

denied.

It is further ORDERED that all other outstanding

motions are left for disposition by the state court

after remand.

2

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 13th day of March, 2006.


                              /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


ROSEMARY LEVERETT, etc.,        )
                                )
        Plaintiff,              )
                                )        CIVIL ACTION NO.
        v.                      )        3:06cv128-MHT
                                )
MERCK & CO., INC., etc.,        )
et al.,                         )
                                )
        Defendants.             )


ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C. §§ 1332, 1441, is now before the court on plaintiff's motion to remand. The court agrees with plaintiff that this case should be remanded to state court. First, there has not been <u>fraudulent joinder</u> of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see <u>Coker v. Amoco Oil Co.</u>, 709 F.2d 1433, 1440 (11th Cir. 1983); <u>Cabalceta v.</u>

Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).
Second, there has not been <u>fraudulent misjoinder</u> of any
resident defendant (that is, plaintiff has reasonably
joined such a defendant with other defendants pursuant to
Rule 20 of the Federal Rules of Civil Procedure), <u>see</u>
<u>Tapscott v. MS Dealer Service Corp.</u>, 77 F.3d 1353, 1360
(11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE
of the court that plaintiff's motion to remand (doc. no.
1) is granted and that, pursuant to 28 U.S.C. § 1447(c),
this cause is remanded to the Circuit Court of
Tallapoosa County, Alabama, for want of subject-matter
jurisdiction.

It is further ORDERED that the motion to stay (Doc.
No. 9) is denied.

It is further ORDERED that all other outstanding
motions are left for disposition by the state court
after remand.

2

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 15th day of March, 2006.


_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5:** The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

    Rev.: 4/04

2.   **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

    (a)   **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)   **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)   **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)   **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)   **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.   **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.   **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80514-CIV-HURLEY

EVELYN IRVIN, as personal representative of
the Estate of RICHARD IRVIN, JR.,
    plaintiff,

vs.

MERCK & CO., INC., JOE GHEZZI and
CHRIS METROPULOS,
    defendants.
_____/

FILED by ___ D.C.

OCT 9 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

ORDER REMANDING CASE TO FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
and CLOSING FILE

    THIS CAUSE is before the court upon plaintiff's motion for remand for lack of subject matter jurisdiction [DE# 6], the defendants' response in opposition [DE#17] and the plaintiff's reply [DE#19]. For reasons stated below, the court will grant the motion and remand this case to the state court in which it was originally filed.

## I. BACKGROUND

    Plaintiff originally filed suit against defendants in state court on May 14, 2003 in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, alleging state common law tort claims arising out of the wrongful death of plaintiff's decedent in consequence of his ingestion of the prescription drug Vioxx, a product manufactured and marketed by defendant Merck & Co., Inc. According to the complaint, Joe Ghezzi and Chris Metropulos, both Florida residents, were sales representatives or sales managers employed by

1

PLAINTIFF'S
EXHIBIT
"B"
tabbies

Merck to promote, distribute and sell this prescription drug to physicians in the State of Florida, including the plaintiff's decedent's physician.

The defendant Merck filed a notice of removal in this court on June 6, 2003 [DE#1] asserting diversity jurisdiction under 28 U.S.C. §1332 on theory that the two non-diverse individual defendants, Ghezzi and Metropulos, were fraudulently joined to defeat the jurisdiction of this court that would otherwise exist.

## II. DISCUSSION

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity in three instances: (1) where there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Triggs v John Crump Toyota, Inc*, 154 F.3d 1284, 1287 (11th Cir. 1998).

The burden of establishing fraudulent joinder is a heavy one. The determination must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavit and deposition transcripts submitted by the parties, with all factual allegations construed in the light most favorable to the plaintiff, with any uncertainties about the applicable law resolved in the plaintiff's favor. *Pacheco de Perez v AT & T Co*, 139 F.3d 1368 (11th Cir. 1998). If even a colorable claim against a non-diverse defendant is stated, joinder is proper and the case should be remanded to state court. *Id.*

2

In this case, plaintiff has asserted facts which state potential causes of action against the individual Florida defendants, having specifically alleged that these defendants were personally involved in the marketing of the prescription drug Vioxx to Florida physicians, including the plaintiff's decedent's physician. In opposing remand, defendants have filed affidavits of the individual defendants who both aver that their sales territory encompasses Broward and Palm Beach County, Florida, but not St. John's County. "Presuming" that plaintiff's decedent and relevant treating physician resided and worked in St. John's County-- the alleged county of the plaintiff's residence-- from here the defendant urges the inference that there can be no causal connection between the marketing activities of these defendants and the alleged injury to plaintiff's decedent; thus, defendants contends that plaintiff can state no viable cause of action against the non-diverse defendants, and that they are therefore fraudulently joined.

It is not appropriate for the court, in passing on a motion for remand, to make a fact finding on causation drawn from an inference upon an inference. Reminded that the court is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law, *Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir 1997), the court concludes that the defendants in this case have failed to carry their burden of establishing that plaintiff can state no colorable claim against the non-diverse defendants who are therefore not fraudulently joined. Because their presence as party defendants defeats complete diversity among the parties, this court does not have subject matter jurisdiction to hear this case

3

It is accordingly ORDERED and ADJUDGED :

1.   Because the court lacks subject matter jurisdiction over this case, this action is REMANDED to the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

2.   The clerk of the court shall CLOSE this case. DENY any pending motions as MOOT and send a certified copy of this order to the Clerk of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida pursuant to 28 U.S.C §1447.

DONE and SIGNED in Chambers in West Palm Beach, Florida this _____ day of October, 2003.

                                        _____
                                        Daniel T K Hurley
                                        United States District Judge

copies to:

Philip L Valente, Jr., Esq.
Angelo Patacca, Jr., Esq.
David Miceli, Esq
Sharon Kegerreis, Esq.

4

FILED
2005 May-25 PM 03:07
U S DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

BRENDA SUE LANDRUM,                    ]
                                       ]
        Plaintiff(s),                  ]
                                       ]
vs.                                    ] CV05-CO-01055-J
                                       ]
MERCK & COMPANY, INC.,                 ]
                                       ]
        Defendant(s).                  ]

ORDER

In accordance with the Memorandum of opinion entered

contemporaneously herewith, this action is hereby REMANDED to the Circuit

Court of Walker County, Alabama.

Done this 25th day of May 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
130122



FILED
2005 May-25 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| BRENDA SUE LANDRUM, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV05-CO-01055-J |
| | ] |
| MERCK & COMPANY, INC., | ] |
| | ] |
| Defendant(s). | ] |

OPIONION

On May 23, 2005, defendant Merck & Co., Inc., removed this action
from the Circuit Court of Walker County, Alabama. Merck contends this
court has diversity jurisdiction because the amount in controversy exceeds
$75,000, exclusive of costs and interest, and the alleged Alabama citizenship
of the remaining defendants, former Merck sales representatives, must be
ignored for removal purposes since these defendants are fraudulently
joined. [Doc. 1]. Merck included affidavits from three sales representatives
denying the allegations of the complaint. Id. The sales representative
defendants, Robert Wall, Gary Harlan, Angela Finch, Matthew King, Patricia
Aiken, and Sonya Coley, filed motions to dismiss the claims against them

simultaneously with Merck's removal. [Doc. 3-8]. Merck also filed a motion to stay all proceedings in this action pending transfer by the Judicial Panel on Multidistrict Litigation to In re Vioxx Products Liability Litigation (MDL-1657). [Doc. 10].

The plaintiff, Brendan Sue Landrum, responded with an "Emergency Motion to Remand" on May 24, 2005, arguing that federal courts in this district and elsewhere in Alabama have repeatedly held that in-state pharmaceutical sales representatives are not fraudulently joined. [Doc. 12]. In her complaint filed in the Circuit Court of Walker County, Alabama, Plaintiff alleged that the sales representative defendants negligently, recklessly, intentionally and fraudulently made material representations that Vioxx was safe and effective. [Doc. 1, Ex. A]. In Count 1 of her complaint, Plaintiff alleged a claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). In remaining counts, she claims failure to warn (Count 2), breach of the warranty of merchantability (Count 3), negligence (Count 4), wantonness (Count 5), fraudulent misrepresentation (Count 6), and fraudulent suppression (Count 7). The claims, facts, and arguments asserted in this case are nearly identical to

those in *Marshand v. Wyeth, et al.*, CV-03-CO-319 5-W (N.D. Ala. 2004). The differences are not material to the consideration of the pending motions in this case. The court by reference adopts the analysis set forth in that opinion.

The court is of the opinion that it does not have diversity jurisdiction in this action. This case will be remanded to the Circuit Court of Walker County, Alabama. A separate order will be entered.

Done this <u>25th</u> day of <u>May 2005</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
130122



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES — GENERAL

PRIORITY·SEND
On T 586

Case No.   **SACV 05-177-JFW (MANx)**                      Date: April 22, 2005

Title:   THEODORE M. SOKARDA, et al. -v- MERCK & COMPANY, INC., et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

Shannon Reilly                          None Present
Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:
         None                                    None

PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING DEFENDANT'S *EX PARTE*
                              APPLICATION TO VACATE ORDER TO REMAND OR,
                              ALTERNATIVELY, TO GRANT LEAVE TO AMEND
                              NOTICE OF REMOVAL [filed 3/31/05; Docket No. 15];

                              ORDER VACATING MARCH 24, 2005 ORDER
                              REMANDING ACTION [Docket No. 7];

                              ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE
                              TO AMEND COMPLAINT [filed 3/25/05; Docket No. 8];

                              ORDER GRANTING PLAINTIFFS' MOTION TO
                              REMAND TO STATE COURT PURSUANT TO 28 U.S.C.
                              § 1447(e); 28 U.S.C. § 1447(c) [filed 3/25/05;
                              Docket No. 10]

                              ORDER REMANDING ACTION TO ORANGE COUNTY
                              SUPERIOR COURT;

                              ORDER DENYING DEFENDANT'S MOTION TO STAY
                              ALL PROCEEDINGS PENDING TRANSFER DECISION
                              BY THE JUDICIAL PANEL ON MULTIDISTRICT
                              LITIGATION AS MOOT [filed 3/29/05; Docket No. 20]

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

Page 1 of 6



On January 14, 2005, Plaintiffs Theodore M. Sokarda and Patricia A. Sokarda (collectively "Plaintiffs") filed this action in Orange County Superior Court against Merck & Company, Inc. ("Defendant"). On February 23, 2005, Defendant filed a Notice of Removal of Action Under 28 U.S.C. § 1441(b) ("Notice of Removal") based on diversity of citizenship pursuant to 28 U.S.C. § 1332. On March 24, 2005, this Court issued an Order remanding this case to Orange County Superior Court based on a procedural defect and stayed the Remand Order until April 4, 2005 to give Plaintiffs an opportunity to waive the procedural defect and elect to remain in federal court.

On March 25, 2005, Plaintiffs filed a Motion for Leave to Amend Complaint and a Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(e); 28 U.S.C. § 1447(c) and set the hearing on the Motions for April 25, 2005. On April 4, 2005, in light of the Motions filed by Plaintiffs, the Court continued its Order staying the remand of this action from April 4, 2005 to April 25, 2005. On April 11, 2005, Defendant filed its Oppositions to Plaintiffs' Motions. On April 19, 2005, Plaintiffs filed their Replies.

On March 29, 2005, Defendant filed a Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation. Plaintiffs did not file an Opposition to Defendant's Motion. On March 31, 2005, Defendant filed an *ex parte* Application to Vacate Order to Remand or, Alternatively, to Grant Leave to Amend Notice of Removal. On April 1, 2005, Plaintiffs filed their Opposition to the *ex parte* Application. On April 5, 2005, Defendant filed a Reply in support of its *ex parte* Application.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that the foregoing matters are appropriate for decision without oral argument. The hearing calendared for April 25, 2005 is hereby vacated and the matters taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

I.    **Defendant's *ex parte* Application to Vacate March 24, 2005 Remand Order**

On March 24, 2005, this Court issued an Order remanding this case to Orange County Superior Court on the grounds that Defendant had failed to provide the Court with the date that Defendant was served with a copy of the summons and Complaint and therefore had failed to carry its burden in demonstrating that its Notice of Removal was timely filed. Recognizing that this was a procedural defect which could be waived by Plaintiffs, the Court stayed the Remand Order to give Plaintiffs an opportunity to waive the procedural defect and elect to remain in federal court.

Defendant argues that the record before this Court at the time the Court issued its Remand Order demonstrated that Defendant had not yet been served with Plaintiffs' Complaint and that the action had been timely removed. In support of its argument, Defendant relies on a statement made to the Court by Plaintiffs in a declaration filed on March 25, 2005. However, the Court issued its Remand Order on March 24, 2005 - one day prior to the date the declaration relied upon by Defendant was filed.[1]

_____

[1] Defendant claims that because the Court's Remand Order was not entered until March 29, 2005, the Court was aware of Plaintiffs' filing on March 25, 2005. However, the entry date for a

Notwithstanding the fact that Defendant's removal papers contained a procedural defect, in light of Plaintiffs' failure to object to this defect within the thirty day time period set forth in 28 U.S.C. § 1447(c), the Court **GRANTS** Defendant's *ex parte* Application to Vacate Order to Remand or, Alternatively, to Grant Leave to Amend Notice of Removal. The Court's March 24, 2005 Order remanding this action is hereby **VACATED.**

II.    **Plaintiffs' Motion for Leave to Amend Complaint and Motion to Remand to State Court**

Plaintiff Theodore M. Sokarda had a stroke on or about January 16, 2002 and to date, remains in a vegetative state. At the time Mr. Sokarda suffered the stroke, he was using a prescribed dosage of the drug Vioxx. According to Plaintiffs, they filed their Complaint against Defendant, the manufacturer of Vioxx, in state court on January 14, 2005 without serving the Complaint on Defendant, "to preserve their statutory claim." Plaintiffs' Motion to Amend at 3. Plaintiffs claim that after the Complaint was filed, counsel for Plaintiffs continued to investigate the companies which sold, distributed and marketed Vioxx with the intent of amending the Complaint to add additional parties once the investigation had been completed. Despite the fact that Defendant had not yet been served with the Complaint, Defendant removed the action to this Court on February 23, 2005 before Plaintiffs had the opportunity to amend their Complaint to add additional defendants.

In their current Motion for Leave to Amend Complaint, Plaintiffs seek leave to add McKesson Corporation and Amerisourcebergen Drug Corporation (the "Distributor Defendants") as defendants in this action. Plaintiffs are both citizens of California. McKesson Corporation is a Delaware Corporation with its principal place of business in California, and is therefore a citizen of both Delaware and California for the purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c). As a result, the joinder of McKesson Corporation as a defendant in this action would destroy diversity and this Court would no longer have subject matter jurisdiction over this action. *See, e.g., Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

Pursuant to 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "When deciding whether to permit joinder under § 1447(e), a court should consider: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder; (3) whether there has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid." *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086 (C.D. Cal. 1999) (citing Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial*, ¶ 2:1078 (TRG 1998)).

---

minute order merely signifies when that order is entered on the docket. The Remand Order was actually issued and filed by the Court on March 24, 2005.

Initials of Deputy Clerk  sT

A.     The extent the new defendants are required for just adjudication

Rule 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." *Clinco*, 41 F. Supp. 2d at 1082; Fed. R. Civ. P. 19(a); *see also CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (A necessary party is one "having an interest in the controversy, and who ought to be made [a] part[y], in order that the court may act on that rule which requires it to decide and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it."). "Although courts consider whether a party would meet [Rule] 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard that for joinder under [Rule] 19." *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion*, 125 F. Supp. 2d 1008, 1011-12 (N.D. Cal. 2000). The standard "is met when failure to join will lead to separate and redundant actions." *Id.* at 1011 (citing *CP Nat'l Corp.*, 928 F.2d at 910).

In their proposed Amended Complaint, Plaintiffs allege that the Distributor Defendants are "wholesale distributors of all Merck & Company, Inc. products, including Vioxx, and, as such, marketed, sold and distributed Vioxx which was ingested by Plaintiff Theodore M. Sokarda." Proposed Amended Complaint at ¶¶ 3-4. Upon review of Plaintiffs' proposed Amended Complaint, the Court finds that failure to join the Distributor Defendants would "lead to separate and redundant actions." Accordingly, this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

B.     The extent to which a statute of limitations would affect Plaintiffs' ability to bring a separate suit

Plaintiffs do not argue that a new action against the Distributor Defendants would be time-barred. Accordingly, this factor does not support amendment under Section 1447(e).

C.     The timeliness of the proposed amendment

In their Motion to Amend, Plaintiffs represent that they chose not to serve Defendant Merck with the Complaint immediately after filing this action in state court because they were continuing to research potential claims against additional defendants, and that they only filed their Complaint when they did to "to preserve their statutory claim." Plaintiffs' Motion to Amend at 3. Defendant Merck learned of the action and removed the action to this Court prior to service of the Complaint and before Plaintiffs had the opportunity to make those intended amendments to their Complaint. Once Defendant Merck removed the case, Plaintiffs did not delay in bringing their Motion to Amend, which was filed one month after the date of removal. Accordingly, there was no unexplained delay in seeking to add the additional defendants, and this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

Initials of Deputy Clerk _er_

**D.    Motive for joinder**

Defendant claims that Plaintiffs' only motivation for attempting to join the Distributor Defendants is to "destroy diversity and force remand." Defendant's Opposition to Motion to Amend at 3. In support of its claim, Defendant cites to the fact that Plaintiffs did not attempt to join the Distributor Defendants until one month after Defendant removed this action to this Court. Defendant's argument is entirely disingenuous in light of the actions taken thus far by Defendant in this case. Defendant learned of this action prior to service of the Complaint, and then removed the case and immediately filed an answer, essentially stripping Plaintiffs of the right to amend as a matter of course before a responsive pleading was filed. Moreover, Defendant's argument fails to account for Plaintiffs' explanation that they were continuing to investigate potential defendants after filing of the Complaint, and intended to amend and serve their Complaint on all defendants at the conclusion of their investigation. It appears to the Court that Plaintiffs attempted to amend their Complaint to add the Distributor Defendants at the first available opportunity, and that it has in fact been Defendant's, and not Plaintiffs' motives which are questionable. Accordingly, this factor weighs in favor of allowing Plaintiffs' amendment under Section 1447(e).

