IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DONNA HARRELL and MACK HARRELL,** | * | |
| | * | |
| **PLAINTIFFS,** | * | |
| | * | |
| **v.** | * | **CASE NO.  CV-06-849** |
| | * | |
| **MERCK & CO., INC., a foreign Corporation;** | * | **Removed from Circuit Court** |
| **ANNE BRANDON Individual; MARK M.** | * | **of Houston County, AL** |
| **SANDERS, an Individual; TONYA M.** | * | **CV 06-502H** |
| **LOCKLIN, an Individual; JOE D. READ, an** | * | |
| **Individual; THEODORE R. BOWSER, II, an** | * | |
| **Individual; ERIC RALPH PAYNE, an** | * | |
| **Individual; and fictitious defendants A, B,** | * | |
| **C & D, being those persons, firms or** | * | |
| **corporations whose fraud, scheme to** | * | |
| **defraud, and/or other wrongful conduct** | * | |
| **caused or contributed to the Plaintiff's** | * | |
| **injuries and damages, and whose true** | * | |
| **names and identities are presently** | * | |
| **unknown To Plaintiff, but will be** | * | |
| **substituted by Amendment when** | * | |
| **ascertained.** | * | |
| | * | |
| **DEFENDANTS.** | * | |

**DEFENDANT MERCK & CO., INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

Plaintiffs have sought to evade federal jurisdiction by joining their product liability claims against Merck & Co., Inc. ("Merck") – which meet all of the requirements for federal diversity jurisdiction – with claims against six non-diverse Merck employees against whom they have no valid cause of action under Alabama law.  Plaintiffs also ask this Court needlessly to expend its judicial resources in addressing issues that should and will be decided by the Vioxx® MDL court.  As set forth below and in Merck's prior Motion to Stay

1

(Doc. 2), the Court should defer consideration of Plaintiffs' Motion For Remand (Doc. 14) pending MDL transfer. Should the Court choose to consider Plaintiffs' Motion for Remand rather than staying the case, however, the Court should deny the motion because the non-diverse defendants are fraudulently joined.

## BACKGROUND

This lawsuit concerns Donna Harrell's use of the prescription medication Vioxx® ("Vioxx"), a pharmaceutical manufactured, marketed, and distributed by Merck. In an attempt to defeat diversity jurisdiction, Plaintiffs named as defendants six individual Merck employees, Ann Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne (the "Employee Defendants"). Plaintiffs allege that the Employee Defendants are residents of the State of Alabama, and thus, non-diverse.

On September 22, 2006, Merck timely removed this case to federal court (Doc. 1) based upon federal diversity jurisdiction and moved for a stay (Doc. 2) of all proceedings pending MDL transfer. Removal was appropriate because there is complete diversity of citizenship between the Plaintiffs and Merck; the only non-diverse defendants were fraudulently joined; and the amount in controversy satisfies the jurisdictional minimum. *See* 28 U.S.C. § 1332.

## ARGUMENT

As a threshold matter, the Court should simply defer ruling on plaintiffs' remand motion pending MDL transfer. This is the course recommended by the MDL panel and the Vioxx MDL judge and taken by federal courts around the country that have stayed more than 300 Vioxx cases in which plaintiffs sought remand (many involving the joinder of sales

representatives).  If the Court does consider the merits of plaintiffs' motion, however, it should

be denied.

**I.      The Court Should Refrain From Ruling On Plaintiffs' Motion For Remand And
          Should Stay All Proceedings In This Case.**

Both the MDL Panel and Judge Fallon, who is presiding over the Vioxx MDL

proceeding in the Eastern District of Louisiana, have expressed their preference that

overlapping remand motions be presented to the MDL court for coordinated treatment.  As

Judge Fallon explained:

> There are various issues of remand in various cases throughout the country.
> Again, a significant advantage of the MDL concept is some consistency.  The
> Rule of Law is really based on consistency.  If different decisions are made by
> numerous judges, then you have no consistency and no predictability. . . .  It's
> easier if one court decides some of these matters than if 50 or 100 courts
> decide the matter.
>
> I'm conscious of dealing with the remand [motions] as quickly as possible, but I
> do want to get them all together . . . and deal with that issue in a consistent and
> fair fashion.

[Tr. of Status Conference Before the Hon. Eldon E. Fallon, at 21, *In re VIOXX Prods. Liab.*

*Litig.*, MDL No. 1657 (June 23, 2005) (**Exhibit A**).  *See also* Letter dated Mar. 21, 2005, from

JPML to Hon. Ricardo H. Hinojosa (**Exhibit B**) ("wait[ing] until the Panel has decided the

transfer issue . . . may be especially appropriate if the [remand] motion raises questions likely

to arise in other actions in the transferee court and, in the interest of uniformity, might best be

decided there if the Panel orders centralization")].

Judge Fallon's concerns are consistent with the majority view – *i.e.*, that the best way

to ensure that MDL proceedings can achieve their statutory goal of efficient, coordinated

proceedings is by staying litigation pending transfer to the MDL court, including the

consideration of remand motions.  This is particularly true where, as here, the issues raised

by Plaintiffs' remand motion are similar to those raised in other cases likely to be transferred to the same MDL proceeding.  For this reason, ***more than 1,700 Vioxx-related cases have been stayed, including more than 300 in which plaintiffs sought remand.*** *See also Woods v. Merck & Co., Inc., et al.*, CV-05-0425-CG-M (S.D. Ala. Aug. 17, 2005) (granting Merck's motion to stay over objection of plaintiff's counsel); *Jones v. Merck & Co., Inc. et al.*, CV-2:05 -427-RDP (N.D. Ala. Apr. 25, 2005) (same); *King v. Merck & Co., Inc. et al.*, CV-2:05-165-T (M.D. Ala. Apr. 26, 2005) (granting Merck's motion to stay with a motion to remand pending); *Wilkes v. Merck & Co., Inc. et al.*, CV-2:05-1241-RRA (granting motion to stay over Plaintiff's objection and finding that MDL court should hear pending motion to remand to keep rulings on similar motions consistent); *Gouge v. Merck & Co., Inc., et al.,* Case No. 3:05CV345/RV (N.D. Fla. Oct. 28, 2005) ("Staying the motion to remand serves the interest of judicial economy and lowers the risk of inconsistent rulings on the sales representatives' potential liability issue by allowing it to be decided by the single court handling all of the federal issues.") (attached as part of collective **Exhibit C**).

For example, the Southern District of Alabama entered a stay in *Marguerite Woods v. Merck & Co., Inc., et al.*, Civil Action No. 05-0425-CG-M (S.D. Ala.), (**Exhibit D**) despite plaintiff's motion to remand and for expedited hearing on her remand motion.  In finding that a stay was appropriate, that court quoted at length from its prior order in *Faith Beverly, et al. v. Wyeth, et al.*, 03-cv-0866-CB-C (S.D. Ala.), in which it stayed an action where a motion to remand was pending:

> A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency.  When jurisdictional issues are raised that may arise 'in hundreds or even thousands of cases throughout the nation. . . consistency as well as economy [are] . . . served' by having those issues decided by a single court.  Consequently, a stay is proper where the motion to

remand raises issues that have been or are likely to be decided by the transferee court.

The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined to defeat federal subject matter jurisdiction. Motions to remand involving similar fraudulent joinder have been addressed numerous times by the transferor court. In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court.

In the interest of judicial economy and to avoid inconsistent results, the motion to stay is GRANTED. This stay will remain in effect until the Court is notified of the MDL Panel's decision as to whether to transfer this action.

(Order, dated August 17, 2005, Doc. 16 in *Woods v. Merck & Co., Inc., et al.*, Case No. 2:05-cv-00425-CG-M (S.D. Ala.)(internal citations omitted)(quoting Order from *Beverly v. Wyeth, et al.*, 03-cv-0866-CB-C(S.D. Ala.)(**Exhibit E**)).

Such stays are consistent with this Court's practice, that of the other federal district courts in Alabama, federal courts within the Eleventh Circuit and, indeed, throughout the country. For example, Judge Proctor of the Northern District of Alabama, just a few months ago addressed this issue in the case of *Faircloth v. Merck & Company, Inc.*, Case No. 2:06-CV-184-RDP (N. D. Ala) (attached as **Exhibit F** to this opposition). In the *Faircloth* case, the Plaintiff requested the court to reverse its prior decision to stay the case pending MDL transfer, in order to permit Plaintiff to conduct discovery to identify the sales representative who marketed and promoted Vioxx to her prescribing physician. Plaintiff stated her intent to amend her Complaint to add that person to the case, predicting that the representative would be an in-state defendant who would destroy diversity.

Judge Proctor in his *Faircloth* memorandum opinion distinguished several diet drug cases where he had ruled on pending motions to remand while they were awaiting transfer to an MDL. Judge Proctor pointed out that the action taken by him the previous year in the diet

drug litigation cases was not appropriate now in light of the Eleventh Circuit's opinion in *Legg v. Wyeth*, 428 F. 3d 1317 (11th C. 2005). Judge Proctor said that *Legg* suggests that under Alabama law, in-state representatives are fraudulently joined if they are merely "conduits" who did not act in bad faith, citing *Legg*, 428 F. 3d at 1324-25. He went on to point out that in *Legg* the Eleventh Circuit had applied Alabama law in the context of claims based on prescription medications and found "no reasonable possibility" that the named sales representatives could be liable to plaintiffs, citing *Legg*, 428 F. 3d at 1324-25. Judge Proctor went on to conclude his comments in footnote two of the *Faircloth* opinion by stating "Post-*Legg*, it is clear that before the issue of fraudulent joinder can be decided, at least some discovery must be conducted to eliminate the depth of a representative's participation in the Plaintiff's allegations. As the court has opined above, these are matters best left to the MDL court." (*Faircloth*, at pg. 2, footnote 2.)

Indeed, the Middle District of Alabama has issued stay orders in cases postured virtually identical to the instant case. *See, e.g.*, *Kehoe v. Merck & Co., Inc., et al.*, Case No. 3:06-cv-00425-MEF (M.D. Ala. June 20, 2006)(Fuller, J.); *King v. Merck & Co., Inc. et al.*, CV-2:05-165-T (M.D. Ala. Apr. 26, 2005)(Thompson, J.); *Beaty v. Merck & Co., Inc.*, Case No. 2:05-cv-880-W (M.D. Ala. Sept. 22, 2005)(Walker, J.)[1]. The Middle District of Alabama has also issued stay orders in a host of other Vioxx cases against Merck in circumstances where remand was not an issue. *See, e.g.*, *Baird, et al. v. Merck & Co., Inc.*, Case No. 2:05-cv-493-F (M.D. Ala. June 30, 2005)(Fuller, J.); *Donalson v. Merck & Co., Inc.*, Case No. 2:05-cv-216-F (M.D. Ala. Mar. 31, 2005)(Fuller, J.); *Flourney v. Merck & Co., Inc.*, Case No.

---

[1] The stay was subsequently lifted when the case was transferred to Judge Thompson; however, Judge Thompson denied the plaintiff's Motion for Expedited Hearing on his Motion to Remand and allowed the case to be transferred to the Vioxx MDL.

3:05-cv-560-M (M.D. Ala. June 23, 2005)(McPherson, J.); *Gilbreath v. Merck & Co.*, Inc., Case No. 2:05-cv-103-W (M.D. Ala. Feb. 14, 2005)(Walker, J.); *Hester v. Merck & Co., Inc.*, Case No. 2:06-cv-242-MHT (M.D. Ala. Apr. 24, 2006)(Thompson, J.); *King v. Merck & Co.*, Inc., Case No. 2:05-cv-165-T (M.D. Ala. Apr. 26, 2005)(Thompson, J.); *Rountree v. Merck & Co., Inc.*, Case No. 2:05-cv-185-F (M.D. Ala. Mar. 29, 2005)(McPherson, J.); *Southerland v. Merck & Co., Inc.*, Case No. 1:05-cv-039-A (M.D. Ala. Feb. 17, 2005)(Albritton, J.); *Stevens v. Merck & Co., Inc.*, Case No. 2:05-cv-138-F (M.D. Ala. Feb. 11, 2005)(Walker, J.); *Turner v. Merck & Co., Inc.*, Case No. 1:04-cv-999-T (M.D. Ala. Nov. 22, 2004)(Thompson, J.); *Wallace v. Merck & Co., Inc.*, Case No. 3:04-cv-1199-W (M.D. Ala. Jan. 13, 2005)(Walker, J.); *Wilson v. Merck & Co., Inc.*, Case No. 2:05-cv-32-F (M.D. Ala. Feb. 9, 2005)(Fuller, J.)(collectively attached as **Exhibit G**).

Just as in *Woods*, *Beverly*, *Faircloth*, and the other cases stayed in the Middle District of Alabama, deferral is particularly appropriate here because the Vioxx MDL court already has before it numerous cases from Alabama and other jurisdictions in which plaintiffs have named non-diverse professional representatives and seek remand on that basis. *See, e.g.*, *Jones v. Merck & Co., Inc., et al.*, (C.A. No. 05-427, transferred from N.D. Ala.); *King v. Merck & Co., Inc., et al.*, (C.A. No. 05-165, transferred from M.D. Ala.); *Register v. Merck & Co., Inc., et al.* (C.A. No. 04-2259, transferred from N.D. Tex.); *Casimere v. Merck & Co., Inc., et al.* (C.A. No. 05-1042, transferred from E.D. Mo.); *O'Gorman v. Merck & Co., Inc., et al.* (C.A. No. 05-153, transferred from E.D. Mo.); *Bodimer v. Merck & Co., Inc., et al.* (C.A. No. 05-135, transferred from E.D. Mo.); *Allen v. Merck & Co., Inc., et al.* (C.A. No. 05-134, transferred from E.D. Mo.); *Flippin v. Merck & Co., Inc., et al.* (C.A. No. 05-1068, transferred from W.D. Tenn.); *Macklin v. Merck & Co., Inc., et al.* (C.A. No. 05-1054, transferred from W.D. Tenn.);

*Wright v. Merck & Co., Inc., et al.* (C.A. No. 05-1160, transferred from W.D. Tenn.); *Dawson v. Merck & Co., Inc.* (C.A. No. 05-1154, transferred from W.D. Tenn.); *Foster v. Merck & Co., Inc.* (C.A. No. 05-1159, transferred from W.D. Tenn.).

Having the MDL court decide the cross-cutting jurisdictional issues raised by these cases will ensure that the various Vioxx actions around the country are treated in a uniform manner and that this Court does not enter a ruling that might ultimately be inconsistent with that of the MDL court on like motions. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"). *See also Bd. Of Trs. Of the Teachers' Ret. Sys. of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.*, Civil Action No. 02-0886 Section: "R", 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("because the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pretrial rulings are furthered by a stay of the proceedings."); *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 U.S. Dist. LEXIS 2656, at *5 (E.D. La. Feb. 24, 1995) (same).

In short, because Judge Fallon is already facing remand motions in similar cases, Merck respectfully urges the Court to defer consideration of Plaintiffs' motion pending final MDL transfer.

**II.**    **The Court Has Diversity Jurisdiction Over Plaintiffs' Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.**

Should the Court choose to reach the merits of Plaintiffs' Motion for Remand, the motion should be denied because the Court has diversity jurisdiction over Plaintiffs' claims. Because Plaintiffs do not dispute in their remand motion that the amount-in-controversy requirement is satisfied, the only jurisdictional question remaining before the Court is whether the non-diverse Employee Defendants are fraudulently joined. As set forth below, Plaintiffs have no intention of seeking relief from these defendants; nor could they if they so desired. Plaintiffs' Motion for Remand offers nothing to change that fact. Accordingly, the Employee Defendants must be ignored for purposes of determining jurisdiction.

The fraudulent joinder of employees has become a common tactic in pharmaceutical litigation by plaintiffs who seek to avoid federal court and – in cases like this – inclusion in an MDL proceeding. This is especially true in Alabama where pharmaceutical cases (regardless of the pharmaceutical) are typically brought against all known sales representatives who happen to have resided in Alabama at one time or another, regardless of whether they have any connection to the actual case. *See Legg v. Wyeth*, 428 F.3d 1317, 1325, 1320 (11th Cir. 2005) (noting the common strategy of plaintiff in pharmaceutical cases to name local sales representatives to thwart removal). As the United States Supreme Court has long recognized, however, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant . . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Thus, Plaintiff cannot name parties of the same citizenship merely to avoid removal of an action to federal court. *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). The Eleventh Circuit recently reaffirmed this long-standing law in another case where the plaintiff had named sales representatives in an effort to defeat

diversity jurisdiction: "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)).

In *Legg*, the Eleventh Circuit confirmed the appropriate standard for determining whether professional representative defendants are fraudulently joined: A defendant is fraudulently joined when there is "no reasonable possibility" that a state might impose liability on the resident defendant. *Id.* at 1325. Such a reasonable possibility must be based on facts in evidence and cannot be "merely theoretical." *Id.* at 1325 and n.5. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *12 (M.D. Ala. Dec. 19, 2005). Moreover, the *Legg* court recognized, in making this determination, that the Court must consider "the plaintiff's pleadings at the time of removal" – not subsequent claims by the plaintiff in support of a remand motion. *Id.* at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)).

Here, Plaintiffs' Complaint asserts ten causes action against the Employee Defendants – Negligence (Count I), Negligence Per Se (Count II), Gross Negligence, Wantoness, and/or Willfulness (Count III), Violation of Alabama Products Liability Act Failure to Warn (Count IV), Violations of Alabama Products Liability Act Inadequate Design or Formulation (Count V), Breach of Implied Warranty (Count VI), Breach of Express Warranty (Count VII), Fraud and Misrepresentation (Count VIII), Violation of Alabama Unfair and Deceptive Trade Practices Act (Count IX), and Loss of Support, Consortium and Services of Plaintiff Mack Harrell (Count X). As set forth below, there is no reasonable likelihood that Plaintiffs will prevail on any of

these causes of action against the Employee Defendants. Accordingly, they are fraudulently joined and there is complete diversity over this action.

**A.    There Is No Reasonable Likelihood That Plaintiffs Will Prevail On Their Fraud/ Suppression Claims Against The Employee Defendants.**

The Eleventh Circuit's recent holding in *Legg v. Wyeth* confirms that Plaintiffs have no reasonable possibility of prevailing on their fraud claim against the Employee Defendants because Plaintiffs have failed to establish knowledge or bad faith on the part of the Employee Defendants. But that is not the only reason the fraud claims must fail against the Employee Defendants. In addition, these claims must fail under the learned intermediary doctrine, because Plaintiff does not properly plead reliance, and because Plaintiff fails to allege fraud with the specificity required by both the Federal Rules of Civil Procedure and Alabama Rules of Civil Procedure.

**1.    Plaintiffs Cannot Assert Fraud Claims Against The Employee Defendants Because They Fail To Establish Knowledge Or Bad Faith On Their Part.**

**a.  The *Legg* Case Is On All Fours With The Facts Here.**

As the Eleventh Circuit recently explained in *Legg,* Plaintiffs cannot assert fraud claims against the employee defendants because they fail to establish knowledge or bad faith on their part.