**E.    The validity of Plaintiffs' claims against the new defendants**

Defendant argues that the Court should not permit Plaintiffs to amend their Complaint because their proposed claims against the Distributor Defendants are legally insufficient. In their proposed Amended Complaint, Plaintiffs allege the following ten claims against all defendants: (1) Negligence; (2) Strict liability (failure to warn); (3) Strict liability (design defect); (4) Negligent failure to warn; (5) Negligence *per se*; (6) Misrepresentation and suppression; (7) Breach of warranty; (8) Breach of express warranty; (9) Fraud; and (10) Loss of consortium. Defendant Merck contends that all of the foregoing claims against the Distributor Defendants are based on "an alleged failure to warn about the purported risks of Vioxx," and that "under settled California law, a distributor of prescription pharmaceuticals does not have a duty to warn." Defendant's Opposition to Motion to Amend at 4-5.

The Court does not agree with Defendant that the law in California on this issue is "settled." To the contrary, although California courts have ruled that pharmacists cannot be held strictly liable for failure to warn, they have not addressed whether distributors of prescription drugs can be held liable for failure to warn. Accordingly, the Court finds that Plaintiffs have alleged valid claims for relief against the Distributor Defendants in their proposed Amended Complaint and this factor therefore weighs in favor of allowing Plaintiffs' amendment under Section 1447(e)

Based on the Court's analysis of the foregoing factors, Plaintiffs' Motion to for Leave to Amend Complaint is **GRANTED.** Plaintiffs' Amended Complaint, which was lodged on April 22, 2005, shall be filed as of the date of this Order.

Initials of Deputy Clerk  sr

Since the joinder of Defendant McKesson Corporation destroys diversity, this Court no longer has subject matter jurisdiction over this action and Plaintiffs' Motion to Remand to State Court Pursuant to 28 U.S.C. § 1447(e); 28 U.S.C. § 1447(c) is **GRANTED.**[2]  This action is hereby **REMANDED** to Orange County Superior Court for lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).

In light of the Court's Order remanding this action to Orange County Superior Court, Defendant's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation is **DENIED as moot.**

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

---

[2] In light of the Court's finding that Plaintiffs state potentially viable claims against Distributor Defendants, the Court need not separately address Defendant's argument regarding fraudulent joinder as set forth in its Opposition to Plaintiffs' Motion to Remand.

Initials of Deputy Clerk _sr_

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MYRNA AMISCH, Individually
and on behalf of all others
similarly situated,

Plaintiff,

v.

MERCK & CO., INC., and
EDWARDS MEDICAL SUPPLY, INC.,

Defendants.

No. 04-CV-847-DRH

ORDER

HERNDON, District Judge:

Now before the Court is Defendant Merck & Co., Inc.'s ("Merck) Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation. (Doc. 7).[1] The motion requests that the Court stay all the proceedings until the Judicial Panel on Multidistrict Litigation hears and rules on Merck's motion to transfer this case, along with some 150-plus other cases involving VIOXX®, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407. Merck's motion states that the MDL is expected to hear Merck's motion sometime in late January 2005.[2]

---

[1] The Court notes that Merck's reply violates the Local Rule 7.1(d) of this judicial district. Merck's reply is 7 pages and under Local Rule 7.1(d) reply briefs shall not exceed 5 pages.

[2] It is worth mentioning that Schedule A attached to the Letter from Michael J. Beck, Clerk of Panel, United States of America Judicial Panel on Multidistrict Litigation, to All Counsel Involved in the Vioxx Products Liability Litigation (Nov. 22, 2004), does not identify this case as one of the

If the Court were to grant Merck's motion and stay this proceeding pending the hearing on whether to form a MDL on the VIOXX® cases, this Court would not be able to address its subject matter jurisdiction over the matter. A review of the complaint indicates that Plaintiff specifically disclaims federal jurisdiction (**Doc. 2, pp. 2-3**). Further, both counts of Plaintiff's complaint are based on state law– the Illinois Consumer Fraud Act. The United States Court of Appeals for the Seventh Circuit has explicitly held that district courts have the power to decide whether they have subject matter jurisdiction over a matter prior to transfer to the MDL as ruling on its jurisdiction "is a fundamental obligation of all courts of limited jurisdiction." *Illinois Municipal Retirement Fund v. Citigroup, Inc.*, -- F.3d --, **2004 WL 2749864, \*7 (7th Cir. Dec. 2, 2004)(affirming United States Chief District Court Judge G. Patrick Murphy of the Southern District of Illinois' remand of a matter for lack of subject matter jurisdiction after the MDL had issued a conditional transfer order but before transmittal of a final transfer order).** In *Illinois Municipal Retirement Fund*, the Seventh Circuit stated:

> Though some district courts stay proceedings during the interim following a conditional transfer order, *see, e.g., Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. WorldCom, Inc.*, 244 F. Supp.2d 900 (N.D. Ill. 2002), this is not required where the court concludes that it lacks subject matter jurisdiction. We will not require a district court that believes that it lacks subject matter jurisdiction over a case to

---

158 actions set for the next Panel Hearing Session in late January 2005. (**Doc. 7, Merck's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation, Ex. A**).

2

> facilitate a transfer under § 1407, a statute that does
> not itself confer jurisdiction.

*Illinois Municipal Retirement Fund*, 2004 WL 2749864, *7.  In the case at bar,

the Court notes that a conditional transfer order has not even been entered in this

matter – the MDL has yet to hear the motion to *form* a panel to which this matter

may or may not be conditionally transferred.  Consequently, as this Court has not

determined whether it enjoys proper subject matter jurisdiction over this matter, in

addition to the fact that the MDL has not even heard Merck's Section 1407 motion,

the Court finds it is not prudent or judicially economical for the Court to stay the

proceedings herein. *See also, Walson v. Merck & Co.*, No. 04-CV-27-GPM (Chief

Judge Murphy denied motion to stay); *Caruso v. Merck & Co.*, NO. 04-CV-759-

GPM (Chief Judge Murphy denied motion to stay and granted motion to

remand); *Bilbrey v. Merck & Co.*, No. 04-CV-836-MJR (Judge Reagan denied

motion to stay); *Sumner v. Merck & Co.*, 04-864-MJR (Judge Reagan denied

motion to stay).

Accordingly, the Court **DENIES** Merck's motion to stay.  **(Doc. 7)**.

**IT IS SO ORDERED.**

Signed this 22nd day of December, 2004.


/s/  David RHerndon
**DAVID R. HERNDON**
**United States District Judge**

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MYRNA AMISCH, Individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

MERCK & CO., INC. and
EDWARDS MEDICAL SUPPLY, INC.,

Defendants.                                    No. 04-CV-00847-DRH

MEMORANDUM AND ORDER

HERNDON, District Judge:

## I. Introduction

On October 5, 2004, Plaintiff Myrna Amisch ("Amisch") initiated this

class action suit in the Circuit Court of the Third Judicial Circuit, Madison County,

Illinois, against Merck & Co., Inc. ("Merck") and Edwards Medical Supply, Inc.

("Edwards Medical") seeking economic damages arising out of the marketing,

distribution, and sale of the prescription drug VIOXX®. **(Doc. 2)**. Plaintiff asserts

claims against Merck and Edwards Medical under the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), **815 ILCS 505/2**. Merck timely removed

the case to federal court based on this Court's diversity jurisdiction, **28 U.S.C. §§**

**1332, 1441**. **(Doc. 1)**.

Now before the Court is Plaintiff's motion to remand. **(Doc. 11)**. For the

reasons set forth below, the Court grants Plaintiff's motion to remand.

## II.  The Complaint's Allegations

The Complaint alleges that Plaintiff is a resident of Illinois[1], Merck is a corporation organized under the laws of the State of New Jersey with its principal place of business in New Jersey, and Edwards Medical[2] is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois. Regarding the amount in controversy, the Complaint expressly states as follows:

> Plaintiff stipulates that she is not seeking and will neither demand nor accept on behalf of any Class member, any recovery in excess of $75,000.00, exclusive of costs and interest.  No claim is asserted here for equitable or injunctive relief. . . .  Plaintiff and each member of the class have individually incurred damages under the laws of Illinois in an amount less than $75,000.  Neither the Plaintiff, nor any member of the class, seek damages exceeding $75,000, nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder.  Neither Plaintiff, nor any of the class members, seek any form of 'common' recover [sic], but rather individual recoveries not to exceed $75,000 for any class member, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder.  Plaintiff and the class members voluntarily limit their claims to less than $75,000 each.

---

[1]To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile. *Dakuras v. Edwards*, **312 F.3d 256, 258 (7th Cir.2002)**. Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state. *Id.*  Based on the allegations in the Complaint, it appears Plaintiff is domiciled in Illinois and therefore is a citizen of Illinois for diversity purposes.

[2]Plaintiff alleges Edwards Medical is a licensed distributor of VIOXX®.  **(Compl. at ¶ 4)**. Merck submits the Declaration of David Layton, Senior Director of Order Management Center for Merck, stating Edwards Medical is a distributor of record of Merck products, but has never ordered any VIOXX® from Merck.  **[Doc. 1, Notice of Removal ¶ 18 & Nov. 17, 2004 Decl. of David Layton ("Layton Decl.") ¶ 2, attached thereto as Exhibit 2; Doc. 15, Merck's Opp. To Pl.'s Mot. To Remand, Ex. 5)**.  Because the Court finds that the amount in controversy requirement has not been satisfied as explained below, this issue is not determinative.

**(Compl. at ¶ 9)**.

According to the Complaint, in order to obtain a consumer market share of VIOXX®, Merck requested the Food and Drug Administration ("FDA") allow Merck to use a fast track, 6-month approval process for scientific testing on VIOXX®. **(Compl. at ¶12)**. Plaintiff alleges that the fast track, 6-month approval process was inadequate and that Merck knew or should have known that the drug caused an increased risk of clotting, hypertension, stroke and myocardial infarction, but that this information was intentionally suppressed by Defendants in order for Merck to gain significant profits from VIOXX® sales. **(Compl. at ¶¶ 16, 18)**. Plaintiff alleges she and members of the Class would not have purchased VIOXX® had they known of the increased risks of hypertension, stroke, and/or myocardial infarcts. **(Compl. at ¶ 22)**.

With respect to Plaintiff's VIOXX® purchase, Plaintiff alleges she was prescribed VIOXX® and purchased the drug at the Schnucks Pharmacy in Granite City, Illinois, from April 2003 until July 2004. **(Compl. at ¶ 24)**. Plaintiff purchased VIOXX® without knowledge of the facts misrepresented or concealed by Defendants. **(Id.)** Plaintiff asks to certify a class as follows: "All persons who purchased VIOXX® for personal, family or household purposes in Illinois from May 1, 1999 until it was withdrawn on September 30, 2004." **(Compl. at ¶ 25)**. Plaintiff believes that the class includes hundreds of thousands of members. **(Compl. at ¶ 27)**.

Counts I and II are brought under the ICFA against Merck and Edwards Medical, respectively. Plaintiff alleges as a direct and proximate result of Defendants'

-3-

unfair acts and/or practice, Plaintiff and Class Members have suffered damages in an amount equal to the purchase price of VIOXX®. **(Compl. at ¶¶ 48, 63)**. Plaintiff requests "damages, attorneys' fees, their cost of suit, and pre-judgment interest, in an amount less than $75,000.00, per Plaintiff or Class Member." **(Compl., Prayer for Relief, Counts I & II)**  Plaintiff also "seeks to disgorge profits made by Defendants for its [sic] failure to inform consumers of the increased risks associated with the use of VIOXX®."[3]  **(Compl. at ¶ 22)**

### III. Analysis

Merck removed the case to this Court based on the federal diversity statute, **28 U.S.C. § 1332**.  Under **28 U.S.C. § 1441**, removal is proper over any action that could have been filed originally in federal court.  However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to **28 U.S.C. § 1447(c)**.  Courts presume a plaintiff's choice of forum is proper and valid and resolve all doubts regarding jurisdiction in favor of remand.  *See Doe v. Allied-Signal, Inc.*, **985 F.2d 908, 911 (7th Cir. 1993)**.  The diversity statute requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs.  Complete diversity of citizenship means that "none of the parties on either side of the litigation may be a citizen of a state of which a party on the other side is a citizen." *Howell v.*

---

[3]Plaintiff makes this request in the introductory section of her Complaint.  In the same section, Plaintiff also alleges Merck's VIOXX® campaign resulted in more than $2 billion in sales of VIOXX® to consumers in the year 2000 alone.  (Compl. at ¶ 19).

*Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted). If either requirement of diversity jurisdiction is lacking, the court must remand the case to state court.

As the party seeking to invoke federal diversity jurisdiction, Merck bears the burden of demonstrating diversity jurisdiction exits. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). A defendant meets this burden by supporting its allegations of jurisdiction with "competent proof," which in the Seventh Circuit requires the defendant to offer evidence which proves "to a reasonable probability that jurisdiction exists." *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citations omitted).

The status of the case as disclosed by plaintiff's complaint is controlling on the issue as to whether the case is removable. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938). If the face of the complaint establishes that the suit cannot involve the necessary amount, the case should be remanded. *Id.* at 291-92. "Accepted wisdom" provides that the plaintiff's evaluation of the stakes must be respected when deciding whether a claim meets the amount in controversy requirement for federal diversity jurisdiction. *Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997) (citing *St. Paul Mercury*, 303 U.S. at 289). Here, the Complaint contains language that limits the value of Plaintiff's claim and that of each member of the putative class to less than $75,000. (Compl. at ¶ 9). Notwithstanding Plaintiff's disclaimer, Merck argues that

Plaintiff's claim meets the $75,000 threshold.

Merck argues that Plaintiff's request "to disgorge profits made by Defendants", when considered in the aggregate, independently satisfies the amount in controversy requirement. The Court disagrees. First, while our circuit has adopted the "either viewpoint" approach (that is, the amount in controversy can be determined from either the plaintiff's or defendant's viewpoint), it has nevertheless maintained that "'[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and defendant's standpoint.'" *See Del Vecchio v. Conseco, Inc.,* **230 F.3d 974, 977-78 (7th Cir. 2000)(citing *In re Brand Name Prescription Drugs,* 123 F.3d 599, 610 (7th Cir. 1997))**. Merck's request for the Court to consider Plaintiff's claim in the aggregate violates this rule, particularly when Plaintiff provides an express disclaimer for damages in excess of $75,000 and states she does not seek any form of common recovery or equitable relief. *See Hahn v. PepsiCo, Inc.,* **350 F. Supp.2d 758, 764 (N.D. Ill. 2004)(Moran, J.)("Though disgorged profits may exceed $75,000 in the aggregate, defendant cannot base diversity jurisdiction on aggregate damages in a class action.")** Second, even if the Court were to find aggregation appropriate as Merck suggests, Merck has not attempted to quantify the losses which disgorgement would expose it. *See Rubel v. Pfizer Inc.,* **361 F.3d 1016, 1018 (7th Cir. 2004)**. Put simply, the Court finds that Plaintiff's request for disgorgement does not meet the $75,000 jurisdictional threshold.

Merck also contends that Plaintiff's unspecified request for "damages"

is clearly intended to encompass punitive damages. Merck reasons that punitive damages together with attorneys' fees would take Plaintiff's claims over the $75,000 jurisdictional threshold. The problem with Merck's hypothetical is that it is, just that, a hypothetical. It assumes $6,000 in compensatory damages for each Class Member with no evidence to support its assertion. It also assumes punitive damages are available in this case even without evidence to show its conduct was "outrageous" (a requirement for punitive awards under the Consumer Fraud Act, *see Ekl v. Knecht,* **585 N.E.2d 156, 164 (Ill. App. Ct. 1991)**). The theoretical availability of damages is not enough to establish jurisdiction. *See Am. Bankers Life Assur. Co. v. Evans,* **319 F.3d 907, 909 (7th Cir. 2003)**. Merck bears the burden of coming forward with competent proof to establish the amount of such damages. *See id.* Additionally, the measure of attorneys' fees included in the calculation of the jurisdictional amount is the amount of fees incurred as of the time the complaint is filed. *See Gardynski-Leschuck v. Ford Motor Co.,* **142 F.3d 955, 959 (7th Cir. 1998)("legal expenses yet to be incurred on the date a suit begins do not create a 'case or controversy' within the meaning of Article III")**. Merck points to nothing to suggest that the fees incurred at the time the suit was filed would carry the amount in controversy over the jurisdictional hurdle.

Finally, Merck argues that Plaintiff's "purported limitation" on damages does not deprive the Court of jurisdiction. Merck is incorrect. A party who seeks only monetary relief and wants to avoid litigating in federal court can avoid this fate by stipulating at the time the suit is filed "that [s]he is not seeking and will neither

-7-

demand nor accept any recovery in excess of $75,000 exclusive of costs and interests." *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000); *see also ANR Pipeline Co. v. 62.026 Acres of Land*, 389 F.3d 716, 718 (7th Cir. 2004)("if the plaintiff commits himself to see no more than $75,000, the petition to remove must be denied."); *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)(per curiam)("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.").

While it is true that Illinois does not have a law limiting the plaintiff's recovery to that asked for in the *ad damnum* clause, **735 ILCS § 5/2-604**, Plaintiff here expressly stated in her Complaint "that she is not seeking and will neither demand nor accept on behalf of any Class member any recovery in excess of $75,000, exclusive of costs and interest." **(Compl. at ¶ 9)**. Merck has not persuaded the Court that this stipulation should be treated as anything other than a binding judicial admission. *See Soo Line R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); *see also Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1014 (7th Cir. 2000)(stating that an allegation in a party's pleading may be treated by the court as a binding judicial admission); *Taylor v. Monsanto Co.*, 150 F.3d 806, 809 (7th Cir. 1998)(same). The mere theoretical possibility that Plaintiff could later amend her Complaint to seek relief in excess of $75,000 is an insufficient reason to find jurisdiction exists now, when it does not. *See* 28 U.S.C. § 1446(b)(permitting Merck to remove the case from state court

-8-

**within one year of the commencement of the action upon an amendment by Plaintiff which establishes diversity jurisdiction).** In short, Merck has not demonstrated by competent proof that Plaintiff's complaint meets the $75,000 threshold, therefore this Court lacks subject matter jurisdiction.