In *Legg*, Plaintiff Carl and Dorothy Legg asserted numerous claims against Wyeth, a pharmaceutical manufacturer, and several of its professional representatives, including claims for fraud based on allegations that the defendants made misrepresentations and suppressed certain facts related to the Wyeth medicine, Redux. Wyeth removed the case on diversity grounds, arguing that the Leggs had fraudulently joined a non-diverse professional

representative.  Wyeth supported its removal with affidavits from its non-diverse professional representatives, which stated in pertinent part:

> My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. . . . I had no involvement in the development or preparation of package inserts for any of the drugs, and had no control over content or other written warnings. . . . I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so.  I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

*Legg*, 428 F.3d at 1321.

In response to Wyeth's submission, the Leggs offered as "evidence" voluminous training materials used by Wyeth and its professional representatives in marketing Redux as well as affidavits from several physicians stating the professional representatives had made misrepresentations to them, to contradict the affidavits offered by the defendants.  *Id.* at 1322 and n.4.  Like the Plaintiffs here, the Leggs argued that the training materials established that the professional representatives had knowledge of adverse events associated with the medicine they were marketing and included Wyeth's mandate that such information should not be shared with anyone outside the company, including Plaintiff's physician.  (*See* Legg Mtn. for Remand, p. 13, attached as **Exhibit H**).[1]

---

1. The Plaintiff in *Legg* offered the following "evidence" that the professional representatives had knowledge:  Wyeth provided their sales team with promotional and educational materials regarding Redux to be used in detailing physicians.  According to the Plaintiff, the professional representatives went through a Redux sales training program where they were given information regarding the safety and effectiveness of Redux as well as information related to adverse events associated with it.  Plaintiff further claimed that the professional representatives learned disingenuous sales strategies to be used in selling Redux, including withholding information from physicians. When Redux was launched, Wyeth knew of risks related to pulmonary hypertension, primary pulmonary hypertension, and the use of diet drugs.  This information was passed along to their professional representatives, according to Plaintiff, but they were directed not to reveal this information to anyone outside the company, including prescribing physicians, or they would be at risk for discipline or termination for violating their Employee Confidentiality Agreement.  (*See* Legg Mtn. for Remand, pp. 12-13).  All of this "evidence" was before the *Legg* court, and the court determined that Plaintiff had not provided any evidence of knowledge allowing them to maintain a cause of action for fraud against the professional representatives.  *See Legg*, 428 F.3d at 1324.

In addressing the district court's remand of the case in light of all the evidence, the Eleventh Circuit held that "[q]uite simply, there is no reasonable basis to predict that an Alabama court would find [the professional representative], as an individual employee, personally liable for any wrongful action by Wyeth in the absence of evidence that [the individual professional representative defendants] either knew or should have known of Redux's allegedly dangerous effects." *Id.* at 1324-25. The court explained further that when a defendant presents evidence such as declarations that are not disputed by plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Id.* at 1323. *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *14 (M.D. Ala. Dec. 19, 2005). Thus, the Eleventh Circuit found remand had been improvidently granted, noting that "the Federal courts should not sanction devices intended to prevent a removal to a Federal Court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Id.* at 1325 (quoting *Wecker v. Nat'l Enameling and Stamping Co.,* 204 U.S. 176, 186 (1907)).

The Eleventh Circuit's decision in *Legg* confirms long-standing Alabama law to the effect that "there is no reasonable basis to predict that an Alabama Court would find [the professional representative], as an individual employee, personally liable for any wrongful action by [his company] in the absence of evidence that [he or she] knew or should have known of [the medication's] allegedly dangerous effects." *Id.* at 1324-25; *accord Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). *See also Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005)(discussing *Legg*).

For that reason, courts applying Alabama law have held that simply alleging fraud against professional representatives in cases similar to this did not defeat diversity jurisdiction.  *See Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at \*4 (M.D. Ala. Dec. 19, 2005); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 283-84 (S.D.N.Y. 2001).  In such instances, the claims have been deemed fraudulent because those allegations did not satisfy an "essential element[] of fraud, most obviously that the sales professionals knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead Plaintiff."  133 F.Supp.2d at 283 & 284 n.29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (to satisfy knowledge requirement of fraud claim, plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[2]  Thus, as the Rezulin MDL Court held, remand should be denied where, as here, Plaintiffs merely "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to 'defendants.'"  *Id.* at 283.  *See also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").

Here, (as in *Legg* and *Bloodsworth*), the served Employee Defendants have submitted a declaration stating unequivocally that:

> At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Donna Harrell or Mack Harrell.

---

[2] Although these quotations are contained in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the Court also applies this reasoning to the Alabama cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales representatives . . . ." *Id.* at 286.

I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

At no time did I have any involvement at all with the manufacture,   development,   or testing of Vioxx.  The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.  They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients.  Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Donna Harrell or Mack Harrell.

I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

I have never met nor spoken with Donna Harrell or Mack Harrell.

I have never made any presentations to the general public regarding Vioxx.

 (*See* Declarations of Ann Brandon, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, attached hereto as **Exhibit I** and attached to Merck's Notice of Removal).

Like the Plaintiff in *Legg*, the Plaintiff here has not offered any evidence to dispute the testimony of the Employee Defendants that if they conveyed erroneous information to physicians, they had no knowledge of doing so, and that they never acted in bad faith.  To the

contrary, like the Plaintiff in *Legg*, the Plaintiff here has only attached various documents and training materials supporting general allegations against Merck, none of which establish either the knowledge or bad faith elements of a fraud claim against these Employee Defendants.[3]    In fact, and contrary to Plaintiffs' suggestion, to the extent the Court considers these exhibits as evidence at all, they must be viewed as establishing Merck's very point – the Employee Defendants received all the information they conveyed to physicians from Merck and had no independent knowledge concerning the safety or effectiveness of Vioxx.

In fact, the facts here are on all fours with *Legg*.  Like the professional representatives in *Legg*:

- The Employee Defendants have made no representations to the Plaintiffs (see **Exhibit I**);

- The Employee Defendants here did not make any knowing misrepresentations to physicians about Vioxx, (*id.*);

- Any information used by the Employee Defendants, in their dealings with physicians about Vioxx came from the employer, (*id.*);

- The Employee Defendants did not draft the prescribing information or warnings and had no responsibility to conduct independent research, (*id.*);

- The Employee Defendants had no knowledge related to Vioxx beyond what was given to them by Merck;[4]  and

- They acted in good faith at all times with physicians who prescribed Vioxx. (*id.*).

Plaintiffs have failed completely to supply any evidence or even make any specific allegations related to any specific knowledge on the part of any one of the named Employee Defendants,

---

[3] Indeed, the Plaintiff in *Legg* offered *more* compelling evidence than the Plaintiff here by submitting affidavits from physicians which stated the professional representatives made false representations to them concerning the safety and effectiveness of the Wyeth medicine which they relied upon in prescribing it.  *See Legg*, 428 F.3d at 1322.

[4] Any "evidence" the Plaintiff refer to which is information in the public domain cannot be used to demonstrate knowledge or notice on the part of the Employee Defendants because it would also constitute knowledge or notice to the public as well.

relying instead on general allegations against Merck.  In so doing, Plaintiffs have failed to provide any evidence to dispute any of the above facts, and thus, these facts must be taken as true.

Without competent evidence that the Employee Defendants made knowing misrepresentations to the prescribing physicians or acted in bad faith, there is "no reasonable possibility" that an Alabama court would conclude that the professional representatives breached a duty to Plaintiffs.  *See Legg,* 428 F.3d at 1324; (citing *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455 (Ala. 2000)) (stating "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith"); *see also Montgomery Rubber and Gasket Co., Inc. v. Belmont Machinery Co., Inc.*, 308 F. Supp. 2d 1293, 1298 (M.D. Ala. 2004) (finding agent defendant was, at most, an innocent conduit and thus, plaintiff could not maintain fraud claim against him when plaintiff did not allege agent "made any representations whatsoever to [plaintiff]" or "had any knowledge of the [alleged misrepresentation]"); *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *4 (M.D. Ala. Dec. 19, 2005).

### b.  Plaintiffs' reliance on Wyeth cases is misplaced.

Plaintiffs offer several cases involving Wyeth in the diet-drug litigation in an attempt to minimize the persuasive authority of the MDL courts that have considered the fraudulent joinder of Alabama citizens. (*See* Doc. 22, Brf. in Sup. Mtn. for Remand, pp. 18-20).  The majority of the *Wyeth* cases cited by Plaintiffs were also cited by the *Legg* plaintiffs in their motion for remand and were not followed by the Eleventh Circuit.  (*See* Legg Mtn. for Remand, pp. 13-15, attached as **Exhibit H**).  The *Wyeth* cases should be considered unpersuasive here, just as they were by the Eleventh Circuit in *Legg*.  Further, it is important

to note that in at least some of these cases, plaintiff actually submitted affirmative evidence of reliance through affidavits from the prescribing physicians. *See, e.g., Cash v. Wyeth, et al,* Civil Action No: 03-RRA-3378-E (N.D. Ala.). These cases are therefore distinguishable from the facts of the present case, where Plaintiffs fail to refute either the legal arguments set forth in the Notice of Removal or the declarations filed by the Employee Defendants.

This was precisely the conclusion reached in the *Baycol* MDL when the *Wyeth* opinions were presented to the court. Judge Davis held that these decisions were distinguishable from the *Baycol* case and did not warrant the remand of cases involving the fraudulent joinder of professional representatives under Alabama law. (*See In re Baycol Prod. Liab.*, MDL 1431, slip opinion and Plaintiff's motion citing the *Wyeth* cases).

> **2.    Plaintiffs Claims For Fraud Also Fail Because They Fail To Demonstrate Reliance By Plaintiffs Physicians And Their Claims Are Barred By The Learned Intermediary Doctrine.**

Plaintiffs fraud claims against the Employee Defendants fail for other reasons as well. First, an essential element of these claims is reliance on the alleged misrepresentation. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression). Yet Plaintiffs only summarily allege that Donna Harrell's physicians relied on the Employee Defendants' alleged misrepresentations in prescribing Vioxx to Plaintiff, Donna Harrell. It is uncontested, however, that the Employee Defendants, never met nor spoke with the Donna Harrell or Mack Harrell about Vioxx.

Further, Plaintiffs cannot contend the prescribing physicians relied on anything the Employee Defendants allegedly said since Plaintiffs fail/refuse to offer any evidence the Employee Defendants had any contact with those physicians.

Likewise, Plaintiffs fail to allege that Donna Harrell's prescribing physicians relayed any misinformation to them or that they were even aware of the alleged statements made to the prescribing physicians.   Plaintiffs cite several cases as support for their fraud claim, but none of the cases cited allow a fraud claim in the absence of reliance by the Plaintiffs.  *See, e.g., Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004) (finding plaintiff could not maintain her fraud claim because there was no evidence "[the plaintiff] relied to her detriment on any of the alleged misrepresentations" and stating neither *Thomas v. Halstead*, 605 So. 2d 1181 (Ala. 1992) nor any other authority "excus[es] a plaintiff from the requirement of establishing *his* reliance on the defendants' misrepresentation") (emphasis added). Without some evidence or specific allegation that Plaintiffs were *aware* of an alleged misrepresentation by these Employee Defendants, these claims must fail for lack of requisite reliance.

Furthermore, even if Plaintiffs could establish a misrepresentation was made to Donna Harrell's prescribing physicians, the misrepresentation and suppression claims would still fail as a matter of law.   Donna Harrell's physicians in this case are presumably licensed physicians with extensive training, and are capable of making their own independent determinations regarding medication and treatment of their patients.[5]   The recognition that doctors are trained and informed professionals who are in the best position to make decisions about their patients' care is the basis of the learned intermediary doctrine.  *See Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) (observing that the prescribing physician is best suited to evaluate the characteristics of the medication vis-à-vis

---

[5] It is also reasonable to presume such a physician keeps abreast of the latest FDA reports, pharmaceutical labeling, and medical journal articles as part of his continuing education and practice.  Any articles or reports of this type Plaintiff allege the Employee Defendants concealed would have been public and available to any practicing physician.  As such these items could not have been suppressed.

the needs and background of the patient and concluding that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer"); *see also Morguson v. 3M Co.*, 857 So. 2d 796, 801-02, n.1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warnings are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1314 (11th Cir. 2000)).  The learned intermediary doctrine bars Plaintiffs' claim against the Employee Defendants for any alleged failure to disclose and establishes there is no reasonable likelihood that Plaintiffs can prevail on their claim against these individual defendants.  *In re Norplant Contraceptive Prods. Liab. Litig.*, 165 F.3d 374, 378 (5th Cir. 1999) (applying learned intermediary doctrine in deceptive trade practices action).

### 3. Plaintiffs Fraud Claims Against The Employee Defendants Do Not Satisfy The Particularity Requirement Of Rule 9(b).

Finally, there is no reasonable likelihood that Plaintiffs will prevail on their claims of fraud and deceit against the Employee Defendants because they have failed to plead these claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure, both of which call for dismissal if averments of fraud are not stated "with particularity."  *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder). Here, Plaintiffs fail to show the "time, place and purported contents of the false representations" allegedly made by each of the Employee Defendants as required by the rule, and also fail to identify the physicians to whom any allegedly fraudulent statements were

made.  *See Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b)) (plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained").  Likewise, Plaintiffs fail to allege with particularity reliance by the physicians, another requirement for fraud claims under Alabama law.  *See Delta Health Grp., Inc. v. Stafford*, 887 So. 2d 887, 899 (Ala. 2004).

Plaintiffs go to great lengths to describe the marketing campaign for Vioxx, but fail to state how, when, where, and most importantly, *if* Plaintiffs heard of this campaign.  Nor do Plaintiffs state when, where, or even *if* Plaintiff's physicians allegedly received this information or, most importantly, *if* his or her prescribing decisions were affected in any way by this information.  Plaintiffs have offered nothing to demonstrate that the Employee Defendants even called on Donna Harrell's treating or prescribing physicians.  The fact that Plaintiffs' counsel has possession of Merck's marketing materials produced in other Vioxx cases does not link those marketing materials to the prescription of Vioxx written for Donna Harrell.  Further, a detailed description of these materials without details regarding if and how they were presented to the prescribing physicians or, more importantly, to Plaintiff, does not satisfy the requirements of Rule 9(b).[8]

In short, Plaintiffs' Complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, the Motion for Remand should be denied and Defendant's motion to dismiss should be granted.

---

[8] "The pleader . . . must use more than generalized or conclusory statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained."  *Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).

**B.    Employees Are Not "Sellers" or "Manufacturers" And Thus Cannot Be Held Liable Under the Plaintiffs' Products Liability or Breach of Warranty Claims.**

To the extent that Plaintiffs' assert products liability claims against the Employee Defendants, there is no reasonable basis to predict that they can prevail on these claims because these claims apply only to "sellers" and "manufacturers," and the Employee Defendants are not "sellers" and "manufacturers" of the prescription medicine Vioxx.  *See Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (to state a breach of warranty cause of action, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product").

Here, the Employee Defendants have submitted affirmative proof through their declarations that they are not a "seller" or "manufacturer" for purposes of Alabama law.  (*See Declarations*).  Therefore, they cannot be held liable under product liability causes of action.  *See, e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337 (M.D. Ala. Dec. 19, 2005);[9]

---

[9] As Judge DeMent stated in the <u>*Bloodsworth*</u> opinion: "Mrs. Bloodsworth's warranty claims against Lanier fail for the same reason that the AEMLD claim fails, as a breach of warranty claim is viable only against the "seller" of the goods.  See *Ala. Code* §§ 7-2-313(1), 7-2-314(1) & 7-2-315(1) (2002) (express and implied warranty claims refer to the creation of warranties by the "seller").  Lanier is not considered to be the "seller" of the alleged defective products for purposes of the breach of warranty claims; instead, the manufacturer (i.e., Smith & Nephew) is deemed the seller and Lanier is deemed its "agent."  *In re* Baycol Prods. Liab. Litig., M.D.L. No. 1431, [*22] *7 [HN18] (on fraudulent joinder analysis, finding that under Alabama law sales representatives could not be liable for claims of breach of express or implied warranty because they were neither manufacturers nor sellers of Baycol, but rather were merely "agents" of the seller of Baycol); see also *Rutledge,* 733 So. 2d at 417 (holding that builder who hired subcontractor to install door was not the "seller" of door for

*In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) ("The sales representative . . . neither manufactured, sold, nor supplied [the drug] . . . [but was] an agent of the manufacturer and seller.  In light of the Alabama Supreme Court's clear explanation of AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."); *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing liability of a professional representative under the AEMLD).

The United States District Court for the District of Minnesota's decision in *In re Baycol Products Litigation*, MDL-1431 (D.C. Minn. Mar. 26, 2004), is particularly instructive.  There, in one of the cases considered by the Baycol MDL Court, the plaintiff brought suit in Alabama state court concerning the plaintiff's use of the pharmaceutical Baycol.  In addition to the manufacturer (Bayer), the plaintiff also sued several district managers and professional representatives.  The cases were removed to federal court on the basis that the non-diverse district managers and professional representatives were fraudulently joined.  The plaintiff moved to remand the case, raising the exact same arguments advanced by Plaintiffs' counsel here.  The district court denied this motion, holding with regard to the AEMLD claim:

> Defendants argue that the district managers and sales professionals are not 'sellers' of Baycol, as contemplated by the AEMLD.  The Court agrees.  The purpose of the AEMLD, a judicially created doctrine, is to 'plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products.'  *Atkins v. American Motors Corp., et al.*, 3335 So. 2d 134, 139 (Ala. 1976).  Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability.  For example, in an unpublished opinion from

---

purposes of establishing a claim for breach of implied warranty of fitness).  Similarly, a claim for negligent manufacture or sale is cognizable against the manufacturer or seller, and Lanier again is deemed neither under Alabama law.  *See In re* Baycol Products Liability Litigation, M.D.L. No. 1431, *6-*7.  Accordingly, the court finds that Mrs. Bloodsworth's breach of warranty and negligence claims against Lanier fail under the fraudulent joinder analysis.

the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. *Bowman v. Coleman Company, Inc.*, Civil Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as **Exhibit D** to Removal Petition. The court recognized that the defendant sales manager 'had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers.' Id. at *7. The court also noted that it is the corporation that reaps the profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. 'In short, policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales professionals.'

(**Exhibit J**, at pp. 4-5).

Plaintiffs offer no instructive authority to find a products liability claim can survive against the Employee Defendants. This includes both AEMLD claims and breach of warranty claims. In short, Alabama case law does not support a products liability claim against the Employee Defendants. As such, Plaintiffs have no possibility of recovering from the Employee Defendants on these claims.

**C.    Plaintiffs Loss of Consortium Claim Is A Derivative Claim And, Thus, Does Not State A Viable Claim Against The Employee Defendants.**

Under Alabama law, a loss of consortium claim is a derivative claim that, to be viable, is dependent upon a separate viable claim. See, eg*., Davis v. Wal-Mart Stores, Inc.*, 64 Fed. Supp. 2nd 1176, 1181 (M.D. Ala. 1999); *Fenley v. Rouselle Corp.,* 531 So.2d 304, 304, n.1 (ala. 1998) (wife's loss of consortium claim was derivative of her husband's AEMLD claim). As discussed above, Plaintiffs have no viable claims against the employee defendants, thus, there can be no viable loss of consortium claim against defendants.