### IV. Conclusion

In sum, the Court **GRANTS** Plaintiff's motion to remand for lack of subject matter jurisdiction **(Doc. 11)**, but declines to award Plaintiff costs and expenses, including attorneys' fees, incurred as a result of removal. This case is **REMANDED** to the Circuit Court, Third Judicial Circuit, Madison County Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Signed this 11th day of March, 2005.


/s/   David RHerndon
**United States District Judge**

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALFRED BRAME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 05-034-GPM |
| | ) | |
| MERCK & COMPANY, INC., and | ) | |
| WALGREENS HOME CARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

Plaintiff filed this action on December 28, 2004, in state court seeking damages for personal injuries and economic losses suffered as a result of taking the prescription drug Vioxx, which was manufactured, marketed, distributed and/or sold by Defendants to the general public. On January 20, 2005, Merck & Company, Inc. (Merck), removed this action from state court based upon the diversity of citizenship statute, 28 U.S.C. § 1332, arguing that Walgreens Home Care, Inc., is fraudulently joined and, therefore, its Illinois citizenship should be disregarded. Plaintiff filed a motion to remand, in which he points out that before the case was removed, he filed an amended complaint to substitute the proper defendant Walgreen Company, d/b/a Walgreens, for the improperly named Walgreens Home Care, Inc. Both Walgreen Company and Walgreens Home Care, Inc., are Illinois citizens, and there is no substantive difference regarding the allegations made against them. Therefore, for purposes of this Memorandum and Order, the Court will refer to the Illinois corporate Defendant as "Walgreens."

Page 1 of 3

In order for this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. The burden of proof falls on the party seeking to invoke federal diversity jurisdiction to present "competent proof" that the requirements of § 1332 have been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936). In deciding whether a defendant has been fraudulently joined, a federal court "must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As recognized by the Seventh Circuit Court of Appeals in *Poulos,* "[a]n out-of-state defendant who wants to remove must bear a heavy burden to establish fraudulent joinder." *Id.*

Generally, Merck argues that Walgreens has been fraudulently joined because Plaintiff has not alleged a valid cause of action against this Defendant. Specifically, in its notice of removal, Merck summarily states that "Plaintiff alleges that 'Walgreens sold [VIOXX] to plaintiff ... in the regular course of its business' (Compl. ¶ 35) and that Walgreens should be liable for strict products liability, failure to warn, and breach of warranty. (Counts 3, 6, and 11). There is no reasonable basis for predicting that Plaintiff could prevail on her [sic] asserted claims against Walgreens. ... Accordingly, Walgreens is fraudulently joined." (Doc. 1, ¶ 14 (string citation to cases denying remand omitted).)

Before filing his motion to remand, Plaintiff attempted to resolve this issue by drawing Merck's attention to this Court's order in a similar case, *Gallaher, et al. v. Bayer Corporation, et al*, civil number 01-641-GPM, in which the undersigned decided that Walgreen Company was not

fraudulently joined in a case involving the prescription drug Baycol. The Court would also draw

Merck's attention to its more recent decision in *Elliott v. Wyeth, Inc., et al.*, civil number 03-037-

GPM, another case in which the undersigned decided that Walgreen Company was not fraudulently

joined after carefully considering Illinois's so-called "innocent seller" statute and the "learned

intermediary doctrine."

     After carefully reviewing the papers filed in this case, the Court finds a response to the

motion to remand unnecessary. Merck has failed to meet its burden in its notice of removal. The

Court is not persuaded by conclusory allegations and citations to opinions that lack precedential

value. Moreover, the Court will not allow a case over which it lacks jurisdiction to sit on its docket

until a decision is reached by the Judicial Panel on Multidistrict Litigation, especially after the Court

of Appeals' decision in *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851

(7th Cir. 2004) ("We find nothing absurd in district courts individually evaluating their own

jurisdiction."). In light of this Court's previous rulings in nearly identical cases, to which Plaintiff

alerted Merck, and Merck's utter failure in its notice of removal to satisfy its burden to establish

federal jurisdiction, this is not a close case. Plaintiff's motion (Doc. 8) is **GRANTED**, and this

action is **REMANDED** to the Twentieth Judicial Circuit Court, St. Clair County, Illinois, pursuant

to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Plaintiff's request for fees and costs

is granted, and he shall file his application on or before March 14, 2005.

     **IT IS SO ORDERED.**

     DATED: 2/17/05

                        s/ G. Patrick Murphy
                        G. PATRICK MURPHY
                        Chief United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID J. McQUAY,                       )
                                       )
         Plaintiff,                    )
                                       )
vs.                                    )    CIVIL NO. 05-038-GPM
                                       )
MERCK & COMPANY, INC., and             )
WALGREEN COMPANY, d/b/a Walgreens,     )
                                       )
         Defendants.                   )

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

Plaintiff filed this action in state court seeking damages for personal injuries and economic losses suffered as a result of taking the prescription drug Vioxx, which was manufactured, marketed, distributed and/or sold by Defendants to the general public. On January 20, 2005, Merck & Company, Inc. (Merck), removed this action from state court based upon the diversity of citizenship statute, 28 U.S.C. § 1332, arguing that Walgreens Home Care, Inc., is fraudulently joined and, therefore, its Illinois citizenship should be disregarded. Plaintiff filed a motion to remand, in which he points out that the defendant named in this action is Walgreen Company, d/b/a Walgreens, and not Walgreens Home Care, Inc. Both Walgreen Company and Walgreens Home Care, Inc., are Illinois citizens, and it is clear to the Court that Merck intended to refer in its notice of removal to Walgreen Company, which the Court will refer to hereinafter as "Walgreens."

In order for this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000,

Page 1 of 3

exclusive of interest and costs. The burden of proof falls on the party seeking to invoke federal

diversity jurisdiction to present "competent proof" that the requirements of § 1332 have been met.

*Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997); *see also McNutt

v. General Motors Acceptance Corp.*, 298 U.S. 178, 179 (1936). In deciding whether a defendant

has been fraudulently joined, a federal court "must engage in an act of prediction: is there any

reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos v.

Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). As recognized by the Seventh Circuit Court of

Appeals in *Poulos*, "[a]n out-of-state defendant who wants to remove must bear a heavy burden to

establish fraudulent joinder." *Id.*

Generally, Merck argues that Walgreens has been fraudulently joined because Plaintiff has

not alleged a valid cause of action against this Defendant. Specifically, in its notice of removal,

Merck summarily states that "Plaintiff alleges that 'Walgreens sold [VIOXX] to plaintiff ... in the

regular course of its business' (Compl. ¶ 35) and that Walgreens should be liable for strict products

liability, failure to warn, and breach of warranty. (Counts 3, 6, and 11). There is no reasonable basis

for predicting that Plaintiff could prevail on her [sic] asserted claims against Walgreens. ...

Accordingly, Walgreens is fraudulently joined." (Doc. 1, ¶ 14 (string citation to cases denying

remand omitted).)

Before filing his motion to remand, Plaintiff attempted to resolve this issue by drawing

Merck's attention to this Court's order in a similar case, *Gallaher, et al. v. Bayer Corporation, et

al.*, civil number 01-641-GPM, in which the undersigned decided that Walgreen Company was not

fraudulently joined in a case involving the prescription drug Baycol. The Court would also draw

Merck's attention to its more recent decision in *Elliott v. Wyeth, Inc., et al.*, civil number 03-037-

GPM, another case in which the undersigned decided that Walgreen Company was not fraudulently joined after carefully considering Illinois's so-called "innocent seller" statute and the "learned intermediary doctrine."

After carefully reviewing the papers filed in this case, the Court finds a response to the motion to remand unnecessary. Merck has failed to meet its burden in its notice of removal. The Court is not persuaded by conclusory allegations and citations to opinions that lack precedential value. Moreover, the Court will not allow a case over which it lacks jurisdiction to sit on its docket until a decision is reached by the Judicial Panel on Multidistrict Litigation, especially after the Court of Appeals' decision in *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004) ("We find nothing absurd in district courts individually evaluating their own jurisdiction."). In light of this Court's previous rulings in nearly identical cases, to which Plaintiff alerted Merck, and Merck's utter failure in its notice of removal to satisfy its burden to establish federal jurisdiction, this is not a close case. Plaintiff's motion (Doc. 6) is **GRANTED**, and this action is **REMANDED** to the Third Judicial Circuit Court, Madison County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. Plaintiff's request for fees and costs is granted, and he shall file his application on or before March 14, 2005.

**IT IS SO ORDERED.**

DATED: 2/17/05

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 04-14335-CIV-MOORE

MARK TOMLIN and APRIL TOMLIN,

    Plaintiffs,

vs.                  ORDER

MERCK & CO., INC., KEVIN BEDELL,
and WALGREEN CO. d/b/a Walgreens,

    Defendants.

**CLOSED
CIVIL
CASE**

    THIS CAUSE came before the Court upon Plaintiffs' Motion to Remand (DE #4) and Merck's Motion to Stay (DE #9).

    UPON CONSIDERATION of the Motions, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### MOTION TO STAY

    Merck argues that the Court should stay all proceedings, including Plaintiffs' Motion to Remand, pending a decision by the Judicial Panel on Multi-district Litigation ("MDL") regarding whether to establish an MDL Court to hear all Vioxx related cases.[1] Plaintiffs oppose the Motion to Stay, and ask this Court to rule on their Motion to Remand before deciding whether a stay is appropriate. While the Court acknowledges that it has discretion to either resolve Plaintiffs' Motion to Remand, or to decline to decide the Motion to Remand and grant Merck's Motion to Stay, the Court chooses to reach the merits of Plaintiffs' Motion. In doing so the Court notes that other, factually similar cases removed by Merck to federal court based on fraudulent joinder have been remanded. See Irvin v. Merck & Co., Inc., Case No. 03-80514-CIV-HURLEY; Kozic v.

---

[1] Merck argues that a stay is appropriate because five other Vioxx cases have already been stayed in the Southern District of Florida, and that these decisions "make clear the necessity of a stay here." Mot. to Stay at 6-7. However, it appears from a review of those cases that one of them is a class action, and that the plaintiffs in the other four cases did not oppose a stay. Therefore, contrary to Merck's contentions, these cases do not make clear the necessity of a stay because they present different factual circumstances than the instant case.

1

Merck & Co., Inc., Case No. 8:04-CV-324-T-27TBM (M.D. Fla. Aug. 9, 2004). Merck attempts to distinguish these cases by arguing that, at the time they were remanded, no MDL had been requested. This attempt is disingenuous at best, and only serves to obscure the real issue before this Court of whether Merck should have removed this case based on fraudulent joinder in light of the prior remands in factually similar cases. Accordingly, Merck's Motion to Stay is DENIED and the Court will address the merits of Plaintiffs' Motion to Remand.

## MOTION TO REMAND

### I.     BACKGROUND

Plaintiff originally filed this case on November 5, 2004, in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida, Case No. 56-2004-CA-001523. Merck filed a Notice of Removal on December 1, 2004, alleging diversity of citizenship pursuant to 28 U.S.C. § 1332, on the basis that Plaintiffs had fraudulently joined defendant Kevin Bedell, and therefore his Florida citizenship should be ignored for purposes of diversity jurisdiction. Plaintiffs then filed a Motion to Remand, arguing that the joinder of Bedell was not fraudulent, and consequently, this Court lacks subject matter jurisdiction to hear the case.

### II.     LEGAL STANDARD

#### A.     Motion to Remand

A federal district court must remand to state court any case that was removed improperly or without the necessary jurisdiction. Campos v. Sociedad Aeronautica De Medellin Consolidada, S.A., 882 F. Supp. 1056, 1057 (S.D. Fla. 1994). In deciding a motion to remand, a district court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court

2

must find that the joinder was proper and remand the case to state court." <u>Cooker v. Amoco Oil</u> <u>Co.</u>, 709 F. 2d 1433, 1440 (11th Cir. 1983). This strict construction of removal statutes prevents "exposing the plaintiff to the possibility that they may win a final judgement in federal court, only to have it determined that the court lacked jurisdiction..." <u>Crowe</u>, 113 F. 3d at 1538.

### B.     Fraudulent Joinder

Merck's removal of this case to federal court was based upon its claim of fraudulent joinder. When a case is removed based on fraudulent joinder, the " removing party bears the burden of proving that the joinder of the resident defendant was fraudulent." <u>Cabalceta v. Standard</u> <u>Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir.1989)(citations omitted). The burden on the defendant is a "heavy one." <u>Crowe</u>, 113 F 3d at 1538. In order to satisfy this burden, the defendant must establish either that the jurisdictional facts were fraudulently alleged, or that there is "no possibility that plaintiff can establish any cause of action against the resident defendant." <u>Id</u>. "The fact that the plaintiffs may not ultimately prevail against the individual [non-diverse] defendants ... does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis." <u>Pacheco de Perez  v. AT&T Co.</u>, 139 F.3d 1368, 1380 (11th Cir. 1998). Furthermore, in a fraudulent joinder inquiry, the court is not to weigh the merits of the plaintiffs' claims "... beyond determining whether it is an arguable one under state law." In this analysis, the court is to look at plaintiff's pleadings at the time of removal. <u>Cabalceta</u>, 883 F.2d 1553, 1561.

### III.     DISCUSSION

Plaintiffs argue that a remand is necessary because they have a valid cause of action under Florida law against Bedell, and therefore his citizenship cannot be disregarded. In response, Merck argues that the "issue present here... is whether the pleading was sufficient to allege misrepresentations." Resp. at 18. Accordingly, Merck's arguments against remand, and in support

3

of removal, are based on the viability of Plaintiffs' complaint, rather than on whether Florida law generally provides for a cause of action against pharmaceutical sales representatives.[2] As a result, in deciding whether a remand is appropriate, the Court must determine whether Plaintiffs have provided sufficient allegations within their complaint to support any of the claims against Bedell.

Plaintiffs' complaint asserts three causes of action against the non-diverse defendant, Bedell: Count II for negligence, Count III for negligent misrepresentation, and Count IV for fraud. In order for Plaintiffs to prevail on their Motion to Remand, it is only necessary that they state one viable claim under Florida law against Bedell. Estate of Ayres v. Beaver, 48 F. Supp. 2d 1335, 1342 (M.D. Fla. 1999).

Plaintiffs' negligence claim against Bedell includes the following allegations: (1) that Bedell was a sales representative, detail person, or sales manager employed by Merck to promote, sell, distribute and encourage physicians, including Plaintiff's physician, to prescribe Vioxx;(2) that Bedell had a continuing duty to warn Plaintiff and/or Plaintiff's physician in a timely manner about the potential risks and complications associated with Vioxx; (3) that Becell knew or should have known that Vioxx caused unreasonably dangerous risks and side effects; (4) that Bedell failed to adequately and appropriately warn prescribing physicians of the significant risks of cardiovascular events associated with the use of Vioxx; (5) that Plaintiff suffered a heart attack in December of 2003; and (6) that such heart attack was the direct and legal result of the negligence of Bedell. See Pl. Compl. at 2-12.[3]

---

[2] Under Florida law, a pharmaceutical sales representative can be held liable for damages resulting from a patients use of a drug. See Albertson v. Richardson-Merrell, Inc., 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983)(holding that drug manufacturer and individual who promoted drug to medical profession could be held liable for damages resulting from patients use of drug).

[3] Plaintiffs' complaint contains several additional allegations regarding claims for negligent misrepresentation and fraud. However, because the complaint contains sufficient allegations to support their negligence claim against Bedell, the Court need not address the sufficiency of the additional claims.

4

In light of these allegations, Plaintiffs have stated an arguable claim for negligence under Florida law against Bedell. As a result, Merck has failed to meet its burden of proving that the joinder of Bedell was fraudulent. Therefore, because Bedell and Plaintiffs are Florida residents, there is not complete diversity and this Court lacks jurisdiction to hear this case.

### IV.    CONCLUSION

Based on the foregoing it is ORDERED AND ADJUDGED as follows:

1) Merck's Motion to Stay (DE #9) is **DENIED**;

2) Plaintiffs' Motion to Remand (DE #4) is **GRANTED,** based on lack of subject matter jurisdiction;

3) This case is remanded to the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida;

4) In light of Merck's prior notice that Plaintiffs' claim against a pharmaceutical representative was viable under Florida law, Plaintiffs may, pursuant to 28 U.S.C. § 1447(c), move this Court for costs and expenses incurred as a result of Merck's removal;

5) This case is **CLOSED.**

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of February, 2005.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | | |
|---|---|---|
| VIRGINIA A. HENDERSHOT, ET AL., | ) | Civil Action No. 3:05-70-JMH |
| RICHARD D. SOUTHWORTH, | ) | Civil Action No. 3:05-73-JMH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| | ) | |
| MERCK & CO., INC., ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

** ** ** ** ** ** ** ** **

These matters are before the Court on the above-named Plaintiffs' motions to remand their cases to state court. These cases arise out of harm to Plaintiffs allegedly caused by Vioxx, and each complaint alleges product liability claims against Merck and negligence claims against the physicians who prescribed Vioxx to Plaintiffs.[1] All responses and replies having been filed, these matters are now ripe for review.

**I. BACKGROUND**

*A.  Procedural Background*

Plaintiffs filed these actions in various state courts, and Defendant Merck removed them, claiming that the Court has subject

---

[1] Some of these cases also include claims against the physicians' employers, but as these claims are entirely derivative of the claims against the physicians, they need not be considered separately.  In addition, Plaintiffs make claims against drug representatives named as John Does.  These fictitious defendants will be disregarded for purposes of this motion.

matter jurisdiction based on diversity.  *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332(a).  Plaintiffs are citizens of Kentucky, Merck is a citizen of New Jersey under 28 U.S.C. § 1332(b), and the amount in controversy exceeds the jurisdictional minimum.  The physicians named in each of the state-court complaints are citizens of Kentucky, and thus according to Plaintiffs the presence of these non-diverse defendants destroys diversity.  Merck contends that the physicians were fraudulently joined solely for the purposes of avoiding federal jurisdiction.