**III.    Consent From the Fraudulently Joined Defendants Is Not Required.**

Plaintiffs argue in their remand brief that Merck's removal petition is defective because Merck has failed to obtain the consent of the named Professional Representatives.  The Plaintiffs' argument is without merit and should be ignored.

Consent to removal is unnecessary because, as shown above and in Merck's removal petition, the Employee Defendants have been fraudulently joined.  It is well-settled that fraudulently joined defendants need not consent to removal.  *See, e.g., GMFS, LLC v. Bounds*, 275 F.Supp.2d 1350, 1353-54 (S.D. Ala. 2003)(citing cases and noting that fraudulently joined  defendants need not consent to removal); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Polyplastics, Inc. v. Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983); *Alexander v. UDV N. Am., Inc.*, 78 F. Supp. 2d 614, 617 n. 4 (E.D. Mich. 1999) (citing *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n.4 (3d Cir. 1995));  *White v. Bombarbier Corp.*, 313 F.Supp.2d 1295, 1299-1300 (N.D. Fla. 2004); *Long v. Wyeth*, 2003 U.S. Dist. LEXIS 26796 (M.D. Fla. 2003);  *Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1222 n. 3 (M.D. Ala. 1999).

## CONCLUSION

For these reasons, as well as those stated in the Notice of Removal and Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, Merck respectfully requests that the Court deny Plaintiffs' Motion to Remand, and issue a stay of proceedings that would allow the MDL Court to address said motion.  Alternatively, Plaintiffs' Motion for Remand should be denied.

DATED this 10th day of  October, 2006.

**s/ Alan T. Hargrove, Jr.**
Alan T. Hargrove, Jr.
        Bar Number: (ASB-7018-H46A)
Mike Brock
        Bar Number:  (ASB-5280-B61R)
F. Chadwick Morriss
        Bar Number: (ASB-8504-S75F)

**RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.**
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:        ath@rsjg.com
                    rcb@rsjg.com
                    fcm@rsjg.com
**Attorneys for Defendants**


## CERTIFICATE OF SERVICE


        I hereby certify that on October 10, 2006, I electronically filed the foregoing with the Clerk of the court using CM/ECF system which will send notification of such filing to the following:

        Andy D. Birchfield, Jr., Esquire
        J. Paul Sizemore, Esquire
        Benjamin L. Lockler, Esq.
        Beasley, Allen, Crow, Methvin,
            Portis & Miles, P. C.
        P. O. Box 4160
        Montgomery, Alabama 36103-4160