B.    *The Complaints Against Merck*

Plaintiffs make a number of allegations in their complaints, most of which are directed at Merck.[2]  Plaintiffs allege that Merck actively concealed the cardiovascular risks of Vioxx from both the medical community and the public at large, and they include a "Vioxx Timeline" that describes the relevant studies, articles, and FDA actions regarding Vioxx.  According to the complaints, even before Vioxx was approved, there were both human and animal studies indicating that COX-2 inhibitors increase cardiovascular risks.  In March of 2000, Merck revealed the initial results of the Vioxx Gastrointestinal Outcomes Research (the "VIGOR" study), which showed that Vioxx had twice the rate of serious cardiovascular

_____

[2]    The complaints are nearly identical, with only the names and some of the dates changed.

events as a comparator drug, Naproxen.[3]

In January of 2001, an FDA advisory panel recommended that Merck change the labeling on Vioxx to reflect the cardiovascular risk, a step that Merck took in April of 2002. In the interim, the Journal of the American Medical Association had published a study again showing an increase in cardiovascular risk as compared to Naproxen, and a number of healthcare providers asked Merck to conduct tests on the cardiovascular risks associated with Vioxx. Eventually, in September of 2004, Merck pulled Vioxx from the market.

Plaintiffs assert that throughout this process Merck both concealed and actively misrepresented the true dangers of Vioxx. The claims asserted against Merck include negligence, strict liability, failure to warn, false advertising, and breach of various warranties.

C.    The Claims Against the Physicians

The claims against the physicians are negligence claims. Plaintiffs incorporate their history of the emerging knowledge of the dangers of Vioxx and claim that the physicians knew or should have known of the cardiovascular risks, failed to adequately

---

[3]    The complaint does not reveal to whom or in what medium these initial results were revealed. Plaintiffs also allege that when the final results of the VIGOR study appeared in the New England Journal of Medicine, Merck failed to disclose the cardiovascular risk. Although the circumstances of the initial release of data are unclear, at this stage all ambiguities must be resolved in favor of Plaintiffs, as further discussed below.

consider those risks, and failed to obtain informed consent. Other than the facts that the named physicians treated Plaintiffs and prescribed Vioxx to them, the only allegations supporting the claims against the physicians are the history of the public knowledge of the dangers of Vioxx. Plaintiffs argue that this is sufficient to state a claim that the physicians knew or should have known of the dangers of Vioxx.

## II. ANALYSIS

*A.    Fraudulent Joinder*

A case can only be removed if it could have been originally brought in federal court, and as there is no federal question, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. "[A] party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (internal quotation marks omitted).

The only issue is whether the non-diverse physicians were fraudulently joined.[4] The burden is on Merck to show fraudulent

---

[4]    Plaintiffs also argue that removal was defective because Merck failed to obtain the consent of all defendants to removal. While the statutes authorizing removal do not explicitly state that removal can be effected only with the consent of all defendants, the case law is clear that all named defendants must either join in the notice of removal or file notices demonstrating consent to removal. *See, e.g., Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533-34 (6th Cir. 1999). However, a removing defendant need not obtain the consent of parties who are

4

joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff *may* recover against non-diverse defendants, th[e] Court *must remand* the action to state court." *Id.* (emphasis added); *see also Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) ("[T]he inquiry is whether [plaintiff] had at least a colorable cause of action."). Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiffs. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiffs will prevail at trial on their claims against the physicians. The question is not even whether the Court believes that the physicians were in fact joined to defeat diversity. *See Jerome-Duncan*, 176 F.3d at 907 (holding that a plaintiff's motive in joining a non-

---

fraudulently joined. *See Constant v. Wyeth*, 352 F. Supp. 2d 847, 849 (M.D. Tenn. 2003). Accordingly, whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse physicians were fraudulently joined, and it need not be addressed separately.

diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiffs, Merck has shown that there is no colorable basis for predicting that Plaintiffs could prevail in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 845-46 (S.D. Ohio 2002) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848 (3d Cir. 1992); *Hartley v. CSX Transp, Inc.*, 187 F.3d 422 (4th Cir. 1999)). As the Third Circuit has noted, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff*, 977 F.2d at 852. "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendants, has no basis in law or reason." *Little*, 227 F. Supp. 2d at 846-47; *see also Batoff*, 977 F.2d at 852 (holding that a party is not fraudulently joined if the claims against them are not "wholly insubstantial and frivolous").

6

Merck makes two principal arguments in support of fraudulent joinder. First, Merck argues that Plaintiffs' claims against the physicians are wholly conclusory. Second, Merck argues that Plaintiffs' claims against the physicians are inconsistent with their allegations against Merck. As the fraudulent joinder inquiry depends on whether Plaintiffs have stated a colorable claim against the non-diverse defendants in state court, *see Coyne*, 183 F.3d at 493, the Court must assess Plaintiffs' complaints in light of Kentucky law, and to this the Court now turns.[5]

B.    *Conclusory Pleadings*

It is no doubt true, as Merck points out, that the complaints are long on allegations of wrongdoing by Merck and short on allegations against the physicians. From this fact Merck would have the Court draw the conclusion that the complaints are so deficient and conclusory that the physicians must be fraudulently joined. Therefore, the Court must determine whether the complaints state sufficient facts to sustain a claim against the doctors under Kentucky law.

"The elements of a medical malpractice claim are generally:

---

[5]    There are pending motions to stay in these cases, and Merck has argued that the issue of fraudulent joinder should be determined after transfer to MDL. However, as the determination of whether the physicians have been fraudulently joined depends on whether Plaintiffs have stated a claim under state law, *see Coyne*, 183 F.3d at 493, the MDL court would have to make fifty separate determinations. Although courts have gone both ways on this issue, this Court believes that it is in the interest of efficiency to rule on the motion to remand before transfer.

(1) duty; (2) breach of duty; (3) causation; and (4) injury."
*Gordon v. Kemper*, 2005 WL 678535 at *2 (Ky. App. Mar. 25, 2005);
*see also Wheeler v. Baptist Healthcare Sys.*, Inc., 14 Fed. App. 559
(6th Cir. 2001). A physician has a duty to use the same degree of
care and skill as would be expected of a reasonably competent
physician in similar circumstances. *See Mitchell v. Hadl*, 816
S.W.2d 183, 185 (Ky. 1991). Kentucky recognizes a physician's
failure to obtain informed consent as an actionable form of
negligence. *See Hawkins v. Rosenbloom*, 17 S.W.2d 113, 118-19 (Ky.
App. 1999).

Plaintiffs' complaints allege that the cardiovascular risks
associated with COX-2 inhibitors had been shown in both human and
animal studies before Vioxx's approval, and that public information
about the cardiovascular risks of Vioxx came out, notwithstanding
Merck's attempts to conceal the risks, from March of 2000 through
the time Vioxx was pulled from the market in September of 2004.
According to Plaintiffs, this means that at least at some point
during this period, the physicians knew or should have known of the
risks of Vioxx and should have disclosed the risks to Plaintiffs.
Plaintiffs allege that the physicians prescribed Vioxx and that
this was a proximate cause of the harm.

Kentucky's Civil Rules, like the Federal Rules of Civil
Procedure, require only that a plaintiff state a claim with
sufficient specificity so that defendants receive fair notice of

the claims against them. As the Kentucky Court of Appeals explained, "[u]nder the theory of 'notice' pleading adopted by the Civil Rules a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim. *It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given.*" *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960) (emphasis added and internal citations omitted); *see also Morris v. Cabinet for Families & Children*, 69 S.W.3d 73, 74 (Ky. 2002) ("The principal objective of a pleading is to give fair notice to the opposing party."). "[T]he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and . . . much leniency should be shown in construing whether a complaint . . . states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) .

Vague and conclusory though Plaintiffs' allegations may be, Plaintiffs have met the standard required for pleading negligence. Plaintiffs have alleged a breach of the physicians' duty by failing to know, failing to consider, and failing to inform the patient of the risks of Vioxx as a reasonable physician would have. Plaintiffs have alleged that they were injured and that this injury was caused in part by the physicians' failure to meet their duty.

There are sufficient facts alleged such that the physicians

9

would have fair notice of the claims and be able to frame an answer. A physician could answer by stating that he or she was unaware of the dangers and that a reasonable physician would not have encountered the information described in the complaint until after harm had already befallen their patients. The physician might even be right, but what a reasonable physician would have known is surely a matter for the jury and not a matter for the Court on a motion to remand. As the complaints give the physicians fair notice of the claims against them, they will not be held insufficient merely because their allegations are phrased largely as conclusions rather than as facts. *See Pierson Trapp Co.*, 340 S.W.2d at 460.

Moreover, even if the Court believed that the complaints against the physicians were too conclusory to state a claim, there is a remedy short of finding fraudulent joinder. As Judge Caldwell recently recognized in a well-reasoned opinion rejecting allegations of fraudulent joinder, if a complaint is too vague a defendant's remedy is to seek a more definite statement. *See Asher v. Minn. Mining & Mfg. Co.*, No-04-CV-522, 2005 WL 1593941, at *3 (E.D. Ky. June 30, 2005). In *Asher*, a defendant argued that the complaint lacked specificity in its claims against the non-diverse defendants and therefore that those defendants were fraudulently joined. Judge Caldwell rejected that argument, holding that "[t]he Defendants' proper recourse under Kentucky state law . . . would be

10

to request a more definite statement under CR 12.05. The Complaint would not be dismissed because of the alleged deficiencies."[6] *Id.*; *see also Little*, 227 F. Supp. 2d at 843 (remanding suit against drug manufacturer and non-diverse pharmacies even though "[t]he pleadings are general in their nature; the specifics few").

The Court cannot find that the allegations are so bereft of factual underpinnings that the physicians are fraudulently joined. Reading the complaints in the light most favorable to Plaintiffs, the allegations include facts that go to duty, breach, harm, and causation, and the Court believes that the defendant-physicians have received fair notice of the claims against them. If the physicians feel that the complaints are too conclusory, their remedy is to move for a more definite statement.[7]

---

[6]     In a similar fashion, the District Court for the Southern District of Ohio noted, in response to a claim that parties had been fraudulently joined, that a federal court should not deny remand based on factual deficiencies in the pleadings when the Plaintiffs would have the opportunity to amend their complaints in state court. *See Little*, 227 F. Supp. 2d at 847; Ky. R. Civ. P. 15.01 (following Fed. R. Civ. P. 15(a) and directing that leave to amend "be freely given when justice so requires").

[7]     Merck has noted that this Court has found fraudulent joinder in somewhat similar cases in the past. *See Sires v. Eli Lilly & Co.*, No. 5:05-CV-117, 2005 WL 1239636 (E.D. Ky. May 24, 2005); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546 (E.D. Ky. 2001). The complaints in those cases, however, were even more deficient than the complaints in this case. In *Sires*, the complaint failed even to allege that the defendant-physician had prescribed the drug at issue in the action, and in *Salisbury* the complaint did not include an allegation that the defendant pharmacies had sold the drug to the plaintiffs. The complaints in this case at least allege that the physicians prescribed Vioxx.

11

*C.   Inconsistent Pleadings*

Merck also argues that the claims against the physicians are inconsistent with the main thrust of the complaints, which is that Merck engaged in a program of concealing the risks of Vioxx from not only the public but from the medical community as well. According to Merck, if it is true that they concealed this information from the physicians, then it is impossible that Plaintiffs will be able to show that the physicians knew or should have known of the risks.

This argument fails for two reasons. First, giving Plaintiffs the benefit of all doubts, it is not clear that the allegations against Merck are necessarily inconsistent with the allegations against the physicians.  It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that a reasonable physician would still have known of the risks from the information that had come out.  Plaintiffs allege that certain information about the risks of Vioxx was publicly known at various times notwithstanding Merck's concealment, and that even aside from specific information about Vioxx, the cardiovascular risks associated with COX-2 inhibitors were known before the approval of Vioxx.

Second, the Kentucky Civil Rules, like the Federal Rules, allow alternative or inconsistent pleadings: "A party may . . . state as many separate claims . . . as he has regardless

12

of consistency." Ky. R. Civ. P. 8.05(2). Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a physician should have known of the risks of a particular drug. *See, e.g., Collins v. Bacon*, No. 1:05-CV-211, 2005 WL 2429844 at *3 (E.D. Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.*, No. 1:01-CV-418, 2002 WL 449423 at *2-3 (N.D. Miss. Feb. 4, 2002). Although other courts have ruled the other way on this issue, this Court does not find that the partial inconsistency in Plaintiffs' complaints means that Plaintiffs do not have a colorable claim against the physicians in state court.

### III. CONCLUSION

Although the complaints in these cases are not models of clarity, and the bulk of the allegations relate to the conduct of Merck, the Court cannot find that they are so deficient as to warrant a finding of fraudulent joinder. The burden on a defendant seeking to prove fraudulent joinder is high, and Merck has not met that burden. Plaintiffs state a claim against the non-diverse physicians that may be colorable in state court, and that is all that they must do for their motion to remand to be granted.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That in **3:05-cv-70**, Plaintiffs' motion to remand [Record No. 8] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this

13

action be **REMANDED** to Franklin Circuit Court.

(2) That in **3:05-cv-73**, Plaintiffs' motion to remand [Record No. 10] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this action be **REMANDED** to Trimble Circuit Court.

This the 22nd day of December, 2005.



Signed By:

_**Joseph M. Hood**_

**United States District Judge**

14

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA      03 OCT 20  PH 3: 49
MIDDLE DIVISION
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PAMELA FLOYD, STACIE H. RICHARDS, and ANN RUTLEDGE,<br><br>    Plaintiffs,<br><br>vs.<br><br>WYETH, a corporation; STACY STUBBLEFIELD, an individual; MICHAEL T. SULLIVAN, an individual; and BETSY R. WEAVER, an individual,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action Number
03-C-2564-M

**ENTERED** *pc*
OCT 2 0 2003

REMAND ORDER

Because the removing Defendant has failed to carry its heavy burden of proof of fraudulent joinder, and the attendant lack of complete diversity of the parties, this case is hereby REMANDED to the Circuit Court of Marshall County, Alabama, from whence it was improvidently removed.

The costs of this action are hereby taxed against the removing Defendant.

Done this ___20th___ day of October, 2003.

_U.W. Clemon_
Chief United States District Judge
U.W. Clemon

PLAINTIFF'S
EXHIBIT
"D"

10

FILED

NOV 2 1 2003

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CLERK

U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

SHARON C. CRITTENDEN,          )
et al.,                        )
                               )
        Plaintiffs,            )
                               )
        v.                     )        CIVIL ACTION NO.
                               )        03-T-920-N
WYETH, a corporation,          )
et al.,                        )
                               )
        Defendants.            )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been _fraudulent joinder_ of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), _see Coker v. Amoco Oil Co._, 709 F.2d 1433, 1440 (11th Cir. 1983); _Cabalceta v. Standard Fruit Co._, 883 F.2d 1553, 1561 (11th Cir. 1989).

EOD   11/21/03

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motions to remand, filed on September 30 and October 15, 2003 (doc. nos. 9, 13, and 14), are granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 21st day of November, 2003.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STEPHANIE TERRELL, et al.,          )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )        CV-03-BE-2876-S
                                    )
WYETH, et al.,                      )
                                    )
        Defendants.                 )
                                    )
                                    )
                                    )
                                    )
                                    )

FILED
03 DEC 12 PH 2:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
DEC 12 2003

## MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT

The case comes before the court on Plaintiff's Motion to Remand (Doc. 10).  Having reviewed the pleadings and briefs of counsel, the court is not persuaded that the plaintiffs failed to state a viable claim against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and, therefore, the court is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on October 23, 2003 from the Circuit Court of Jefferson County, Alabama.  Although the complaint purports to state claims against corporate defendants who admittedly are not Alabama residents, it also names as a defendant Pam Parker, admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441.  Defendants argue, however, that Ms. Parker is fraudulently joined.

1

18

The standard for successfully removing a case from state to federal court is a high one, and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheco de Perez v. AT&T Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility to establish a cause of action against non-diverse defendants in state court, or (b) that the plaintiff's pleading of jurisdictional facts have been made fraudulently. Cabelcata, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." See Coker, 709 F.2d at 1440-41; see also Pacheco de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand.* See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (emphasis added). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

2

Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and timing of the injuries sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that the plaintiffs would not be successful in urging its various theories under Alabama law.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve *all* doubts in favor of remand, the Plaintiffs' Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Jefferson County, Alabama.

DONE and ORDERED this 12ᵗʰ day of December, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

3

01/23/2004 14:55 FAX 2052523536          K Stephen Jackson PC          @002
SENT BY: MORRIS & MCANNALLY L.L.C.;     304 589 1821;     JAN-23-04  2:25PM;     PAGE 2/3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

**FILED**

JAN 23 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA

|  |  |  |
|---|---|---|
| SARA BLAIR, et al , | ) | |
| Plaintiffs, | ) | |
| v. | ) | CIVIL ACTION NO. 03-T-1251-S |
| WYETH, et al., | ) | |
| Defendants. | ) | |

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

EOD January 23, 2004

01/23/2004 14:55 FAX 2052523636                    K Stephen Jackson PC                    ⊠003
SENT BY: MORRIS & MCANNALLY L.L.C.;              334 589 1821;        JAN-23-04  2:26PM;        PAGE 3/3

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on December 30, 2003 (Doc. No. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2ᵗᵗ day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

01/23 2004 14:55 FAX 2052523536          K Stephen Jackson PC                    @004

FILED

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION JAN 2 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

RITA BRUNSON,                    )
                                 )
        Plaintiff,               )
                                 )
        v.                       )   CIVIL ACTION NO. 03-T-1167-S
                                 )
WYETH, et al.,                   )
                                 )
        Defendants.              )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiff's motion to remand. The court agrees with plaintiff that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

EOD 1/23/04

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motion to remand, filed on December 16, 2003 (Doc. No. 11), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the __28__ day of January, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

01/23/2004 14:55 FAX 2052523606          K Stephen Jackson PC                    ⌀006

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION FILED

·JAN 2 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

VALERIE BALLARD, et al.,          )
                                  )
        Plaintiffs,               )
                                  )
    v.                         :  )     CIVIL ACTION NO. 03-T-1255-N
                                  )
WYETH, et al.,                    )
                                  )
        Defendants.               )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).

Second, there has not been fraudulent misjoinder of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

12

EOD 1/23/04

01/23/2004 14:56 FAX 2052523636          K Stephen Jackson PC                    ☒007

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 6, 2004 (Doc. No. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Covington County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2nd day of January, 2004.