                    **s/Alan T. Hargrove, Jr.**
                                COUNSEL

1

```
 1                 UNITED STATES DISTRICT COURT
 2                 EASTERN DISTRICT OF LOUISIANA
                       NEW ORLEANS, LOUISIANA
 3

 4

 5
      IN RE:  VIOXX PRODUCTS          *   Docket MDL 1657-L
 6       LIABILITY LITIGATION         *
                                      *   June 23, 2005
 7                                    *
                                      *   9:30 a.m.
 8    * * * * * * * * * * * * * * *   *

 9

10

11                STATUS CONFERENCE BEFORE THE
                    HONORABLE ELDON E. FALLON
12                 UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14
      For the Plaintiffs:       Seeger Weiss
15                              BY:  CHRISTOPHER A. SEEGER, ESQ.
                                One William Street
16                              New York, New York 10004

17
      For the Defendants:       Stone Pigman Walther Wittmann
18                              BY:  PHILLIP A. WITTMANN, ESQ.
                                546 Carondelet Street
19                              New Orleans, Louisiana 70130

20
      Official Court Reporter:  Toni Doyle Tusa, CCR
21                              500 Poydras Street, Room B-406
                                New Orleans, Louisiana 70130
22                              (504) 589-7778

23

24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

EXHIBIT

A

21

1   with this issue in that fashion.  We have a confidentiality

2   agreement which will allow the defendants comfort to produce

3   certain information without fear that their future economic

4   security is in jeopardy.  The remand issues.

5          MR. SEEGER:  Judge, that's in the report.  You are

6   going to be dealing with remand motions as a group by

7   procedures that you will be setting up.

8          THE COURT:  Right.  This is always an issue which the

9   MDL Court has to look at.  The question is posed.  There are

10  various issues of remand in various cases throughout the

11  country.  Again, a significant advantage of the MDL concept is

12  some consistency.  The Rule of Law is really based on

13  consistency.  If different decisions are made by numerous

14  judges, then you have no consistency and no predictability and

15  no one knows exactly what to do or how to do it.  It's easier

16  if one court decides some of these matters than if 50 or 100

17  courts decide the matter.

18          I'm conscious of dealing with the remand as

19  quickly as possible, but I do want to get them all together,

20  look at them, see if I can group them in some way, and then

21  direct my attention on each particular group and deal with that

22  issue in a consistent and fair fashion for that group.  I will

23  be dealing with them as quickly as I can, but also with an idea

24  of having more consistency.  I'll be speaking about this

25  perhaps later on because I do have some concepts and ideas

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

**CHAIRMAN:**
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

**MEMBERS:**
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

**DIRECT REPLY TO:**

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

March 21, 2005

Honorable Ricardo H. Hinojosa
U.S. District Judge
1701 W Bus Highway 83
Bentsen Tower, Suite 1028
McAllen, TX 78501

Re: MDL-1657—In re Vioxx Products Liability Litigation

*Felicia Garza, et al. v. Merck & Co., Inc., et al.*, S.D. Texas, C.A. No. 7:05-17

Dear Judge Hinojosa:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in the above matter pending before you. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. In the meantime, your jurisdiction continues until any transfer ruling becomes effective.

If you have a motion pending -- such as a motion to remand to state court (if the action was removed to your court) -- you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

**EXHIBIT**

**B**

tabbies'

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**GREG GOUGE,**

    **Plaintiff,**

**v.**                                    **Case No. 3:05CV345/RV**

**MERCK & CO., INC., TAFFANY
SHIPP, HANK FILLINGIM, TOM
KIERNAN, SARAH PACCHETTI,
and SHANA HOLMAN,**

    **Defendants.**

_____

### ORDER

    This case was originally filed in the Circuit Court of Escambia County, Florida,
against Merck & Co., Inc. ("Merck"), Taffany Shipp, Hank Fillingim, Tom Kiernan,
Sarah Pacchetti, and Shana Holman, alleging claims based on injuries related to the
drug Vioxx. The case was removed to this court by the Defendants on September 12,
2005. On September 16, 2005, Merck filed a motion to stay the proceedings pending
a transfer decision by the Judicial Panel on Multidistrict Litigation ("MDL"). (Doc. 5)
On October 7, 2005, the Plaintiffs filed a motion to remand, arguing that the court
lacked jurisdiction over the case. (Doc. 8) An order granting Merck's motion to stay
was entered on October 12, 2005. (Doc. 11) On October 21, 2005, the MDL
conditionally  transferred the case, as anticipated in the stay order, to the Eastern
District of Louisiana.  Plaintiff's motion to reconsider this court's order on the motion
to stay is now pending. (Doc. 13)



## I.    DISCUSSION

Plaintiff argues that his motion to remand should take precedence over the stay of proceedings because it involves issues specific to Florida state law. While a stay pending a transfer decision by the MDL is generally appropriate, a district court may rule on a motion that raises issues unique to the particular case. Manual for Complex Litigation (Third) § 31.131 (1995). Plaintiff's motion to remand turns on the potential liability of the individual defendants in this case, who were pharmaceutical sales representatives for Merck. The individual defendants are Florida residents, and their presence as parties in this case will serve to defeat diversity jurisdiction, unless Merck can show that they were fraudulently joined. To prove fraudulent joinder, Merck would have to show by clear and convincing evidence that there is no possibility that the Plaintiffs can recover damages from the non-diverse individual defendants. Triggs v. John Crump Toyota, 154 F.3d 1284 (11th Cir. 1998).

Other district courts have not reached any uniform conclusion as to whether a motion to remand based on this issue should take precedence over a stay pending transfer. Compare Lloyd v. Cabell Huntington Hospital, 58 F. Supp. 2d 694 (S.D. W. Va. 1999) (court should rule on motion to remand before granting stay) with Weinke v. Microsoft, 84 F. Supp. 2d 989 (E.D. La. 2000) (stay takes precedence over motion to remand). However, a high percentage of the Vioxx cases that have been transferred to the Eastern District of Louisiana have been transferred with pending motions to remand. See Walker v. Merck, 2005 WL 1565839 (S.D. Ill. 2005)(70 such cases as of June 2005). The issue of potential sales representative liability raised by the Plaintiff's motion is, therefore, one that the transferee court will almost certainly have to decide for a large number of similar cases.

Given that the central issue involved in Plaintiff's motion to remand is not unique to this case or to Florida law, I find that a continued stay is appropriate.

Staying the motion to remand serves the interest of judicial economy, and lowers the risk of inconsistent rulings on the sales representatives' potential liability issue by allowing it to be decided by the single court handling all of the federal cases. Further, given that a conditional transfer order has already been entered in this case, Plaintiff will not be subjected to any significant delay based on the imposition of this stay.

## III.    CONCLUSION

For the above reasons, the Plaintiff's motion to reconsider (Doc. 13) is DENIED. DONE AND ORDERED this 28th day of October, 2005.

/s/  Roger Vinson
**ROGER VINSON**
**Senior United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MARGUERITE WOODS,                          )
                                           )
    Plaintiffs,                     )
                                           )
v.                                         )      CIVIL ACTION NO. 05-0425-CG-M
                                           )
MERCK & CO., INC., et al.,                 )
                                           )
    Defendants.                     )

### ORDER

This matter is before the court on motion of defendant, Merck & Co., Inc. ("Merck"), to stay to allow transfer to the MDL (Doc. 3), plaintiff's response (Doc. 15), and plaintiff's motion to remand and for expedited hearing (Doc. 14). For reasons discussed below, the court finds that a stay is appropriate.

Merck removed this case to this court claiming diversity jurisdiction in that the resident defendants were fraudulently joined. Plaintiff contends that Merck has not demonstrated that plaintiff has failed to establish a colorable claim against the resident defendants. As a result, plaintiff asserts that the action should be remanded. Plaintiff cites similar cases in this district as well as other districts in Alabama which have concluded that remand was appropriate. However, the court notes that this court has also found it appropriate to stay such actions in the past. For instance, this court stayed the proceedings in Faith Beverly et al. v. Wyeth, et al., 03-cv-0866-CB-C (S.D. Ala.) stating the following:

> A district has the authority to stay proceedings in cases pending before it. Landis v. North American Co., 299 U.S. 248 (1936); CTI-Container Leasing Corp. v. Uiterwyk, 685 F.2d 1284 (11th Cir. 1982). "[T]he power to stay proceedings is



incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 166. This authority extends to cases in which a transfer decision by the MDL Panel is pending. [Footnote: The existence of a conditional transfer order does not divest the transferor court of jurisdiction, 18 U.S.C. § 1407; JPML Rule 1.5.] See, e.g., Hertz Corp. v. The Gator Corp., 250 F.Supp.2d 421, 424 (D.N.J. 2003). The existence of jurisdictional objections do not affect either the transferor court's ability to issue a stay or the MDL Panel's authority to transfer an action. Moore v. Wyeth-Ayerst Laboratories, 236 F.Supp.2d 509, 512 (D. Md. 2002).

A stay of proceedings in potential MDL cases is appropriate when it promotes judicial economy and efficiency. Rivers v. Walt Disney Co., 908 F.Supp. 1358, 1360 (C.D. Cal. 1997). When jurisdictional issues are raised that may arise "in hundreds or even thousands of cases throughout the nation. . . consistency as well as economy [are]. . . served" by having those issues decided by a single court. In re Ivy, 901 F.2d 7, 9 (2nd Cir. 1990); accord In re Air Crash Disaster at Florida Everglades, 368 F.Supp. 812 (J.P.M.L. 1973). Consequently, a stay is proper where the motion to remand raises issues that have been or are likely to be decided by the transferee court. See, e.g., Gonzalez v. American Home Products Corp., 223 F.Supp.2d 803 (S.D. Tex. 2002) (granting motion to stay despite pending motion to remand because dispositive issue was probably common to other related MDL cases); Moore, 236 F.Supp.2d at 510-11 (granting motion to stay where transferee court had already decided similar motions to remand); Medical Society of State of New York v. Connecticut General Corp., 187 F.Supp.2d 89 (S.D.N.Y. 2001) (same); but see Shields v. Bridgestone/ Firestone, Inc., 232 F.Supp.2d 715 (E.D. Tex. 2002) (denying motion to stay and deciding motion to remand in case pending MDL transfer); Good v. Prudential Ins. Co. of America, 5 F.Supp.2d 804 (N.D. Cal. 1998) (same).

The jurisdictional issue in this case is whether the individual defendants, who are current or former sales representatives for Wyeth, were fraudulently joined to defeat federal subject matter jurisdiction. Motions to remand involving fraudulent joinder have been addressed numerous times by the transferee court. See, e.g., In re Diet Drugs Liability Litigation, ___ F.Supp.2d ___, 2003 WL 22931359 (E.D. Pa. July 30, 2003); id., 2003 WL 21973329 (E.D. Pa. June 12, 2003) (applying Alabama law to case removed from Alabama state court); id. 220 F.Supp.2d 414 (E.D. Pa. 2002); id. 2000 WL 1886594 (E.D. Pa. Dec. 7, 2000); id. 2000 WL 217509 (E.D. Pa. Feb. 15, 2000); id. 1999 WL 554584 (E.D. Pa. July 16, 1999) (applying Alabama law to case removed from Alabama state court); id. 1999 WL 554608 (E.D. Pa. June 29, 1999); id. 1198 WL 254967 (E.D. Pa. Apr. 16, 1998). In fact, one of the transferee court's orders denying remand addressed the alleged fraudulent joinder of a pharmaceutical sales representative in a case removed from Alabama state court. In re Diet Drugs Liability Litigation, 2003 W. 21973329 (E.D. Pa June 12, 2003).

> In the interest of judicial economy and to avoid inconsistent results, the motion
> to stay is hereby GRANTED. This stay will remain in effect until the Court is notified of
> the MDL Panel's decision as to whether to transfer this action.

Id. at Doc. 12, Order dated February 13, 2004. The undersigned judge agrees with the reasoning of

the above quoted order and finds the analysis applicable to the instant case. Thus, the court finds it

appropriate to stay this case.

## CONCLUSION

For the above stated reasons, defendant's motion to stay (Doc. 3) is **GRANTED** and this

case is hereby **STAYED**. This stay will remain in effect until the court is notified of the MDL Panel's

decision as to whether to transfer this action.

**DONE and ORDERED** this 17th day of August, 2005.

                            /s/  Callie V. S. Granade
                    CHIEF UNITED STATES DISTRICT JUDGE

Westlaw.

428 F.3d 1317                                                                           Page 1
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

**C**
Briefs and Other Related Documents

United States Court of Appeals,Eleventh Circuit.
Carl LEGG, Dorothy Legg, Plaintiffs-Appellees,
v.
WYETH, f.k.a. American Home Products
Corporation, Wyeth Pharmaceuticals, Inc., f.k.a.
Wyeth-Ayerst Labs, Inc., Defendants-Appellants.
**No. 04-13489.**

Oct. 25, 2005.

**Background:** Alabama resident and his wife
brought state court action against drug manufacturer
and individual sales representatives, alleging that
resident's use of anti-obesity drug caused him to
develop valvular heart disease. Defendants obtained
removal, alleging fraudulent joinder. The United
States District Court for the Northern District of
Alabama, No. 04-00435-CV-S-NE,C. Lynwood
Smith, Jr., J., granted plaintiffs' motion to remand the
case and ordered manufacturer to pay plaintiffs' costs
and attorneys' fees due to improper removal.
Manufacturer appealed.

**Holdings:** The Court of Appeals, Cox, Circuit
Judge, held that:

5(1) manufacturer's removal of action was not
improvident and thus did not warrant award of
attorneys' fees and costs, and

6(2) district court was required to consider
undisputed sworn affidavits submitted by
manufacturer in support of removal.

Reversed.

West Headnotes

[1] Removal of Cases 334 ☜107(9)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review
Thereof
            334k107(9) k. Review. Most Cited Cases

Court of Appeals may review the merits of a remand
order in considering whether the district court abused
its discretion by awarding attorneys' fees and costs
incurred as result of removal. 28 U.S.C.A. § 1447(c,
d).

[2] Removal of Cases 334 ☜107(9)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review
Thereof
            334k107(9) k. Review. Most Cited Cases
While Court of Appeals may not review the decision
to remand a case to state court, Court must, as part of
its examination of an award of fees upon remand,
consider the objective validity of the removing party's
efforts, at the time that party attempted to remove the
case. 28 U.S.C.A. § 1447(c, d).

[3] Removal of Cases 334 ☜107(9)

334 Removal of Cases
    334VII Remand or Dismissal of Case
        334k107 Proceedings for Remand and Review
Thereof
            334k107(9) k. Review. Most Cited Cases
Court of Appeals reviews for abuse of discretion a
district court's award of attorneys' fees and costs upon
remanding a case to state court, and, because an error
of law is an abuse of discretion, an award of
attorneys' fees based on a legally erroneous remand
order constitutes an abuse of discretion. 28 U.S.C.A.
§ 1447(c).

[4] Federal Courts 170B ☜286.1

170B Federal Courts
    170BIV Citizenship, Residence or Character of
Parties, Jurisdiction Dependent on
        170BIV(B) Controversies Between Citizens of
Different States
            170Bk286 Coplaintiffs and Codefendants
                170Bk286.1 k. In General. Most Cited
Cases
Federal diversity jurisdiction requires complete
diversity, in that the citizenship of every plaintiff
must be diverse from the citizenship of every
defendant. 28 U.S.C.A. § 1332.

[5] Removal of Cases 334 ☜107(11)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
E

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

**334** Removal of Cases
    334VII Remand or Dismissal of Case
       334k107 Proceedings for Remand and Review Thereof
        334k107(11) k. Costs on Remand. Most Cited Cases
Drug manufacturer's removal of product liability action to federal court was not improvident, and thus did not warrant award of attorneys' fees and costs to plaintiffs upon remand, as manufacturer supported its removal of action with undisputed affidavits of defendant sales representatives who manufacturer claimed were fraudulently joined to defeat diversity jurisdiction, and there was no basis, under Alabama law, for imposing liability upon nondiverse sales representatives. 28 U.S.C.A. § § 1332, 1447(c).

**[6] Removal of Cases 334 ☜107(7)**

**334** Removal of Cases
    334VII Remand or Dismissal of Case
       334k107 Proceedings for Remand and Review Thereof
        334k107(7) k. Evidence. Most Cited Cases
District court was required to consider sworn affidavits submitted by defendant drug manufacturer in support of its removal of product liability action, based on manufacturer's claim of fraudulent joinder, where those affidavits were undisputed. 28 U.S.C.A. § 1447.

**[7] Removal of Cases 334 ☜107(7)**

**334** Removal of Cases
    334VII Remand or Dismissal of Case
       334k107 Proceedings for Remand and Review Thereof
        334k107(7) k. Evidence. Most Cited Cases
In a proceeding to resolve a claim of fraudulent joinder, which is asserted as basis for removing action to federal court, the district court must resolve all questions of fact in favor of the plaintiff, but there must be some question of fact before the district court can resolve that fact in the plaintiff's favor; when affidavits submitted by defendants are undisputed by plaintiffs, the court cannot then resolve facts in plaintiff's favor based solely on unsupported allegations in complaint. 28 U.S.C.A. § 1447.

**[8] Fraud 184 ☜30**

**184** Fraud
    184I Deception Constituting Fraud, and Liability Therefor
       184k30 k. Persons Liable. Most Cited Cases
Under Alabama law, those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith.

**[9] Products Liability 313A ☜46.2**

**313A** Products Liability
    313AI Scope in General
       313AI(B) Particular Products, Application to
        313Ak46 Health Care and Medical Products
         313Ak46.2 k. Drugs in General. Most Cited Cases
Under Alabama law, drug manufacturer's sales representative, who never promoted or sold particular drug used by plaintiff, could not be liable to plaintiff for negligent misrepresentation in connection with drug's alleged causation of plaintiff's valvular heart disease.

**[10] Corporations 101 ☜336**

**101** Corporations
    101X Officers and Agents
       101X(D) Liability for Corporate Debts and Acts
        101k336 k. Participation in Unauthorized or Wrongful Acts of Corporation. Most Cited Cases
To hold an employee of a corporation personally liable for the negligent acts of the corporation, under Alabama law, there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is, he must be a participant in the wrongful act.

**[11] Removal of Cases 334 ☜36**

**334** Removal of Cases
    334III Citizenship or Alienage of Parties
       334k36 k. Improper or Collusive Joinder of Parties. Most Cited Cases
To negate a claim of fraudulent joinder, and support remand of action to state court, the potential for legal liability on part of the allegedly fraudulently joined defendant must be reasonable, not merely theoretical, and, in considering possible state law claims, "possible" must mean more than "such a possibility that a designated residence can be hit by a meteor tonight;" reason and common sense have some role. 28 U.S.C.A. § 1447.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

Page 3

*1318 Stephen Mann Brooks, Nelson, Mullins, Riley & Scarborough, L.L.P., Atlanta, GA, Robert D. Rosenbaum, Arnold & Porter, LLP, Washington, DC, for Defendants-Appellants.
*1319 Joseph A. Zarzaur, Jr., J. Phillip Warren, McKenzie, Taylor & Zarzaur, P.A., Pensacola, FL, for Plaintiff-Appellees.

Appeal from the United States District Court for the Northern District of Alabama.

Before EDMONDSON, Chief Judge, and BIRCH and COX, Circuit Judges.

COX, Circuit Judge:
Plaintiffs, Dorothy and Carl Legg (the "Leggs"), filed a seven-count complaint in an Alabama state court against several defendants, including some Wyeth entities, Indevus Pharmaceuticals, Inc., and three Wyeth sales representatives. Wyeth removed this case to federal court, contending that the Plaintiffs fraudulently joined three of Wyeth's sales representatives as defendants in an effort to defeat federal diversity jurisdiction. On the Plaintiffs' motion, the court remanded the case, and ordered that Wyeth pay the Plaintiffs' attorneys' fees and costs under 28 U.S.C. § 1447(c) as Wyeth's removal had been "improper." (R.2-24 at 2.) Wyeth appeals the district court's order awarding attorneys' fees and costs to the Plaintiffs. We reverse.

## I. BACKGROUND & PROCEDURAL HISTORY

Carl and Dorothy Legg, citizens of Alabama, brought this action in the Circuit Court of Madison County, Alabama against Wyeth, a citizen of Delaware and New Jersey, Indevus Pharmaceuticals, Inc., a citizen of Delaware and Massachusetts, and three Wyeth sales representatives: Stacy Stubblefield, Michael Sullivan, and Betsy Weaver. Sullivan is alleged to be a citizen of Georgia; Stubblefield and Weaver are alleged to be citizens of Alabama. Carl Legg contends he took Wyeth's anti-obesity drug Redux and, as a result, developed valvular heart disease. Dorothy Legg claims loss of consortium.

Wyeth removed the matter to the United States District Court for the Northern District of Alabama. Wyeth alleged that federal jurisdiction was proper under 28 U.S.C. § 1332 (diversity jurisdiction), and that the Leggs fraudulently joined three sales representatives to destroy diversity. Wyeth attached affidavits of the sales representatives in support of its contention that the sales representatives were fraudulently joined. Wyeth then moved to transfer the case to the United States District Court for the Eastern District of Pennsylvania for consolidation with similar cases pending before the Multi-District Litigation Panel. Before reviewing that motion, the district court granted the Leggs's motion to remand, concluding that diversity did not exist. The court found that the sales representatives were not fraudulently joined because there was a "possibility" that the Leggs could prevail in their claims against them. The court reached this conclusion on the face of the complaint, concluding that it could not consider the affidavits provided by Wyeth. The court also concluded that the Leggs stated a possible cause of action for innocent or negligent misrepresentation against Betsy Weaver, even if her affidavit was taken as true. In a separate order, the district court granted the Leggs attorneys' fees and costs in the amount of $1,982.49. Wyeth appeals the grant of attorneys' fees and costs.

## II. STANDARD OF REVIEW

[1] [2] [3] We may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs under 28 U.S.C. § 1447(c). Fowler v. Safeco Ins. Co. of Am., 915 F.2d 616, 617 (11th Cir.1990). While 28 U.S.C. § 1447(d) bars our *1320 review of a remand such as this one based on lack of subject matter jurisdiction, the statute does not "exclude the district court's assessment of costs from appellate review." Id. at 617. As the Fifth Circuit has explained, "[w]hile we may not review the decision to remand itself, we must, as part of our examination of the award of fees, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case." Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir.2004). We review the district court's award of attorneys' fees and costs for an abuse of discretion. Fowler, 915 F.2d at 617. An error of law is an abuse of discretion. Wexler v. Lepore, 385 F.3d 1336, 1338 (11th Cir.2004). Therefore, an award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion.

## III. CONTENTIONS OF THE PARTIES

Wyeth contends on appeal that the district court erred in concluding that Wyeth's removal was improper, and therefore that no fees or costs should have been awarded the Leggs. Wyeth argues that the district

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

Page 4

court erred in refusing to consider unrebutted evidence submitted by it in support of removal. Wyeth also argues that the district court erred in concluding that the Leggs stated possible claims against Betsy Weaver based on innocent or negligent misrepresentation, even if her affidavit was taken as true. The Leggs defend the decision of the district court, and assert that the decision to award fees and costs was not an abuse of discretion, even if we would have decided the matter differently.