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

04 JAN 30  PH 3: 46

U. DISTRICT COURT
N. D. OF ALABAMA

SANDRA STOREY,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                :        CV-04-BE-27-E        **ENTERED**
                                  )
WYETH, INC., WYETH                )                            JAN 3 0 2004
PHARMACEUTICAL, and               )
ANTHONY CHERRY,                   )
                                  )
        Defendants.               )
                                  )
                                  )

## MEMORANDUM OPINION AND ORDER REMANDING CASE TO STATE COURT

The case comes before the court on the plaintiff's "Motion to Remand" (Doc. 5). Having

reviewed the entirety of the pleadings and briefs of counsel, the court hereby GRANTS the

motion to remand.  The court is not persuaded that the plaintiffs failed to state a viable claim

against the non-diverse defendant, or that the non-diverse defendant was fraudulently joined, and,

thus, is not persuaded that the case was properly removed for the reasons stated below.

The defendants removed this case to federal court on January 7, 2004, from the Circuit Court

of Calhoun County, Alabama.  Although the complaint purports to state claims against corporate

defendants who admittedly are not Alabama residents, it also names as a defendant Anthony Cherry,

admittedly a resident of Alabama, whose presence precludes removal under 28 U.S.C. § 1441.

Defendants argue, however, that Mr. Cherry is fraudulently joined.

The standard for successfully removing a case from state to federal court is a high one,

and the burden rests heavily upon the removing party to establish that federal jurisdiction exists. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983). This burden is especially high when the defendants allege fraudulent joinder as the basis for subject matter jurisdiction. See Pacheco de Perez v. AT&T Company, 139 F.3d 1368, 1381 (11th Cir. 1983). In making the fraudulent joinder determination, a district court "must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." Pacheco de Perez, 139 F.3d at 1380.

To establish fraudulent joinder, the removing party must show either (a) that the plaintiff would have no possibility of establishing a cause of action against a non-diverse defendant in state court, or (b) that the plaintiff's pleading of jurisdictional facts has been made fraudulently. Cabalceta, 883 F.2d at 1561. Furthermore, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." Coker, 709 F.2d at 1440-41; see also Pacheco de Perez, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court.").

This court must construe removal jurisdiction narrowly, *with all doubts resolved in favor of remand*. See University of So. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). In making its determination, the court should not speculate about the futility of the plaintiff's claim in state court. Id.

Although whether the plaintiff will be able to successfully prove Mr. Cherry's liability is unclear, this court will not speculate that the plaintiff has *no* possibility of establishing its claims

of negligence and fraud against this non-diverse defendant. Little, if any, discovery has been done to date in this case; thus, this court cannot make rash decisions regarding actions made by the defendants and their resulting consequences. Nor can the court conclusively determine that the plaintiff would not be successful in urging her various theories under Alabama law.

Similarly, the court is not prepared to conclude that the plaintiff's fraud claims should be struck for lack of specificity. While the complaint is indicative of a "form" pleading, it adequately informs the defendants of the nature of the fraud.

Because the defendants have not clearly proven that this court has jurisdiction based on diversity under 28 U.S.C. § 1332, and because this court must resolve all doubts in favor of remand, the Plaintiff's Motion to Remand is hereby GRANTED. The clerk is ordered to transfer the file on this case back to the Circuit Court of Calhoun County, Alabama.

DONE and ORDERED this 30th day of January, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT COURT

FILED

04 FEB -3 AM 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

SANDRA CASH,                    )
                                )
        Plaintiff,              )
                                )
                                )
                                )
vs.                        :    )    CIVIL ACTION NO. 03-RRA-3378-E
                                )
WYETH, et al.,                  )
                                )
        Defendants.             )

ENTERED

FEB - 3 2004

## MEMORANDUM OF DECISION

This action was removed from the Circuit Court of Calhoun County, Alabama. The

plaintiff has filed a motion to remand. The complaint alleges that she suffered valvular heart

disease as a result of taking the drug Pondimin or Redux. (The defendants state that the

plaintiff took Pondimin only.) The question before the court is whether defendant Anthony

Cherry, Wyeth's sales representative, was fraudulently joined as a defendant in order to defeat

diversity jurisdiction.

Remand must be granted if there is a possibility that the state court would find that the

plaintiff has stated a claim against the defendant in question. *Cabalceta v. Standard Fruit Co.*,

883 F.2d 1553, 1561 (11th Cir. 1989). Evidence may be considered as well as the allegations

in the complaint:

> To determine whether the case should be remanded, the district court must
> evaluate the factual allegations in the light most favorable to the plaintiff and must
> resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549.
> The federal court makes these determinations based on the plaintiff's pleadings at the



time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties.

*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), *quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981). Along with other submissions, the defendants have submitted the affidavit of Cherry, and the plaintiff has presented the affidavit of her doctor, Omar Khalaf. The parties have not conducted discovery.

The complaint alleges the following against Cherry:

22. Upon information and belief the positive tortious acts which were committed by the Sales Rep Defendant in his individual and/or corporate capacity, include, but are not limited to, the following:

    a.    Sales Rep Defendant failed to convey adequate warnings to the Plaintiff through the prescribing physician set forth above regarding the risks of prescribing fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    b.    Sales Rep Defendant was in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™) which has caused harm to the Plaintiff SANDRA CASH;

    c.    Sales Rep Defendant negligently distributed, advertised and/or promoted the drugs fenfluramine (Pondimin®) and dexfenfluramine (Redux™);

    d.    Sales Rep Defendant made fraudulent and reckless misrepresentations regarding the character, safety and efficacy of the drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), and;

    e.    Sales Rep Defendant, with knowledge of unreasonable risks associated with the ingestion of fenfluramine (Pondimin®) and dexfenfluramine (Redux™), alone and/or in combination with phentermine continued to make misrepresentations regarding the character, safety and efficacy of drug fenfluramine (Pondimin®) and dexfenfluramine (Redux™), while providing and/or offering incentives, rebates, reimbursements, perks, and/or other consideration to Plaintiff's prescribing physician

2

> in furtherance of attempting to influence the prescribing of
> said diet drugs.
>
> 23.  Defendant Anthony Cherry is a citizen of Calhoun County and is over nineteen
> years of age.  At all times material hereto, this Defendant was <u>in the business of
> promoting, marketing , developing, selling and/or distributing the pharmaceutical
> drugs fenfluramine and/or dexfenfluramine in the State of Alabama and did market,
> develop, sell, detail and/or distribute said drugs to Plaintiff, Sandra Cash's prescribing
> physician, Omar Khalaf, M.D.</u>  This defendant was also involved in a <u>conspiracy to
> conceal certain information relating to the dangers associated with the subject drug</u>
> products from the consuming public, including but not limited to Plaintiff.

*Complaint*, ¶¶22-23 (emphasis added). Thus, the complaint alleges that Cherry failed to warn

of the dangers of Pondimin, negligently marketed and distributed this dangerous drug,

recklessly and intentionally misrepresented its dangers, and conspired to conceal its dangers.

The defendants state that under Alabama law the plaintiff clearly cannot state a claim

against Cherry.  They cite law holding that, absent personal participation, an employee is not

liable for the negligence of his employer, that the fraud and conspiracy claims are not pled

with particularity, and that a conspiracy claim fails when the claims underlying the conspiracy

fail. Moreover, they factually contend that Cherry said nothing about Pondimin whatsoever.

Relying on Cherry's affidavit, the defendants state that Cherry did not even promote

Pondimin, that Wyeth composed warnings and other information concerning Pondimin for

Cherry, who was not a part of that process, and that Cherry did not have the expertise to

question the accuracy of any information supplied by Wyeth.  Cherry further states in his

affidavit that he was unaware of any association between Pondimin and the heart disease of

which the plaintiff complains, and he made no representation whatsoever concerning this

drug. The defendants assert in their written opposition to remand that this evidence is uncontroverted. However, Dr. Khalaf states that Cherry visited his office and "promoted and marketed" Pondimin, *Khalaf Affidavit*, ¶3, and that Cherry "continuously represented that [Pondimin and Redux] were safe and effective. Also, [Cherry] represented to [him] that the drugs were safe and effective for long term use," *id.* at ¶6.[1] Khalaf additionally states:

> The reliance I placed on Mr. Cherry and Mr. Lavender regarding safety issues for Pondimin and Redux was made even more critical by the fact that warnings to physicians prescribing Pondimin and Redux that these drugs could cause valvular heart disease were not contained in the Physicians' Desk Reference ("PDR") until the 1998 edition, which was after Pondimin and Redux were withdrawn from the market.

*Id.* at ¶7.

### Whether to Defer to MDL Judge

The defendants want the court to allow this remand issue to go to the MDL court. In her motion to remand, the plaintiff responds that in an MDL hearing the judge "indicated a preference" for all remand motions to be handled by the various district courts. In their written opposition to remand, the defendants respond that a copy of the transcript of the 1998 hearing stating such "sentiments" has not been supplied by the plaintiff. The defendants, however, do not deny that the judge did, in fact, indicate such a preference.

The defendants refer to statements in an August, 2003 memorandum written by the MDL judge:

---
[1] Materials presented to the court by the defendants included information sent to Wyeth's sales force. In "Questions and Answers About Pondimin" and in the Pondimin "Fact Sheet" it is stated that Pondimin is for short-term use.

4

> [R]ecurrent issues have continued to emerge in connection with motions to remand to state courts cases removed by Wyeth on the basis of diversity of citizenship. We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal of cases to the federal courts. Likewise, we are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.  :

This memorandum was addressing motions to remand all pending *cases* to the various transferor courts on the ground that the MDL had done its work. The court gave several reasons why the cases should not be remanded to the transferor courts, one of which was that, after all its work, the MDL had developed a "broader perspective than is usually available" to the transferor courts in dealing with motions to remand to state courts based on fraudulent joinder. Also, the defendants cite *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990):

> Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, *see In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396 (E.D.N.Y.1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir.1987), *cert. denied*, 487 U.S. 1234, 108 S.Ct. 2899, 101 L.Ed.2d 932 (1988), and there are real economies in transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years, *see In re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 154-59 (2d Cir.1987) (describing history of proceedings before Judge Weinstein), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. Consistency as well as economy is thus served. We hold, therefore, that the MDL

5

Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending, *cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947) (district court has authority to issue injunction while jurisdictional questions are pending), that objection to be resolved by the transferee court.

*Id.* at 9. This language points out what lies at the heart of MDL litigation: common questions of law or fact.

The question of whether Cherry was negligent or made fraudulent statements is specific to this case. The MDL court would not be in a better position to decide remand than this court. Also, this court has heard oral argument and considered the parties' contentions. Wherefore, the court will exercise its discretion to decide the question of fraudulent joinder.

## Whether There Is Fraudulent Joinder

The defendants' argument against remand is premised upon the evidence being uncontroverted that Cherry did not promote or market or make any representation to Dr. Khalaf about Pondimin. If that were true, the motion to remand might be due to be denied. But there is clearly a factual dispute about what Cherry did and said, as Dr. Khalaf states that Cherry visited his office, promoted and marketed Pondimin, and represented that Pondimin was safe and effective for long-term use. Wherefore, there is at least a possibility that the plaintiff has a claim against Cherry.

## Decision

For the reasons stated above, the court has decided to exercise its discretion to decide

the remand issue, this is not a case of fraudulent joinder, and the motion to remand is due to be granted for lack of subject matter jurisdiction. An appropriate order will be entered.

DONE this 2nd day of February, 2004.

Robert R. Armstrong, Jr.
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION



JEVENARI MARSHAL, DIANE POLITO,  )
and MAXINE SMITHEY,              )
                                 )
        Plaintiffs,              )
                                 )
vs.                              )        Case No. CV-04-TMP-179-S
                                 )
WYETH, INC., WYETH               )
PHARMACEUTICALS, INC.,           )
BEN LAVENDER, and WILLIAM OWEN,  )
                                 )
        Defendants.              )

ENTERED

FEB 18 2004

## ORDER OF REMAND

This cause is before the court on the plaintiffs' emergency motion to remand, filed January 30, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

### Procedure History

Plaintiffs Marshal, Polito, and Smithey filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Lavender and Owen, in the Circuit Court of Jefferson County, Alabama, on December 30, 2003. It alleges claims for "strict liability (defective product)," "strict liability—failure to warn," "strict liability—failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs,

Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and heart valve defects. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, have suffered medical injuries due to that use. With respect to defendants Lavender and Owen, plaintiffs contend that these salesmen were one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with use of these medications and, further, that these defendants either innocently, negligently, or recklessly failed to reveal to physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on January 29, 2004, contending that the court has original diversity jurisdiction because Lavender and Owen, both Alabama residents, are fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Owen are not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

### Fraudulent Joinder

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Owen are Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper,

2

and the case is due to be remanded to the state circuit court. Defendants maintain, however, that

Lavender and Owens were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction

and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis

for this contention, defendants have offered evidence that Lavender and Owen did not sell or

promote the drug Pondimin at all and that they knew nothing about the medical risks associated with

Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender

or Owen, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity

jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in Crowe

v. Coleman, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of
> proving that either: (1) there is no possibility the plaintiff can establish a cause of
> action against the resident defendant; or (2) the plaintiff has fraudulently pled
> jurisdictional facts to bring the resident defendant into state court. Cabalceta v.
> Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the
> removing party is a "heavy one." B. Inc. v. Miller Brewing Co., 663 F.2d 545, 549
> (5th Cir. Unit A 1981).

Id. at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the

absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of

his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff
> has the right to select the forum, to elect whether to sue joint tortfeasors and to
> prosecute his own suit in his own way to a final determination." Parks v. The New
> York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of
> removal statutes also prevents "exposing the plaintiff to the possibility that he will
> win a final judgment in federal court, only to have it determined that the court lacked
> jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.,
> 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E.

3

Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, In Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco

4

Oil Co., 709 F 2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F 3d at 1287 (emphasis in original).

See also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.")  Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Owen, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Owens misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians, reasonably relied upon such misrepresentations.  It is unimportant that Lavender and Owen did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs.  Alabama law recognizes an action for innocent or negligent

---

[1] Lavender and Owen have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. They reason from this and the fact that plaintiff Smithey took only Pondimin that there is no possibility that, at the very least, Smithey has any claim against them. They nonetheless admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth.  Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux.  Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979)

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Owen did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Lavender and Owen. There is a possibility that the plaintiffs can state a claim against them, as sales representatives who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Lavender and

6

Owen is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Owen are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _18th_ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

7

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 23  PH 3: 34

U S DISTRICT COURT
N D OF ALABAMA

JUANITA JOHNSON, LORETTA SUE )
KERCE, MYRTICE D. MILLS, )
VICKI N. PARSONS, DEENA L. PHILLIPS, )
LINDA J. PIPER, BRENDA J. ROTH, )
ALLISON L. WEST, )
)
Plaintiffs, )
)
vs. )
)
WYETH, a corporation; DAVID WURM, an )
individual, et al., )
)
Defendants. )

**ENTERED**

FEB 2 3 2004

Case No. CV-04-TMP-224-S

<u>MEMORANDUM OPINION AND REMAND ORDER</u>

This cause is before the court on the plaintiffs' motion to remand and for sanctions (Doc. 8) filed February 10, 2004, as well as defendant Wyeth's motion to stay pending transfer to the Multi-District Litigation court (Doc. 10), filed February 17, 2004. For the reasons expressed below, the court finds that the motion for remand is due to be granted, the motion for sanctions denied, and the motion for a stay denied.

<u>Procedure History</u>

Plaintiffs filed their joint complaint against defendants Wyeth and one of Wyeth's pharmaceutical salesmen, David Wurm, in the Circuit Court of Jefferson County, Alabama, on January 5, 2004. They allege claims under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") and for product liability--failure to warn, breach of the implied warranty of

merchantability, negligence, wantonness, fraud, misrepresentation, and suppression, all arising from the plaintiffs' use of one or both of certain diet medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, have suffered medical injuries due to that use. With respect to defendant Wurm, plaintiffs contend that this salesmen was one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with use of these medications and, further, that he either innocently, negligently, or recklessly failed to reveal to plaintiffs' physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court on February 4, 2004, contending that the court has original diversity jurisdiction because Wurm is fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their motion to remand that Wurm is not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

2

<u>Fraudulent Joinder</u>

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Wurm, a pharmaceutical representative employed by Wyeth and its predecessor, American Home Products, Inc., is an Alabama resident and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Wurm was fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, his presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Wurm did not sell or promote the drug Pondimin at all and that he knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against Wurm, making his joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in <u>Crowe v. Coleman</u>, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one' <u>B. Inc. v. Miller Brewing Co.</u>, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

<u>Id.</u> at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of

3

his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc. v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548- 49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

4

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court"). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendant, Wurm, in the form of a negligent fraud claim. To state such a possible claim, the plaintiffs need only allege that Wurm misrepresented certain material facts about the risks associated with use of Pondimin[1] and Redux and that plaintiffs, through their physicians,

---

[1] Wurm has filed an affidavit in which he states that he never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Wurm's liability. Wurm admits that when questioned by physicians about Pondimin, he attempted to provide answers based on the information he received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that he made misstatements about the risks of using Pondimin, as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must undertake.

5

reasonably relied upon such misrepresentations. It is unimportant that Wurm did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Starlley, 366 So. 2d 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Wurm did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what he knew, his innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Wurm. There is a possibility that the plaintiffs can state a claim against him,

as a sales representative who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Wurm is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Questions must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Wurm, a non-diverse defendant, is not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

### Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further Order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003).

7

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _____ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 FEB 24  AM 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

FEB 24 2004

ANN McGOWAN, BECKY PARTINGTON, )
and LAURA STANFIELD, )
)
Plaintiffs, )
)
)
vs. )
)
WYETH, INC., WYETH )
PHARMACEUTICALS, INC., )
BEN LAVENDER, and ANTHONY )
CHERRY, )
)
Defendants. )

Case No. CV-04-TMP-298-S

MEMORANDUM OPINION AND ORDER OF REMAND

This cause is before the court on the plaintiffs' emergency motion to remand, filed February 17, 2004, to which defendants responded with a motion to stay pending transfer to the MDL proceedings on February 19, 2004. The motion has been briefed by both sides, and the court finds that the action is due to be remanded.