### IV. DISCUSSION

[4] This lawsuit by the Leggs is but one of thousands of cases brought by plaintiffs across the country who claim they suffer from valvular heart disease because they took one of Wyeth's diet drugs. [FN1] A common strategy employed by the plaintiffs in these cases is to name local parties, often Wyeth's local sales representatives, as defendants, thus defeating Wyeth's right to remove a case to federal court. [FN2] The Multidistrict Litigation Court, which has overseen a large part of this litigation, concluded that this joinder can "only be characterized as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp., 220 F.Supp.2d 414, 425 (E.D.Pa.2002).* Indeed, there are dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal***1321** diversity jurisdiction. [FN3] Wyeth contends that this is such a case.

FN1. These lawsuits were consolidated by the Judicial Panel on Multidistrict Litigation in the United States District Court of the Eastern District of Pennsylvania. A Nationwide Class Action Settlement Agreement was then executed by Wyeth and the diet drug plaintiffs. *See In re Diet Drugs,* Nos. 1203, 99-20593, 2000 WL 1222042, at *5 (E.D.Pa. Aug. 28, 2000). The Settlement Agreement permits Class Members who meet certain eligibility criteria to opt out and assert a claim against Wyeth in the tort system. The Leggs opted out of the Settlement Agreement. Wyeth estimates that approximately 50,000 plaintiffs have opted out and filed suit. Appellant Br. at 5.

FN2. Federal diversity jurisdiction under 28 U.S.C. § 1332 requires "complete diversity"-the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1564 (11th Cir.1994).*

FN3. For examples from this circuit, see *Clay v. Wyeth,* No. 5:04-cv-192-OC-10GRJ at 14 (M.D.Fla. Aug. 17, 2004) (magistrate judge's report and recommendation noting that the plaintiff "has offered nothing-whether sworn or unsworn" to rebut the sworn statements made by the sales representative and concluding that Wyeth's removal of the case was proper); *Sobowski v. Wyeth,* No. 5:04-cv-96-Oc-10GRJ at 3-4 (M.D.Fla. June 24, 2004) (considering defendants' affidavits and finding that the evidence "does not give rise to a reasonable inference that the sales representatives knew or should have known of the drug's harmful effects" and that the representatives were "joined only to prevent removal"); *Davis v. Wyeth,* No. 4:03-cv-128 (CDL) at 13 (M.D.Ga. June 10, 2004) (concluding that plaintiff's evidence did not refute the defendants' "sworn affidavit statements that they had no knowledge that the diet drugs were linked to valvular heart disease," and finding that the joinder of the non-diverse defendants was fraudulent); *Fowler v. Wyeth,* No. 3:04-cv-83/MCR at 8-9 (N.D.Fla. May 14, 2004) (concluding that based on defendants' declarations that they did not sell the diet drug, plaintiffs could not maintain any of their asserted causes of action; also noting that once "Wyeth presented the declarations to the Court, Plaintiffs could not continue to rely upon their unsupported allegations in the complaint"); *Lewis v. Wyeth,* No. 3:04-cv-81/MCR at 8 (N.D.Fla. Apr. 29, 2004) (similarly concluding that the sales representative's "uncontroverted declaration is sufficient to demonstrate that he was fraudulently joined in this lawsuit"); *Petty v. Wyeth,* No. 3:04-cv-82/MCR at 8-9 (N.D.Fla. Apr. 28, 2004) (finding that the "uncontroverted declarations of [the sales representatives] are sufficient to demonstrate that they were fraudulently joined in this lawsuit").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317                                                    Page 5
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

The Leggs named three local sales representatives as defendants in this case. Michael Sullivan, the first sales representative named as a defendant in this suit, submitted an affidavit to the district court stating that he is "a citizen and resident of the State of Georgia." (R.1-1 at Ex. B.) If that is true, Sullivan's presence would not defeat diversity jurisdiction. The second sales representative, Stacy Stubblefield, claims he never sold Redux. In his affidavit, Stubblefield swore that he "never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted Pondimin or Redux, or trained [ ] anyone to do so." (R.1-1 at Ex. B.) Finally, the third sales representative, Betsy Weaver, admitted that she "promoted Redux to licensed healthcare providers and answered their questions about the drug based on information provided to me by Wyeth." (*Id*) However, Weaver asserts that she had no knowledge of Redux's alleged association with valvular heart disease until the allegation was first publicized:

My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. Wyeth provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and had no control over content or other written warnings.

I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

I was not aware of any alleged association between Pondimin and/or Redux and valvular heart disease until the time such an allegation was first publicized. I was not aware before that time of any published study, report or other literature which claimed that an association exists between Pondimin and/or Redux and valvular heart disease.

**\*1322** (*Id*) Wyeth attached these three affidavits as exhibits to its notice to remove this case to federal court. In the notice of removal, Wyeth alleged that the action could have originally been filed in federal court because complete diversity of citizenship exists between the properly joined parties, and that the three sales representatives were fraudulently joined.

In response to the sales representatives' affidavits, the Plaintiffs did not dispute Sullivan's sworn statement

that he was a citizen of Georgia, nor did they respond to Stacey Stubblefield's sworn statement that he never promoted or sold Redux. In an effort to rebut Weaver's sworn statement that she did not know of Redux's alleged connection with valvular heart disease, the Plaintiffs pointed out to the district court that all of Wyeth's sales representatives had to participate in a Sales Training Program. The Plaintiffs submitted to the court a copy of Wyeth's Sales Training Program. (R.2-14 Ex. B.) But the document does not contain any warning to the sales representatives that Redux may cause valvular heart disease. Nor does the corresponding package insert, provided as a part of the Sales Training Program, provide any warning to the sales representatives that Redux may cause valvular heart disease. Thus, the material the Plaintiffs submitted to the court in fact reinforces Weaver's sworn statement that she was never told by the company that Redux may cause valvular heart disease and did not learn of the risk until it first became publicly known. [FN4]

> FN4. Not only did the Plaintiffs fail to dispute Weaver's sworn statement that she did not know that Redux may cause valvular heart disease, the Plaintiffs also failed to show that Weaver had ever promoted or sold the drug to Carl Legg's prescribing physician. Legg's prescribing physician was not identified in the complaint. (R.1-1 Ex. A.) The Plaintiffs did submit affidavits from four other physicians, but none of these doctors were Legg's prescribing physician, nor did they have any connection to this case. (R.2-14 Ex. A.)

The district court refused to consider the affidavits by the sales representatives. Instead, the court concluded that the Plaintiffs stated a possible cause of action for fraud against both Stubblefield (who said he never sold the drug) and Weaver (who sold it, she said, not knowing it could be dangerous). The court reasoned that the questions of whether the individual defendants "actually sold or promoted Redux, and whether the individual defendants actually conveyed incorrect or misleading information to [P]laintiff Carl Legg's healthcare providers, both go to the merits of plaintiffs' claims." (R.2-19 at 10.) In reaching its conclusion that the Plaintiffs stated a possible cause of action against the sales representatives, the district court relied solely on various allegations in the Plaintiffs' complaint. (R.2-19 at 9-11.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

Page 6

[5] We conclude that Wyeth's efforts to remove this case to federal court were objectively valid and reasonable. "Costs are assessed in a case of 'improvident removal.' " *Fowler*, 915 F.2d. at 618. This is not a case of improvident removal. Wyeth presented the court with affidavits from its sales representatives to establish that they were fraudulently joined. The district court erred in refusing to consider these affidavits.

[6] [7] We have explained before that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998) (emphasis added). The proceeding appropriate "for resolving a claim of fraudulent joinder is similar to *1323 that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n. 9 (5th Cir. Unit A 1981)). In such a proceeding, the district court must "resolve all questions of fact ... in favor of the plaintiff." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989). But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor. In this case, for example, the Plaintiffs did not dispute Stubblefield's sworn statement that he never promoted or sold the drug Redux. With no response from the Plaintiffs, there was no question of fact for the court to resolve. The same goes for Weaver, who asserted that she did not know Redux may cause valvular heart disease. The Plaintiffs offered no evidence to dispute this sworn statement. When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint. As the Fifth Circuit has explained:

While such a procedure requires that all *disputed* questions of fact be resolved in favor of the nonremoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion:

[W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the*

*nonmoving party could or would prove the necessary facts.*

*Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir.2000) (emphasis in original) (internal citations omitted).

In ignoring the Defendants' affidavits in this case, the district court relied on our holding in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir.1997). *Crowe*, however, did not preclude relying on affidavits in resolving a question of fraudulent joinder. In fact, in *Crowe*, as in our other cases addressing fraudulent joinder, we found it entirely proper for the district court to consider affidavits submitted by the defendants. *See id.* at 1538 (In considering a removal alleging fraudulent joinder, "the court may consider affidavits and deposition transcripts submitted by the parties."). The defendants' affidavits in *Crowe* were properly before the district court, and "we [took] them into account in deciding the limited question of whether a possibility exists that Plaintiffs have stated a ... cause of action against Coleman." *Id.* at 1541. The district court erred in *Crowe* because it resolved the case in the defendants' favor when there were sworn statements submitted by *both* the defendants and the plaintiffs. In the case at bar, the Defendants submitted sworn affidavits that were undisputed and, in such a case, a court cannot resolve the question of fraudulent joinder by refusing to consider the defendants' submissions. But that is clearly what the district court did. In doing so, the district court committed a legal error, and a legal error is an abuse of discretion. *See Wexler*, 385 F.3d at 1338.

[8] The district court articulated another reason for ignoring Weaver's affidavit and remanding the case to state court. The district court reasoned that even if Weaver had no pre-publicity knowledge that Redux may cause valvular heart disease, she might still be liable in Alabama courts for innocent or negligent misrepresentation. But on this record, this conclusion*1324 has no support in Alabama law. In *Fisher v. Comer Plantation, Inc.*, 772 So.2d 455 (Ala.2000), the Alabama Supreme Court held that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." *Id.* at 463. Assuming that Weaver innocently passed on incorrect information about Redux to Carl Legg's physician, under *Fisher* she could not be liable for innocent misrepresentation. *See also Montgomery Rubber & Gasket Co. v. Belmont Mach. Co.*, 308 F.Supp.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

Page 7

1293, 1298 (M.D.Ala.2004) ("At most, [plaintiff] alleges that [defendant agent] was an innocent conduit through which [defendant seller] defrauded [plaintiff]. As [the defendant agent] correctly notes, forwarded information that is incorrect cannot form the basis of liability unless the information was relayed in bad faith.") (citing *Fisher,* 772 So.2d at 463).

[9] The Plaintiffs, in their complaint, allege that "[e]ach of the [d]efendants negligently and recklessly represented ... that Redux was safe to ingest and that the utility of Redux outweighed any risk in use for the intended purpose of weight loss or control." (R.1-1 Ex. A. at ¶ 83.) Astonishingly, the Plaintiffs make this allegation against *all* the individual Defendants, including Stacy Stubblefield, who swore under oath that he never promoted or sold Redux. This sworn statement was never disputed by the Plaintiffs. With no evidence that Stubblefield had anything to do with Redux, there is no reasonable possibility that Plaintiffs can establish a cause of action against him for negligent misrepresentation under Alabama law.

[10] Nor is there any reasonable possibility, based on this record, that Plaintiffs can establish a cause of action for negligent misrepresentation against Betsy Weaver. The Alabama Supreme Court has adopted the Restatement (Second) of Torts § 552 (1997) as the law of Alabama in cases involving negligent misrepresentation. *Fisher,* 772 So.2d at 461 (citing *Boykin v. Arthur Andersen & Co.,* 639 So.2d 504, 509-10 (Ala.1994)). In applying the elements of the claim from the Restatement, Alabama's Supreme Court instructs that liability for negligent misrepresentation is "predicated upon the existence of a duty." *Fisher,* 772 So.2d at 463 (citing *Colonial Bank of Alabama v. Ridley & Schweigert,* 551 So.2d 390, 395 (Ala.1989)). To hold an employee of a corporation personally liable for the negligent acts of the corporation, "there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." *Crigler v. Salac,* 438 So.2d 1375, 1380 (Ala.1983) (quoting *Fletcher's Cyclopedia of Corporations § 1137 at 208 (1975));* see also *Turner v. Hayes,* 719 So.2d 1184, 1188 (Ala.Civ.App.1997) ("[C]orporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.").

[11] Plaintiffs have not presented any evidence that Weaver knew of any valvular heart disease risk, nor

have Plaintiffs presented any evidence to support the allegation that Weaver should have known of this risk. Without this evidence, there is no reasonable possibility that an Alabama court would conclude that Weaver personally breached a duty to the Plaintiffs. If Wyeth knew or should have known of Redux's harmful effects and did not tell Weaver, that might be a basis for a claim against Wyeth, but it would not support the conclusion that Weaver herself "personally participated in the tort" or breached a duty to the Plaintiffs. See *Turner,* 719 So.2d at 1188. Quite simply, there is no reasonable basis to predict that an Alabama court would find Weaver, as an individual employee, personally liable for any *1325 wrongful action by Wyeth in the absence of evidence that Weaver either knew or should have known of Redux's allegedly dangerous effects. [FN5]

> FN5. The potential for legal liability "must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002). In considering *possible* state law claims, possible must mean "more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Braden v. Wyeth,* CV-04-PT-235-E (N.D. Ala. June 30, 2004). Without any evidence that Weaver knew or should have known Redux was dangerous, it is hard to conclude, applying reason and common sense, that the Plaintiffs have a viable claim against her under Alabama law.

The removal process was created by Congress to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.,* 955 F.2d 924, 928 (4th Cir.1992) (quoting *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.,* 713 F.Supp. 185, 189 (W.D.N.C.1989)). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Wecker v. Nat'l Enameling & Stamping Co.,* 204 U.S. 176, 186, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907). Given that the record supports Wyeth's allegation that these sales representatives were fraudulently joined by the Plaintiffs, there was nothing "improvident" or unreasonable in Wyeth's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
**(Cite as: 428 F.3d 1317)**

effort to remove this case to federal court.   *See* *Fowler, 915 F.2d. at 616.*   Thus, the district court abused its discretion in awarding attorneys' fees and costs to the Plaintiffs.

## V. CONCLUSION

The judgment of the district court awarding the Leggs attorneys' fees and costs is REVERSED.

C.A.11 (Ala.),2005.
Legg v. Wyeth
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054

Briefs and Other Related Documents (Back to top)

• 04-13489 (Docket) (Jul. 15, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FILED

2006 Mar-03 AM 09:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MARTHA H. FAIRCLOTH,     }
                      }

    Plaintiff,          }
                      }

v.                    }     **Case No.: 2:06-CV-184-RDP**
                      }

MERCK & COMPANY, INC.,    }
                      }

    Defendant.        }

## MEMORANDUM OPINION

The court has before it Plaintiff's Motion for Reconsideration Regarding Order on Motion to Stay (Doc. # 6) and Motion for Discovery (Doc. # 7), filed February 17, 2006. The court held a telephone conference in this case on March 2, 2006. For the reasons outlined below, the court finds that Plaintiff's motions are due to be denied.

Plaintiff's motions request that this court reverse its prior decision to stay this case pending MDL transfer (Doc. # 4), and permit Plaintiff to conduct discovery to identify the name of the representative who marketed and promoted Vioxx® to her prescribing physician so that she can amend her complaint to add that person to this case. (Doc. # 7, at 1-2). Plaintiff predicts that the representative will be an in-state defendant who "would destroy diversity and render this matter subject to remand to the Circuit Court of Jefferson County, Alabama." (Doc. # 7, at 2).[1]

---

[1] Defendant points out that prior to filing her lawsuit, Plaintiff undoubtedly had access to her prescribing physician and could have conducted a "pre-suit investigation" into which Merck sales representatives, if any, called on her doctor. (Doc. # 9, at 3). Instead, Plaintiff waited until two years after the alleged injury – up until the end of the statute of limitations period – to seek this discovery for the explicit reason of trying to destroy diversity jurisdiction.



EXHIBIT
F

Defendant maintains that the Vioxx® MDL court already has established procedures to make the information sought in Plaintiff's proposed discovery available to Plaintiff after transfer to the MDL court, and that Plaintiff has provided no good cause as to why her case should be treated differently from those already pending before the MDL. (Doc. # 9). The court agrees.

It is well-established that one of the main purposes of the MDL proceeding is to eliminate duplicative discovery and to enable the MDL court to coordinate discovery efforts for both common and non-common issues. *See, e.g., In re Vioxx Products Liab. Litig.*, 360 F.Supp. 2d 1352, 1354 (J.P.M.L. 2005) ("Transfer Order"). Absent a stay, courts risk not only duplicating the MDL court's effort to coordinate discovery in Vioxx® cases but also issuing discovery rulings inconsistent with those entered by the MDL judge. For these very reasons, this court stayed this case pending transfer to the MDL. (Doc. # 4).[2] Nothing will prevent Plaintiff from seeking the requested discovery in the MDL. In fact, the MDL has already issued discovery

---

[2] Defendant points out that federal courts across the country have stayed more than 2,000 Vioxx® cases, including 250 with pending remand motions. (Doc. # 9, at 4). In response, Plaintiff notes that in several diet drug cases pending before the undersigned last year which were awaiting transfer to MDL, this court opted to rule on pending motions to remand, finding that the joinder of in-state sales representatives was not fraudulent and remanding those cases to state court. (Doc. # 7, at 9-10). Nonetheless, the action taken by this court last year in the diet drug litigation cases is simply not appropriate in this case given the Eleventh Circuit's recent opinion in *Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005), which was issued after the court remanded the diet drug litigation cases and which now suggests that under Alabama law, in-state representatives *are* fraudulently joined if they are merely "'conduits'" who did not act in bad faith. *Legg*, 428 F.3d at 1324-25 (*quoting Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 463 (Ala. 2000)). In *Legg*, the Eleventh Circuit applied Alabama law in the context of claims based on prescription medications and found "no reasonable possibility" that the named sales representatives could be liable to plaintiffs. *Legg*, 428 F.3d at 1324-25. While an individual Merck sales representative's actions "might be a basis for a claim against [Merck].. . it would not support the conclusion that [the representative] 'personally participated in the tort' or breached a duty to the Plaintiff[]." *Legg*, 428 F.3d at 1324. Post-*Legg*, it is clear that before the issue of fraudulent joinder can be decided, at least some discovery must be conducted to illuminate the depth of a representative's participation in the plaintiff's allegations. As the court has opined above, these are matters best left to the MDL court.

2

orders related to sales representatives and other discovery that plaintiffs have routinely sought from Merck.[3]

The court notes that Defendant has stated its concern that Plaintiff's stated purpose for conducting discovery is to defeat diversity jurisdiction. (Doc. # 7, at 2). Many district courts, including this one, have held that joinder of a non-diverse defendant under 28 U.S.C. § 1447(e) should be denied when the plaintiff's motivation for adding the new defendant is to seek remand. *See, e.g., Smith v. White Consolidated Indus., Inc.*, 229 F. Supp .2d 1275, 1280-81 (N.D. Ala. 2002) (considering "the extent to which the purpose of plaintiff's amendment is to defeat the jurisdiction of the court" in denying amendment); *Sexton v. G&K Servs., Inc.*, 51 F. Supp. 2d 1311, 1314 (M.D. Ala. 1999) (same). Moreover, the Eleventh Circuit's opinion in *Legg* also spoke against the tactic of joining individual sales representatives in pharmaceutical products liability cases in an effort to defeat a federal court's jurisdiction. *Legg*, 428 F.3d at 1324-25

For all of these reasons, this court finds that the MDL court is better equipped to consider Plaintiff's requests and therefore is not inclined to lift the previously entered stay in order to permit discovery or amendments. Accordingly, Plaintiff's motions are due to be denied.

**DONE** and **ORDERED** this _____2nd_____ day of March, 2006.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's concern that she will have difficulty receiving this information in the MDL is unfounded. Judge Fallon has instituted a procedure by which plaintiffs in the MDL will receive the identity of any sales representatives who called on plaintiff's prescribing physicians. (Doc. # 9, Ex. D (Pre-Trial Order No. 21 at ¶¶ 3-4 )). It appears that the Plaintiff's Steering Committee is obligated to make the materials available to all plaintiff's counsel. (Doc. # 9, Ex. E (PTO No. 6 at p. 3 )). But, in any event, Merck conceded in the telephone conference that it will be obligated to provide the information to Plaintiff's counsel pursuant to PTO No. 18(b).

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW J. KEHOE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 3:06-cv-425-MEF |
| | ) | |
| MERCK & COMPANY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>O R D E R</u>

This cause is before the court on the Motion by Defendant Merck & Co., Inc. to Stay

All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation

(Doc. # 6) filed by the defendant on May 10, 2006.  The court has carefully considered all

submissions in support of and in opposition to this motion and found that the motion is due

to be GRANTED. Accordingly, it is hereby

ORDERED that the motion is GRANTED.

It is further ORDERED that the above-styled action is STAYED pending a decision

from the Panel on Multidistrict Litigation as to the propriety of a transfer.

DONE this the 20th day of June, 2006.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES WAINE BAIRD and BEVERLY L. BAIRD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:05-cv-493-F |
| MERCK & COMPANY, INC., | ) ) | |
| Defendant. | ) ) | |

## ORDER

This cause is before the Court on Defendant Merck & Company's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (Doc. #6), filed June 15, 2005. The Plaintiffs were given the opportunity to show cause why this case should not be stayed and did not respond. Therefore, in light of the arguments in support of the Motion and because there is no opposition, it is hereby

ORDERED that the Motion to Stay All Proceedings is GRANTED and this case is STAYED pending a final decision from the Panel on Multi-District Litigation on transfer of this case to the multi-district litigation proceeding.