Procedure History

Plaintiffs McGowan, Partington, and Stanfield filed their joint complaint against defendants Wyeth, Inc., and Wyeth Pharmaceuticals, Inc., (hereinafter collectively "Wyeth") and two of Wyeth's pharmaceutical salesmen, Ben Lavender and Anthony Cherry, in the Circuit Court of Jefferson County, Alabama, on January 16, 2004. The complaint alleges claims for "strict liability–defective product," "strict liability–failure to warn," "strict liability–failure to test," negligence, breach of warranties, fraud and misrepresentation, negligent and reckless misrepresentation, and conspiracy to defraud and fraudulently conceal, all arising from the plaintiffs' use of one or both of certain diet

medications manufactured and distributed by Wyeth, formerly known as American Home Products, Inc. In particular, the complaint alleges that Wyeth manufactured, marketed, and distributed two drugs, Pondimin (fenfluramine) and Redux (dexfenfluramine), which later were recognized as associated with several medical problems, including primary pulmonary hypertension and valvular heart disease. Plaintiffs allege that their doctors prescribed one or both of these drugs to them and, consequently, they have suffered medical injuries due to that use. With respect to defendants Lavender and Cherry, plaintiffs contend that these salesmen were one of the primary sources by which Wyeth communicated to physicians the risks and benefits associated with the use of these medications and, further, that these defendants either innocently, negligently, or recklessly failed to reveal to physicians all of the information known about the risks of using Pondimin and Redux.

Defendants timely removed the action to this court[1] on February 13, 2004, contending that the court has original diversity jurisdiction because Lavender and Cherry, both Alabama residents, are fraudulently joined and should be dismissed for purposes of establishing subject-matter jurisdiction. Plaintiffs have replied in their emergency motion, filed the next day, that Lavender and Cherry are not fraudulently joined and that the removal to this court was intended to do nothing more than delay the case long enough for it to be transferred to the Eastern District of Pennsylvania to be joined with an MDL case pending there. Hence, the plaintiffs have requested the court to consider their remand motion on an expedited basis before the case can be transferred to the MDL court.

---

[1] There has been a spate of these removals in the last few weeks. The undersigned himself has dealt with two earlier removals in Marshal, et al., v. Wyeth, Inc., et al., CV-04-TMP-179-S, and Johnson, et al., v. Wyeth, et al., CV-04-TMP-224-S. Consequently, the court is thoroughly familiar with the positions and arguments of the parties

Fraudulent Joinder

The parties agree that the case involves more than $75,000 in controversy and that the plaintiffs' citizenship is diverse from that of Wyeth. They also agree that Lavender and Cherry are Alabama residents and, therefore, not diverse from the plaintiffs. Plaintiffs assert for that reason that no diversity jurisdiction exists, the court lacks subject matter jurisdiction, the removal was improper, and the case is due to be remanded to the state circuit court. Defendants maintain, however, that Lavender and Cherry were fraudulently joined by plaintiffs simply to defeat diversity jurisdiction and, therefore, their presence in the case should be ignored for jurisdictional purposes. As the basis for this contention, defendants have offered evidence that Lavender and Cherry did not sell or promote the drug Pondimin at all and that they knew nothing about the medical risks associated with Redux. Consequently, defendants argue, there is no possibility of a recovery against either Lavender or Cherry, making their joinder in this action fraudulent.

The Eleventh Circuit Court of Appeals addressed the issue of removal grounded on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).

Id. at 1538. The standard is onerous because, absent fraudulent joinder, the plaintiffs have the absolute right to choose their forum. Courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.

3

This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc., 507 F. Supp. 740, 744 (S.D. Ga.1981)(quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

Id.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim while deciding whether there is a *possibility* a claim exists. The Crowe court reiterated:

While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [B. Inc., v. Miller Brewing Co., 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' Id. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' Id. at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. See id. 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993).

Id. (Emphasis added).

More recently, in Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001), the court of appeals emphasized the limits of the fraudulent joinder analysis, saying:

4

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983), superceded by statute on other grounds as stated in Wilson v. General Motors Corp., 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original).

Id.; see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003)("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court."). Clearly, the fraudulent joinder issue does not permit the court to examine the merits of the claim asserted against a non-diverse defendant beyond seeking to determine whether there is "a possibility" that a state court might find a valid claim to be stated.

In this case, the court is persuaded that the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry, in the form negligent fraud claims. To state such a possible claim, the plaintiffs need only allege that Lavender and Cherry misrepresented certain material facts about the risks associated with use of Pondimin[2] and Redux and that plaintiffs,

---

[2] Lavender and Cherry have given affidavits in which they state they never sold, marketed, or promoted the drug Pondimin. Even if these plaintiffs all used only Pondimin, there is a "possible" basis for Lavender's and Cherry's liability. They admit that when questioned by physicians about Pondimin, they attempted to provide answers based on the information they received from Wyeth. Thus, it remains "possible," as alleged in the complaint, that they made misstatements about the risks of use of Pondimin as well as Redux. Whether that "possibility" is something that can be developed factually goes to the merits of the claim and is beyond the fraudulent joinder analysis the court must

5

through their physicians, reasonably relied upon such misrepresentations. It is unimportant that Lavender and Cherry did not know of the risks and, therefore, did not *intentionally* misrepresent the risks associated with these drugs. Alabama law recognizes an action for innocent or negligent misrepresentation as well as for reckless and intentional misrepresentations. For example, the Alabama Court of Civil Appeals has explained:

> An innocent misrepresentation is as much a legal fraud as an intended misrepresentation. The good faith of a party in making what proves to be a material misrepresentation is immaterial as to whether there was an actionable fraud. Smith v. Reynolds Metals Co., 497 So. 2d 93 (Ala. 1986). Under the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud. Mid-State Homes, Inc. v. Startley, 366 So. 2d 734 (Ala. Civ. App. 1979).

Goggans v. Realty Sales & Mortgage, 675 So. 2d 441, 443 (Ala. Civ. App., 1996); see also Cain v. Saunders, 813 So. 2d 891 (Ala. Civ. App. 2001).

Even if the court assumes that Lavender and Cherry did not know of the PPH and valvular heart disease risks associated with these drugs and, therefore, did not recklessly or intentionally misstate what *they* knew, their innocent misrepresentations, at least as alleged by the complaint, understating the risks constitute a "possible" cause of action in Alabama. As long as it is possible that a state court may find that the complaint states a claim against the non-diverse defendant, even if it is a claim with poor prospects of ultimate success, the non-diverse defendant has not been fraudulently joined and the case must be remanded for lack of proper diversity jurisdiction.

----

undertake.

6

The court is persuaded that the defendants have not carried the "heavy burden" of showing fraudulent joinder of Lavender and Cherry. There is a possibility that the plaintiffs can state a claim against them, as sales representatives who met with physicians and answered questions regarding the risks and benefits of these drugs, for negligently or innocently misrepresenting the material facts concerning the risks associated with the drugs. At the very least, the claim against Lavender and Cherry is not so clearly lacking in substance that the court assuredly has subject-matter jurisdiction of this case. Uncertainties must be resolved in favor of remand. In a contested removal, a presumption exists in favor of remanding the case to state court; accordingly, all disputes of fact must be resolved in favor of the plaintiff and all ambiguities of law must be resolved in favor of remand. Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997); Whitt v. Sherman International Corp., 147 F.3d 1325 (11th Cir. 1998). Because Lavender and Cherry are not fraudulently joined in this action, diversity jurisdiction is lacking and the court must remand the case to the state court.

## Order

Based on the foregoing considerations, it is therefore, ORDERED that the plaintiffs' motion to remand is due to be and hereby is GRANTED. Upon the expiration of fifteen (15) days from the date of this Order, the Clerk is DIRECTED to REMAND this action to the Circuit Court of Jefferson County, unless stayed by further order of the court.

The defendants' motion to stay is DENIED.

Any party may seek a review of this Order pursuant to Federal Rule of Civil Procedure 72(a) within ten (10) days after entry of this Order. Failure to seek a review may be deemed consent to

7

the entry of this Order. See Roell v. Withrow, ___ U.S. ___, 123 S. Ct. 1696, 155 L. Ed. 2d 775

(2003).

The Clerk is DIRECTED to forward a copy of the foregoing to all counsel of record.

DONE this _2 3rd_ day of February, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

8

02/25/2004 16:12 FAX 2052520536     K Stephen Jackson PC     @002/002

IN THE UNITED STATES DISTRICT COURT FILED
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

04 FEB 25 PM 1:51

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA M. DAVIS,

    PLAINTIFF,

vs.

                       CASE NO. CV 03-J-3167-J

WYETH, et al.,

    DEFENDANTS.

ENTERED

FEB 25 2004

## ORDER

In accordance with the accompanying memorandum opinion entered this day,

It is ORDERED by the court that the plaintiff's motion to remand (doc.10) is GRANTED, the court finding that this action was improvidently removed. The plaintiff's motion for sanctions is DENIED. This case is hereby REMANDED to the Circuit Court of Walker County, Alabama.

DONE and ORDERED this the _____ day of February, 2003.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED
04 FEB 25 PM 1:5
U.S. DISTRICT COURT
N.D. OF ALABAMA

MARTHA M. DAVIS,

PLAINTIFF,

vs.

CASE NO. CV 03-J-3167-J

WYETH, et al.,

DEFENDANTS.

ENTERED
FEB 25 2004

## MEMORANDUM OPINION

This matter is before the court on the plaintiff's motion to remand and motion for sanctions (doc. 10) and the defendant's opposition to remand (doc. 13). The court having previously stayed this matter pending decision on conditional transfer by the Judicial Panel on Multidistrict Litigation, said stay is hereby LIFTED.[1] Having considered the motion to remand and the opposition thereto, the court finds as follows:

Plaintiff filed suit in the Circuit Court of Walker County against defendant Wyeth, Inc. ("Wyeth"), and three of defendant Wyeth's pharmaceutical sales representatives, Mary Lou Carnaggio, Nikki N. Windham and David Wurm. The parties do not dispute that the sales representatives are Alabama residents. The plaintiff asserts claims under the Alabama Extended Manufaturer's Liability Doctrine

---

[1] The court has received notice from the Judicial Panel on Multidistrict Litigation concerning opposition to the conditional transfer order. Said notice further states that said conditional transfer order "does not in any way limit the pretrial jurisdiction of [this] court." The letter further encourages the court to rule on "a motion pending before you in the action – particularly a motion to remand to state court ..." Given this stance by the Judicial Panel, this court has revisited its prior stay of this litigation and the motion to remand pending before it.

(AEMLD), failure to warn, breach of warranty of merchantability, negligence, wantoness and fraud, misrepresentation and suppression arising from her use of the diet drugs fenfluramine (Pondimin) and dexfenfluramine (Redux). These diet drugs were removed from the market in 1997 due to their association with medical problems such as primary pulmonary hypertension and heart valve defects. Complaint, ¶¶ 14, 25-49. Defendant Wyeth removed this action from the Circuit Court of Walker County, Alabama, asserting that this court has jurisdiction under 28 U.S.C. § 1332 and that the individual defendants were fraudulently joined as the plaintiff has no reasonable possibility of prevailing on any of her claims against them. Notice of Removal, ¶¶ 4, 7.

"Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity – every plaintiff must be diverse from every defendant." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir.1996), rev'd on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). *See also Carden v. Arkoma Associates*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 94 L.Ed.2d 615 (1990) ("Since its enactment, we have interpreted the diversity statute to require 'complete diversity' of citizenship); citing *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

The only means by which this case may remain in this court is if the lack of diversity which appears on the face of the complaint is through the fraudulent joinder

2

of the non-diverse party, as alleged by the defendant. Joinder is fraudulent when "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Coker v. Amoco Oil Co*, 709 F.2d 1433, 1440 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993).

> "If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker*, 709 F.2d at 1440-41. The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998).

The defendant, as the party removing the action to federal court, have the burden to establish federal jurisdiction. *See Pacheco de Perez v. AT & T Co.*, 139 F 3d 1368, 1373 (11th Cir.1998); *Diaz v. Sheppard*, 85 F 3d 1502, 1505 (11th Cir.1996). All doubts (and uncertainties) about federal court jurisdiction must be resolved in favor of a remand to state court, *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994)); *Diaz*, 85 F.3d at 1505. "The burden of the removing defendant is a 'heavy one.' To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must

3

resolve any uncertainties in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (citation omitted).[2]

Plaintiff alleges in her complaint that each of the defendants promoted, detailed, distributed, sold, and/or marketed and made representations to Dr. Jerry V. Mosely, the plaintiff's physician, concerning these drugs. Complaint, ¶ 8. Based on these representations, the plaintiff was prescribed these drugs by her physician, *Id.* Defendant Wyeth argues that the individual defendants never promoted Pondimin and hence, said individual defendants can not be liable for the plaintiffs' injuries from Pondimin. Defendant's opposition, at 4. However, this argument goes to the merits of the plaintiff's claim against the individual defendants, which is not the issue before this court. The fact that plaintiff may not ultimately prevail against any of the individual defendants is not a proper inquiry for this court in considering a motion to remand. Rather, this court may only consider whether the plaintiff has the possibility of stating a valid cause of action against the non-diverse defendants. *Triggs*, 154 F.3d at 1287. The individual defendants admit that they promoted Redux to physicians based on information provided to them by Wyeth. *See e.g.*, Affidavit

---

[2]This court is cognizant of the Eleventh Circuit's admonition in *Burns v. Windsor Insurance Company*, 31 F.3d 1092, 1095 (11th Cir.1994), where the Court stated "Federal courts are courts of limited jurisdiction. While a defendant does have a right, by statute, to remove in certain situations, plaintiff is still the master of his own claim (citations omitted). Defendant's right to remove and plaintiff's right to chose his own forum are not on equal footing ... removal statutes are construed narrowly ... uncertainties are resolved in favor of remand (citations omitted)."

4

of defendant Wurm, ¶ 5, 7. Because the court need only find one possible valid cause of action against the non-diverse defendants, the court considers only the plaintiff's claim of fraud, misrepresentation and suppression (Count VI), which the plaintiff has pleaded against all defendants,[3]

To establish misrepresentation under Alabama law, irrespective of whether the misrepresentation was made willfully, recklessly, or mistakenly, the plaintiff must prove (1) a false representation, (2) that the false representation concerned an existing material fact, (3) that the plaintiff relied on the false representation, and (4) that the plaintiff was damaged as a proximate result of the reliance. *Chase v. Kawasaki Motors Corp*, 140 F.Supp.2d 1280, 1291 (M.D.Ala.2001). The fact that the representation was made to a different individual than the one suffering the injury is not fatal to a claim for misrepresentation under Alabama law. *See Thomas v. Halstead*, 605 So.2d 1181, 1184 (Ala.1992) ("if a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place"); *Chase*, 140 F.Supp.2d at 1291, n. 8 ("The court notes that under Alabama law it is not always required that a plaintiff prove that a misrepresentation was made directly to him, so long as his injuries resulted from the

---

[3]The court has not considered whether Counts I-V state possibly valid causes of action against the individual defendants. Rather, as only one stated cause of action must have a possibility of validity to destroy diversity jurisdiction, the court makes no judgment as to any cause of action stated in the complaint other than the count for misrepresentation.

misrepresentation"). Thus "there is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." *Wheelan v. Sessions*, 50 F.Supp.2d 1168, 1174 (M.D.Ala.1999) (quoting *Colonial Bank of Ala. v. Ridley & Schweigert*, 551 So.2d 390, 396 (Ala.1989).

Common sense dictates that the reason drug representatives make representations to physicians is to encourage physicians to prescribe the products the representatives promote to the physicians' patients. In other words, the drug representatives should have reasonably foreseen that the physicians' reliance on their representations would cause the prescription by the physicians of the products they promote to the physicians' patients for their consumption. There can be no other purpose to promote said products to physicians. Such a situation is clearly within Alabama law on third party standing in misrepresentation cases. "[T]he entire basis for third party standing in misrepresentation cases is that the deceiver contemplated that the third party would be induced to act by the deceiver's misstatements made to someone else." *Chase*, 140 F.Supp.2d at 1293, citing *Sims v. Tigrett*, 229 Ala. 486, 158 So. 326, 330 (1934). *See also Ex parte Grand Manor Inc.*, 778 So.2d 173, 182 (Ala.2000) ("If the fraudulent statement is made with the intent and expectation that the one to whom it is made will pass the statement on to the plaintiff, then the plaintiff

6

is entitled to rely on that statement, even if it is not made personally or directly to the plaintiff"); 37 Am.Jur.2d § 292 ("Third parties may recover damages for a fraudulent misrepresentation if they can establish that they relied upon the misrepresentation to their detriment and that the defendant intended the misrepresentation to be conveyed to them"). The court is therefore of the opinion that the plaintiff has stated a cause of action for misrepresentation against the non-diverse defendants.

Under Alabama law, this meets the requirement of "a possibility" of stating a valid cause of action. That is all that is necessary for joinder not to be fraudulent. The allegation that the individual defendants misrepresented material facts about Pondimin and Redux to a physician, who thereafter, and in reliance on said representations, prescribed these medications to a patient who was injured by them, possibly states a valid cause of action. The fact that the drug representatives made no attempt to ascertain the truth of the facts they presented is not a bar to liability under Alabama law. Rather, even an innocent misrepresentation made in good faith may constitute a legal fraud is such misrepresentation is of a material fact. *See Goggans v. Realty Sales & Mortgage*, 675 So.2d 441, 443 (Ala.Civ.App.1979).

Having reviewed the allegations set forth in Count VI of the plaintiff's complaint, the court finds such allegations do state a possible cause of action against the resident defendants. The plaintiff need not have a winning case against the

7

allegedly fraudulent defendant; she need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate. *Triggs*, 154 F.3d at 1287. That possibility exists in the pleadings before this court.

Having found that the plaintiff has stated a claim against the non-diverse defendants, this court finds that complete diversity between all parties is lacking. *See* 28 U.S.C. §§ 1332 and 1441(b)("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought"). Thus, the court finds that the joinder was proper and must remand the case to the state court. *See Coker*, 709 F.2d at 1440-41

The court having considered the foregoing and finding that this case has been improvidently removed, the court shall grant the plaintiff's motion to remand this case to the Circuit Court of Walker County, Alabama, by separate Order.