DONE this 30th day of June, 2005.

_____ /s/ Mark E. Fuller _____
CHIEF UNITED STATES DISTRICT JUDGE

Case 1:06-cv-00849-MHT-DRB    Document 23-8    Filed 10/10/2006    Page 3 of 14

Case 2:05-cv-00880-SRW    Document 7    Filed 09/22/2005    Page 1 of 1
Case 2:05-cv-00880-SRW    Document 6-1    Filed 09/15/2005    Page 1 of 12

RECEIVED

2005 SEP 15 P 4:16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

T. RAWDON BEATY,                          )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )        **Case No.: 2:05cv880-W**
                                          )
MERCK & CO., INC., a foreign              )
Corporation, et al.,                      )
                                          )        **Removed from the Circuit**
        Defendants.                       )        **Court of Barbour County,**
                                          )        **Alabama**
                                          )

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending its likely transfer to *In re VIOXX Prods. Liab. Litig.* MDL No. 1657, the Multidistrict Litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (hereinafter the "VIOXX® product liability cases") (*See* February 16, 2005 Transfer Order attached hereto as Exhibit A).

Merck promptly intends to provide notice to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") pursuant to Rule 7.5 of the Rules of

## MOTION GRANTED

THIS 2nd DAY OF September, 20 05

_____
**UNITED STATES MAGISTRATE JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE F. DONALSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:05-cv-216-F |
| | ) | |
| MERCK & CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

# **O R D E R**

Upon consideration of the Joint Motion to Stay All Proceedings Pending Transfer

(Doc. #7) filed on March 30, 2005, it is hereby

ORDERED that the motion is GRANTED.

DONE this 31st day of March, 2005.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LINDA FLOURNOY, an individual,  )
                                )
            Plaintiff,          )
                                )
v.                              )        CIVIL ACTION NO.  3:05CV560-M
                                )
                                )
MERCK & CO., INC., a Foreign    )
Corporation,                    )
                                )
            Defendant.          )

## ORDER ON MOTION

On 15 June 2005, the defendant filed a Motion To Stay All Proceedings Pending

Transfer Decision (Doc. # 13-4).  For good cause, it is

ORDERED that the motion is GRANTED.

DONE this 23rd day of June, 2005.


                        /s/ Vanzetta Penn McPherson
                        VANZETTA PENN MCPHERSON
                        UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2005 FEB -4 P 3: 59

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| SAMMY GILBREATH, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | Case No. 2 '05CV103-W |
| | § | |
| MERCK & CO., INC., *et al,* | § | |
| | § | |
| **Defendants.** | § | |

**MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS
PENDING TRANSFER DECISION BY THE JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending resolution of Merck's motion before the Judicial Panel on Multidistrict Litigation (the "Panel") for transfer of this case, and numerous other cases with certain overlapping factual issues and similar legal theories, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407 (the "MDL motion").

In addition to Merck's MDL motion, more than two dozen different plaintiffs' counsel have filed papers seeking MDL coordination of their cases. All of those motions/requests were heard by the MDL Panel on January 27, 2005, at its meeting in Fort Myers, Florida. In addition to the 158 VIOXX® cases identified by the MDL Panel in its Hearing Session Order entered on December 14, 2004, Merck has notified the MDL Panel of approximately 195 additional VIOXX® cases pending in district courts throughout the United States.

Although the MDL Panel has not yet issued its ruling with respect to the *In re: VIOXX® Products Liability Litigation* (11 other cases were also set for oral argument on January 27, 2005), the MDL Panel typically issues its ruling within a reasonable time after oral argument,

# MOTION GRANTED

THIS ___4th___ DAY OF ___February___, 20 ___05___

_____
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


EMBRY WAYNE HESTER, etc.,    )
                             )
      Plaintiff,             )
                             )        CIVIL ACTION NO.
      v.                     )        2:06cv242-MHT
                             )
MERCK & CO., INC., a         )
New Jersey Corporation,      )
et al.,                      )
                             )
      Defendants.            )

ORDER

It is ORDERED as follows:

(1)  The motion to stay (doc. no. 10) is granted.

(2)  All proceedings in this case are stayed pending

      MDL transfer.

DONE, this the 24th day of April, 2006.


                  /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| YOLANDA KING, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   CIVIL ACTION NO. |
|     v. | )     2:05cv165-T |
| | )       (WO) |
| MERCK & COMPANY, INC., a | ) |
| foreign corporation, | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

ORDER

It is ORDERED that Merck & Co, Inc.'s motion to stay
(Doc. No. 8) is granted and that this cause is stayed
pending a decision by the MDL panel as to whether this case
should be transferred to an MDL court.

DONE, this the 26th day of April, 2005.


                 /s/ Myron H. Thompson
            UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL ROUNTREE,                    )
                                     )
             Plaintiffs,             )
                                     )
v.                                   )        CIVIL ACTION NO.  2:05CV185-F
                                     )
MERCK & CO., INC., et al.,           )
                                     )
             Defendants.             )

**ORDER**

For good cause, it is

ORDERED that the Motion To Stay All Proceedings Pending Transfer Decision, filed

on    March 2005 (Doc. # ), is GRANTED.  It is therefore further

ORDERED that proceedings in this case shall be stayed pending transfer to the

proceeding established in the United States District Court for the Eastern District of

Louisiana for multi-district litigation of this dispute.

DONE this 29th day of March, 2005.


                              /s/ Vanzetta Penn McPherson
                              VANZETTA PENN MCPHERSON
                              UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| FAYE SOUTHERLAND, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:05cv-039-A |
| | ) | |
| MERCK AND COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Upon consideration of the Joint Stipulation of the Parties (Doc. #11), filed on February

16, 2005, it is hereby

ORDERED that the Defendant's Motion to Stay (Doc. #5) is GRANTED, and this case is

STAYED pending resolution of the Defendant's Motion for Transfer pending before the MDL

Panel.

DONE this 17th day of February, 2005.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**RECEIVED**

2005 FEB 11  P 4: 02

DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ERNESTINE T. STEVENS,      )
                          )
    Plaintiff,             )      CASE NO  2
                          )
v                         )
                          )
MERCK & CO., INC , et al, )
                          )
    Defendant             )
                          )

## MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Defendant Merck & Co , Inc ("Merck") moves this Court to stay all proceedings in this action pending resolution of Merck's motion before the Judicial Panel on Multidistrict Litigation (the "Panel") for transfer of this case, and numerous other cases with certain overlapping factual issues and similar legal theories, to a single court for coordinated pretrial management pursuant to 28 U.S.C. § 1407 (the "MDL motion")

In addition to Merck's MDL motion, more than two dozen different plaintiffs' counsel have filed papers seeking MDL coordination of their cases  All of those motions/requests were heard by the MDL Panel on January 27, 2005, at its meeting in Fort Myers, Florida  In addition to the 158 VIOXX® cases identified by the MDL Panel in its Hearing Session Order entered on December 14, 2004, Merck has notified the MDL Panel of approximately 195 additional VIOXX® cases pending in district courts throughout the United States.

Although the MDL Panel has not yet issued its ruling with respect to the *In re: VIOXX® Products Liability Litigation* (11 other cases were also set for oral argument on January 27, 2005), the MDL Panel typically issues its ruling within a reasonable time after oral argument,

# MOTION GRANTED

THIS 16th DAY OF February , 20 05

_____
UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

PAUL TURNER, SR., on his          )
own behalf and behalf of          )
all others similarly              )
situated,                         )
                                  )
        Plaintiff,                )
                                  )          CIVIL ACTION NO.
        v.                        )            1:04cv999-T
                                  )
MERCK & CO., INC.,                )
a corporation,                    )
                                  )
        Defendant.                )

ORDER

It is ORDERED that the consent motion to stay all

proceedings (Doc. No. 7) is granted and this cause is stayed

pending MDL transfer.

DONE, this the 22nd day of November, 2004.


                    /s/ Myron H. Thompson
                UNITED STATES DISTRICT JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HAROLD WALLACE, SR.,            )
                                )
            Plaintiff,          )
                                )
    v.                          )        CIVIL ACTION NO. 3:04cv1199-W
                                )
MERCK & CO., INC.,              )
                                )
            Defendant.          )

## **ORDER**

Upon consideration of defendant's motion to stay filed January 11, 2005 and for good cause, it is

ORDERED that the motion be and hereby is GRANTED.  Counsel for defendant is DIRECTED to notify the court in writing when the motion before the Panel has been resolved.

DONE, this 13th day of January, 2005.


                            /s/ Susan Russ Walker
                            SUSAN RUSS WALKER
                            UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOE B. WILSON,            )
                           )
     Plaintiff,        )
                           )
v.                       )     CASE NO. 2:05-cv-32-F
                           )
MERCK & COMPANY, INC. and ED   )
RICHARDS,         )
                           )
     Defendants.     )

## ORDER

This cause is before the Court on defendant Merck & Company's Motion to Stay All Proceedings Pending Transfer Decision by the Judicial Panel on Multidistrict Litigation (Doc. 5), filed January 12, 2005. The plaintiff was given the opportunity to show cause why this case should not be stayed and did not respond. Therefore, in light of the arguments in support of the motion and because there is no opposition, it is hereby

ORDERED that the Motion to Stay All Proceedings is GRANTED and this case is STAYED pending a final decision from the Panel on Multi-District Litigation on transfer of this case to the multi-district litigation proceeding.

DONE this 9th day of February, 2005.

                         _____/s/ Mark E. Fuller_____
                         CHIEF UNITED STATES DISTRICT JUDGE

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA 04 MAR 26   AM 11: 18
NORTHEASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

CARL LEGG, et al ,

    Plaintiffs,

VS

                             CASE NO :  CV-2004 0264 JLB   S-435-NE

WYETH, f/k/a American Home Products
Corp ; WYETH PHARMACEUTICALS,
f/k/a Wyeth-Ayerst Labs, Inc ; INDEVUS
PHARMACEUTICALS, INC , f/k/a
Interneuron Pharmaceuticals, Inc ; STACY
STUBBLEFIELD; MICHAEL SULLIVAN;
BETSY WEAVER, and FICTITIOUS
DEFENDANTS A, B, C, and D, being those
persons, firms or corporations whose fraud,
scheme to defraud, and/or other wrongful conduct
caused or contributed to the Plaintiffs' injuries
and damages, and whose true names and identities are
presently unknown to the Plaintiff but will
be substituted by amendment when ascertained,

    Defendants

_____ /

## MOTION TO REMAND

    Pursuant to 28 U.S.C. section 1447(c), Plaintiffs hereby move to remand this

action to the Circuit Court of Madison County, Alabama  In support of this motion,

Plaintiffs show the following:





EXHIBIT

H

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CARL LEGG, et al ,

     Plaintiffs,

vs.                      CASE NO :  CV-2004 0264-JLB

WYETH, et al

     Defendants

_____/

## MEMORANDUM BRIEF
## IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### I  FACTUAL BACKGROUND

On February 2, 2004, Plaintiff Carl Legg, an Alabama resident, filed a Complaint in the Circuit Court for Madison County, Alabama  The Complaint contained six substantive counts alleging claims for products liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligence, breach of warranty, fraud, negligent misrepresentation, and civil conspiracy [1]  Plaintiffs' complaint named as defendants Wyeth,

---

[1] Plaintiffs' Complaint also includes a Count for loss of consortium which will not be addressed since it is not relevant to remand

Wyeth Pharmaceutical ("Wyeth Pharm"), Indevus Pharmaceuticals, Inc ("Indevus"), Stacy Subblefield ("Stubblefield"), Michael Sullivan ("Sullivan"), Betsy Weaver ("Weaver"), and Fictitious Parties A, B, C, and D (collectively herewith referred to as "Defendant Agents")[2] Plaintiffs' complaint alleges that Defendants Wyeth, Wyeth Pharm, and Indevus manufactured, distributed, and sold the deadly diet drug Redux  The manufacturer Defendants and Defendant Sullivan are not residents of Alabama.  Defendant Agents are residents of Alabama  Plaintiffs' complaint allege that Defendants Wyeth and Wyeth Pharm employed Defendant Sullivan and Defendant Agents as sales representatives to detail the pharmaceutical known as Redux.  Detailers are sales representatives who visit physicians and persuade them to regularly prescribe a company's drug  Sales representatives use various methods of persuasion to promote a product including gifts and product samples  There are a wide range of gifts used by sales representatives to persuade physicians to prescribe a particular drug  These include, but are not limited to, sports and theatrical performance tickets, dining in expensive restaurants, free gas, free vacations to resorts, food for clinic employees, free computer equipment, Palm Pilots, free golf, cruises, professional honors, textbooks, sports equipment, and cash

Plaintiffs' complaint allege that Defendant Agents marketed Redux to his prescribing physician  Plaintiffs allege that Defendant Agents knew or should have known that Redux

---

[2] Defendants refers collectively to Defendant Wyeth, Defendant Wyeth Pharm, Defendant Indevus, Defendant Stubblefield, Defendant Sullivan, and Defendant Weaver  Defendant Agents refers to Defendants Stubblefieldand Weaver

was not safe or effective as Defendant Agents explained to Plaintiffs prescribing physician

Plaintiffs further allege that Plaintiffs' prescribing physician relied on Defendant Agents

misrepresentations about the safety and effectiveness of Redux and prescribed Plaintiff

Redux which he consumed. As a direct and proximate cause of consuming Redux, Plaintiff

has permanent heart damage

Defendants removed this case to this Court pursuant to 28 U.S.C. section 1441

Defendants allege that Defendants Agents are fraudulently joined. In support of their

removal, Defendants filed affidavits of Defendant Agents. The affidavits of the Defendant

Agents attempt to contradict the allegations contained in Plaintiffs' Complaint. Plaintiffs

move this Court to remand this case because Defendants have failed to meet their heavy

burden of proving by clear and convincing evidence that Defendant Agents are fraudulently

joined. Consequently, no federal jurisdiction exists.

## II  STANDARD OF REVIEW

### A.  Federalism Concerns Require Strict Construction of Removal Statute

Defendants have filed a notice of removal alleging that federal jurisdiction exists

based on diversity of citizenship. Defendants contend that the amount in controversy

exceeds $75,000.00 and the parties are non diverse because Defendant Agents have been

fraudulently joined. A case may be removed from state court and transferred to federal

court in any case which could have been brought originally in federal court. See 28 U.S.C

-3-

section 1441(a); Tapscott v. MS Dealer Serv. Corp., 77 F 3d 1353, 1356 (11th Cir 1996)

Title 28 U S C section 1332(a)(1) provides that federal courts may exercise diversity

jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the

action is between citizens of different states  However, "if at any time before final judgment

it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded." 28 U.S.C section 1447(c)  Since removal jurisdiction raises significant

federalism concerns, the removal statutes must be strictly construed  See Shamrock Oil &

Gas Corp. v. Sheets, 313 U S. 100, 61 S Ct  868, 85 L Ed  1214 (1941); University of

South Alabama v. American Tobacco Co., 168 F 3d 405, 411 (11th Cir. 1999)  All doubts

must be resolved in favor of remand to state court  See University of South Alabama, 168

F 3d 405, 411; Burns v. Windsor Ins. Co., 31 F 3d 1092, 1095 (11th Cir 1994)(citing

Boyer v. Snap-on Tools Corp., 913 F 2d 108 (3rd Cir  1990)); Coker v. Amoco Oil Co.,

709 F 2d 1433 (11th Cir  1983); Ruffin v. Congress Life Insurance Co., 2000 WL 718813

(S.D  Ala )  "The removing party bears the burden of demonstrating federal jurisdiction "

Triggs v. John Crump Toyota, Inc., 154 F 3d 1284, 1287 (11th Cir. 1998); Tapscott, 77

F 3d 1353  In the case at bar, Plaintiffs concede that the amount in controversy in this

action exceeds $75,000  Consequently, the only issue is whether Defendant Agents are

fraudulently joined

> ### B.  Fraudulent Joinder Requires That Defendants Show There Is No Possibility Plaintiffs' Complaint States a Cause of Action Against Defendant Agents

"Fraudulent joinder is a judicially created doctrine that provides an exception to the

-4-

requirement of complete diversity" Triggs, 154 F.3d at 1287  Joinder has been deemed

fraudulent in three situations: (1) when there is not any possibility that the plaintiff can

prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has

fraudulently pled jurisdictional facts in order to bring the resident defendant into state

court; and (3) "where a diverse defendant is joined with a non-diverse defendant as to who

there is no joint, several or alternative liability and where the claim against the diverse

defendant has no real connection to the claim against the non-diverse defendant" Id.

Defendants make no argument that the second or third fraudulent joinder situations apply.

See Notice of Removal  Therefore, Plaintiffs respond only to the allegation that Defendant

Agents are fraudulently joined because there is no possibility Plaintiffs can prove any of the

claims against Defendant Agents

In their Notice of Removal, Defendants improperly state the standard for fraudulent

joinder in this Circuit [3]  The Eleventh Circuit standard for fraudulent joinder requires that,

"if there is even a possibility that a state court would find that the complaint states a cause

of action against any one of the resident defendants, the federal court must find that the

joinder was proper and remand the case to the state court  The Plaintiffs need not have a

winning case against the allegedly fraudulent defendant; he need only have a *possibility* of

stating a valid cause of action in order for the joinder to be legitimate" Triggs, 154 F.3d at

---

[3] Defendants allege in their Notice of Removal that Defendant Agents are fraudulently joined because *Plaintiff cannot prevail on any claims against Defendant Agents.*

1287; Cabalceta v. Standard Fruit Co., 883 F 2d 1553, 1561 (11th Cir 1989) Pacheco de Perez v. AT&T Co., 139 F 3d 1368 (11th Cir 1998)("Where a Plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court "); Ruffin, 2000 WL 718813(quoting Bedford v. Connecticut Mut. Life Ins. Co., 916 F Supp 1211, 1214 (M.D Ala 1996) "The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the Plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of law plainly a sham and frivolous ")  "The burden of establishing fraudulent joinder is a heavy one " Pacheco de Perez, 139 F 3d at 1380  Although Defendants attempt to persuade this Court that the Eleventh Circuit applies a different fraudulent joinder standard, the Eleventh Circuit has affirmed as recently as 2001 that the fraudulent joinder standard requires the "complaint show there is no possibility that the plaintiff can establish any cause of action against the defendant." Tillman v. R.J. Reynolds Tobacco, Inc., 253 F 3d 1302, 1305 (11th Cir 2001)(quoting Triggs, 154 F 3d 1284, 1287). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F 3d 1284, 1287 (emphasis in original)  Plaintiffs respectfully submit that the proper standard for fraudulent joinder is that there is no possibility that a state court would find that Plaintiffs complaint

-6-

states any cause of action against any of the Defendant Agents  Nevertheless, Defendants have failed to meet their heavy burden under either standard

### C. Fraudulent Joinder Proceeding Requires Court Resolve Uncertainties In Favor of Plaintiff and Avoid Substantive Determination of Case.

"The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiffs' pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.  In making its determination, the district court must evaluate factual allegations in the light most favorable to the Plaintiff and resolve any uncertainties about the applicable law in the Plaintiff's favor." Pacheco de Perez, 139 F 3d at 1380; Crowe v. Coleman, 113 F 3d 1536, 1538 (11th Cir. 1997); Cabalceta, 883 F 2d 1553, 1561  The appropriate proceeding for deciding whether a party has been fraudulently joined is similar to that used for ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(b)  Crowe, 113 F.3d at 1538  However, the jurisdictional inquiry "must not subsume substantive determination .  Over and over again, we stress that the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits " Id.

"In a fraudulent joinder inquiry, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law' " Id. quoting Pacheco de Perez, 139 F 3d at 1380-1381 (quoting Crowe, 113 F.3d 1536, 1538 (11th Cir  1997)

-7-

In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them. In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent. Crowe, 113 F.3d at 1541-1542

## III  ARGUMENT

### A.  There is a Possibility That a State Court Would Find that Plaintiff's Complaint States a Cause of Action for Fraud Against Defendant Agents.

Defendants allege that Defendant Agents are fraudulently joined because Plaintiffs cannot prevail on a claim for misrepresentation or suppression. Defendants allege that Plaintiff has not plead fraud with particularity.[4] Defendants also allege that Defendant Agents cannot be held personally liable for any misrepresentation or suppression because

---

[4] Defendants' allegation is an improper basis for alleging fraudulent joinder. As this Court is aware, Alabama Rule of Civil Procedure 12(b) provides the remedy for failure to state a claim upon which relief may be granted. If a state court finds that Plaintiff's fraud count was not sufficient, the state court would likely grant plaintiff leave to amend his Complaint. The issue of fraudulent joinder is whether it is possible that the state court might hold Defendant Agents liable for fraud based on the allegations in Plaintiffs' Complaint. Despite Defendants' misplaced argument, Plaintiff responds to Defendants' allegation of lack of particularity.

they merely promoted and answered questions concerning Redux based on information provided by Defendant Wyeth. Both of Defendants' arguments fail

First, Alabama Rule of Civil Procedure 9(b) provides that "in all averments of fraud the circumstances constituting fraud shall be stated with particularity." The Committee Comments to Rule 9(b) state:

> This special requirement as to fraud **does not require every element** in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complaint of. The pleading must show time, place, and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. But knowledge by the defendant of the falsity of the representation and reliance on the representation by the plaintiff can still be generally alleged. . Thus, it should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint, if the pleadings give fair notice to the opposing party whereas heretofore the same pleading would have been held insufficient. (Emphasis Added)

As demonstrated by the Committee Comments, Rule 9 merely requires that a pleading for fraud show the time, place, and contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained. Bethel v. Thorn, 757 So 2d 1154, 1158 (Ala 1999)(quoting Phillips Colleges of Alabama, Inc. v. Lester, 622 So. 2d 308 (Ala 1993)) Because the purpose of Rule 9(b) is to give the defendant fair notice, courts should endeavor to find the details necessary for fair notice within the allegations of the complaint. See Committee Comments to Ala. R. Civ. P.; Kohler v. Jacobs, 138 F.2d 440 (5th Cir 1943); Pinkston v. Boykin, 130 Ala, 483, 30 So  398 (Ala 1900)