DONE this the ___ day of February, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

8

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 04 FEB 27 AM 8 30
MIDDLE DIVISION

U.S. DISTRICT COURT
N D OF ALABAMA

RHONDA P. BRADFORD, et al.,          )
                                      )
        Plaintiffs,                   )
                                      )         Case No.: CV 03-P-3157-M
v.                                    )
                                      )
WYETH, et al.,                    :   )
                                      )
        Defendants.                   )

DP

**ENTERED**

FEB 2 7 2004

## ORDER

Pending before the court are several motions including Plaintiffs' Motion to Remand (Doc. #10) filed on December 22, 2003, and Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) filed on February 25, 2004.

On February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, Judge Wm. Terrell Hodges, sent a letter to all judges, including the undersigned, involved with MDL-1203—*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation.* In this notice, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

With this directive from the Judicial Panel in mind and based upon the analysis set forth in recent related remand decisions by other judges of this court, Plaintiffs' Motion to Remand is GRANTED, and this case is REMANDED to the Circuit Court of Etowah County. *See, e.g., Martha M. Davis v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-

36

TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Javenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Accordingly, Plaintiffs' Motion for Emergency Hearing and/or Ruling (Doc. #34) is GRANTED IN PART as to the request for a ruling and DENIED IN PART as to the request for an emergency hearing. Plaintiffs' Motion for Sanctions (Doc. #10) is DENIED. Defendants' Motion to Stay (Doc. #23) filed on January 21, 2004, is DENIED. The various pending motions to strike (Docs. #24, #27, #29, #32) are MOOT. Defendants' Motion to Amend Answer (Doc. #16) filed on January 13, 2004, remains pending and will be transferred back with the court file to the Circuit Court of Etowah County.

DONE and ORDERED this _____ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA FEB 27 PH 3: 26
MIDDLE DIVISION

U. S. DISTRICT COURT
N.D. OF ALABAMA

JOHN W. SMITH,                )
                             )
        Plaintiff,           )
                             )
v.                           )    Case No.: CV 04-P-226-M
                             )
WYETH, et al.,               )
                             )    **ENTERED**
        Defendants.          )
                                   FEB 2 7 2004

ORDER

On February 16, 2004, the court entered an Order staying this litigation pending action by the Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine (Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis set forth in recent related remand decisions by other judges of this court, the stay is LIFTED, Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is GRANTED, and this case is REMANDED to the Circuit Court of DeKalb County. *See, e.g., Martha M. Davis v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is DENIED.

DONE and ORDERED this ___27th___ day of February, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

BOUDREAUX, et al.,                    )
                                      )
        Plaintiffs,                   )
                                      )        Case No.: CV 04-P-227-M
v.                                    )
                                      )        **ENTERED**
WYETH, et al.,                        )
                                      )        FEB 27 2004
        Defendants.                   )

## ORDER

On February 18, 2004, the court entered an Order staying this litigation pending action by the Judicial Panel on Multidistrict Litigation. *See In re Diet Drugs (Phentermine/Fenfluramine (Dexfenfluramine) Products Liability Litigation*, MDL-1203. (Doc. #11). Based upon the analysis set forth in recent related remand decisions by other judges of this court, the stay is LIFTED, Plaintiffs' Motion to Remand (Doc. #8) filed on February 10, 2004, is GRANTED, and this case is REMANDED to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v Wyeth, et al.*, United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.*, United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17).

Plaintiffs' Motion for Sanctions (Doc. #8) is DENIED.



02/27/2004 13:21 FAX 2052523636          R Stephen Jackson PC                                    ☑004

DONE and ORDERED this _27th_ day of February, 2004

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

FILED

04 MAR -2 PM 3: 30

U.S. DISTRICT COURT
N.D. OF ALABAMA

MILDRED BRIDGES,

    Plaintiff,

v.

WYETH, et al.,

    Defendants.

CIVIL ACTION NO.
04-AR-0297-J

ENTERED

MAR 02 2004

## ORDER OF REMAND

For the separate and several reasons articulated by Honorable Inge Johnson of this court in *Davis v. Wyeth, et al*, CV-03-J-3167-J, and by other judges of this court in similar cases, this court finds that it lacks subject-matter jurisdiction over the above-entitled removed case. The court is not prepared to express the belief that there is no reasonable possibility that Alabama courts will allow the joinder of an agent of a manufacturer as a defendant in an Alabama Extended Manufacturer's Liability Doctrine (AEMLD) case. See the muddy water stirred by *Tillman v. R. J. Reynolds Tobacco Co.*, ___ So. 2d ___, 2003 WL 21489707 (Ala.). Accordingly, the motion to remand filed by plaintiff, Mildred Bridges, is GRANTED, pursuant to 28 U.S.C. §1447(c), and the above-entitled case is hereby REMANDED to the Circuit Court of Walker County, Alabama, from which it was improvidently removed.

Defendant, Wyeth, has, in the alternative, requested a certification for interlocutory appeal to the Eleventh Circuit pursuant to 28 U.S.C. § 1292(b). Upon reflection, the court is

just as unwilling attempt to pass off to the Eleventh Circuit this serious question of Alabama law as it is to pass it off to the Multi-District Panel.

The Clerk is DIRECTED to effectuate this order.

The parties shall bear their own respective costs in this court.

DONE this _2nd_ day of March, 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 MAR -5 PM 2: 02

U.S. ... COURT
N.D. OF ALABAMA

DEBRA HOUGH, et al.,                    )

    PLAINTIFF,                        )

VS.                                     )          CV-04-H-393-S

WYETH, et al.,                    :     )          ENTERED

    DEFENDANTS.                       )          MAR 0 5 2004

ORDER OF REMAND

The court has before it plaintiffs' emergency motion to
remand filed March 2, 2004 and the response thereto of Wyeth
filed on March 4, 2004 titled "Wyeth's Motion to Stay to Allow
Transfer to the Multi-District Litigation Proceeding." Wyeth's
motion includes a memo addressing the merits of a possible stay,
and in paragraph one of Wyeth's motion counsel discusses a number
of cases out of the three district courts in Alabama confronted
with the same or a related issue with which this court is
confronted. It is interesting to note that none of the ten very
recent orders of Judges Clemon, Johnson, Bowdre, Proctor, and
Acker, and Magistrate Judges Putnam and Armstrong of the Northern
District of Alabama listed in footnote 3, *infra*, are included in
the otherwise exhaustive list of relevant cases. The court also

has before it plaintiffs' opposition to Wyeth's motion to stay.[1]

It is clear to the undersigned that jurisdictional issues in a removed case should be decided as quickly as possible. The failure to do so may allow an improperly removed case to languish for many, many months before being remanded to state court.[2] Where a motion to remand is founded only on a claim of fraudulent joinder as is the circumstance before this court,[3] the motion can be resolved quickly. The court is to consider whether the removing party has met the onerous burden[4] of showing that "there

---

[1] Interestingly, plaintiff's opposition was filed on March 2, 2004 in "anticipation" of defendant's March 4, 2004 motion.

[2] It is not irrelevant that on February 20, 2004, the Chairman of the Judicial Panel on Multidistrict Litigation, District Judge Wm. Terrell Hodges, sent a letter to all judges involved with MDL-1203 - In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation. In this letter, the Judicial Panel on Multidistrict Litigation encouraged judges to issue rulings on pending motions and in particular, motions to remand.

[3] Plaintiff's emergency motion to remand is based on the same issue recently addressed by the following judges in this district: Chief Judge U.W. Clemon (CV-03-C-2564-M), Judge William Acker (CV-04-AR-0297-J), Judge Karon Bowdre (CV-03-BE-2876-S and CV-04-BE-27-E), Judge Inge Johnson (CV-03-J-3167-J), Judge David Proctor (CV-03-P-3157-M and CV-04-P-226-M), Magistrate Judge Robert Armstrong (CV-03-RRA-3378-E), and Magistrate Judge Michael Putnam (CV-04-TMP-179-S and CV-04-TMP-298-S). All of these judges have entered remand orders in factually similar cases to the one with which this court is presented. However, the application of the law pertinent to removal and fraudulent joinder is particularly well stated in Judge Putnam's orders of remand, and therefore it is Magistrate Putnam's orders to remand which this court follows most closely.

[4] The standard facing the removing party is an onerous one because absent fraudulent joinder, plaintiffs have the absolute right to choose their forum.

is no possibility that the plaintiff can establish a cause of action against the resident defendant."[5] Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The merits of the claim against a diversity destroying defendant must not be weighed by the federal court; rather the task for the court is merely to determine whether the claim against a non-diverse defendant is a possible one under applicable state law. See id. The court must find joinder proper and remand to state court if there is any possibility that, on the facts as pled, the complaint states a cause of action against any non-diverse defendant. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983) (emphasis added).

For the foregoing reasons, Wyeth's motion to stay is DENIED. And upon review of the record, the court is persuaded that under Alabama law the plaintiffs have stated a legally possible claim against the non-diverse defendants, Lavender and Cherry.[6]

---

[5] The removing party may also succeed in a claim for fraudulent joinder by proving that "the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Crowe, 113 F.3d at 1538. Defendant Wyeth does not attempt to show fraudulent joinder by use of this second method.

[6] Lavender and Cherry have given affidavits stating that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted the drug Pondimin. They also state that they never assembled, created, designed, distributed, labeled, made, manufactured, packaged, sold, sterilized, supplied, tested, or warranted the drug Redux. They assert that they were not aware of any alleged association between Pondimin and Redux and/or valvular heart disease until the time such an allegation was publicized.

Therefore, plaintiff's emergency motion to remand is GRANTED and this case is REMANDED to the Circuit Court of Blount County, Alabama for all further proceedings.

DONE this 5th day of March, 2004.

SENIOR UNITED STATES DISTRICT JUDGE

Nevertheless, Lavender and Cherry's alleged innocent misrepresentations understating the risks associated with the use of the combination of drugs for weight loss constitutes a possible cause of action under Alabama law.  See Ala. Code § 6-5-101 (Michie 1993); see also Ala. Pattern Jury Instructions Civil, 2d., APJI 18.03 (1993).

FILED

MAR 8 2004

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

JOAN REEDER,                    )
                                )
        Plaintiff,              )
                                )
        v.                      )       CIVIL ACTION NO.
                                )       04-T-066-N
WYETH, a corporation,           )
et al.,                         )
                                )
        Defendants.             )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiff's motion to remand. The court agrees with plaintiff that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiff has colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident

EOD   3/8/04

defendant (that is, plaintiff has reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff's motions to remand, filed on January 30, 2004 (doc. no. 8), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Elmore County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION  FILED

MAR  8 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

EARLENE BROGDEN, et al.,      )
                              )
        Plaintiffs,           )
                              )
        v.                    )        CIVIL ACTION NO.
                              )        04-T-068-S
WYETH, a corporation,         )
et al.,                       )
                              )
        Defendants.           )

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiffs' motion to remand.  The court agrees with
plaintiffs that this case should be remanded to state
court.  First, there has not been fraudulent joinder of any
resident defendant (that is, plaintiffs have colorable
claims against such a defendant), see Coker v. Amoco Oil
Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v.
Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).
Second, there has not been fraudulent misjoinder of any

EOD  3-8-04

21

resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on January 30, 2004 (doc. no. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Dale County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 8th day of March, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

07 MAR -9  AM 8: 29

U.S. DIST. COURT
ND OF ALABAMA

WILMA SUE EATON, et al.,          }
                                  }
        Plaintiffs,               }
                                  }            Case No.: CV 04-P-380-M
v.                        :        }
                                  }
WYETH, et al.,                    }
                                  }
        Defendants.               }

**ENTERED**
MAR - 9 2004

**ORDER**

This case is before the court on Plaintiffs' Emergency Motion to Remand (Doc. #9) filed on February 27, 2004; Defendant Wyeth's Motion for Entry of Briefing Schedule (Doc. #10) filed March 2, 2004; and Defendant Wyeth's Motion to Stay to Allow Transfer to the Multi-District Litigation Proceeding (Doc. #11) filed on March 4, 2004. Plaintiffs' motion is GRANTED, and this case is REMANDED to the Circuit Court of Marshall County. *See, e.g., Martha M. Davis v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Jasper Division, CV 03-J-3167-J, February 25, 2004 (Doc. #17); *Ann McGowan, et al. v. Wyeth, Inc., et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-298-S, February 24, 2004 (Doc. #12); *Juanita Johnson, et al. v. Wyeth, et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-224-S, February 23, 2004 (Doc. #11); *Jevenari Marshal, et al. v. Wyeth, Inc., et al.,* United States District Court for the Northern District of Alabama, Southern Division, CV 04-TMP-179-S, February 18, 2004 (Doc. #17). Defendant Wyeth's motions for entry of briefing schedule (Doc. #10) and motion to stay (Doc. #11) are DENIED.



DONE and ORDERED this _____ B-th _____ day of March, 2004.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

KIM ALLEN, et al.,          )
                            )
        Plaintiffs,          )
                            )
    v.                       )        CIVIL ACTION NO.
                            )        2:04cv0238-T
WYETH,                       )
et al.,                      )
                            )
        Defendants.          )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been _fraudulent misjoinder_ of any resident defendant (that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), _see Tapscott v. MS Dealer Service Corp._, 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on March 12, 2004 (doc. no. 7), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 9th day of April, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


EUNICE CHESTNUT, et al.,          )
                                  )
        Plaintiffs,               )
                                  )
        v.                        )       CIVIL ACTION NO.
                                  )         1:04cv0295-T
WYETH,                            )
et al.,                           )
                                  )
        Defendants.               )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553,

1561 (11th Cir. 1989). Second, there has not been
fraudulent misjoinder of any resident defendant (that is,
plaintiffs have reasonably joined such a defendant with
other defendants pursuant to Rule 20 of the Federal Rules
of Civil Procedure), see Tapscott v. MS Dealer Service
Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE
of the court that plaintiffs' motion to remand, filed on
April 1, 2004 (doc. no. 8), is granted and that, pursuant
to 28 U.S.C.A. § 1447(c), this cause is remanded to the
Circuit Court of Geneva County, Alabama.

It is further ORDERED that all other outstanding
motions are denied.

The clerk of the court is DIRECTED to take
appropriate steps to effect the remand.

DONE, this the 3th day of May, 2004.

/s/ Myron H. Thompson
———————————————————
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE


03/29/2004 16:03 FAX 2052520505          K Stephen Jackson, PC                    Ø061

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

M. REBECCA CROSS, et al.,          )
                                   )
        Plaintiffs,              :  )
                                   )   CIVIL ACTION NO.
v.                                 )   03-0882-BH-M
                                   )
WYETH, et al.,                     )
                                   )
        Defendants.                )

ORDER

This action is before the Court on plaintiffs' motion (Doc. 14) to reconsider and to lift the stay imposed on February 19, 2004 (Doc. 13), and thus to reverse the Court's prior denial of plaintiffs' motion to remand (Docs. 6 and 7). Upon consideration of the parties' oral arguments presented on March 15, 2004, as well as those set forth in Wyeth's Supplemental Response (Doc. 19), and all other pertinent portions of the record, the Court concludes that plaintiffs' motion to reconsider is due to be granted because the Court lacked jurisdiction at the outset to enter an order denying plaintiffs' motion to remand and in imposing a stay until the action could be transferred for consolidation with the pending MDL-1203 case.

As recognized by other federal Courts in Alabama, the grounds upon which Wyeth contends that the Wyeth Sales Representatives Paul Windham and John Land have been fraudulently joined go to the merits of plaintiffs' claims against these individual resident

defendants, which is not a proper inquiry for this Court, rather than the viability of the

claims themselves.[1] *See e.g.*, *Martha M. Davis v. Wyeth, et al.*, Civil Action No. CV 03-J-

3167-J (N.D. Ala. February 25, 2004)(J. Johnson). *See also*, *Michael Hall, et al. v.*

*Wyeth, et al.*, Civil Action No. CV 04-J-0434-NE (N.D. Ala. March 9, 2004)(J. Johnson);

*Smith v. Wyeth et al.*, Civil Action No. CV 04-P-226-M (N.D. Ala. February 27, 2004)(J.

Proctor); *Sharon C. Crittenden, et al., v. Wyeth, et al.*, Civil Action No. 03-T-920-N

(M.D. Ala. November 21, 2003)(J. Thompson); *Pamela Floyd, et al., v. Wyeth, et al.*, Civil

Action No. 03-C-2564-M (N.D. Ala. October 20, 2003)(J. Clemon); *Haleb v. Merck &*

*Co., Inc., et al.*, Civil Action No. CV 03-AR-1026-M (N.D. Ala. June 26, 2003) (J. Acker)

This Court cannot declare at this juncture of the litigation that "there is no possibility that

the plaintiff[s] can prove a cause of action against the resident (non-diverse) defendant[s],"

a prerequisite to any declaration that the resident defendants were fraudulently joined.

*Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). *See also*, *Triggs v. John*

*Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)("The plaintiff need not have a

winning case against the allegedly fraudulent defendant; he need only have the possibility of

stating a valid cause of action in order for the joinder to be legitimate.").

For the above stated reasons, it is ORDERED that the Orders entered by this Court

on February 5, 2004 (Doc. 11) denying plaintiffs' motion to remand and February 19, 2004

---

[1] Consequently, Wyeth's reliance on such cases as *Fisher v. Comer Plantation, Inc.* 772
So.2d 455 (Ala. 2000), and *Speigner v. Howard*, 502 So.2d 367 (Ala. 1987), is misguided because
they were decided on the merits on motions for summary judgment following the completion of
discovery

2

03/29/2004 16:03 FAX 2052523536          K Stephen Jackson PC                    ☑003

(Doc. 13) granting Wyeth's motion to stay, be and are hereby VACATED AND SET ASIDE. In lieu thereof, it is now ORDERED that plaintiffs' motion to remand (Doc. 6) be and is hereby GRANTED. The Clerk is directed to take such steps as are necessary to transfer this case back to the Circuit Court of Dallas County, Alabama, from whence it was removed.

As a final matter, the Court acknowledges that plaintiffs' motion to remand also contained a motion for sanctions against Wyeth. The Court concludes, however, that sufficient questions existed concerning the appropriateness of removal, as evidenced by this Court's initial decision to deny remand, to preclude the requisite finding that the removal in this case was not only improvident but done in bad faith. It is therefore ORDERED that plaintiff's motion for sanctions be and is hereby DENIED.