Plaintiffss Complaint sufficiently to provides Defendant Agents fair notice of the allegations against them  Allegations include the time, place, and contents of the false representations made by Defendant Agents.  Paragraphs 40-44 of Plaintiff's complaint are general allegations made applicable to all counts by incorporation  These paragraphs specifically allege:

> 40     Defendant Agents were the primary promoters, marketers, and detailers of Redux
> 41     Defendant Agents distributed amounts of Redux to Plaintiff's prescribing physician in the form of samples.
> 42     Defendant Agents had actual or constructive knowledge of the dangerous condition of Redux and intentionally and deliberately suppressed, concealed, and misrepresented this information
> 43     Defendant Agents were aware of adverse drug reports ("ADR") received from users of Redux but continued to distribute, sell, promote, detail, and profit from the sale of Redux
> 44     Defendant Agents committed the tortious and overt acts alleged herein in an individual and/or corporate capacity

Paragraphs 73-77 of Plaintiff's complaint are contained within Count IV of Plaintiffs complaint alleging fraud, misrepresentation, and suppression  These paragraphs specifically allege that:

> 73     Defendants intentionally, fraudulently, recklessly and/or negligently made material misrepresentations to Plaintiff, Plaintiff's prescribing physician, and others upon whom it was known that Plaintiff would rely that Redux was safe and effective and that the benefits of taking Redux outweighed any risks
> 74     The continuous and ongoing course of action constituting fraud and misrepresentation started as early as 1993, if not earlier, and continued through repeated acts and non-disclosure every year since then, in the State of Alabama and throughout the United States and elsewhere
> 75     Defendant Agents committed this fraud in their individual capacity and/or corporate capacity by failing to provide Plaintiff's prescribing physician all information concerning the safety and effectiveness of Redux when promoting

-10-

Redux to Plaintiff's prescribing physician during sales calls at Plaintiff's prescribing physician's office which took place on June 21, 1996; July 10, 1996; July 29, 1996; July 29, 1996; August 28, 1996; September 27, 1996; November 14, 1996; December 12, 1996; January 8, 1997; January 30, 1997; February 10, 1997; April 2, 1997; April 16, 1997; April 29, 1997; May 14, 1997; June 24, 1997; July 22, 1997; and August 7, 1997

76.    Defendants' fraudulent misrepresentations and/or suppressions took the form of, among other things, express and implied statements, publically disseminated mis-information provided to regulatory agencies, inadequate, incomplete and misleading warnings about Redux, failure to disclose important safety and injury information, regarding Redux while having a duty to disclose to Plaintiff's prescribing physician, Plaintiff, and others such information, and elaborate marketing, promotional, and advertising activities designed to conceal and mislead about the safety of Redux

77    Defendants knew or should have known that these representations about Redux being safe and effective were false and made these representations with the intent or purpose that Plaintiff and/or Plaintiff's prescribing physicians would rely on these representations and result in the Plaintiff using Redux

These allegations describe the time, place, and the contents of the false representations made by Defendant Agents    Paragraph 75 explicitly describes the dates that Defendant Agents made the false representations and the location: Plaintiff's prescribing physician's office    Paragraph 76 describes the contents of the false representations.  These paragraphs demonstrate that Plaintiffs' allegations are neither general nor conclusive    The allegations contained in Plaintiffs' complaint give Defendant Agents fair notice of the fraud and misrepresentations alleged which is the policy reason for requiring more particular allegations when alleging fraud    See Committee Notes of Rule 9(b)    Consequently, Defendants have failed to prove fraudulent joinder on this basis

Defendants also argue that Plaintiffs cannot establish any misrepresentation or suppression claim against Defendant Agents personally because Defendant Agents merely

-11

promoted and answered questions concerning Redux based on information provided by
Defendant Wyeth. In addition to the allegations in Plaintiffs' Complaint which contradict
Defendants' self serving assertions, Plaintiffs submit additional evidence which contradicts
Defendants' allegations. See Exhibit A, Affidavits of Omar Khalaf, M.D.; Mark C. Wiles,
M.D.; John Sabatine, M.D.; and Jon Yoder, M.D. These physicians swore in their
affidavits that drug sales representatives promoted Redux during sales calls. Id. These
physicians also swore drug sales representatives made representations to them about the
safety and effectiveness of Redux. Id. Dr. Yoder, Dr. Sabatine, and Dr. Wiles also swore
that drug sales representatives provided samples of Redux during these sales visits. Id.
Finally, these physicians swore that if they had been provided the true and correct
information regarding the safety and effectiveness of Redux and Pondimin, they would not
have prescribed these pharmaceuticals. Id.

       In addition to their affidavits, there is further evidence to contradict Defendants'
assertions. Defendant Wyeth provided the Redux sales force, including Defendant Agents,
with promotional and educational materials about Redux prior to and after the product
launch to use in detailing doctors. See Exhibit B, Redux Sales Training Program Modules
1-4. The sales representatives had to go through a Redux Sales Training program. Id.
These training modules provided Defendant Agents with information regarding the safety
and effectiveness of Redux, and actually provided them with the strategies to use in selling
Redux to physicians. Id. at 244. Defendant Agents were also given information regarding

adverse events associated with Redux. Id. at p 3 4. While Defendant Agents were provided this information, often Defendant Wyeth would direct Sales Representatives, including Defendant Agents, not to share this adverse information about Redux with anyone outside the company, including Plaintiffs' prescribing physician. See Id. At the time of the Redux launch, new safety information had become available to Defendant Wyeth regarding the risks of pulmonary hypertension ("PH"), primary pulmonary hypertension ("PPH") and the use of diet drugs. Id. Defendant Wyeth shared this information with their sales force including Defendant Agents. Id. Defendant Wyeth, however, directed its sales force to not reveal this new information to those outside the company, threatening that if a Sales Representative did reveal these true risks associated with Redux to anyone, including prescribing physicians, that the sales representative would be considered to have violated his Employee Confidentiality Agreement, and the sales representative could be disciplined or terminated. Id. This demonstrates that Defendant Agents had superior knowledge about the safety and effectiveness of Redux. In light of this evidence, it is likely that with a reasonable opportunity for discovery, Plaintiff will uncover additional evidence.

Alabama law holds an individual employee liable for the fraudulent acts or omissions he personally commits while acting in his capacity as an employee. Bethel at 1158 (citing Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc. and Crigler v. Salac, 438 So. 2d 1375, 1379 80 (Ala 1983). In fact, this Court was recently faced with the identical issues as in the case at bar. See Campbell, et al. v. Wyeth, et al., Case No. : 03-HGD 3364-M

13-

(Mar 11, 2004)  In <u>Campbell</u>, Defendant Wyeth argued that Defendants Stubblefield and Weaver were fraudulently joined  <u>Id.</u>  The <u>Campbell</u> court held that Defendant Wyeth's arguments "go to the merits of plaintiff's claims    the court cannot say that plaintiffs have no possibility of establishing a cause of action against Stubblefield or Weaver "  <u>Id.</u> at 6  Consequently, the <u>Campbell</u> court ordered remand.  This Court also recently explained in detail why a sales representative can be held liable under Alabama law for the allegations contained in Plaintiff's Complaint   See <u>Davis v. Wyeth, et al</u>, Case No : 03-J-3167-J (N D Ala  Feb  25, 2004) (Attached as Exhibit "C")

Defendants' cite <u>Cross v. Wyeth, et al.</u>, Case No : 03-0882-BH M (S  D  Ala  Feb 5, 2004) for the proposition that because the sales representatives in <u>Cross</u> were fraudulently joined, the sales representatives in every case must be fraudulently joined  Defendants argument is a classic example of a logical fallacy  The similarities between the case at bar and the <u>Cross</u> matter are few.  Beyond the fact that <u>Cross</u> is a diet drug case and subject to removal, the cases are quite distinct.  As this Court is aware, a fraudulent joinder claim is fact driven and any comparison to another case mandates an analysis of the facts behind the eventual court order [5]  For example, the <u>Cross</u> Plaintiffs offered **no evidence** to contradict the resident Defendants' affidavit  In fact, the motion to remand in Cross is entirely replete of any factual analysis relating to the fraudulent joinder argument  Here, however, Plaintiffs have provided this Court with persuasive evidence exhibiting a clear theory of liability

---

[5]    Plaintiffs provided a copy of the Notice of Removal and Motion to Remand upon which Judge Hand's order is based for convenience  These pleadings are attached here as Exhibit D

L

against the resident defendants recognized by Alabama law.  This evidence is a non-party's

sworn statement which supports the Plaintiffs allegations and provides a factual framework,

similar to and consistently relied upon in many recent orders to remand handed down by

the Northern and Middle Districts of Alabama  Campbell v. Wyeth, et al., Case No: 03-

HGD-3364-M (N D  Ala  Mar. 11, 2004); Carlisle v. Wyeth, et al., Case No: 04-HGD-

0394-S (N.D  Ala  Mar  11, 2004); Hall v. Wyeth et al., Case No: 04-J-0434-NE (N D

Ala  Mar  9, 2004); McGowan v. Wyeth, Case No: 04-TMP-298 S (N D  Ala  Feb  24,

2004); Johnson v. Wyeth, Case No: 04 TMP 224-S (N.D. Ala  Feb  23, 2004); Marshal v.

Wyeth, Case No: 04-TMP-179-S (N D  Ala  Feb  18, 2004); Helen Boswell, et al. v.

Wyeth, et al., Case No:03 T-1256-N (M D  Ala  Feb  2, 2004); Sara Blair, et al. v. Wyeth

et al., Case No: 03-I 1251-S (M D  Ala  Jan  23, 2004); Smith v. Wyeth, Case No: 04-P-

226-M (N D  Ala  Feb  27, 2004); Rita Brunson v. Wyeth, et al., Case No: T-1167-S

(M D  Ala  Jan  23, 2004); Valerie Ballard, et al. v. Wyeth, et al., Case No: T-1255-N]

(M D  Ala  Jan  23, 2004); Stephanie Terrell, et al. v. Wyeth, et al., Case No: 03 BE-2876-

S (N.D  Ala  Dec  12, 2003); Sharon Crittendon, et al. v. Wyeth, et al., Case No: 03-T-

920 N (M D  Ala  Nov  21, 2003); Sandra Cash v. Wyeth, et al., Case No: 03-RRA 3378-

E (N D  Ala  Feb  3, 2004); Sandra Storey v. Wyeth, et al., Case No: 04-BE-27-E (N D.

Ala  Jan  30, 2004); Pamela Floyd, et al. v. Wyeth, et al., Case No: 03 C-2564 M (N D

Ala  Oct  20, 2003; Bryant v. Wyeth, et al., Case No: 02-632-BH M (S D. Ala. Sept. 24,

2002) attached hereto as Composite Exhibit "E"

ι

As this Court has held when faced with identical issues, it is possible that a state court would find that Plaintiffs' complaint states a cause of action for fraud against Defendant Agents  Plaintiffs' allegations within the Complaint contain the time, place, and contents or substance of the facts misrepresented  Defendants' arguments about Plaintiff's ability to factually establish a claim are misplaced  The evidence submitted by Plaintiff contradicts the self serving affidavits of the Defendant Agents  Since all issues of fact and law should be decided in the light most favorable to Plaintiff, this factual dispute should be resolved in favor of Plaintiff  Defendants have failed to carry the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiffs' Complaint states a claim against Defendant Agents  Consequently, there is no federal jurisdiction and Plaintiffs' Motion to Remand should be granted

### B. There is a possibility that A State Court Would Find That Plaintiff's Complaint States a Cause of Action Under The AEMLD and For Breach of Warranty Against Defendant Agents

Defendants allege that Defendant Agents cannot be held liable under the AEMLD because they did not manufacture, sell, or supply Redux  Plaintiffs' allegations in the Complaint, Affidavits attached to this memorandum, and Alabama law establish that it is possible that a state court would find that Plaintiffs' Complaint states a claim under the AEMLD against Defendant Agents  The Alabama Supreme Court first announced the judicially created AEMLD in Atkins v. American Motors Corp., 335 So. 2d 134 (Ala 1976)

-16-

ι.

> To establish a claim under the AEMLD a plaintiff must prove: (1) he suffered
> injury of damages to himself or his property by one who sells a product in a
> defective condition unreasonably dangerous to the plaintiff as the ultimate
> user or consumer, if (a) the seller is engaged in the business of selling such a
> product, and (b) it is expected to and does reach the user or consumer
> without substantial change in the condition in which it is sold   (2) Showing
> these elements, the plaintiff has proved a prima facie case although (a) the
> seller has exercised all possible care in the preparation and sale of his product,
> and (b) the user or consumer has not bought the product from, or entered
> into any contractual relation with, the seller   Atkins, 335 So  2d  at 141.

Recently the Alabama Supreme Court affirmed that "to establish liability under the

AEMLD, a plaintiff must show (1) that an injury was caused by one who sold a product in

a defective condition that made the product unreasonably dangerous to the ultimate user or

consumer; (2) that the seller was engaged in the business of selling such a product; and (3)

that the product was expected to and did, reach the user without substantial change in the

condition in which it was sold "  Tillman, 2003 WL 21489707  Defendants do not argue

whether Redux was unreasonably dangerous or whether the condition of Redux was

substantially unchanged when it reached Plaintiff  The gravamen of Defendants' argument

is that Defendant Agents, as pharmaceutical sales representatives, are not sellers or suppliers

of Redux  Therefore, Defendant Agents cannot be liable under the AEMLD  Plaintiffs'

Complaint, supporting affidavits, and Alabama law demonstrate that it is possible that a

state court would find that Defendant Agents were sellers or suppliers of Redux and liable

under the AEMLD  Furthermore, Defendant Agents personally participated in the tort

against Plaintiffs as discussed *supra*

-17-

Alabama Code section 6-5-501(1) defines seller as "any person, firm, corporation, association, partnership, or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product    ." One distributes a product "when, in a commercial transaction other than a sale, one provides the product to another either for use or consumption or as a preliminary step leading to ultimate use or consumption .   commercial nonsale product distributors include    those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity." Section 20, Restatement (Third) of Torts: Products Liability (1998).

In the case at bar, Plaintiffs have alleged that Defendant Agents actively participated in the sale and distribution of Redux to Plaintiffs' prescribing physician  See Complaint Paragraphs 40-44, 73-77 *supra*  Furthermore, Plaintiff has established an evidentiary basis for this allegation  See Exhibit A, Affidavits of Dr Wiles, Dr Sabatine, and Dr Yoder, these physicians swore that drug sales representatives provided them samples of Redux  Id. In addition, Defendant Weavers admits that she "promoted Redux to licensed healthcare providers." See Defendant Weavers' Affidavit Attached to Defendants' Notice of Removal(Exhibit "F")  Defendants attempt to distinguish between promoting Redux and selling or distributing Redux  This distinction is irrelevant because "the fact that a technical sale did not take place does not affect liability under the AEMLD " Rice v. United Parcel Service General Services, 43 F  Supp 2d 1134, 1145 (D Orr  1999)(applying Alabama law

-18-

L

and quoting First Nat'l Bank of Mobile v. Cessna Aircraft Co., 365 So 2d 966, 967 78

(Ala 1978) In First Nat'l Bank, the Alabama Supreme Court, answering a certified

question from this Court, held that an aircraft placed on the market for demonstration

purposes only was still subject to liability even though there had been no sale First Nat'l

Bank, at 966 The Court held that liability under the AEMLD does not arise from a sale,

but from placing the product on the market Id. Dr Wiles', Dr Sabatine's, and Dr

Yoder's affidavits establish that drug sales representatives placed Redux on the market in the

form of product samples

Defendants did not employ ghosts to sell Redux Defendant Wyeth sold Redux

through the Defendant Agents The best estimates state that sales reps spend between

$8,000 and $13,000 per physician each See Wazana, "Is a Gift Just a Gift? "

Pharmaceutical sales representatives derive their income from the amount of pharmaceutical

sales that they generate The fact that Defendant Agents personally profited from the sale of

Redux is an additional reason that Defendant Agents should be subject to an AEMLD

claim See Bittler v. White and Company, Inc., 560 N E 2d 979 (5th DCA Ill 1990)

(quoting Kasel v. Remington Arms, Inc., (1972), 24 Cal App 3d 711, 725, 101 Cal Rptr

314, 323, quoted in Hebel v. Sherman Equipment, 92 Ill 2d at 379, 65 Ill Dec At 894,

442 N E 2d at 205; See also Alvarez v. Koby Machinery Co., (1987), 163 Ill App 3d

711, 114 Ill Dec 775, 516 N E 2d 930 ) When an employee has a participatory

connection, the policy justifications for strict liability are furthered by holding that employee individually liable for their conduct. Id.

Defendants cite In re Rezulin Prods. Liab. Litig., 133 F. Supp 2d 272 (S.D.N.Y. 2001) for the proposition that pharmaceutical representatives are not sellers or suppliers of the prescription drug they promote. Defendants' reliance to demonstrate fraudulent joinder in the case at bar is misplaced. In Rezulin, the Plaintiffs alleged an AEMLD claim against pharmaceutical sales representatives. Id. at 286. However, no allegation in the Rezulin complaint indicated that the sales representatives named in the complaint sold pharmaceuticals to the plaintiff or the plaintiff's physician. Id. at 287. The court found that the absence of any alleged connection between the sales representative and plaintiff was fatal to all claims against the sales representative." Id. The Court also criticized the lack of any allegation or evidence to establish that the sales representative manufactured, sold, or supplied any pharmaceutical. Id.

In the case at bar, Plaintiffs' Complaint alleges that Defendant Agents supplied samples of Redux to Plaintiff's prescribing physician. These allegations are substantiated by the affidavits of Dr. Wiles, Dr. Sabatine, and Dr. Yoder. See Exhibit A. Plaintiffs have not only alleged a connection between Defendant Agents and Plaintiff's damages, but, Plaintiffs have provided evidence which substantiates this allegation. Consequently, the findings of the court in Rezulin are not applicable in this case.

Furthermore, at least one other District Court in Alabama has held that an AEMLD claim against individual sales representatives is possible  See Exhibit G, Hales v. Merck & Co., Case No. 03-AR-1028-M (N D Ala June 26, 2003)(granting motion to remand and denying motion to dismiss in case brought against pharmaceutical manufacturer and pharmaceutical sales representatives, finding sales representatives were not fraudulently joined even where sales representative affidavits indicated that those representatives did not detail the prescribing doctor as disputes must be resolved in favor of plaintiff, and court cannot adjudicate the merits of claim before finding that the court has subject matter jurisdiction)  Other jurisdictions have also held that a sales representative may be held individually liable under strict liability theory  See United States District Court for the Middle District of Florida Remand Orders in Stella Little v. Wyeth-Ayerst Laboratories Inc., et. al., Case No  99-2244-CIV T-26C; Carol Morris v. Wyeth -Ayerst Laboratories Inc., et. al., Case No  99 2454-CIV-I-26A; Dorothy Snell v. Wyeth-Ayerst Laboratories Inc., et. al., Case No  99 2453-CIV T-26A  See also Collins et al. v. Bayer Corp, et al, Case No  02 2985, MDL 1341 (D Minn  February 28, 2003) (Attached as Exhibit "H")

Defendants have failed to meet the heavy burden of proving by clear and convincing evidence that there is no possibility that a state court would find that Plaintiff's Complaint states a claim against Defendant Agents under the AEMLD  The affidavits of Dr  Wiles, Dr  Sabatine, and Dr  Yoder directly contradict the self-serving affidavits of Defendant Agents  These affidavits demonstrate that drug sales representatives  provided samples of

21

Redux  Since all issues of fact and law should be decided in the light most favorable to Plaintiff,  this factual dispute must be resolved in Plaintiff's favor  Furthermore, Defendant Weaver admits in her own affidavit that she promoted Redux  In light of Plaintiff's Complaint,  the affidavits, and Defendant Weaver's own admissions, it is possible that a state court would find that Plaintiffs' Complaint states a cause of action under the AEMLD against Defendant Weaver or Defendant Stubblefield  Consequently, Plaintiffs' Motion to Remand should be granted

Defendants also allege that Plaintiff may not maintain an action for Breach of Warranty against Defendant Agents  The only support offered for this allegation is that Defendant Agents are not sellers  This is the same argument made by Defendants about Plaintiff's AEMLD claim  As Plaintiff has demonstrated, this argument is not sufficient to demonstrate fraudulent joinder  There is a possibility that a state court might find that Defendant Agents were a seller  Consequently, Plaintiff's Motion to Remand should be granted

### C.  There Is a Possibility That a State Court Might Find That Plaintiff's Complaint States a Cause of Action Against Defendant Agents Based on Negligence.

Defendants allege that Defendant Agents cannot be held liable for negligence. Defendants allege that Alabama law does not hold an employee liable for the negligence of his employer unless the employee personally participated in the alleged wrongful conduct of his employer  "In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective or whether they

-22-

are acting in a corporate capacity " Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So 2d 774, 775 (Ala 1986)(citing Candy H. v. Redemption Ranch, Inc., 563 F. Supp 505, 513 (M D Ala 1983); see also Chandler v. Hunter, 340 So 2d 818, 822 (Ala Civ App. 1976).

Plaintiffs rely on his arguments *supra* regarding individual liability of Defendant Agents  Plaintiffs have alleged that Defendant Agents personally participated in the wrongful conduct of Wyeth and Wyeth Pharm  See Plaintiff's Complaint paragraphs 40-44, 73-77 *supra*  Defendant Agents were the individuals who actively participated in the sale and distribution of Redux  Defendant Agents knew or should have known that Redux was not safe and effective as sustained by the evidence attached as Exhibit "B," Redux Sales Manual

Defendants in their Notice of Removal fail to address the allegations of Negligence against Defendant Agents contained in the Plaintiffs' Complaint  Instead, Defendants merely rely on a citation to the case of Tillman v. R.J. Reynolds, 253 F 3d 1302 (11th Cir 2001) for the proposition that a plaintiff fails to state a claim for negligence simply by alleging that an employee defendant acted with superior knowledge  In Tillman, the Plaintiff alleged that the individual employees had superior knowledge of the dangers of the product because of their employment  Id. at 1305  However, the plaintiffs' complaint in Tillman failed to allege the plaintiffs ever dealt with the employees, or that they made any representations on which plaintiffs relied.  Id.  In Tillman, the individual employee

-23-

defendants were not even working for the defendant manufacturer at the time plaintiffs initially purchased the defective product  Id.  The Tillman court dismissed the action because the plaintiffs failed to demonstrate that the individually named defendants were tied to the allegations in the complaint  Id.

Plaintiffs' Complaint does not suffer from the deficiencies in Tillman. Defendant Weaver has admitted in her own affidavit that she promoted Redux.  In addition, Plaintiffs have alleged in the Complaint and also provided evidence that drug sale representatives supplied information and samples of Redux to physicians  This evidence substantiates the fact that Defendant Agents personally participated in the tort against Plaintiffs  There is a possibility that a state court would find that Plaintiffs' Complaint states a cause of action for negligence against Defendant Agents.  Consequently, Plaintiffs' motion to remand should be granted