DONE this 29th day of March, 2004.

s/ W. B. Hand
SENIOR DISTRICT JUDGE

3

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

JERRY BRADEN, et al.,        )
                             )
        Plaintiffs,          )
                             )
        v.                   )       CIVIL ACTION NO.
                             )         1:04cv0384-T
WYETH, etc.,                 )
et al.,                      )
                             )
        Defendants.          )

## ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on April 27, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Coffee County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

BARBARA CULPEPPER, et al.,      )
                                )
        Plaintiffs,             )
                                )
    v.                        : )      CIVIL ACTION NO.
                                )       2:04cv0411-T
WYETH, INC.,                    )
et al.,                         )
                                )
        Defendants.             )

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand.  The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been _fraudulent joinder_ of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), _see_ Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989).  Second, there has not been _fraudulent misjoinder_ of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 10), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Montgomery County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson

_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LONNE KING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:04cv0409-T |
| WYETH, INC., etc., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This lawsuit, which was removed from state to federal
court based on diversity-of-citizenship jurisdiction, 28
U.S.C.A. §§ 1332, 1441, is now before the court on
plaintiffs' motion to remand. The court agrees with
plaintiffs that this case should be remanded to state court.
First, there has not been fraudulent joinder of any resident
defendant (that is, plaintiffs have colorable claims against
such a defendant), see Coker v. Amoco Oil Co., 709 F.2d
1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit
Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there
has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 1), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Barbour County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 24th day of May, 2004.

/s/ Myron H. Thompson
—————————————————
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

<table>
<tr><td>VICTORIA BENNETT, et al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>CIVIL ACTION NO.</td></tr>
<tr><td>v.</td><td>)</td><td>2:04cv0416-T</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>WYETH, INC., etc.,</td><td>)</td><td></td></tr>
<tr><td>et al.,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
</table>

ORDER

This lawsuit, which was removed from state to federal court based on diversity-of-citizenship jurisdiction, 28 U.S.C.A. §§ 1332, 1441, is now before the court on plaintiffs' motion to remand. The court agrees with plaintiffs that this case should be remanded to state court. First, there has not been fraudulent joinder of any resident defendant (that is, plaintiffs have colorable claims against such a defendant), see Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983); Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). Second, there has not been fraudulent misjoinder of any resident defendant

(that is, plaintiffs have reasonably joined such a defendant with other defendants pursuant to Rule 20 of the Federal Rules of Civil Procedure), see Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand, filed on May 4, 2004 (doc. no. 9), is granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Crenshaw County, Alabama.

It is further ORDERED that all other outstanding motions are denied.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.

DONE, this the 2nd day of June, 2004.

/s/ Myron H. Thompson
_____
MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUBY WHITE,

     Plaintiff,

v.                        CASE NO: 8:05-cv-243-T-26MSS

MERCK & CO., INC., GENA ORTEGA f/k/a
GENA GHAZZI and JOHN E. (JACK) KILKELLY,

     Defendants.

_____/

## O R D E R

Before the Court are Plaintiff's Motion to Re-open Case and for Reconsideration of Judge's Order Granting Defendants' Motion to Stay (Dkt. 10) and Plaintiff's Motion to Remand (Dkt. 9).[1] After careful consideration of the Motions, the pleadings and papers on file, and an almost identical case handled by the Honorable James D. Whittemore, the Court concludes that this case should be re-opened and remanded to the state court.

Plaintiff correctly argues that this Court lacks jurisdiction based on diversity of citizenship because, contrary to the assertions of Defendant Merck in its notice of removal and in its arguments in Kozic v. Merck, the two drug sales representatives were

---

[1] The Court does not need a response from Defendant Merck because of the extensive argument in the Notice of Removal (Dkt. 1) and the arguments already presented to the Honorable James D. Whittemore in Kozic v. Merck & Co., Inc., Ghazzi and Kilkelly, No. 8:04-cv-324-T-27TBM.

not fraudulently joined. This Court must review the pleadings to determine whether there is a reasonable basis for predicting that a state court might impose liability on the resident defendants. See Crowe v. Coleman, 113 F.3d 1536, 1542 (11th Cir. 1997). A review of the Complaint[2] leaves no doubt that it states a cause of action under Florida law as to the two individual Defendant sales representatives.[3] See Albertson v. Richardson-Merrell, Inc., 441 So.2d 1146 (Fla.Dist.Ct.App. 1983). Because Defendants Ortega and Kilkelly are citizens of Florida, capable of being sued for the non-fraudulent and non-frivolous causes of action alleged in Counts II, III, and IV, this Court is without subject matter jurisdiction to hear this case.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Plaintiff's Motion to Re-open Case and for Reconsideration of Judge's Order Granting Defendants' Motion to Stay (Dkt. 10) is **GRANTED**. The Clerk shall re-open this case for the Court's reconsideration of the order entered February 9, 2005. (Dkt. 7). The Order granting a stay (Dkt. 7) is hereby **VACATED**.

---

[2]    The Complaint filed in state court (Dkt. 2) seeks compensatory damages for the Plaintiff's ingestion of Vioxx for pain over a prolonged time. Defendant Merck & Co., Inc. (Merck) is a foreign corporation authorized to do business in Florida. Defendants Ortega and Kilkelly, both residents of Florida, were sales representatives for Merck who sold Vioxx to prescribing physicians. Counts II, III, and IV seek relief against Merck, Ortega and Kilkelly for negligence, negligent misrepresentation, and fraud, respectively, in failing to warn prescribing physicians of the significant risks involved with the use of Vioxx.

[3]    The Complaint also comports with Federal Rules of Civil Procedure 8 and 9.

-2-

(2)     Plaintiff's Motion to Remand (Dkt. 9) is **GRANTED**.

(3)     The Clerk is directed to remand this case to the Circuit Court of the Twelfth

Judicial Circuit in and for Sarasota County, Florida.  Once remand is

effectuated, the Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on February 14, 2005.


_____s/_____

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record

-3-





"I am concerned with the potential edema that occurs with Vioxx."

FILED

JAN 3 0 2006

RUSTY NICHOLS, CLERK
Marengo County, Alabama

Confidential Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115297



PLAINTIFF'S
EXHIBIT
"E"







"I am concerned about the
cardiovascular effects of Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115300





"The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than Celebrex."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115301

 **MERCK**

MEMO

---

TO:        All Field Personnel with Responsibility for VIOXX

FROM:    Market Integration Team for VIOXX

SUBJECT: Top Ten Obstacle Handlers

Enclosed is the complete Obstacle Handling Guide for VIOXX. This Guide includes all obstacle responses issued since the launch of VIOXX. Though it is important for you to be familiar with all of the obstacle handlers, the following Top Ten Obstacle Handlers are the most important obstacle handlers at this time as they center around current issues in the field.

## Cardiovascular Events

Obstacle Response #7- "Can VIOXX be used in patients using low-dose aspirin?"

Obstacle Response #13- "I am concerned about the cardiovascular effects of VIOXX."

Obstacle Response #38- "The competition has been in my office telling me that the incidence of heart attacks (or cardiovascular events) is greater with VIOXX than Celebrex." OR "I just read (or heard) a news story stating that VIOXX has a higher incidence of heart attacks than Celebrex."

## Renal Effects

Obstacle Response #4- "I am concerned about the potential edema that occurs with VIOXX."

Obstacle Response #20- "Can I use VIOXX with Ace Inhibitors?"

Obstacle Response #31- "I am concerned about dose-related increases in hypertension with VIOXX."

## VIOXX 50mg Tablet

Obstacle Responses #9 and 9a- "Why wasn't VIOXX 50mg studied for longer than five days in acute pain?" OR "VIOXX cannot be used for longer than five days when treating patients for acute pain."

Obstacle Response #30- "Searle/Pfizer just presented me with new data which showed that Celebrex 800mg daily did not exhibit dose dependent increases in side effects compared to the OA and RA doses, and that VIOXX exhibited dose dependent increases in side effects with the 50mg dose."

## General

Obstacle Response #26- "I use Celebrex. I'm concerned about the safety profile of VIOXX."

Obstacle Response #34- "I understand the new COX-2 agent, MOBIC, was just approved."

FILED

JAN 3 0 2006

RUSTY NICHOLS, CLERK
Marengo County, Alabama

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0196 W.D. La.)



PLAINTIFF'S
EXHIBIT
"F"

MRK-ABR 0017647



23. "I am concerned about the cardiovascular effects of VIOXX."

24. "Your PI states that VIOXX provided a significant reduction in OA pain after one to two weeks. Why should I use VIOXX when Celebrex states OA patients achieved significant reduction in pain within 24-48 hours after initiation of dosing?"

25. "Do I have to discontinue VIOXX pre or post-operatively?"

26. "I use Celebrex. I'm concerned about the safety profile of VIOXX. (Cumulative vs. Additive clarification)

27. "Why are you telling me not to prescribe Celebrex for sulfa-allergic patients when Hyzaar has the same contraindication?"

28. "The two recent JAMA articles showed that Celebrex provided greater reductions in events than VIOXX." OR "It looks like there are still a lot of PUB's in the VIOXX group; why is the reduction only 50% and not 100%?"

29. "I understand Celebrex just received an FDA approval for prevention of cancer. Is VIOXX receiving a similar indication soon?"

30. "Searle/Pfizer just presented me with new data which showed that Celebrex 800mg daily did not exhibit dose dependent increases in side effects compared to the OA and RA doses, and that VIOXX exhibited dose dependent increases in side effects with the 50mg dose."

31. "I am concerned with dose-related increases in hypertension with VIOXX."

32. "Celebrex must be a safer agent  Unlike VIOXX, Celebrex outcomes data did not show any increases in myocardial infarctions or stroke."

33. "Why didn't VIOXX report the p-values for its' OUTCOMES STUDY?" DELETED

34. "I understand the new COX-2 agent, Mobic, was just approved."

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V MERCK, et al.
(02-0196 W D La )

MRK-ABR 0017651



Clarify:
What is your specific concern?

The physician may respond:
(A) "I am hesitant to use VIOXX in my patients because it may worsen CHF," or
(B) "VIOXX has the potential to increase the risk of MI."

Response to (A) "I am hesitant to use VIOXX in my patients because it may worsen CHF."
Doctor, as you know, there are precautions you should take when prescribing any NSAID for your patients with CHF. Because once daily VIOXX® is an NSAID, you should consider taking these same precautions when considering the use of once daily VIOXX® for this specific patient population.

Clinical trials with once daily VIOXX® 12.5 mg and 25 mg have shown renal effects such as hypertension and lower extremity edema similar to those observed with comparator NSAIDs. VIOXX® should be used with caution and should be introduced at the lowest recommended dose in patients with fluid retention, hypertension, or edema.

(NOTE: If the physician asks about concomitant use with ACEIs, refer to Obstacle Response No. 20.)

Transition back to the HI COXIB or HI NSAID messages for VIOXX.

Reference:
VIOXX PI ⇒ Precautions ⇒ Renal Effects (V33)
VIOXX PI ⇒ Precautions ⇒ Fluid Retention and Edema  (V35)

Response to (B) "VIOXX increases the risk of MI."

MRK-ABR 0017685

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V MERCK, et al
(02-0196 W D. La )

38

Doctor, once daily VIOXX has no effect on platelet aggregation, and therefore would not be expected to demonstrate reductions in MI or other CV events. Agents such as low-dose aspirin are routinely prescribed for CV patients for their effect on the inhibition of platelet aggregation. Therefore, once daily VIOXX® is not a substitute for aspirin for cardiovascular prophylaxis. However, once daily VIOXX 50 mg had no effect on the anti-platelet activity of low dose (81 mg daily) aspirin when the two were given together.

(Refer to Obstacle Response No. 7.)

If probed further:
Offer to submit a PIR.

Transition back to the HI COXIB or HI NSAID messages for VIOXX.

Reference:
VIOXX PI ⇒ Precautions ⇒ Aspirin (V41)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V MERCK, et al.
(02-0196 W.D La )

MRK-ABR 0017686

39



Doctor, there are no head-to-head studies comparing the cardiovascular profile of the
two drugs. As a result, you cannot compare the drugs and conclude that one drug had fewer events than the other. What you may be referring to is press reports of the incidence rates in two separate studies. In the VIOXX GI Outcomes Trial (VIGOR), the incidence of MI was 0.4% with VIOXX and 0.1% with naproxen. Upon further analysis, four percent of patients in the VIOXX GI Outcomes Study had experienced a cardiac event such as a heart attack or stroke before entering the study and thus met the established criteria for the use of aspirin for secondary CV prophylaxis. In the remaining 96% of patients for whom aspirin was not indicated for secondary CV prophylaxis, the incidence of MI was lower—0.2% for VIOXX and 0.1% for naproxen. This difference was not statistically significant.

In a separate GI outcomes trial of Celebrex, the CLASS study, Searle has reported that
the incidence of MI was 0.5% with Celebrex, 0.3% with diclofenac, and 0.5% with
ibuprofen. They also presented data for patients who were not prescribed aspirin. In this group, the incidence of MI was 0.2% for Celebrex and 0.1% for the comparator NSAIDs Again, doctor, I want to emphasize that the results of two different studies can't be compared, and that's particularly true here when you have studies of differing duration and in different patient populations.

CONFIDENTIAL -- SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0196 W D La.)

MRK-ABR 0017707

60

If needed, continue to address the physicians concerns with the cardiovascular effects of VIOXX by guiding them through the Cardiovascular Card as outlined in Roadmap for the CV Card.

Transition back to the HI COXIB or HI NSAID messages for VIOXX

NOTE: There will be an additional PIR to address these issues available shortly.

**If the doctor asks you further for the incidence of MI from the OA studies presented in the package insert for VIOXX tell them,**

In the clinical OA trials for VIOXX reported in our package insert, the incidence of MI was less than 0.1% with VIOXX.

If needed, continue to address the physicians concerns with the cardiovascular effects of VIOXX by guiding them through the Cardiovascular Card as outlined in Roadmap for the CV Card.

Transition back to the HI COXIB or HI NSAID messages for VIOXX.

Remember to provide appropriate balancing information as part of all product discussions.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0195 W.D. La )

MRK-ABR 0017708

61

No. COX 01-007
Feb 09, 2001



Bulletin for VIOXX®:
FDA Arthritis Advisory Committee Meeting for VIOXX®

**TO:**

All field personnel with responsibility for VIOXX®    Action Required
National Account Executives                          Background Information
and Customer Managers (All Segments)

*DO NOT INITIATE DISCUSSIONS ON THE FDA ARTHRITIS ADVISORY
COMMITTEE (ADVISORY COMMITTEE) REVIEW OR THE RESULTS OF THE
VIOXX® GI OUTCOMES RESEARCH (VIGOR) STUDY. YOU MAY RESPOND TO
CUSTOMER INQUIRIES ONLY AS OUTLINED BELOW.*

## Introduction:

As previously communicated in June 2000, Merck submitted a supplemental NDA for
VIOXX based upon the VIOXX GI Outcomes Research study (VIGOR). In this study,
VIOXX 50mg daily significantly reduced the risk of serious gastrointestinal side effects
by 54% vs. naproxen 1000mg daily. On Thursday, Feb 8, Merck and the FDA reviewed
the study with the FDA's Arthritis Advisory Committee.

The purpose of this bulletin is to provide you with important, updated background
information based on the results of this meeting and actions required by you.

## Action Required:

1. Stay focused on the EFFICACY messages for VIOXX
2. Utilize the PIR system to respond to unsolicited physician inquiries
3. Review the updated background Q&A
4. Review the updated obstacles and responses for your physicians
5. Do not initiate discussions or respond to questions, except as outlined below

### Stay Focused on Efficacy

It is critical that we remain focused on the 1S HI NSAID and HI COXIB messages for
VIOXX with our targeted physicians. As discussed at your 1S District Meetings, both the
OA efficacy data and the new acute pain narcotic efficacy data for VIOXX will continue to
solidify the efficacy perception of VIOXX. Use the new core visual aid for VIOXX and the

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La)



PLAINTIFF'S
EXHIBIT
"G"

MRK-ABR 0017219



OA Efficacy Stock Bottle Challenge program to challenge physicians to gain experience with the 24 hour efficacy of VIOXX.

---

**Physician Inquiries:**

In response to <u>unsolicited</u> requests for information regarding VIGOR, Medical Services will make a personalized, faxable PIR available for your customers within 24 hours   In addition, for those customers who request additional information, a separate, more comprehensive PIR packet can be Federal Expressed within 2 days.

Medical Services has made arrangements to extend the hours for the PIR hotline. Representatives should submit unsolicited PIR requests by either telephone or fax options from **2/9 through 2/23** by calling the PIR hotline **800MERCK66 (800-637-2566)** during extended hours of **8:30 am to 6:30pm ET.**  During these hours, a staff member will verbally request the following information from you to process the PIR request from the HCP  [After this time, the usual method options of INSIGHT, PIR hotline (800MERCK 66 -- hours: 8:30 -- 4:30pm ET) and fax can be followed].

<u>Faxable PIR Instructions:</u>

- <u>Your name, field title and RDT</u>
- <u>The requesting HCP's full name and professional degree</u>
- <u>HCP's full mailing address</u>
- <u>HCP's phone number</u>
- <u>HCP's FAX number</u>
- <u>Provide the question(s) asked by the HCP.</u>

PIR Requests may also be sent to Medical Services from 4:30 pm – 8:30am ET by leaving a voice message at 800MERCK66.  The information as listed above should be provided in your voice message to Medical Services staff. Additionally, PIR requests may be submitted to Medical Services in writing by sending a fax to 800MERCk88.  The information listed above should be included on your fax to Medical Services.

In Summary:

- If requested, a summary of the PIR will be faxed within 24 hours of receiving the request.
- If the physician requests more comprehensive information on the VIGOR study, you may request the comprehensive PIR.  This will be sent via Fed'EX within 2 days.
- Transition your discussion to the current strategy and messages for VIOXX®
- <u>Do not proactively discuss the Advisory Committee Meeting or VIGOR</u>.  Respond to questions about the study by requesting a PIR and in accordance with the obstacle-handling guide.

**Updated Q&A Guide:**

This is background information only

---

CONFIDENTIAL -- SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0196 W.D. La.)

MRK-ABR 0017220