## CONCLUSION

Defendants allege in their Notice of Removal that federal jurisdiction exists because Defendant Agents have been fraudulently joined  Defendants have the heavy burden of showing by clear and convincing evidence that the allegations of the complaint do not state any possible cause of action against any Defendant Agents  Defendants have failed to meet their heavy burden  Defendants rely on misplaced authority which are not analogous easily distinguishable from the facts before this Court  Furthermore, Plaintiffs have provided evidence which contradicts Defendant's assertions and substantiates the allegations in

-24-

Plaintiffs' complaint  Plaintiffs only need to show that there is a possibility that a state court would find that any one of the allegations in the complaint states a cause of action against any Defendant Agent.  All issues of law and fact are determined in Plaintiffs' favor  Plaintiffs have demonstrated that it is possible that a state court would find that Plaintiffs' Complaint states a cause of action against Defendant Agents  Therefore, This Court should remand this case to state court  Plaintiffs respectfully move this Court to award Plaintiffs' costs and attorney's fees associated with Defendant's removal of this case  In light of the absence of any facts to justify Defendants' removal, Plaintiffs submit that costs and fees are justified  Finally, Plaintiffs respectfully request a hearing on this Motion if this Court finds that a hearing is necessary to decide this matter

Joseph A  Zarzaur, Jr  (ZAR002)
Attorney for Plaintiffs

Of Counsel:
McKenzie, Taylor & Zarzaur, P A
905 E. Hatton St
Pensacola, FL 32503
850-432-2856
Fax 850 432 5130

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE RUSSAW, as personal )
representative of the Estate of )
JOHN WILLIAMS, deceased, )
 )
 )
     PLAINTIFF, )
v. )
 )
MERCK & CO., INC., a foreign )    CASE NO.
Corporation; ANNE BRANDON, an )
Individual; MARK M. SANDERS, an )   Removed from Circuit Court
Individual; TONYA M. LOCKLIN, an )  of Barbour County (Eufaula),
Individual; JOE D. READ, an individual; ) AL; CV-06-82
THEODORE R. BOWSER, II, an )
individual; ERIC RALPH PAYNE, an )
Individual; and fictitious defendants )
A, B, C & D, being those persons, firms )
or Corporations whose fraud, scheme to )
defraud, and/or other wrongful conduct )
caused or contributed to the Plaintiff's )
injuries and damages, and whose true )
names and identities are presently )
unknown to Plaintiff, but will be )
substituted by amendment when )
ascertained. )
 )
    DEFENDANTS. )

<u>DECLARATION OF ANNE BRANDON</u>

    1.    My name is Anne Brandon. I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration. This Declaration is based

upon my personal knowledge.

    2.    At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Rosie Russaw or John Williams.



EXHIBIT
I

3.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have

2

written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.  I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7  I have never met nor spoken with Rosie Russaw or John Williams.

8.  I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 19, 2006.

_____
Anne Brandon

3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROSIE RUSSAW, as personal<br>representative of the Estate of<br>JOHN WILLIAMS, deceased,<br><br>    PLAINTIFF,<br>v.<br><br>MERCK & CO., INC., a foreign<br>Corporation; ANNE BRANDON, an<br>Individual; MARK M. SANDERS, an<br>Individual; TONYA M. LOCKLIN, an<br>Individual; JOE D. READ, an individual;<br>THEODORE R. BOWSER, II, an<br>individual; ERIC RALPH PAYNE, an<br>Individual; and fictitious defendants<br>A, B, C & D, being those persons, firms<br>or Corporations whose fraud, scheme to<br>defraud, and/or other wrongful conduct<br>caused or contributed to the Plaintiff's<br>injuries and damages, and whose true<br>names and identities are presently<br>unknown to Plaintiff, but will be<br>substituted by amendment when<br>ascertained.<br><br>    DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>Removed from Circuit Court<br>of Barbour County (Eufaula),<br>AL; CV-06-82 |

### DECLARATION OF JOE READ

1.      My name is Joe Read  I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.      At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Rosie Russaw or John Williams

3.      I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.      At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx.  The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.  They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.      At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have

written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Rosie Russaw or John Williams.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June ⎯17⎯, 2006.

_____

Joe Read

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE RUSSAW, as personal          )
representative of the Estate of    )
JOHN WILLIAMS, deceased,           )
                                   )
     PLAINTIFF,                    )
                                   )
v.                                 )
                                   )
MERCK & CO., INC., a foreign       )    CASE NO.
Corporation; ANNE BRANDON, an      )
Individual; MARK M. SANDERS, an    )    Removed from Circuit Court
Individual; TONYA M. LOCKLIN, an   )    of Barbour County (Eufaula),
Individual; JOE D. READ, an individual; )  AL; CV-06-82
THEODORE R. BOWSER, II, an         )
individual; ERIC RALPH PAYNE, an   )
Individual; and fictitious defendants )
A, B, C & D, being those persons, firms )
or Corporations whose fraud, scheme to )
defraud, and/or other wrongful conduct )
caused or contributed to the Plaintiff's )
injuries and damages, and whose true )
names and identities are presently )
unknown to Plaintiff, but will be  )
substituted by amendment when      )
ascertained.                       )
                                   )
     DEFENDANTS.                   )

## DECLARATION OF THEODORE BOWSER

     1.    My name is Theodore Bowser. I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

     2.    At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Rosie Russaw or John Williams.

3.     I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no discussions at all at any time with any patients of any of the physicians on whom I called regarding Vioxx.

5.     At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Rosie Russaw or John Williams.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June *15*, 2006.

_Theodore R. Bowser III_
Theodore Bowser

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE RUSSAW, as personal )
representative of the Estate of )
JOHN WILLIAMS, deceased, )
)
    PLAINTIFF, )
)
v. )
)
MERCK & CO., INC., a foreign )    CASE NO.
Corporation; ANNE BRANDON, an )
Individual; MARK M. SANDERS, an )    Removed from Circuit Court
Individual; TONYA M. LOCKLIN, an )    of Barbour County (Eufaula),
Individual; JOE D. READ, an individual; )    AL; CV-06-82
THEODORE R. BOWSER, II, an )
individual; ERIC RALPH PAYNE, an )
Individual; and fictitious defendants )
A, B, C & D, being those persons, firms )
or Corporations whose fraud, scheme to )
defraud, and/or other wrongful conduct )
caused or contributed to the Plaintiff's )
injuries and damages, and whose true )
names and identities are presently )
unknown to Plaintiff, but will be )
substituted by amendment when )
ascertained. )
)
    DEFENDANTS. )

## DECLARATION OF ERIC PAYNE

    1.    My name is Eric Payne. I am over twenty-one years of age, am of

sound mind, and am competent to make this Declaration. This Declaration is based upon

my personal knowledge.

    2.    At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Rosie Russaw or John Williams.

3.      I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.      At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx.  The physicians with whom I dealt and on whom I called in my job were highly skilled professionals.  They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.      At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients.  Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have

written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Rosie Russaw or John Williams.

8.    I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 16, 2006.

_____
Eric Payne

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE RUSSAW, as personal )
representative of the Estate of )
JOHN WILLIAMS, deceased, )
)
    PLAINTIFF, )
)
v. )
)
MERCK & CO., INC., a foreign )    CASE NO.
Corporation; ANNE BRANDON, an )
Individual; MARK M. SANDERS, an )    Removed from Circuit Court
Individual; TONYA M. LOCKLIN, an )    of Barbour County (Eufaula),
Individual; JOE D. READ, an individual; )    AL; CV-06-82
THEODORE R. BOWSER, II, an )
individual; ERIC RALPH PAYNE, an )
Individual; and fictitious defendants )
A, B, C & D, being those persons, firms )
or Corporations whose fraud, scheme to )
defraud, and/or other wrongful conduct )
caused or contributed to the Plaintiff's )
injuries and damages, and whose true )
names and identities are presently )
unknown to Plaintiff, but will be )
substituted by amendment when )
ascertained. )
)
    DEFENDANTS. )

## DECLARATION OF TONYA LOCKLIN

    1.    My name is Tonya Locklin.  I am over twenty-one years of age,

am of sound mind, and am competent to make this Declaration.  This Declaration is

based upon my personal knowledge.

    2.    At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Rosie Russaw or John Williams.

3.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer.   Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have

written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.     I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.     I have never met nor spoken with Rosie Russaw or John Williams.

8.     I have never made any presentations to the general public regarding Vioxx.


Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 19 , 2006.

Tonya Hocklin

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSIE RUSSAW, as personal             )
representative of the Estate of       )
JOHN WILLIAMS, deceased,              )
                                      )
    PLAINTIFF,                        )
                                      )
v.                                    )
                                      )
MERCK & CO., INC., a foreign          )
Corporation; ANNE BRANDON, an         )    CASE NO.
Individual; MARK M. SANDERS, an       )
Individual; TONYA M. LOCKLIN, an      )    Removed from Circuit Court
Individual; JOE D. READ, an individual; )  of Barbour County (Eufaula),
THEODORE R. BOWSER, II, an            )    AL; CV-06-82
individual; ERIC RALPH PAYNE, an      )
Individual; and fictitious defendants )
A, B, C & D, being those persons, firms )
or Corporations whose fraud, scheme to )
defraud, and/or other wrongful conduct )
caused or contributed to the Plaintiff's )
injuries and damages, and whose true  )
names and identities are presently    )
unknown to Plaintiff, but will be     )
substituted by amendment when         )
ascertained.                          )
                                      )
    DEFENDANTS.                       )

## DECLARATION OF MARK SANDERS

1.    My name is Mark Sanders. I am over twenty-one years of age, am

of sound mind, and am competent to make this Declaration. This Declaration is based

upon my personal knowledge.

2.    At no time did I ever provide Vioxx® ("Vioxx") or information

concerning Vioxx directly to Rosie Russaw or John Williams.

NY 1062700_1.doc

3.    I am not a physician, and have therefore never prescribed Vioxx. I am also not a pharmacist and I have therefore never written or filled a prescription for Vioxx as a pharmacist. The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx. I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer. I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed. I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.    At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx. I had no dealings at all at any time with any patients of any of the physicians on whom I called regarding Vioxx, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.    At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have

NY 1062700_1.doc

written for individual patients including, but not limited to, Rosie Russaw or John Williams.

6.    I made no knowing misrepresentations concerning the safety or efficacy of Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

7.    I have never met nor spoken with Rosie Russaw or John Williams.

8.    I have never made any presentations to the general public regarding Vioxx.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June _21_, 2006.

_____
Mark Sanders

NY 1062700_1.doc



# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAYCOL PRODUCTS LITIGATION | MDL No. 1431 (MJD) |

This Document also relates to:

| | |
|---|---|
| Annie Andrews et al. v. Bayer Corp. et al., | Case No. 03-4932 |
| Maney Anglin et al. v. Bayer Corp. et al., | Case No. 03-4942 |
| Judy Baldwin et al. v. Bayer Corp. et al., | Case No. 03-4930 |
| Dorothy Bennett et al. v. Bayer Corp. et al., | Case No. 03-4938 |
| Alice Dowling et al. v. Bayer Corp. et al., | Case No. 03-4931 |
| Mary Ellis et al. v. Bayer Corp. et al., | Case No. 03-4933 |
| Sis Grubbs et al. v. Bayer Corp. et al., | Case No. 03-4934 |
| George Jenkins et al. v. Bayer Corp. et al., | Case No. 03-4943 |
| Mary Richardson et al. v. Bayer Corp. et al., | Case No. 03-4935 |
| Charles Rogers et al. v. Bayer Corp. et al., | Case No. 03-4936 |
| Clarence Wheeler et al. v. Bayer Corp. et al., | Case No. 03-4941 |
| Albert Williams et al. v. Bayer Corp. et al., | Case No. 03-4937 |
| Willie Womack et al. v. Bayer Corp. et al., | Case No. 03-4939 |
| Jeffrey Woods et al. v. Bayer Corp. et al., | Case No. 03-4940 |

Andy D. Birchfield, Jr., E. Frank Woodson, and Melissa A. Prickett, Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. for and on behalf of Plaintiffs.

Peter W. Sipkins, Dorsey & Whitney LLP for and on behalf of Bayer Corporation.

Scott A. Smith and Tracy J. Van Steenburgh for and on behalf of SmithKline Beecham Corporation d/b/a GlaxoSmithKline.

---

This matter is before the Court upon Plaintiffs' motions for remand. Bayer Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a

**EXHIBIT**

**J**



GlaxoSmithKline ("GSK") oppose the motions, arguing that this Court has diversity jurisdiction over Plaintiffs' claims.

Background

The above-referenced cases were originally filed in Alabama state court and involve a number of plaintiffs that are citizens of Alabama. Plaintiffs each allege that they were prescribed Baycol and that as a direct and proximate result of taking Baycol, each Plaintiff was caused to suffer physical injury.[1] In their Complaints, the Plaintiffs assert the following claims against Bayer A.G., Bayer Corporation, GSK, as well as against Monica Reid and Jerry Totty, district managers for GSK and Todd Trawick and Donald Heller, sales representatives for GSK: the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breach of warranty; and; fraud/suppression.

Bayer and GSK removed the above actions to federal court on the basis that the non-diverse defendants, the individual district managers and sales representatives, were fraudulently joined. Plaintiffs now seek remand, arguing that they have stated a claim against these individual defendants.

Standard

Remand to state court is proper if the district court lacks subject matter

---

[1] With the exception of those paragraphs describing the claims of the individual plaintiffs, the allegations against the defendants in all of the above referenced complaints are identical. For ease of reference, the Court will refer only to the Baldwin Complaint.

2.



jurisdiction over the asserted claims.  28 U.S.C. § 1447(c).  In reviewing a motion

to remand, the court must resolve all doubts in favor of remand to state court,

and the party opposing remand has the burden of establishing federal jurisdiction

by a preponderance of the evidence.  In re Business Men's Assurance Co. of

America, 992 F.2d 181, 183 (8th Cir. 1983) (citing Steel Valley Auth. v. Union

Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987) cert. dismissed 484 U.S.

1021 (1988)).

Fraudulently joined defendants will not defeat diversity jurisdiction.  Filla

v. Norfolk Southern Railway Company, 336 F.3d 806, 809 (8th Cir. 2003).

"Joinder is fraudulent and removal is proper when there exists no reasonable

basis in fact and law supporting a claim against the resident defendants."  Wiles

v. Capitol Indemnity Corporation, 280 F.3d 868, 870 (8th Cir. 2001).  The burden

is on the removing party to show that a non-diverse party has been fraudulently

joined.  Id., at 871.  In deciding this issue, the Court may consider the pleadings

and supporting affidavits.  Parnas v. General Motors Corporation, 879 F. Supp.

91, 92 (E.D. Mo. 1995).

    1.  AEMLD Claim

Plaintiffs have alleged AEMLD claims against all defendants.  To establish

liability under AEMLD, the plaintiffs must show they were injured by one who

sold a product in a defective condition unreasonably dangerous to the plaintiffs as



the ultimate user or consumer; the seller was engaged in the business of selling such a product; the product was expected to and did reach the users without substantial change in the condition in which it was sold. Carter v. Cantrell Machine Company, Inc., 662 So. 2d 891, 892 (Ala. 1995).

Defendants argue that the district managers and sales representatives are not "sellers" of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to "plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products." Atkins v. American Motors Corp. et al., 335 So.2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. Bowman v. Coleman Company, Inc., Civil Action No. 96-0448-P-C (S.D.Ala. 1996), Attached as Ex. B. to Removal Petition. The court recognized that the defendant sales manager "had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers." Id. at *7. The court also noted that it is the corporation that reaps the

4



profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. Id. "In short, the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives."

In another MDL proceeding, the district court similarly held that Alabama courts would not hold a sales representative liable under AEMLD. In re Rezulin Products Liability Litigation, 133 F.Supp. 2d 272, 287-288 (S.D.N.Y. 2001).

> The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin. Rather, he was an agent of the manufacturer and seller. As a corporate employee, he was not 'the one best able' to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representatives in this case.

Id. See also, Wakeland v. Brown & Williamson Tobacco Corporation, 996 F.Supp. 1213 (S.D. Ala. 1998) (finding that retailer of cigarettes was fraudulently joined as plaintiffs had failed to state a claim under AEMLD, in part, because Alabama rejects the no-fault precept and plaintiff failed to demonstrate a causal connection between the retailer's activities in connection with the handling of the product and the product's defective condition).

Plaintiffs do not allege, and nothing in the records supports a finding, that



the individual defendants are "sellers" as that term is used to impose liability for a defective product. In fact, the individual defendants submitted declarations in which they attest that they are not sellers, manufacturers, developers or testers of Baycol. Declarations of Monica Reid, Jerry Totty, Todd Trawick and Donald Heller, Ex. C. to Joint Notice of Removal. Accordingly, the Court finds that Alabama would not recognize an AEMLD claim against the individual defendants in these cases.

2. Negligence/Warranty Claim

Plaintiffs also assert negligence and warranty claims against the individual defendants, alleging they were negligent in the design, manufacture, development, packaging, labeling, marketing, promoting, advertising and sale and/or distribution of Baycol and provided express and implied warranties concerning Baycol's safety and efficacy. Compl. ¶¶ 28-32. Defendants argue that these claims fail as well, as such claims can only be brought against a manufacturer or seller of an allegedly defective product.

In support of remand in these cases, Plaintiffs argue that the negligence and warranty claims stand, as such claims are not subsumed by AEMLD. Defendants do not argue to the contrary, and the Alabama Supreme Court has found that negligence claims are not subsumed by AEMLD. Tillman v. R.J. Reynolds Tobacco Co., 2003 WL 21489707 (Ala. 2003). However, none of the

6



cases cited in their briefs addresses the propriety of such claims against individuals that were not manufacturers or sellers of the product at issue.

Alabama law provides that claims of negligent manufacture or sale may only be asserted against the manufacturer or seller. Norton Co. v. Harrelson, 176 So.2d 18, 20 (Ala. 1965). Similarly, claims of breach of express or implied warranties may only be asserted against the seller of the product at issue. See eg. Rutledge v. Arrow Aluminum Industries, Inc., 733 So. 2d 412, 417 (Ala. Civ. App. 1998) (plaintiff cannot recover against construction company under AEMLD or breach of warranty when no evidence presented that construction company sold the alleged defective product at issue). See also, Ala. Code § 7-2-313(1) ("Express warranties by the seller are created as follows . . ."); id. § 7-2-314(1) (implied warranty of merchantability applies to a seller that is a "merchant with respect to goods of that kind"); id. § 7-2-315(1) (implied warranty; fitness for a particular purpose applies to sellers).

As the individual defendants are not sellers or manufacturers of Baycol, rather they are only agents of the seller of Baycol, Plaintiffs negligence and warranties claims against the individual defendants would fail.

3. Fraud/Suppression

Finally, Plaintiffs allege that the individual sales manager and sales representative defendants made knowing fraudulent misrepresentations that



Baycol was safe with the intent to induce physicians to prescribe Baycol and that plaintiffs were injured as a result. Compl. ¶¶ 43 and 44. Defendants argue these allegations do not meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the Alabama Rules of Civil Procedure, and that such claims should therefore be dismissed.

Alabama law clearly provides that a claim for fraud must be plead with particularity.

> Rule 9(b), A.R.Civ.P. provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala.1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case. Caron v. Teagle, 345 So.2d 1331 (Ala.1977).

Lyde v. United Ins. Co. of America, 628 So.2d 665, 670 (Ala. Civ. App. 1993).

In reviewing the Complaints at issue here, the Court finds that Plaintiffs have failed to plead, with the requisite particularity, the "place; the time, the contents of the false misrepresentations, the fact misrepresented, and the identification of what has been obtained." Id. Rather, the allegations supporting the fraud/suppression claim are general and conclusory. For example, one such allegation reads "the District Managers and Sales Representatives advertised,

8



marketed, and/or promoted Baycol to prescribing physicians utilizing information known to fraudulently represent the safety and efficacy of Baycol, and the District Managers and Sales Representatives failed to warn of the known dangers and adverse events associated with the use of Baycol." Baldwin Compl. ¶ 17. Another reads "the District Managers and Sales Representatives called on physicians . . . at which times they presented fraudulent information . . . " Id. ¶ 14. No allegation specifies the specific misrepresentation the individual defendants made, to whom and under what circumstances.

    4.  Amount in Controversy

    In the Baldwin Complaint, Plaintiff Ruby Johnson alleges she suffered physical and/or mental injuries in the aggregate amount of $74,000. Baldwin Comp. ¶ 6. Plaintiffs in the Baldwin action thus argue that the remand is appropriate as the amount in controversy is not met. Defendants respond that plaintiff Johnson has failed to limit her damages below the jurisdictional amount.

    The Court begins its analysis with the principle that the amount claimed by Plaintiffs ordinarily controls in determining whether jurisdiction lies in federal court. Zunamon v. Brown, 418 F.2d 883, 885 (8th Cir. 1969) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-289 (1938)). Nonetheless, "the plaintiffs allegations of requisite jurisdictional amount are not necessarily dispositive of the issue" Id. That is because an allegation in a

9



pleading is not binding. The applicable rules of civil procedure liberally allow the amendment of pleadings. Thus, to prevent removal, a plaintiff must submit a binding stipulation or affidavit, separate from the pleadings, and signed by the plaintiffs agreeing to be so bound. See eg. De Aguilar, 47 F.3d at 1412; In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992); White v. Bank of America, 2001 WL 804517 (N.D. Tex. 2001) (to prevent removal, plaintiff must file with the complaint a binding stipulation or affidavit that limits the scope of their recovery).

The Court finds that based on all claims included in the Complaint, the amount in controversy exceeds $75,000. Specifically, all of the Baldwin plaintiffs have asserted a number of claims arising in tort, contract and statute. Plaintiffs also seek compensatory and punitive damages. Given the breadth of their requests, the amount in controversy easily exceeds $75,000 per plaintiff, including plaintiff Johnson.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motions for remand are DENIED.

Date: March 25, 2004

/s/ Michael J. Davis
Michael J. Davis
United States District Court